Brendan Cummings (CA Bar No. 193952)
Kassia Siegel (CA Bar No. 209497)
Center for Biological Diversity
P.O. Box 549
Joshua Tree, CA 92252
Phone:   (760) 366-2232; Facsimile: (760) 366-2669
Email:  bcummings@biologicaldiversity.org and ksiegel@biologicaldiversity.org

Miyoko Sakashita (CA Bar No. 239639)
Center for Biological Diversity
1095 Market St., Suite 511
San Francisco, CA 94103
Phone:  (415) 436-9682; Facsimile: (415) 436-9683
Email:  miyoko@biologicaldiversity.org

Andrew E. Wetzler (CA Bar No. 202299)
Natural Resources Defense Council
544 White Oak Place
Worthington, OH 43085
Phone:  (614) 840-0891; Facsimile (415) 875-6161
Email:  awetzler@nrdc.org

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, a non-profit corporation, NATURAL RESOURCES DEFENSE COUNCIL, a non-profit corporation, and GREENPEACE, INC., a non-profit corporation;<br><br>      Plaintiffs,<br><br>      v.<br><br>DIRK KEMPTHORNE, United States Secretary of the Interior and UNITED STATES FISH AND WILDLIFE SERVICE;<br><br>      Defendants. | CASE NO.:<br><br><br><br>**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF** |

COMPLAINT

**I.    INTRODUCTION**

1.    In this civil action for declaratory and injunctive relief, Plaintiffs CENTER FOR BIOLOGICAL DIVERSITY, NATURAL RESOURCES DEFENSE COUNCIL, AND GREENPEACE, INC. challenge the failure of Defendants DIRK KEMPTHORNE, United States Secretary of the Interior and the UNITED STATES FISH AND WILDLIFE SERVICE (collectively "the Secretary") to comply with the non-discretionary listing provisions of the Endangered Species Act, as amended, 16 U.S.C. §§ 1531-1544 ("ESA"). The Secretary has failed to issue a final listing determination for the polar bear (*Ursus maritimus*) under the ESA within the timeframe set forth by the statute. 16 U.S.C. § 1533(b). Plaintiffs request this Court to order the Secretary to comply with the ESA's mandatory, non-discretionary timeline for completing the listing process. Id. Compliance with the ESA's mandatory deadlines is necessary to ensure the continued survival of polar bears in the wild.

2.    The polar bear is the Arctic's top predator and is the largest of the four currently recognized species of bear in the genus *Ursus*. Polar bears live only in areas of the Arctic where there is sea ice for a substantial portion of the year and are completely dependent upon sea-ice habitat for their survival. Indeed, the polar bear's dependence on sea ice is so complete that, like whales and seals, they are classified as a marine mammal by scientists and the federal government. Polar bears utilize Arctic sea ice for all of their essential behaviors, including mating, traveling, and hunting and feeding upon ringed seals, their primary prey. Some polar bears even give birth to their cubs in snow dens on top of the drifting sea ice. Yet the Arctic sea-ice habitat that the polar bear depends on is fast disappearing, threatening polar bears with extinction.

3.    The disappearance of Arctic sea ice is caused by global warming, which has resulted in an increase in average winter temperatures in the Arctic. Average winter temperatures in some areas of the Arctic have already risen by 9° Fahrenheit, with the average winter temperature in Alaska up by 6° Fahrenheit since 1949. Global warming is caused by the emission of anthropogenic greenhouse pollution, and the rate and extent of future warming will depend upon future levels of greenhouse emissions. Even using moderate projections of future greenhouse emissions levels, average winter temperatures are projected to rise by 18° Fahrenheit over the Arctic Ocean by the end of this century.

4.    As the Arctic warms, the sea ice on which the polar bear depends is melting rapidly. In

September, 2007, the sea ice hit a new record low, fully one million square miles below the average minimum sea-ice extent of the past several decades. Alarmingly, there was less ice in the Arctic in 2007 than more than half of the world's leading climate models project for 2050. Some scientists now believe that the Arctic could be ice free in the summer as early as 2013.

5.    Polar bear populations are already declining due to global warming. Individual polar bears have drowned, starved, and even resorted to cannibalism as global warming transforms the Arctic. The U.S. Geological Service ("USGS") projects that two thirds of the world's polar bears will be extinct by 2050 if "business as usual," emissions trends continue, and that the world's remaining bears will face an over 40% risk of extinction by century's end. The USGS projections may be overly optimistic, as they are based on modeling results of sea-ice decline that have underestimated the ice loss to date.

