Brendan Cummings (CA Bar No. 193952)
Kassia Siegel (CA Bar No. 209497)
Center for Biological Diversity
P.O. Box 549
Joshua Tree, CA 92252
Phone:   (760) 366-2232; Facsimile: (760) 366-2669
Email:  bcummings@biologicaldiversity.org
          ksiegel@biologicaldiversity.org

Miyoko Sakashita (CA Bar No. 239639)
Center for Biological Diversity
1095 Market St., Suite 511
San Francisco, CA 94103
Phone:  (415) 436-9682; Facsimile: (415) 436-9683
Email:  miyoko@biologicaldiversity.org

Andrew E. Wetzler (CA Bar No. 202299)
Natural Resources Defense Council
544 White Oak Place
Worthington, OH 43085
Phone:  (614) 840-0891; Facsimile (415) 875-6161
Email:  awetzler@nrdc.org

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, a non-profit corporation, NATURAL RESOURCES DEFENSE COUNCIL, a non-profit corporation, and GREENPEACE, INC., a non-profit corporation; | CASE NO.:  C-08-1339-CW |
| | PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT  AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT |
| Plaintiffs, | |
| v. | **Date:**  May 8, 2008 <br> **Time:**  2:00 p.m. <br> **Judge:**  Honorable Claudia Wilken <br> **Courtroom:**  Courtroom 2, 4th Floor |
| DIRK KEMPTHORNE, United States Secretary of the Interior and UNITED STATES FISH AND WILDLIFE SERVICE; | |
| Defendants. | |

1

## NOTICE OF MOTION

PLEASE TAKE NOTICE that at 2:00 p.m. on May 8, 2008, or as soon thereafter as the matter may be heard in the Honorable Judge Claudia Wilken's courtroom of the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, California, Plaintiffs, Center for Biological Diversity, Natural Resources Defense Council and Greenpeace, Inc., will move this Court pursuant to Federal Rule of Civil Procedure 56 and Civil Local Rules 7-2, 7-4, and 56 for summary judgment on their Claim for Relief in their Complaint. This motion is based on the accompanying Memorandum of Points and Authorities, the Declarations of Melanie Duchin, Jack Lentfer, Jenny Ross, the pleadings, records and files in this action, and other such documentary and oral evidence that may be supplied at the hearing.

For the reasons set forth in the accompanying Memorandum of Points and Authorities, the continuing failure of Defendants, Dirk Kempthorne, Secretary of the Interior, and the United States Fish and Wildlife Service, to issue a final listing determination for the polar bear under the Endangered Species Act ("ESA") within one year of having proposed to list the species as "threatened" violates the requirements of Section 4 of the ESA, 16 U.S.C. § 1533. Plaintiffs seek declaratory and injunctive relief to remedy this violation, including an order requiring Defendants to make a final listing determination for the polar bear by a date certain.

# MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................. 1

II.   LEGAL BACKGROUND ................................................................................ 2

III.  STATEMENT OF FACTS ............................................................................... 4

   A.    POLAR BEARS IN A WARMING ARCTIC ..................................................... 4

   B.    PLAINTIFFS' PETITION AND THE SECRETARY'S FAILURE TO TIMELY RESPOND ................... 8

IV.   ARGUMENT .................................................................................................... 9

   A.    STANDARD OF REVIEW .............................................................................. 10

   B.    PLAINTIFFS HAVE STANDING TO BRING THIS ACTION ................................ 10

   C.    THE SECRETARY IS IN VIOLATION OF THE ESA FOR FAILING TO MAKE A FINAL LISTING DETERMINATION REGARDING THE POLAR BEAR ..................................... 11

   D.    THE COURT MUST COMPEL THE SECRETARY TO MAKE A FINDING BY A DATE CERTAIN.... 13

V.    CONCLUSION ............................................................................................... 16

1

# TABLE OF AUTHORITIES

2

**Cases**

3

Anderson v. Liberty Lobby, 477 U.S. 242 (1986) ................................................................ 10

Bennett v. Spear, 520 U.S. 154 (1997) ............................................................................. 12

Biodiversity Legal Foundation v Badgley, 309 F.3d 1166 (9th Cir. 2002) ........................ 4, 10, 11, 12, 14

Celotex Corporation v. Catrett, 477 U.S. 317 (1986) ......................................................... 10

Center for Biological Diversity v. Kempthorne, No. 05-5191 JSW (N. Dist. Cal.) .................................. 8

Center for Biological Diversity v. Norton, 254 F.3d 833 (9th Cir. 2001)…………………………………12

Chevron USA v. Natural Resources Defense Council, 467 U.S. 837 (1984).......................................... 13

Ecological Rights Foundation v. Pacific Lumber Co., 230 F.3d 1141 (9th Cir. 2000) ........................... 11

Environmental Defense Center v. Babbitt, 73 F. 3d 867 (9th Cir. 1995) ................................................... 13

Federation of Fly Fishers v. Daley, 131 F. Supp. 2d 1158 (N.D. Cal. 2000) ........................................... 3

Forest Guardians v. Babbitt, 174 F.3d 1178 (10th Cir. 1999) ....................................................... 10, 14, 15

Friends of the Earth v. Laidlaw, 528 U.S. 167 (2000) .......................................................................... 11

Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333 (1997)................................... 11

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) ........................................................................ 11

Marbled Murrelet v. Lujan, 1992 U.S. Dist. LEXIS 14645 (W. Dist Wash. 1992) ........................ 15, 16

Oregon Natural Resources Council v. Kantor, 99 F.3d 334 (9th Cir. 1996) ..................................... 12, 13

Portland Audubon Society v. Endangered Species Commission, 984 F.2d 1534 (9th Cir. 1993) ............ 11

Sierra Club v. Marsh, 816 F.2d 1376 (9th Cir. 1987)............................................................................ 14