6.    Polar bears are threatened by other factors as well, including but not limited to proliferating oil and gas development in their habitat, high levels of organochloride and other pollution in the Arctic, and overhunting and poaching in some areas in Russia, Canada, and Greenland.

7.    On February 16, 2005, Plaintiff Center for Biological Diversity submitted a Petition to List the Polar Bear (*Ursus maritimus*) under the Endangered Species Act ("Petition") due to global warming and other threats to the Secretary pursuant to Section 4 of the ESA. The Secretary received the Petition on February 17, 2005.

8.    The ESA sets forth strict deadlines for processing petitions to list a species. Specifically, within 90 days of receipt of the Petition, the ESA required the Secretary to determine, to the maximum extent practicable, whether the Petition presented substantial information indicating that listing "may be warranted," and if so, to initiate a status review of the species. 15 U.S.C. § 1533(b)(3)(A). If the Secretary makes a positive initial, or "90-day", finding, the ESA requires the Secretary to determine, within twelve months of the Petition being filed, whether the requested action (here, listing the polar bear) is "warranted" and, if so, to publish a proposed rule listing the polar bear. 15 U.S.C. § 1533(b)(3)(B).    The Secretary must then publish a final listing determination for the species in the Federal Register within one year of publication a proposed rule. 15 U.S.C. § 1533(b)(6).

9.    The Secretary has failed to meet each of these deadlines. Following his receipt of the

1    Petition in February, 2005, the Secretary took no action for 10 months.  Accordingly, on December 15,

2    2005, Plaintiffs filed a previous lawsuit to enforce the ESA's first listing deadline.  Center for

3    Biological Diversity v. Kempthorne, No. 05-5191 JSW (N. Dist. Cal.) ("Center for Biological Diversity

4    I").  Subsequently, the Secretary issued a 90-day finding on the Petition to list the polar bear on

5    February 9, 2006.  71 Fed. Reg. 6745 (Notice of 90-day Finding and Initiation of Status Review)

6    (February 9, 2006).  In the 90-day finding, the Secretary found that the Petition presented substantial

7    information showing that listing of the polar bear may be warranted under the ESA, initiated a status

8    review for the species, and solicited public comment for a period of 60 days.  Id.  Because the Secretary

9    did not issue the 90-day finding until nearly one year had passed from receipt of the Petition, the

10   Secretary also failed to meet the one year deadline for the next required finding.  A consent decree was

11   entered in Center for Biological Diversity I that required the Secretary to issue the required 12-month

12   finding by December 27, 2006.

13        10.    On December 27, 2006, the Secretary announced a proposed rule to list the polar bear

14   throughout its range as a threatened species.  The proposed rule was published in the Federal Register

15   on January 9, 2007.  72 Fed. Reg. 1064-1099 (Proposal to List the Polar Bear as a Threatened Species)

16   (January 9, 2007).  Publication of the final listing determination was therefore required by January 9,

17   2008.  16 U.S.C. §§ 1533(b)(6).

18        11.    The Secretary did not publish the final listing determination for the polar bear in the

19   Federal Register on January 9, 2008.  On January 7, 2008, the Director of the U.S. Fish and Wildlife

20   Service Dale Hall held a press conference and stated that the agency would not meet the deadline, but

21   intended to issue the decision within 30 days.  The Secretary did not issue the final listing

22   determination within 30 days of January 7, 2008 and has still not done so.

23        12.    Polar bears will not receive any protections under the ESA until the Secretary completes

24   the listing process through the issuance of a final listing determination.  While the Secretary has

25   illegally delayed the final ESA listing determination for the polar bear, activities that are harmful to

26   polar bears and their habitat are occurring.

27        13.    For example, on February 6, 2008, another Interior Department agency, the Mineral

28   Management Service (MMS), held an oil and gas lease sale in which nearly thirty million acres of

COMPLAINT                                                    Page 3

1  prime polar bear habitat in the Chukchi Sea were offered to oil companies for oil and gas development.

2  Had the polar bear been listed prior to the lease sale, additional environmental review would have been

3  required before the lease sale could have proceeded.