Sullivan v. Stroop, 496 U.S. 478 (1990)................................................................................................ 13

Tennessee Valley Authority v. Hill, 437 U.S. 153 (1978) ........................................................... 2, 13, 14

Tribal Village of Akutan v. Hodel, 869 F.2d 1185 (9th Cir. 1988), cert. denied, 493 U.S. 873 (1989)... 10

**Statutes**

The Administrative Procedures Act, 5 U.S.C.  §§ 551 et seq............................................................. 10, 16

The Endangered Species Act, 16 U.S.C. § 1531 et seq. ............................................................. passim

**Rules**

Fed. R. Civ. P. 56(c) ........................................................................................................... 10

Fed. R. Civ. P. 56(e) ........................................................................................................... 10

**Regulations**

50 C.F.R. § 424.14 ............................................................................................................. 3,4

50 C.F.R. § 17.11 ................................................................................................................. 4

50 C.F.R. § 17.12…………………………………………………………………….....4

**Legislative History**

H.R. Rep. No. 567, 97th Cong., 2d Sess. at 10 ..................................................................... 3

S. Rep. No. 418, 97th Cong. ............................................................................................... 3

H.R. Conf. Rep. No. 835, 97th Cong., 2nd Sess., <u>reprinted</u> <u>in</u> 1982 U.S.C.C.A.N. 2860………………13

**Other Authorities**

Proposal to List the Polar Bear as a Threatened Species, 72 Fed. Reg. 1064 (January 9, 2007) ...... passim

Reopening of comment period; notice of availability of new information, 72 Fed. Reg. 53749 (September 20, 2007)…………………………………………………………………….....7

Notice of 90-day Finding and Initiation of Status Review, 71 Fed. Reg. 6745 (February 9, 2006)……8, 9

I.    **INTRODUCTION**

This case concerns the fate of the polar bear (*Ursus maritmus*), undoubtedly one of the most remarkable animal species on the planet.  The polar bear is also, absent dramatic reductions in greenhouse gas emissions, poised to become one of the first species to fall victim to global warming.  The polar bear's Arctic sea-ice habitat is quite literally melting away.  Under relatively optimistic scenarios, summer sea ice will be largely gone by mid-century; under increasingly likely scenarios, the seasonal sea ice upon which the bear depends will be gone in less than a decade.  Without sea ice, there will be no polar bears.  The polar bear is clearly imperiled.  As such, the species has been proposed for listing as "threatened" under the federal Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544.  The finalization of that proposal is now overdue.

While the legal and political consequences of protecting the polar bear under the ESA are highly significant, and the ultimate fate of the polar bear is intertwined with complicated and controversial national and international climate policies, *this case* is legally quite simple.  Defendants, Dirk Kempthorne, Secretary of the Interior, and the United States Fish and Wildlife Service (collectively, "the Secretary"), have failed to comply with the unambiguous, non-discretionary deadlines contained in the ESA.  They are in admitted violation of the law, with no legally relevant excuses.

On January 9, 2007, in response to a petition submitted by Plaintiffs, Center for Biological Diversity, Natural Resources Defense Council and Greenpeace, Inc., the Secretary published in the Federal Register a proposed rule listing the polar bear as a "threatened" species under the ESA. 72 Fed. Reg. 1064-1099 (Proposal to List the Polar Bear as a Threatened Species) (January 9, 2007).  Under the ESA, a proposed listing rule must be finalized or withdrawn within one year.  16 U.S.C. § 1533(b)(6).  Publication of the final listing determination was therefore required by January 9, 2008.  That date has come and gone with no such action from the Secretary.

There is no factual dispute as to the Secretary's violations of law.  By the date of the noticed hearing on Plaintiffs' Motion for Summary Judgment, a final listing determination will be four months overdue.  Because time is of the essence in all efforts to protect endangered species, Plaintiffs move for summary judgment at this early juncture.  Accordingly, through this motion, Plaintiffs respectfully

1  request that this Court find and declare that the Secretary is in violation of the ESA for failing to make

2  a final listing determination for the polar bear by January 9, 2008.  Plaintiffs further request that this

3  Court order the Secretary to make and publish a final listing determination for the polar bear within 7

4  days of the Court's order.  Only such an order will ensure that the polar bear timely receives the

5  protections to which it is legally entitled and so desperately needs.

6  ## II.    LEGAL BACKGROUND

7         The ESA is a federal statute enacted to conserve endangered and threatened species and the

8  ecosystems upon which they depend.  16 U.S.C. § 1531(b).  The ESA "is the most comprehensive

9  legislation for the preservation of endangered species ever enacted by any nation."  <u>Tennessee Valley</u>

10  <u>Authority v. Hill</u>, 437 U.S. 153, 180 (1978).  The Supreme Court's review of the ESA's "language,

11  history, and structure" convinced the Court "beyond a doubt" that "Congress intended endangered

12  species to be afforded the highest of priorities."  <u>Id.</u> at 174.  As the Court found, "the plain intent of

13  Congress in enacting this statute was to halt and reverse the trend toward species extinction, whatever

14  the cost."  <u>Id.</u> at 184.