4      14.    Because the Secretary is in violation of the ESA's mandatory listing deadlines, Plaintiffs

5  now seek judicial relief declaring that the Secretary has violated the ESA by failing to issue a final

6  listing determination for the polar bear by the statutory deadline of January 9, 2008.  Plaintiffs also ask

7  the Court to order the Secretary to issue the overdue final listing determination for the polar bear by a

8  date certain.

9  **II.    JURISDICTION, VENUE, AND INTRADISTRICT ASSIGMENT**

10     15.    The Court has jurisdiction over this action pursuant to 16 U.S.C. §§ 1540(c) & (g)

11 (action arising under the ESA and citizen suit provision), 28 U.S.C. § 1331 (federal question), 5 U.S.C.

12 § 702 (APA), and 28 U.S.C. § 1361 (Mandamus).  The relief sought is authorized by 28 U.S.C. §§ 2201

13 (declaratory judgment) and 28 U.S.C. § 2202 (injunctive relief).

14     16.    Venue is proper in the Northern District of California pursuant to 16 U.S.C. §

15 1540(g)(3)(A) and 28 U.S.C. § 1391(e) as this civil action is brought against an agency of the United

16 States and officers and employees of the United States acting in their official capacities and under the

17 color of legal authority, as at least one Plaintiff is incorporated in this judicial district, as all Plaintiffs

18 maintain offices in this judicial district, and as no real property is involved in this action.

19     17.    Pursuant to Local Rules 3-5(b) and 3-2(c) and (d), assignment of this case to the San

20 Francisco or Oakland Division is appropriate because Plaintiffs are located in San Francisco County.

21     18.    By written notice sent to Defendants DIRK KEMPTHORNE and U.S. FISH AND

22 WILDLIFE SERVICE and received by facsimile and Federal Express delivery on January 9, 2008,

23 Plaintiffs informed Defendants of the violations set forth in this Complaint more than sixty days prior

24 to the filing of this Complaint, as required by the ESA.  16 U.S.C. § 1540(g).  Despite receipt of

25 Plaintiffs' notice letters, the Secretary has failed to remedy his violations of the ESA.

26     19.    An actual, justiciable controversy exists between the parties within the meaning of 28

27 U.S.C. § 2201.

28

20.    Plaintiffs have no adequate remedy at law.  The Secretary's continuing failure to comply with the ESA will result in irreparable harm to the polar bear, to Plaintiffs and Plaintiffs' members, and to the public.  No monetary damages or other legal remedy can adequately compensate Plaintiffs, their members, or the public, for this harm.

21.    Plaintiffs and their members are adversely affected or aggrieved by federal agency action and are entitled to judicial review of such action within the meaning of the ESA and the APA. The Secretary's failure to comply with the ESA's mandatory deadlines prevents the completion of the listing process and therefore the implementation of measures to protect polar bears pursuant to the ESA.  Without the substantial protections of the ESA, polar bears are more likely to continue to decline and become extinct.  Plaintiffs are therefore injured because their use and enjoyment of polar bears and their habitat described below is threatened by the decline and likely extinction of the bears.  The Secretary's failure to comply with the ESA's deadlines has also resulted in informational and procedural injury to Plaintiffs, because Plaintiffs have been deprived of a timely opportunity to review the final listing determination and to challenge it if necessary in order to secure protective measures for the species.  These are actual, concrete injuries to Plaintiffs, caused by the Secretary's failure to comply with the ESA, the APA, and their implementing regulations.  The relief requested will fully redress those injuries.

22.    The federal government has waived sovereign immunity in this action pursuant to 16 U.S.C. § 1540(g) and 5 U.S.C. § 702.

III.    PARTIES

23.    Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("the Center") is a non-profit 501(c)(3) corporation with offices in San Francisco, Joshua Tree, and San Diego, California; Phoenix and Tucson, Arizona; Pinos Altos, New Mexico; Portland, Oregon; and Washington, D.C.  The Center for Biological Diversity works through science, law, and policy to secure a future for all species, great or small, hovering on the brink of extinction.  The Center is actively involved in species and habitat protection issues throughout the western United States, including protection of Arctic wildlife in general and the polar bear in particular. The Center has over 40,000 members throughout the United States and the world.