15         The ESA protects species listed as either "endangered" or "threatened" by the Secretary.  A

16  species is "endangered" if it "is in danger of extinction throughout all or a significant portion of its

17  range."  16 U.S.C. § 1532(6).  A species is "threatened" if it is "likely to become an endangered species

18  within the foreseeable future."  16 U.S.C. § 1532(20)

19         Once a species is listed, an array of statutory protections applies.  For example, Section 7

20  requires all federal agencies to "insure" that their actions neither "jeopardize the continued existence"

21  of any listed species nor "result in the destruction or adverse modification" of its "critical habitat."  16

22  U.S.C. § 1536(a)(2).  Section 9 and its regulations further prohibit, among other things, "any person"

23  from intentionally "taking" listed species or "incidentally" taking listed species without a permit from

24  the Secretary.  16 U.S.C. §§ 1538-1539.  Other provisions require the Secretary to designate "critical

25  habitat" for listed species, 16 U.S.C. § 1533(a)(3), require the Secretary to "develop and implement"

26  recovery plans for listed species, 16 U.S.C. § 1533(f), authorize the Secretary to acquire land for the

27  protection of listed species, 16 U.S.C. § 1534, and make federal funds available to states to assist in

28  their efforts to preserve and protect "threatened" and "endangered" species, 16 U.S.C. § 1535(d).

However, none of these protections come into force until a species is officially listed as "threatened" or "endangered" under the ESA.  See, e.g., Federation of Fly Fishers v. Daley, 131 F. Supp. 2d 1158, 1163 (N.D. Cal. 2000) ("[L]isting is critically important because it sets in motion the [ESA]'s other provisions, including the protective regulation, consultation requirements, and recovery efforts.").  As a result, Congress aptly described Section 4 of the ESA, which sets out the process for listing a species, as "[t]he cornerstone of effective implementation of the Endangered Species Act . . . ." S. Rep. No. 418, 97th Cong., 2d Sess. at 10; see also H.R. Rep. No. 567, 97th Cong., 2d Sess. at 10 ("The listing process under Section 4 is the keystone of the Endangered Species Act").

In order to ensure the timely protection of species, Congress set forth the listing process described below.  The process includes mandatory, non-discretionary deadlines for the three required findings that the Secretary must make, deadlines to ensure that species in need of protection do not languish in administrative purgatory, at risk of declining further or becoming extinct while awaiting protection.

Any interested person can begin the listing process by filing a petition to list a species with the Secretary.  16 U.S.C. § 1533 (b)(3)(A); 50 C.F.R. § 424.14(a).  Upon receipt of a petition to list a species, the Secretary has 90 days "to the maximum extent practicable," to make a finding as to whether the petition "presents substantial scientific or commercial information indicating that the petitioned action may be warranted."  16 U.S.C § 1533 (b)(3)(A); 50 C.F.R. § 424.14 (b)(1).

If in the 90-day finding the Secretary finds that the petition presents substantial information indicating that the listing may be warranted, the Secretary must publish a notice to that effect in the Federal Register and initiate a full review of the status of the species.  16 U.S.C. §§ 1533(b)(1)(A) & 1533(b)(3)(A); 50 C.F.R. 424.14.  In carrying out the status review the Secretary solicits information from state and federal agencies, the general public, and, when appropriate, foreign nations.  See 16 U.S.C. §§ 1533(b)(1)(A) & (B).

Once the status review is completed—but no later than one year from the date he received the petition—the Secretary must make one of three findings: (1) that the petitioned action is not warranted; (2) that the petitioned action is warranted; or (3) that the petitioned action is warranted but presently precluded by other pending proposals for listing species, provided certain circumstances are present.

16 U.S.C. § 1533(b)(3)(B); 50 C.F.R. § 424.14 (b)(3).  This determination is known as a "12-month finding."  There is no mechanism by which the Secretary can extend the deadline for making a 12-month finding.  See Biodiversity Legal Foundation v Badgley, 309 F.3d 1166, 1176 (9th Cir. 2002) (holding that both 90-day finding and 12-month finding must be made within one year of receipt of listing petition.)

If, in the course of the developing the 12-month finding, the Secretary determines that listing the species is warranted, then he must publish in the Federal Register a proposed rule, for public comment, to list the species as either "endangered" or "threatened."  16 U.S.C. § 1533(b)(5).  Within one year of the publication of the proposed rule, the ESA requires the Secretary to render a final decision on the listing petition.  16 U.S.C. § 1533(b)(6)(A).  At such time, the Secretary must either list the species, withdraw the proposal, or if there is substantial disagreement about scientific data, delay a final determination by no more than six months to solicit more scientific information.  16 U.S.C. §§ 1533(b)(6)(A)(i)(III) & 1533(b)(6)(B)(i).  Once the proposed listing determination is finalized, the species is added to the appropriate list of "threatened" and "endangered" species, 50 C.F.R. §§ 17.11 (wildlife) & 17.12 (plants), and the protections of the ESA come into effect for that species.

If all the deadlines for petition processing and subsequent listing actions are met, the species should in most cases be officially listed under the ESA no later than two years from the date of the petition.  Unfortunately, as is the case with the polar bear, the Secretary regularly ignores his statutory obligations and only moves to protect species under court order.

Section 11(g)(1)(C) of the ESA, 16 U.S.C. § 1540(g)(1)(C), provides that "any person may commence a civil suit on his own behalf…against the Secretary where there is an alleged failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary with the Secretary."

## III.  STATEMENT OF FACTS

### A.  Polar Bears in a Warming Arctic

There are nineteen polar bear populations distributed throughout the Arctic.  These populations can be found within the jurisdiction of 5 countries:  the United States (in Alaska), Canada, Denmark (in Greenland), Norway, and Russia. 72 Fed. Reg. 1068-1069.  Worldwide polar bear abundance was most

recently estimated at 20,000-25,000 bears.  72 Fed. Reg. 1068.

Polar bears are the largest of all bear species and adapted to life on the sea ice.  72 Fed. Reg. 1066.  Adaptations to this life include: (1) white pelage with water-repellent guard hairs and dense underfur; (2) a short furred snout; (3) small ears for reduced surface area; (4) teeth specialized for a carnivorous rather than an omnivorous diet; (5) feet with tiny papillae and ''suction cups'' on the underside, for increased traction on ice; (6) large, paddle-like feet; (7) claws that are shorter and more strongly curved than those of grizzly bears, and larger and heavier than those of black bears.  Id.