24.     Plaintiff NATURAL RESOURCES DEFENSE COUNCIL, Inc. ("NRDC") is a national environmental advocacy group.  The NRDC is registered to do business in California and maintains offices in San Francisco, Los Angeles, Washington, D.C., New York City, Chicago, Illinois and Beijing, China.  Through advocacy, education, litigation, and other efforts, NRDC works to preserve threatened and endangered wildlife across the United States and around the world, including Arctic wildlife in general and the polar bear in particular.  The NRDC has over 550,000 members nationwide, over 100,000 of whom reside in the State of California

25.     Plaintiff GREENPEACE, INC. ("Greenpeace") is a California non-profit corporation with offices in San Francisco and elsewhere.  Its mission is to raise public awareness of environmental problems and promote changes that are essential to a green and peaceful future.  There are approximately 250,000 current Greenpeace members in the United States.  Since the 1980's, Greenpeace has been a lead advocacy organization working to raise awareness of global warming and the protection of wildlife, and to advocate for serious cuts in greenhouse gas emissions through local, national and global action.  For the past decade, Greenpeace has campaigned on the causes and impacts of climate change in the Arctic, including the impacts on polar bears and other species who are threatened by continued Arctic warming.

26.     Plaintiffs' members and staff include individuals with varying interests in polar bears and their habitat ranging from scientific, professional, and educational to recreational, aesthetic, moral, and spiritual interests.  Further, Plaintiffs' members and staff enjoy, on an on-going basis, the biological, scientific, research, education, conservation, recreational and aesthetic values of the Arctic region inhabited by this species.  Plaintiffs' staff and members observe and study polar bears and their habitat, and derive professional, scientific, educational, recreational, aesthetic, inspirational, and other benefits from these activities and have an interest in preserving the possibility of such activities in the future.  An integral aspect of the Plaintiffs' members' use and enjoyment of polar bears is the expectation and knowledge that the species is in its native habitat.  For this reason, the Plaintiffs' use and enjoyment of polar bears is entirely dependent on the continued existence of healthy, sustainable populations in the wild.  Plaintiffs bring this action on their own behalf and on behalf of their adversely affected members and staff.

27.    Defendant DIRK KEMPTHORNE, United States Secretary of the Interior, is the highest ranking official within the Department of Interior and, in that capacity, has ultimate responsibility for the administration and implementation of the ESA with regard to the polar bear, and for compliance with all other federal laws applicable to the Department of the Interior.  He is sued in his official capacity.

28.    Defendant UNITED STATES FISH & WILDLIFE SERVICE ("the Service") is a federal agency within the Department of Interior authorized and required by law to protect and manage the fish, wildlife and native plant resources of the United States, including enforcing the ESA.  The Service has been delegated authority by the Secretary of Interior to implement the ESA for the polar bear, including responsibility for making decisions and promulgating regulations, including proposed and final listing and critical habitat decisions and the processing of petitions for such listings.  The Service has failed to publish the final listing determination for the polar bear under the ESA.

## IV.    LEGAL BACKGROUND

29.    The ESA is a federal statute enacted to conserve endangered and threatened species and the ecosystems upon which they depend.  16 U.S.C. § 1531(b).  The ESA "is the most comprehensive legislation for the preservation of endangered species ever enacted by any nation."  Tennessee Valley Authority v. Hill, 437 U.S. 153, 180 (1978).  The Supreme Court's review of the ESA's "language, history, and structure" convinced the Court "beyond a doubt" that "Congress intended endangered species to be afforded the highest of priorities."  Id. at 174.  As the Court found, "the plain intent of Congress in enacting this statute was to halt and reverse the trend toward species extinction, whatever the cost."  Id. at 184.

30.    The ESA protects species listed as either "endangered" or "threatened" by the Secretary.  A species is "endangered" if it "is in danger of extinction throughout all or a significant portion of its range."  16 U.S.C. § 1532(6).  A species is "threatened" if it is "likely to become an endangered species within the foreseeable future."  16 U.S.C. § 1532(20).

31.    Once a species is listed, an array of statutory protections applies.  For example, Section 7 requires all federal agencies to "insure" that their actions neither "jeopardize the continued existence" of any listed species nor "result in the destruction or adverse modification" of its "critical habitat."  16

U.S.C. § 1536(a)(2).  Section 9 and its regulations further prohibit, among other things, "any person" from intentionally "taking" listed species or "incidentally" taking listed species without a permit from the Service.  16 U.S.C. §§ 1538(a)(1)(B), 1539.  Other provisions require the FWS to designate "critical habitat" for listed species, 16 U.S.C. § 1533(a)(3), require the FWS to "develop and implement" recovery plans for listed species, 16 U.S.C. § 1533(f), authorize the FWS to acquire land for the protection of listed species, 16 U.S.C. § 1534, and make federal funds available to states to assist in their efforts to preserve and protect threatened and endangered species, 16 U.S.C. § 1535(d).