As stated in the proposed rule,

> [p]olar bears evolved to utilize the Arctic sea ice niche and are distributed throughout most ice-covered seas of the Northern Hemisphere. They are generally limited to areas where the sea is ice-covered for much of the year; however, polar bears are not evenly distributed throughout their range. They are most abundant near the shore in shallow-water areas, and in other areas where currents and ocean upwelling increase marine productivity and serve to keep the ice cover from becoming too solidified in winter.

Id. (internal citations omitted.)

Polar bears are completely dependent upon Arctic sea ice for survival.  Id. at 1067, 1071.  Polar bears need sea ice as a platform from which to hunt their primary prey of ice-dependent seals, to make seasonal migrations between the sea ice where they feed and their terrestrial denning areas, and to find mates.  Id.  Some polar bears even give birth to their cubs in snow dens on top of the drifting sea ice.  Id.  Because polar bears can only hunt effectively when on the ice, when forced onto land either by the seasonal retreat of the sea ice in some areas or to give birth to their cubs, polar bears generally undergo a time of near complete fasting.  Id.

The earth's climate is warming due to society's production of greenhouse pollution, primarily from the combustion of fossil fuels for energy.  The primary greenhouse pollutants include carbon dioxide, methane, nitrous oxide, and black carbon.  Increasing concentrations of greenhouse gases cause the earth's atmosphere to retain a greater proportion of the sun's energy, warming the earth's climate much like the interior of a greenhouse.  The average air temperature at the surface of the earth has increased by 1.3° Fahrenheit (0.74° C) over the past century, and the rate of warming over the past 50 years is nearly twice that of the past century.  Despite this accelerating warming trend, the melting of the world's glaciers, sea ice, and land-based ice sheets, many other ominous signs, and dire warnings

1    from climate scientists, anthropogenic greenhouse gas emissions are still increasing each year.

2        For a number of reasons, the Arctic has experienced greater and more rapid warming than the

3    temperate regions.  72 Fed. Reg. at 1071.  Average winter temperatures in some areas of Alaska have

4    risen by over 9° Fahrenheit since 1949.  Even using moderate projections of future greenhouse gas

5    emissions levels, average winter temperatures are projected to rise by 18° Fahrenheit over the Arctic

6    Ocean by the end of this century.

7        As a result of the warming, Arctic sea ice is melting very rapidly.  72 Fed. Reg. 1071-1072.

8    Moreover, the Arctic is warming and the ice is melting even faster than forecast just a few years ago.

9    72 Fed. Reg. 1071.  Leading sea ice researchers believe that the Arctic will soon be entirely ice-free in

10   the summertime, a state that has not occurred for at least 800,000 years.  Id.  The rapidly melting Arctic

11   sea ice is driven in part by a positive climate feedback loop that occurs because snow and ice reflect

12   most of the sun's energy back into space, whereas open water absorbs most of the sun's energy.  Id.

13   Thus, as the Arctic sea ice retreats further each summer, the warming accelerates.  Id.  When the

14   proposed rule was issued, some leading scientists estimated that the Arctic could be ice-free in the

15   summer as early as 2040.  Id.[1]

16       "Observed and predicted changes in sea ice cover, characteristics, and timing have profound

17   effects on polar bears."  72 Fed. Reg. 1072.  Simply stated, polar bears cannot survive the loss of their

18   sea-ice habitat.   Scientists have long predicted adverse impacts to polar bears from warming

19   temperatures and changes in the sea ice and snow cover.  Id.  Canadian researchers were the first to

20   document changes in polar bear parameters such as declining body condition, lowered reproductive

21   rates, and reduced cub survival in the Western Hudson Bay population throughout the late 1980's and

22   early 1990's.  Id.  These scientists attributed these changes to climate warming and predicted that they

23   would ultimately lead to population declines.  This has now been documented, with a 22% decline in

24   the Western Hudson Bay population between 1987 and 2004.  Id. at 1070, 1076.  The Southern

25   Beaufort Sea population is now also declining.  Id. at 1076.  Even short of complete disappearance of

---

[1] In 2007 the Arctic sea ice hit a new record minimum, fully one million square miles below the average minimum sea ice extent between 1979-2000.  There was less ice in the Arctic in September, 2007 than more than half of the world's leading climate models project for 2050.  Some scientists now say summer sea ice could disappear entirely as early as 2012.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT                                    C-08-1339-CW

sea ice, scientists have both predicted and observed a cascade of impacts to polar bears from global warming that will affect virtually every aspect of the species' existence, in most cases leading to reduced body condition and consequently reduced reproduction or survival.  In the proposed rule to list the species as threatened, the Fish and Wildlife Service summed up the impacts as follows:

> Polar bears have evolved in a sea ice environment and sea ice serves as an essential platform from which they meet life functions. Polar bear populations throughout the Arctic are being affected by changes in their sea ice habitat. Increased temperatures, earlier onset of and longer melting periods, increased rain-on-snow events, and positive feedback systems which amplify these phenomena will all operate to decrease the extent of sea ice during all seasons. This will result in fragmentation of habitat, increase the extent of open water areas in all seasons, reduce the amount of heavier and more stable multi-year ice, and affect the quality of shore fast ice. In turn, these factors will negatively impact polar bears by increasing the energetic demands of movement in seeking prey, redistributing substantial portions of populations seasonally into terrestrial habitats with marginal values for feeding, and increasing levels of negative bear-human interactions. As the sea ice edge retracts to deeper, less productive polar basin waters, polar bears will face increased intraspecific competition for limited food resources and increased open water swimming. We expect similar reductions in productivity for most ice seal species (decreasing availability or timing of availability for polar bears as food), composition changes of seal species in some areas, and eventually decreased levels of seal abundance. Prey species, such as ringed seals, will likely remain distributed in shallower, more productive southerly areas characterized by vast expanses of open water. These factors will, in turn, result in the reduced physical condition of polar bears, which leads to population-level demographic declines through reduction of survival and recruitment rates. The ultimate effect of these interrelated events, factors, and effects (Table 1) will be that polar bear populations will decline or continue to decline. Not all populations will be affected evenly in the level, rate, and timing of impact, but within the foreseeable future, it is predicted that all populations will be either directly or indirectly impacted.