32.    However, none of these protections come into force until a species is officially listed as threatened or endangered under the ESA.

33.    In order to ensure the timely protection of species, Congress set forth the listing process described below.  The process includes mandatory, non-discretionary deadlines for the three required findings that the Secretary must meet, so that species in need of protection do not languish in administrative purgatory.  The three required findings, described below, are the 90-day finding, the 12-month finding, and the final listing determination.

34.    Any interested person can begin the listing process by filing a petition to list a species with the Secretary.  16 U.S.C. § 1533 (b)(3)(A); 50 C.F.R. § 424.14(a).

35.    Upon receipt of a petition to list a species, the Secretary has 90 days "to the maximum extent practicable," to make a finding as to whether the petition "presents substantial scientific or commercial information indicating that the petitioned action may be warranted."  16 U.S.C § 1533 (b)(3)(A); 50 C.F.R. § 424.14 (b)(1).  If the Secretary finds that the petition presents substantial information indicating that the listing may be warranted, the Secretary then publishes in the Federal Register a "90 day finding and commencement of status review."  16 U.S.C. § 1533(b)(3)(A).

36.    Upon issuing a positive 90-day finding, the Secretary must then conduct a full review of the status of the species.  50 C.F.R. 424.14.  Upon completion of this status review, and within 12 months from the date that he received the petition, the Secretary must make one of three findings: (1) the petitioned action is not warranted; (2) the petitioned action is warranted; or (3) the petitioned action is warranted but presently precluded by other pending proposals for listing species, provided certain circumstances are present.  16 U.S.C. § 1533(b)(3)(B); 50 C.F.R. § 424.14 (b)(3).  This second

determination is known as a "12-month finding." This deadline is mandatory. There is no mechanism by which the Secretary can extend the deadline for the finding.

37. If the Secretary finds in the 12-month finding that the listing of the species is warranted, then he must publish in the <u>Federal Register</u> a proposed rule, for public comment, to list such species as endangered or threatened. 16 U.S.C. § 1533(b)(5).

38. Within one year of the publication of a proposed rule to list a species, the ESA requires the Secretary to publish a final listing determination in the Federal Register. 16 U.S.C. § 1533(b)(6)(A).

39. At such time, the Secretary must either list the species or withdraw the proposal. 16 U.S.C. §§ 1533(b)(6)(A)(i).

40. Concurrently with a final determination to list a species, the Secretary must render a final decision concerning the designation of critical habitat for the species to the maximum extent prudent and determinable. 16 U.S.C. §§ 1533(a)(3) & 1533(b)(6)(C). If the Secretary finds that designation of critical habitat is prudent, but is not currently determinable, then the Secretary may extend the deadline to issue a final regulation concerning critical habitat by no more than one additional year. 16 U.S.C. § 1533(b)(6)(C)(ii).

41. It is critical that the Secretary scrupulously follow the ESA's listing procedures and deadlines if species are to be protected in a timely manner, because the ESA does not protect a species until the species is formally listed as threatened or endangered.

## V.    FACTUAL BACKGROUND

### A. Polar Bears in a Warming Arctic

42. There are twenty polar bear populations distributed throughout the Arctic. These populations can be found within the jurisdiction of 5 countries: the United States (in Alaska), Canada, Denmark (in Greenland), Norway, and Russia. Worldwide polar bear abundance was most recently estimated at 20,000-25,000 bears.

43. Polar bears are marine mammals and are completely dependent upon Arctic sea ice for survival. Polar bears need sea ice as a platform from which to hunt their primary prey of ice-dependent seals, to make seasonal migrations between the sea ice where they feed and their terrestrial denning

1   areas, and to find mates.  Some polar bears even give birth to their cubs in snow dens on top of the

2   drifting sea ice.  Because polar bears can only hunt effectively when on the ice, when forced onto land

3   either by the seasonal retreat of the sea ice in some areas or to give birth to their cubs, polar bears

4   generally undergo a time of near complete fasting.