Id. at 1080.

The ways in which these changes manifest themselves in the polar bear population is often quite brutal.  Polar bears are drowning, starving, and even resorting to cannibalism as global warming transforms the Arctic.  Id. at 1076.

Not surprisingly, given the serious impacts polar bears are already suffering, the future is bleak for this species.   In September 2007, the U.S. Geological Service ("USGS"), a branch of the Department of Interior, released a series of reports conducted as part of the ESA listing process which addressed the future status of polar bears.  72 Fed. Reg. 53749-53751 (Reopening of comment period; notice of availability of new information) (September 20, 2007).

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT                                        C-08-1339-CW

In a series of substantial and well-documented reports, the USGS advanced the scientific understanding of the impact of climate change on polar bears and the species future status in a warming Arctic. The USGS stated its overall conclusion in an Executive Summary[2] to the reports as follows:

> Projected changes in future sea ice conditions, if realized, will result in loss of approximately 2/3 of the world's current polar bear population by the mid 21st century. Because the observed trajectory of Arctic sea ice decline appears to be underestimated by currently available models, this assessment of future polar bear status may be conservative.

While the situation in the Arctic and for polar bears has reached a critical threshold, it is not too late to save them, if we act quickly. This lends even greater urgency to the Endangered Species Act listing process. Unfortunately, the Secretary has missed each deadline in the process, including the January 9, 2008 deadline for a final listing determination. As a result, Plaintiffs have been forced to file this action, as detailed below.

### B.    Plaintiffs' Petition and the Secretary's Failure to Timely Respond

On February 16, 2005, Plaintiff Center for Biological Diversity submitted to the Secretary a Petition to List the Polar Bear (*Ursus maritimus*) under the Endangered Species Act ("Petition") due to global warming and other threats. The Secretary received the Petition on February 17, 2005. The 154-page Petition detailed the ways in which global warming and other factors threaten the polar bear with extinction.

As described above, Section 4(b)(3) of the ESA and its implementing regulations required the Secretary to respond to the Petition by making an initial determination within ninety days of receiving the petition "to the maximum extent practicable." 16 U.S.C § 1533 (b)(3)(A). The Secretary did not respond to the Petition within 90 days as required by law. When the Secretary had still not responded after ten months, Plaintiffs filed an action on December 15, 2005 to compel a response. Center for Biological Diversity v. Kempthorne, No. 05-5191 JSW (N. Dist. Cal.). Subsequently, the Secretary issued a 90-day finding on the Petition to list the polar bear on February 9, 2006. 71 Fed. Reg. 6745 (Notice of 90-day Finding and Initiation of Status Review) (February 9, 2006). In the 90-day finding,

---

[2] *USGS Science to Inform U.S. Fish & Wildlife Service Decision Making on Polar Bears - Executive Summary*, at 2, available at http://www.usgs.gov/newsroom/special/polar_bears/ (last visited April 1, 2008).

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT                    C-08-1339-CW

the Secretary found that the Petition presented substantial information showing that listing of the polar bear may be warranted under the Endangered Species Act, initiated a status review for the species, and solicited public comment for a period of 60 days. Id.

Because the Secretary illegally delayed the 90-day finding until nearly one year had passed from receipt of the Petition, compliance with the one-year deadline for issuance of the 12-month finding was now impossible. The parties ultimately settled the then-pending litigation, setting a deadline for the Secretary to issue the overdue 12-month finding by December 27, 2006.

On December 27, 2006, the Secretary announced a proposed rule to list the polar bear throughout its range as a "threatened" species. The proposed rule was published in the Federal Register on January 9, 2007. 72 Fed. Reg. 1064-1099 (Proposal to List the Polar Bear as a Threatened Species) (January 9, 2007). Publication of the final listing determination and critical habitat designation was therefore required by January 9, 2008. 16 U.S.C. § 1533(b)(6). On January 7, 2008, the Director of the U.S. Fish and Wildlife Service, Dale Hall held a press conference and stated that the agency would not meet the deadline, but intended to issue the decision within 30 days. The Secretary did not issue the final listing determination within 30 days of January 7, 2008 and has still not done so. Accordingly, the Secretary is now in violation of the law.

On January 9, 2009, pursuant to the requirements of Section 11(g)(2)(C) of the ESA, 16 U.S.C. § 1540(g)(2)(C), Plaintiffs sent the Secretary a 60-Day Notice Letter of Intent to Sue for his failure to publish a final listing determination for the polar bear in a timely manner. Plaintiffs have to date received no response from the Secretary regarding the 60-Day Notice Letter. Following the running of the required 60-days prior to filing suit, on March 10, 2008 Plaintiffs filed a Complaint challenging the Secretary's failure to publish a final listing determination for the polar bear. This Motion follows.

## IV.    ARGUMENT

As documented herein, there is no genuine dispute as to any of the material facts with regard to Plaintiffs' claim for relief. More than a year has passed since the Secretary published a proposed rule on January 9, 2007 to list the polar bear under the ESA. A final listing determination was due by January 9, 2008. By the time of the noticed hearing on Plaintiffs' Motion for Summary Judgment, a final listing determination will be four months overdue. The Secretary has no legally relevant excuses

1  for this delay.  Plaintiffs' motion must be granted and the Secretary ordered to make a final listing

2  determination for the polar bear by a date certain.