5         44.    The earth's climate is warming due to society's production of greenhouse pollution,

6   primarily from the combustion of fossil fuels for energy.  The primary greenhouse pollutants include

7   carbon dioxide, methane, nitrous oxide, and black carbon.  Increasing concentrations of greenhouse

8   gases cause the earth's atmosphere to retain a greater proportion of the sun's energy, warming the

9   earth's climate much like the interior of a greenhouse.  The average air temperature at the surface of the

10   earth has increased by 1.3° Fahrenheit (0.74° C) over the past century, and the rate of warming over the

11   past 50 years is nearly twice that of the past century.  Despite this accelerating warming trend, the

12   melting of the world's glaciers, sea ice, and land-based ice sheets, many other ominous signs, and dire

13   warnings from climate scientists, anthropogenic greenhouse gas emissions are still increasing each

14   year.

15         45.    For a number of reasons, the Arctic has experienced greater and more rapid warming

16   than the temperate regions.  Average winter temperatures in some areas of Alaska have risen by over 9°

17   Fahrenheit since 1949.  Even using moderate projections of future greenhouse gas emissions levels,

18   average winter temperatures are projected to rise by 18° Fahrenheit over the Arctic Ocean by the end of

19   this century.

20         46.    As a result of the warming, Arctic sea ice is melting very rapidly.  In 2007 the Arctic sea

21   ice hit a new record minimum, fully one million square miles below the average minimum sea ice

22   extent between 1979-2000.  There was less ice in the Arctic in September, 2007 than more than half of

23   the world's leading climate models project for 2050.  Some scientists now say summer sea ice could

24   disappear entirely as early as 2012.

25         47.    Polar bears cannot survive the loss of their sea-ice habitat.  As early as 1972, scientists

26   noted that the polar bear could be adversely impacted by warming via changes in the sea ice and snow

27   cover.  Canadian researchers were the first to document changes in polar bear parameters such as

28   declining body condition, lowered reproductive rates, and reduced cub survival in the Western Hudson

Bay population throughout the late 1980's and early 1990's. Over the next decade and beyond, polar bear experts Dr. Ian Stirling and Dr. Andrew Derocher and their colleagues have continued to document the relationships between climate, sea ice, and polar bear physiological and demographic parameters. In 2004 these researchers concluded that "it is unlikely that polar bears will survive as a species if the sea ice disappears completely as has been predicted by some." Even short of complete disappearance of sea ice, these scientists predicted a cascade of impacts to polar bears from global warming that will affect virtually every aspect of the species' existence, in most cases leading to reduced body condition and consequently reduced reproduction or survival:

      a.    The timing of ice formation and break-up will determine how long and how efficiently polar bears can hunt seals. A reduction in the hunting season caused by delayed ice formation and earlier break-up will mean reduced fat stores, reduced body condition, and therefore reduced survival and reproduction.

      b.    Reductions in sea ice will in some areas result in increased distances between the ice edge and land. This will make it more difficult for female bears that den on land to reach their preferred denning areas. Bears will face the energetic trade-off of either leaving the sea ice earlier when it is closer to land or traveling further to reach denning areas. In either case, the result is reduced fat stores and likely reduced survival and reproduction.

      c.    Reductions in sea-ice thickness and concentration will likely increase the energetic costs of traveling, as moving through fragmented sea ice and open water is more energy intensive than walking across consolidated sea ice.

      d.    Reduced sea-ice extent will likely result in reductions in the availability of ice-dependent prey such as ringed seals, as prey numbers decrease or are concentrated on ice too far from land for polar bears to reach.

      e.    Global warming will likely increase the rates of human/bear interactions, as greater portions of the Arctic become more accessible to people and as polar bears are forced to spend more time on land waiting for ice formation. Increased human/bear interactions will almost certainly lead to increased polar bear mortality.

      f.    The combined effects of these impacts of global warming on individual bears'

reproduction and survival are likely to ultimately translate into impacts on polar bear populations.  Impacts will be most severe on female reproductive rates and juvenile survival.  In time, reduction in these key demographic factors will translate into population declines and extirpations

48.    Polar bears are already suffering from these and other impacts due to global warming. The Western Hudson Bay polar bear population has declined by 22% — from 1,194 bears in 1987 to 935 bears in 2004.  The researchers attribute this decline to "increased natural mortality associated with earlier sea ice breakup and to the continued harvest of approximately 40 polar bears per year, which at some point ceased to be sustainable" and found no support for alternative explanations.  Scientists predict that the more northerly polar bear populations will experience declines similar to those observed in Western Hudson Bay.