3      **A.    Standard of Review**

4       A court shall render summary judgment if no genuine issue as to any material fact exists and

5  the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  When the evidence

6  is "so one-sided that one party must prevail as a matter of law," summary judgment is appropriate.

7  Anderson v. Liberty Lobby, 477 U.S. 242, 251-52 (1986).  Where the moving party has demonstrated

8  that there is no material issue of fact for trial, the "adverse party may not rest upon the mere allegations

9  or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a

10 genuine issue for trial."  Fed. R. Civ. P. 56(e).  Summary judgment is not treated as "a disfavored

11 procedural shortcut" but as "an integral part of the Federal Rules as a whole, which are designed to

12 secure the just, speedy and inexpensive determination of every action."  Celotex Corporation v. Catrett,

13 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

14      Because the ESA does not contain an internal standard of review, this Court's review is

15 governed by the Administrative Procedure Act ("APA").  Tribal Village of Akutan v. Hodel, 869 F.2d

16 1185, 1193 (9th Cir. 1988), cert. denied, 493 U.S. 873 (1989).  Under the APA, the reviewing court is

17 directed to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C.  § 706.

18 Plaintiffs ask this Court to compel agency action unlawfully withheld.  Where, as here "Congress by

19 organic statute sets a specific deadline for agency action, neither the agency nor any court has

20 discretion. The agency must act by the deadline. If it withholds such timely action, a reviewing court

21 must compel the action unlawfully withheld." Forest Guardians v. Babbitt, 174 F.3d 1178, 1190 (10th

22 Cir. 1999); see also Biodiversity Legal Foundation, 309 F.3d at 1178 ("The Service's failure to

23 complete the listing determinations within the mandated time frame compelled the court to grant

24 injunctive relief. The court had no discretion to consider the Service's stated priorities.).

25      **B.    Plaintiffs Have Standing to Bring this Action**

26      Each of the Plaintiffs has standing to bring this action because: 1) their members have standing

27 to sue in their own right; 2) the interests at stake are germane to the organizations' purpose; and 3)

28 neither the claim asserted nor the relief requested requires their members to participate directly in the

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT                    C-08-1339-CW

1   lawsuit.  See Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 343 (1997);

2   Ecological Rights Foundation v. Pacific Lumber Co., 230 F.3d 1141, 1147 (9th Cir. 2000).  Regarding

3   element (1), members have standing to sue in their own right if "they have suffered an injury in fact

4   that is (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical, . . .

5   the injury is fairly traceable to the challenged action of the defendant; and . . . it is likely, as opposed to

6   merely speculative, that the injury will be redressed by a favorable decision." Ecological Rights

7   Foundation, 230 F.3d at 1147 quoting Friends of the Earth v. Laidlaw, 528 U.S. 167, 180-181 (2000).

8       Plaintiffs have established the facts necessary to establish each of these elements.  See

9   Declarations of Melanie Duchin, Jenny Ross, and Jack W. Lentfer in Support of Plaintiffs' Motion for

10  Summary Judgment, filed concurrently with this motion.  This case is substantially similar to

11  Biodiversity Legal Foundation, 309 F.3d 1166, in which the Ninth Circuit held that environmental

12  groups that petitioned to list several species under the ESA had standing to challenge the Secretary's

13  failure to make the required findings on those petitions.  Biodiversity Legal Foundation, 309 F.3d at

14  1171-72.  In the Ninth Circuit, "environmental groups have Article III standing if they allege

15  procedural violations in an agency process in which they participated." Biodiversity Legal Foundation,

16  309 F.3d at 1172 quoting Portland Audubon Society v. Endangered Species Commission, 984 F.2d

17  1534, 1537 (9th Cir. 1993).  Moreover, it is well settled that an individual's desire to observe,

18  appreciate, and study a plant or animal species is "undeniably a cognizable interest for purposes of

19  standing." Biodiversity Legal Foundation, 309 F.3d at 1172 quoting Lujan v. Defenders of Wildlife,

20  504 U.S. 555, 562-63 (1992).  Just as in Biodiversity Legal Foundation, Plaintiffs here have established

21  standing to challenge the Secretary's failure to make a final listing determination on their Petition to list

22  the polar bear under the ESA.

23      **C.    The Secretary is in Violation of the ESA for Failing to Make a Final Listing**

24          **Determination regarding the Polar Bear**

25      There are only two pertinent facts, both undisputed, necessary for this Court to find the

26  Secretary in violation of the clear terms of the ESA.  First, it is undisputed that on January 9, 2007, the

27  Secretary published in the Federal Register a proposed regulation listing the polar bear as "threatened"

28  under the ESA.  72 Fed. Reg. 1064.  Second, it is also undisputed that more than a year has passed since

that time without the proposal being finalized or withdrawn.  The Secretary's publication of the proposed rule triggered a mandatory duty to take final action on the proposal within one year.  16 U.S.C. § 1533(b)(6).  The Secretary has not done so and is therefore in violation of the law, and consequently, summary judgment must be granted for Plaintiffs.

The language of the ESA is unambiguous on the Secretary's obligations with regard to finalizing a proposed listing rule:

> Within the one-year period beginning on the date in which a general notice is published in accordance with paragraph 5(A)(1) regarding a proposed regulation, the Secretary <u>shall</u> publish in the Federal Register-
>
> (i)      if a determination as to whether a species is an endangered species or threatened species, or a revision of critical habitat is involved, either-
>
>> (I)      a final regulation to implement such determination,
>> (II)     a final regulation to implement such revision or a finding that such revision should not be made,
>> (III)    notice that such one-year period is being extended under subparagraph (B)(i), or
>> (IV)     notice that the proposed regulation is being withdrawn under subparagraph (B)(ii), together with the finding on which such withdrawal is based.