49.    The Southern Beaufort Sea population is also declining due to global warming.    The population was estimated at 1,800 bears in 1986 and at 1,526 bears between 2001-2006.  The Southern Beaufort Sea population has also experienced statistically significant declines in cub survival, cub skull size, and adult male weight and skull size, the same types of declines observed in Western Hudson Bay prior to the population decline.

50.    Other impacts have been observed as well, including polar bears that have starved to death, and several instances of polar bear cannibalism, apparently motivated by food stress. Researchers with the U.S. Minerals Management Service observed the carcasses of four bears that had drowned in the Beaufort Sea during a period of high winds and rough seas in September 2004. Because these scientists were able to observe only a relatively small area during their aerial surveys, they estimate via spatial extrapolation that 27 bears may have died during this time period.  These scientists predict that drownings could increase as the sea ice continues to retreat, and warn of "rather serious population-level implications."

51.    Not surprisingly, given the serious impacts polar bears are already suffering, the future is bleak for this species.  In September 2007, the U.S. Geological Service ("USGS") released a report conducted as part of the ESA listing process which addressed the future status of polar bears.  The USGS divided the world's polar bears into four ecological regions based on sea-ice conditions as

follows:  (1) the seasonal ice ecoregion which includes Hudson Bay, and occurs mainly at the southern extreme of the polar bear range, (2) the archipelago ecoregion in the high Canadian Arctic, (3) the divergent ice ecoregion where ice is formed and then advected away from near-shore areas, and (4) the convergent ice ecoregion where sea ice formed elsewhere tends to collect against the shore.  The USGS found that under a "business as usual" greenhouse gas emission scenario, polar bears will be extinct in the seasonal ice and divergent ice ecoregions by 2050.  These areas support two-thirds of the world's polar bears, and all of the bears in Alaska.  The USGS found that polar bears may persist longer in the archipelago and convergent ice ecoregions, but the extinction risk is still extremely high: an over 75% chance of extinction in the convergent ice ecoregion and over 40% chance of extinction in the archipelago region.

52.    Perhaps most disturbingly, the dire projections of the USGS may be overly optimistic, because the climate model projections of future sea-ice conditions on which they are based all project a much slower melting trend than what is actually occurring.  The actual observed melting trend has exceeded that projected by any of the models.  None of the climate models projected the record low minimum sea-ice extent in 2007, and in fact there was less ice in the Arctic in 2007 than more than half of the models project for 2050.

53.    Polar bears are threatened by other factors as well, including high levels of organochloride pollution (such as PCBs), mercury, and other toxins in the Arctic that bioconcentrate and bioaccumulate in polar bear tissue.  Polar bears are threatened by the proliferation of oil and gas development in their habitat, which can disrupt denning, feeding, and other behaviors, and which also poses a risk of harmful oil spills.  Despite past successes in controlling formerly widespread overhunting, polar bears are hunted at unsustainable harvest levels in some areas of Canada and Greenland and illegal poaching continues to be a problem in Russia.  Polar bears will be exposed to increasing human activity, such as shipping, that occurs as a result of decreasing Arctic sea ice.  Many of these threats will interact with global warming in cumulative and synergistic ways, further heightening the threat to polar bears.

**B. Procedural History**

54.    Plaintiffs' Petition to list the polar bear as a threatened species was submitted on

1  February 16, 2005 and received by the Secretary on February 17, 2005.  The 154-page Petition detailed

2  the ways in which global warming and other factors threaten the polar bear with extinction.

3       55.    Section 4(b)(3) of the ESA and its implementing regulations required the Secretary to

4  respond to the Petition by making an initial determination within ninety days of receiving the petition

5  "to the maximum extent practicable." 16 U.S.C § 1533 (b)(3)(A).

6       56.    The Secretary did not respond to the Petition with 90 days as required by law.  When the

7  Secretary had still not responded after ten months, Plaintiffs filed an action on December 15, 2005 to

8  compel a response.    Center for Biological Diversity v. Kempthorne, No. 05-5191 JSW (N. Dist. Cal.)