16 U.S.C. § 1533(b)(6) (emphasis added); <u>see</u> <u>also</u> <u>Oregon Natural Resources Council v. Kantor</u>, 99 F.3d 334, 338-39 (9th Cir. 1996) ("The language of the ESA regarding the deadlines for action could hardly be more clear. ... within the one-year period beginning on the date on which the proposed regulation is published, the Secretary <u>must</u> publish a final regulation, withdraw the proposed regulation, or give notice that the one-year period is being extended.")(internal quotations omitted)(emphasis added); <u>Biodiversity Legal Foundation</u>, 309 F.3d at 1175 (The ESA "imposes a firm twelve-month deadline for making final determinations."); <u>Center for Biological Diversity v. Norton</u>, 254 F.3d 833, 837 (9th Cir. 2001) ("The statute is not at all ambiguous, but instead is exquisitely clear, concerning what the Secretary must do when she receives a petition requesting action on a species.").

The Secretary cannot, as he has done here, simply disregard the plain language of the ESA and refuse to finalize the overdue listing proposal.  Congress' use of the word "shall" in Section 4 of the ESA imposes a non-discretionary duty on the Secretary.  The Supreme Court has stated with regard to the use of the word "shall" in the ESA's listing provisions, "the terms of § 1533(b)(2) are plainly those of obligation rather than discretion . . . ."  <u>Bennett v. Spear</u>, 520 U.S. 154, 172 (1997).  The Ninth

1  Circuit has likewise held that the use of the term "shall" creates "a mandatory, nondiscretionary duty

2  which may be enforced by citizen suit." Environmental Defense Center v. Babbitt, 73 F. 3d 867, 871

3  (9th Cir. 1995).

4        By the time the Court hears this Motion, the Secretary will have missed the statutory deadline

5  for action on the polar bear by four months.  This is unacceptable.  As the Supreme Court concluded in

6  construing the ESA, "Congress has spoken in the plainest of words, making it abundantly clear that the

7  balance has been struck in favor of affording endangered species the highest of priorities." Tennessee

8  Valley Authority, 437 U.S. at 173.  Indeed, Congress explicitly amended the ESA in 1982 to remove

9  the Secretary's ability to decide when to act and to replace his "discretion" with mandatory, non-

10  discretionary deadlines.   H.R. Conf. Rep. No. 835, 97th Cong., 2nd Sess., reprinted in 1982

11  U.S.C.C.A.N. 2860, 2862 ("In several ways, these amendments will replace the Secretary's discretion

12  with mandatory, non-discretionary duties.").

13        Whatever excuses the Secretary might come up with, he cannot be allowed to re-interject his

14  "discretion" to delay listing decisions back into the ESA because Congress intentionally removed such

15  "discretion" from the statute.  As the Supreme Court has found, where the language of a statute is clear,

16  a court may look no further than the language in determining the statute's meaning. Sullivan v. Stroop,

17  496 U.S. 478, 482 (1990).  "If the intent of the Congress is clear, that is the end of the matter; for the

18  court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."

19  Chevron USA v. Natural Resources Defense Council, 467 U.S. 837, 942-43 (1984).  The Ninth Circuit

20  has explicitly stated "[t]he language of the ESA regarding the deadlines for action could hardly be more

21  clear." Oregon Natural Resources Council, 99 F.3d at 338-39.   Accordingly, even assuming the

22  Secretary can advance some colorable excuses for missing the mandatory, non-discretionary deadline

23  for final action on the polar bear, the Court should not indulge these efforts.  Summary judgment must

24  be entered for Plaintiffs.

25        **D.    The Court Must Compel the Secretary to Make a Finding by a Date Certain**

26        Given the Congressional intent, caselaw, and the plain language of the ESA itself all make clear

27  that the Secretary is in violation of the law for failing to make a final listing determination regarding the

28  polar bear by January 9, 2008, this Court must issue an order compelling the Secretary to make the final

1  listing determination for the bear by a date certain.

2      As the Supreme Court stated in the seminal ESA case of <u>Tennessee Valley Authority</u>:

3      Once Congress, exercising its delegated powers, has decided the order of priorities in a
       given area, it is for the Executive to administer the laws and for <u>the courts to enforce</u>
4      <u>them when enforcement is sought</u>.

5  437 U.S. at 194. (emphasis added); <u>see also</u> <u>Sierra Club v. Marsh</u>, 816 F.2d 1376, 1383 (9th Cir. 1987)

6  ("the Supreme Court held that Congress had explicitly foreclosed the exercise of traditional equitable

7  discretion by courts faced with a violation of [the ESA]").

8      In <u>Biodiversity Legal Foundation</u>, 309 F.3d at 1178, the Ninth Circuit explicitly examined

9  whether a district court must issue an order compelling the Secretary to make an overdue ESA listing

10 determination by a date certain, and concluded that such relief was mandatory.

11     <u>The Service's failure to complete the listing determinations within the mandated time</u>
       <u>frame compelled the court to grant injunctive relief</u>.  The court had no discretion to
12     consider the Service's stated priorities. . .
       . . . We AFFIRM the district court's denial of the Service's request for additional time
13     within which to make the warranted/not warranted findings in dispute.  The exercise of
       discretion is foreclosed when statutorily imposed deadlines are not met.
14

15 <u>Id.</u> at 1178 (emphasis added); <u>see also</u> <u>Forest Guardians</u>, 174 F.3d at 1190 ("[W]hen Congress by

16 organic statute sets a specific deadline for agency action, neither the agency nor any court has

17 discretion. The agency must act by the deadline. If it withholds such timely action, a reviewing court

18 must compel the action unlawfully withheld.").