9       57.    Subsequently, the Secretary issued a 90-day finding on the Petition to list the polar bear

10  on February 9, 2006.  71 Fed. Reg. 6745.  In the 90-day finding, the Secretary found that the Petition

11  presented substantial information showing that listing of the polar bear may be warranted under the

12  Endangered Species Act, initiated a status review for the species, and solicited public comment for a

13  period of 60 days.  Id.

14       58.    Because the Secretary delayed the 90-day finding until nearly one year had passed from

15  receipt of the Petition, the Secretary then failed to meet the one year deadline for issuance of the 12-

16  month finding.  A consent decree was entered in Center for Biological Diversity I that required the

17  Secretary to issue the required 12-month finding by December 27, 2006.

18       59.    On December 27, 2006, the Secretary announced a proposed rule to list the polar bear

19  throughout its range as a threatened species.  The proposed rule was published in the Federal Register

20  on January 9, 2007.  72 Fed. Reg. 1064-1099.  Publication of the final listing determination and critical

21  habitat designation was therefore required by January 9, 2008.  16 U.S.C. §§ 1533(b)(6).  The final

22  listing determination was not published in the Federal Register on January 9, 2008, and has still not

23  been published.  Accordingly, the Secretary is now in violation of the law.

24       60.    The polar bear will not receive the Endangered Species Act protections it deserves until

25  the final listing determination is issued and the listing process completed.    While the Secretary has

26  illegally delayed the final ESA listing determination for the polar bear, activities that are harmful to

27  polar bears and their habitat are occurring.

28       61.    For example, on February 6, 2008, another Interior Department agency, the Mineral

Management Service (MMS), held an oil and gas lease sale in which nearly thirty million acres of prime polar bear habitat in the Chukchi Sea were offered to oil companies for oil and gas development. Had the polar bear been listed prior to the lease sale, additional environmental review would have been required before the lease sale could have proceeded.

## VI.   CLAIM FOR RELIEF

### CLAIM I

### (Violation of Endangered Species Act, 16 U.S.C. § 1533(b)(6), for Failure to Make a Final Listing Determination for the Polar Bear)

62.     Plaintiffs reallege and incorporate by reference all the allegations set forth in this Complaint, as though fully set forth below.

63.     The Secretary's failure to timely make a final listing determination for the polar bear is a violation of the ESA and its implementing regulations.   16 U.S.C. § 1533(b)(6); § 1540(g).   The Secretary's failure to perform his mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1). Additionally, and/or alternatively, the Secretary's failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the Administrative Procedures Act, 5 U.S.C. § 706(2).

## VII.   PRAYER FOR RELIEF

For the reasons stated above, Plaintiffs respectfully requests that the Court grant the following relief.

1.     Declare that the Secretary violated his non-discretionary duty under 16 U.S.C. § 1533(b)(6) of the ESA by failing to timely make a final listing determination for the polar bear;

2.     Issue permanent injunctive relief compelling the Secretary to make and publish in the Federal Register a final listing determination for the polar bear under the ESA by a date certain;

3.     Award Plaintiffs their costs of litigation, including reasonable attorneys fees; and

4.     Grant Plaintiffs such other relief as the Court deems just and proper.

COMPLAINT                                                                                         Page 15

1    DATE: March __, 2008                    Respectfully Submitted,

2

3                                            By: _____

4                                            Brendan Cummings (CA Bar No. 193952)
                                             Kassia Siegel (CA Bar No. 209497)
5                                            Center for Biological Diversity
                                             P.O. Box 549
6                                            Joshua Tree, CA 92252
                                             Phone:   (760) 366-2232; Facsimile: (760) 366-2669
7                                            Email:  bcummings@biologicaldiversity.org and
                                             ksiegel@biologicaldiversity.org
8

9                                            Miyoko Sakashita (CA Bar No. 239639)
                                             Center for Biological Diversity
10                                           1095 Market St., Suite 511
                                             San Francisco, CA 94103
11                                           Phone:  (415) 436-9682; Facsimile: (415) 436-9683
                                             Email:  miyoko@biologicaldiversity.org
12

13                                           Andrew E. Wetzler (CA Bar No. 202299)
14                                           Natural Resources Defense Council
                                             544 White Oak Place
15                                           Worthington, OH 43085
                                             Phone:  (614) 840-0891; Facsimile (415) 875-6161
16                                           Email:  awetzler@nrdc.org

17
                                             Attorney for Plaintiffs
18

19

20

21

22

23

24

25

26

27

28