19     The repeated holdings of the Ninth Circuit, as well as those of the Supreme Court and other

20 circuits, leave no doubt that this Court must issue an order compelling the Secretary to make a final

21 listing determination regarding the polar bear by a date certain.  The only issue remaining is how long

22 the Court should give the Secretary to come into compliance with the law.

23     In this case, the Secretary has no excuse for his continuing delay in issuing a final listing

24 determination for the polar bear.  The final listing recommendation left the Alaska field office of the

25 U.S. Fish and Wildlife Service in December 2007.  On January 7, 2008, Director Dale Hall of the

26 Service announced in a press statement that the agency would not meet the deadline but would make

27

28

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT                    C-08-1339-CW

the finding "within the next month."[3]   That month has come and gone with no action from the Secretary.  Whatever work was required to complete the listing determination has been done; there is simply no justification for further delay.

In determining an appropriate timeline for setting a deadline for the Secretary to publish a final listing determination for the polar bear, the case of Marbled Murrelet v. Lujan, 1992 U.S. Dist. LEXIS 14645 (W. Dist Wash. 1992), is instructive.  In that case, the Secretary had unlawfully delayed a final listing determination for the marbled murrelet, an imperiled forest-nesting seabird.  In an order issued September 15, 1992, the Court required the Secretary to publish its finding in the Federal Register by September 18, 1992, three days later.

> [T]he Secretary was legally bound by the ESA, 16 U.S.C. § 1533(b)(6)(A), to make a determination on the status of the tri-state marbled murrelet population within one year of June 20, 1991, the date on which the proposed rule for listing the murrelet was published. 56 Fed. Reg. 28362 (June 20, 1991).
>
> The court accordingly orders the Secretary to carry out his congressionally mandated duty under the ESA, 16 U.S.C. § 1533(b)-(6)(A), to publish his determination in the Federal Register no later than noon, Eastern Standard Time, on Friday, September 18, 1992. The court notes that the Secretary's task should be assisted markedly by the fact that a final rule has already been drafted by the Region One Field Office of the United States Fish and Wildlife Service.

Id. (emphasis added).  Such is exactly the case here, as the final determination left the relevant field office more than three months ago.

In light of the fact that there is no lawful reason for continued delay in issuing a final listing determination for the polar bear, Plaintiffs respectfully request that this Court order the Secretary to publish the final determination within seven days of the hearing on this motion.  Such an order is consistent with the nearly identical Marbled Murrelet case as well as other district court rulings regarding overdue listing determinations under the ESA.  See Forest Guardians, 174 F.3d at 1193

---

[3] The U.S. Fish and Wildlife Service Press release is available at:
http://www.fws.gov/news/NewsReleases/showNews.cfm?newsId=54D2A6BD-E928-94E6-6BA905F3F540B8F7

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT                     C-08-1339-CW

(noting that in similar deadline cases district courts have ordered the Secretary to comply with its statutory obligations within between 5 and 120 days).[4]

Finally, in normal rulemaking where the Secretary complies with the timelines of the ESA, the APA, 5 U.S.C. 553(d), provides that a final rule not take effect until thirty days after its publication in the Federal Register.  However, when "good cause" exists, the thirty day delay in the regulations' effective date may be waived.  5 U.S.C. 553(d)(3).  A violation of a listing timeline constitutes such "good cause" for waiving the delay in the effective date of a final listing rule.  Again, <u>Marbled Murrelet</u> is instructive.

> Finally, it was brought to the court's attention during oral argument that under the APA, 5 U.S.C. § 553(d), a rule is normally not effective until thirty days after the date of publication. However, an exception is available under § 553 (d)(3) if 'otherwise provided by the agency for good cause found and published with the rule.' <u>The court finds that, in view of the unlawful delay which has already occurred in complying with the ESA, a final determination by the Secretary to list the tri-state murrelet population as threatened should be accompanied by an agency waiver for good cause of the 30-day delay in the effective date of the determination.</u>

992 U.S. Dist. LEXIS 14645. (emphasis added).  This Court should do the same here and require the Secretary to make a final listing regulation for the polar bear effective upon publication in the Federal Register.

## V.    CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court grant their Motion for Summary Judgment and order the Secretary to make, and to publish in the Federal Register, a final listing determination for the polar bear under the ESA within 7 days of the Court's hearing on this Motion.

---

[4] In instances where courts have granted the Secretary more time to come into compliance with the law, there has usually been an additional required step in the process, such as a public comment period, the conducting of a status review, or the issuance of a proposed rule.  There are no such additional steps preventing the Secretary from immediately issuing a final listing determination for the polar bear.

1    DATE: April 1, 2008                         Respectfully Submitted,

2

3                                                By: __/s/Brendan Cummings_____

4                                                Brendan Cummings (CA Bar No. 193952)
                                                 Kassia Siegel (CA Bar No. 209497)
5                                                Center for Biological Diversity
                                                 P.O. Box 549
6                                                Joshua Tree, CA 92252
7                                                Phone:  (760) 366-2232; Facsimile: (760) 366-2669
                                                 Email:  bcummings@biologicaldiversity.org
8                                                          ksiegel@biologicaldiversity.org

9                                                Miyoko Sakashita (CA Bar No. 239639)
10                                               Center for Biological Diversity
                                                 1095 Market St., Suite 511
11                                               San Francisco, CA 94103
                                                 Phone:  (415) 436-9682; Facsimile: (415) 436-9683
12                                               Email:  miyoko@biologicaldiversity.org

13                                               Andrew E. Wetzler (CA Bar No. 202299)
14                                               Natural Resources Defense Council
                                                 544 White Oak Place
15                                               Worthington, OH 43085
                                                 Phone:  (614) 840-0891; Facsimile (415) 875-6161
16                                               Email:  awetzler@nrdc.org

17                                               Attorney for Plaintiffs

18

19

20

21

22

23

24

25

26

27

28