1  RONALD J. TENPAS
   Assistant Attorney General
2  United States Department of Justice
   Environment & Natural Resources Division
3  JEAN E. WILLIAMS, Chief
   LISA LYNNE RUSSELL, Assistant Chief
4  KRISTEN BYRNES FLOOM, Trial Attorney (DC Bar No. 469615)
   United States Department of Justice
5  Environment & Natural Resources Division
   Wildlife and Marine Resources Section
6  Benjamin Franklin Station, P.O. Box 7369
   Washington, DC 20044-7369
7  Telephone: (202) 305-0340
   Facsimile: (202) 305-0275
8  Kristen.Floom@usdoj.gov

9  Attorneys for Defendants

10

11              UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF CALIFORNIA
12                   OAKLAND DIVISION

13  CENTER FOR BIOLOGICAL          )  Case No. C-08-1339 (CW)
    DIVERSITY, et al.,             )
14                                 )
              Plaintiffs,          )
15                                 )  Date: May 8, 2008
        vs.                        )  Time: 2:00 p.m.
16                                 )  Judge: Hon. Claudia Wilken
    DIRK KEMPTHORNE, United States )  Courtroom: Courtroom 2, 4ᵗʰ Floor
17  Secretary of the Interior, and UNITED )
    STATES FISH AND WILDLIFE       )
18  SERVICE,                       )
19            Defendants.
20
21
22          DEFENDANTS' OPPOSITION TO PLAINTIFFS'
23              MOTION FOR SUMMARY JUDGMENT
24
25
26
27
28

1

## TABLE OF CONTENTS

2

PAGE

INTRODUCTION................................................................................................................. 1

STATUTORY AND REGULATORY BACKGROUND ............................................... 1

FACTUAL BACKGROUND ....................................................................................... 4

STANDARD OF REVIEW ......................................................................................... 5

ARGUMENT ................................................................................................................. 6

CONCLUSION ............................................................................................................. 10

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

TABLE OF AUTHORITIES

2

3

CASES                                                                    PAGE

4

Biodiversity Legal Found. v. Badgley, 309 F.3d 1166 (9th Cir. 2002) ......................... 7

5

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) .......................................... 6

6

7

Center for Biological Diversity v. Norton, 208 F. Supp. 2d 1044, (N.D. Cal. 2002) ................... 8

8

Center for Biological Diversity v. Norton, 212 F. Supp. 2d 1217, 1221 (S.D. Cal. 2002) ........... 8

9

Center for Biological Diversity v. Norton, 304 F. Supp. 2d 1174, 1184 (D. Ariz. 2003) ..... 8,9,10

10

Conservation Council for Hawai'i v. Babbitt, 24 F. Supp. 2d 1074, 1076 (D. Haw. 1998) .......... 8

11

12

Envtl. Def. Ctr. v. Babbitt, 73 F.3d 867 (9th Cir. 1995) ....................................... 8

13

Riverbend Farms, Inc. v. Madigan, 958 F.2d 1479, 1485 (9th Cir. 1992) .................. 11

14

TVA v. Hill, 437 U.S. 153, 194 (1978) ....................................... 7

15

United States v. Oakland Cannabis Buyers' Coop., 532 U.S. 483, 496 (2001) ......................... 7

16

17

STATUTES

18

19

5 U.S.C. § 553(d) ....................................... 10, 11

20

16 U.S.C. § 1531 ....................................... 2

21

16 U.S.C. § 1531(b) ....................................... 2

22

23

16 U.S.C. § 1532(15) ....................................... 2

24

16 U.S.C. § 1532(19) ....................................... 4

25

16 U.S.C. § 1533 ....................................... 4-6

26

16 U.S.C. § 1533(7) ....................................... 11

27

16 U.S.C. § 1533(a)(1) ....................................... 3

28

16 U.S.C. § 1533(b)(1)(A) ....................................... 3

ii

16 U.S.C. § 1533(b)(3)(A) ............................................................................................. 3

16 U.S.C. § 1533(b)(3)(B) ............................................................................................. 3

16 U.S.C. § 1533(b)(6) .................................................................................................. 7

16 U.S.C. § 1536(a)(2) .................................................................................................. 4

16 U.S.C. § 1538(a)(1) .................................................................................................. 4

16 U.S.C. § 1540 ........................................................................................................... 4

16 U.S.C. § 1540(g)(1) .................................................................................................. 7

16 U.S.C. § 1540(g)(1)(C) ............................................................................................ 7

## FEDERAL REGULATIONS

50  C.F.R. § 17.3. ......................................................................................................... 4

50 C.F.R. § 17.31(a)(c) ................................................................................................. 4

50 C.F.R. § 402.01(b) .............................................................................................. 2, 3

50 C.F.R. § 402.14(a) ................................................................................................... 4

50 C.F.R. § 424.11(b) ................................................................................................... 3

50 C.F.R. § 424.14(b)(1) ............................................................................................... 3

50 C.F.R. § 424.14(b)(3) .......................................................................................... 3, 4

50 C.F.R. § 424.17(a) ................................................................................................... 4

# INTRODUCTION

Defendants, Dirk Kempthorne, Secretary of the United States Department of the Interior ("Department"), and the United States Fish and Wildlife Service ("Service"), hereby respond to Plaintiffs' Motion for Summary Judgment, Docket No. 6 ("Pl. Mem."). Defendants do not dispute that the Service has not yet issued a final listing determination for the polar bear under the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 et seq. However, the Service has established a proposed date to release the final listing determination, which is reasonable and supported by the Declaration of the Assistant Secretary for Fish and Wildlife and Parks, Lyle Laverty, attached hereto as Exhibit 1. For the reasons set forth below and in the Declaration of Assistant Secretary Laverty, Defendants submit the Court should adopt Defendants' schedule, and not order the unjustified relief sought by Plaintiffs.

# STATUTORY AND REGULATORY BACKGROUND

The ESA was enacted in 1973 "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b). An endangered species is "in danger of extinction throughout all or a significant portion of its range," while a threatened species is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." Id. § 1532(6), (20).

The Secretaries of the Department of the Interior and the Department of Commerce are responsible for implementing the ESA see 16 U.S.C. § 1532(15), in conjunction with their respective delegates the Service (for terrestrial and freshwater species) and the National Marine Fisheries Service ("NMFS") (for marine species and anadromous fish). See 50 C.F.R. § 402.01(b); see also id. §§ 17.11, 224.101. Pursuant to Section 4(a)(1) of the ESA, the Secretary

determines whether to list a species based upon five statutory factors, any one of which is sufficient to support a listing determination.[1]  The Secretary must make the decision "solely on the basis of the best scientific and commercial data available to [it] after conducting a review of the status of the species and after taking into account those efforts, if any, being made by any State or foreign nation, or any political subdivision of a State or foreign nation, to protect such species . . . ."  16 U.S.C. § 1533(b)(1)(A); see also 50 C.F.R. § 424.11(b), (f).

Species may be listed in either of the following ways: (a) the Secretary initiates a review of a species through the "candidate process" (see 16 U.S.C. § 1533(a)(1), (c)(2)); or (b) an "interested person" petitions the Secretary to add a species to the list of endangered and threatened species, as Plaintiffs did in this case. 16 U.S.C. § 1533(b)(3)(A).  Under the petition process the Secretary must, "to the maximum extent practicable," make a finding within 90 days after receiving a petition as to whether the petition presents substantial scientific or commercial information indicating that the listing may be warranted ("90-day finding").  Id.; see also 50 C.F.R. § 424.14(b)(1).

If the finding is positive, the Secretary commences a review of the species' status and, within twelve months from receipt of the petition, must make a finding ("twelve-month finding") that either: (a) the petitioned action is not warranted; (b) the petitioned action is warranted; or (c) the petitioned action is warranted but precluded by pending proposals.  16 U.S.C. § 1533(b)(3)(B); 50 C.F.R. § 424.14(b)(3).  If the Secretary makes a "not warranted" twelve-month finding, he must publish the finding in the Federal Register, and the "not warranted"

---

[1]  The factors are: (A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms or (E) other natural or manmade factors affecting its continued existence.  16 U.S.C. § 1533(a)(1).

finding is subject to judicial review.  16 U.S.C. § 1533(b)(3)(C)(ii).  If, however, the Secretary

finds that listing is warranted, he must publish in the Federal Register a notice and proposed rule.

Id. § 1533(b)(3)(B)(ii).  The Secretary must provide an opportunity for public comment and hold

a hearing upon request, id. § 1533(b)(5), and act on the proposed rule within one year of the date

of its publication by promulgating a final rule, withdrawing the proposed rule, or extending the

one-year period for not more than six months, id. § 1533(b)(6).  See also 50 C.F.R. § 424.17(a).

Once a species is listed as endangered or threatened, it is afforded certain legal

protections.  For example, the ESA prohibits any illegal or unauthorized "taking" of an

endangered or threatened species.  16 U.S.C. § 1538(a)(1); 50 C.F.R. § 17.31(a)(c).  "Take" is

defined to include "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect."

16 U.S.C. § 1532(19); 50 C.F.R. § 17.3 (definition of "harm").  In addition, a Federal agency

must consult with the Service whenever any action authorized, funded, or carried out by the

agency "may affect" a threatened or endangered species, to ensure that the action "is not likely to

jeopardize the continued existence of any endangered species or threatened species or result in

the destruction or adverse modification" of designated critical habitat.  16 U.S.C. § 1536(a)(2);

50 C.F.R. § 402.14(a).

Section 11 of the ESA provides that "any person may commence a civil suit on his own

behalf," 16 U.S.C. § 1540 (g)(1), "against the Secretary where there is alleged a failure of the

Secretary to perform any act or duty under [section 4] which is not discretionary with the

Secretary."  Id. § 1540(g)(1)(C), referring to 16 U.S.C. § 1533.  Under this citizen suit provision,

the federal courts have jurisdiction to order the Secretary to perform any Section 4 duty which is

not discretionary.  Id. § 1540(g)(1).

**FACTUAL BACKGROUND**

This case concerns the ESA listing status of the polar bear (*Ursus maritimus*).  On February 17, 2005, the Service received a petition from Plaintiff Center for Biological Diversity requesting that the Service list the polar bear as threatened throughout its range and concurrently designate critical habitat.  See Declaration of Assistant Secretary for Fish and Wildlife and Parks Lyle Laverty ("Laverty Decl."), ¶ 2.  By letter dated July 1, 2005, the Service acknowledged receipt of the petition and advised the petitioner that it would not be able to consider the petition at that time due to funding constraints and work related to existing court orders and settlement agreements.  See id.; see also 72 Fed. Reg. at 1065.  By letter dated July 5, 2005, petitioner advised the Service that two additional parties were joining as petitioners: Plaintiffs Natural Resources Defense Council and Greenpeace.  72 Fed. Reg. at 1065.  Petitioners also advised the Service of two new scientific articles and requested that the Service consider those articles in evaluating their petition.  Id.  Petitioners subsequently provided additional new information for the Service's consideration in a letter received by the Service on December 27, 2005.  Id.

On December 15, 2005, petitioners filed a lawsuit in this District challenging the Service's failure to issue a timely 90-day finding in response to their petition.  Laverty Decl. at ¶ 2.  The Service issued its 90-day finding on February 7, 2006, concluding that the petition presented substantial scientific information indicating that listing the polar bear may be warranted.  Id.; see also 71 Fed. Reg. 6745 (Feb. 9, 2006).  In a stipulated settlement agreement approved by the district court on July 5, 2006, the Service agreed to submit a 12-month finding to the Federal Register by December 27, 2006.  Laverty Decl. at ¶ 2.  The finding, concluding that listing the polar bear as a threatened species throughout its range is warranted, was published in the Federal Register on January 9, 2007.  72 Fed. Reg. 1064 (Jan. 9, 2007).  The

4

listing proposal was based on current and projected future effects of threats to polar bear habitat – specifically, receding sea ice – and the absence of regulatory mechanisms to address the expected modifications to polar bear habitat.  Laverty Decl. at ¶ 3.

When the Secretary announced the proposed rule, he also directed the U.S. Geological Survey ("USGS") to gather additional information to assist the Service in recommending a final listing determination, and directed the Service to gather additional information on factors affecting the species.  Id. at ¶ 4.  The USGS provided the results of its research to the Service in September 2007, and the Service reopened the comment period on the proposed rule to allow the public to respond to the USGS findings.  Id. at ¶¶ 5-6.  The Service received a total of 670,000 public comments on the proposed rule and the USGS report.  Id. at ¶ 6.  After analyzing and responding to the public comments, incorporating the results of the USGS report, and working with the Department's Office of the Solicitor to address outstanding legal issues, the Service completed a draft of the listing determination on February 22, 2008.  See id. at ¶¶ 8-10.  The draft listing determination is currently undergoing review by the Department's Assistant Secretary for Fish and Wildlife and Parks, who anticipates that a final listing decision will be completed by June 30, 2008.  Id. at ¶¶ 11-12.

**STANDARD OF REVIEW**

Summary judgment is appropriate if there is no genuine issue regarding any material fact and if the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party is entitled to judgment as a matter of law if the nonmoving party fails to make a sufficient showing on an essential element of its case.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Here there is no dispute that the Service has not yet issued a final listing determination for the polar bear; thus, this case is a proper subject for summary judgment.

1

**ARGUMENT**

2

Defendants do not dispute that, pursuant to 16 U.S.C. § 1533(b)(6), the Service was

3
4
required to issue the final listing determination for the polar bear within one year of publication

5
of the proposed rule, and that the Service did not issue the determination. Thus, under the law of

6
this Circuit, it is appropriate for the Court to order the Service to issue the final listing

7
determination. <u>Biodiversity Legal Found. v. Badgley</u>, 309 F.3d 1166 (9th Cir. 2002), established

8
that a district court does not have the discretion to withhold an injunction for a violation of a

9
10
nondiscretionary deadline under the ESA. <u>Id.</u> at 1177 (citing <u>TVA v. Hill</u>, 437 U.S. 153, 194

11
(1978)). However, Defendants do dispute that Plaintiffs' proposed remedy is appropriate in this

12
case.

13
A district court has discretion in fashioning injunctive relief, unless a statute clearly

14
provides otherwise. <u>See United States v. Oakland Cannabis Buyers' Coop.</u>, 532 U.S. 483, 496

15
16
(2001). Such a clear and valid legislative command is not present in the citizen-suit provision of

17
the ESA, which is the jurisdictional basis for Plaintiffs' claim. <u>See</u> 16 U.S.C. § 1540(g)(1)(C).

18
ESA Section 11(g)(1)(C) authorizes actions "against the Secretary where there is alleged a

19
failure of the Secretary to perform any act or duty" under Section 4 which is not discretionary.

20
21
<u>Id.</u> The citizen-suit provision further provides that the district courts shall have jurisdiction "to

22
order the Secretary to perform such act or duty." 16 U.S.C. § 1540(g)(1). It does not contain

23
any text that can be plainly read as constraining the district court's discretion to fashion an

24
appropriate remedy. As stated by the Supreme Court, a grant of jurisdiction to provide for a

25
26
certain type of relief does not meet the requisite "clear and valid legislative command" needed to

27
preclude a court from exercising its discretion in fashioning an appropriate remedy. <u>Oakland</u>

28
<u>Cannabis</u>, 532 U.S. at 496.

1   The Ninth Circuit's decision in <u>Envtl. Def. Ctr. v. Babbitt</u>, 73 F.3d 867 (9th Cir. 1995), is

2   instructive here.  In that case, as here, the plaintiffs sued to compel the Secretary to issue a final

3   listing determination under ESA Section 4.  The Ninth Circuit held that the Secretary violated

4

5   his mandatory duty to make a final determination regarding the listing status of the red legged

6   frog, but recognized that any remedial schedule imposed by the district court should be governed

7   by a standard of reasonableness.  <u>Id.</u> at 872 (remanding to district court with instructions to

8   modify its order to provide that compliance with statutory deadline would be "delayed until a

9   reasonable time after appropriated funds are made available").  District courts in the Ninth

10

11   Circuit have acted in accordance with this standard.  <u>See</u>, <u>e.g.</u>, <u>Conservation Council for Hawai'i</u>

12   <u>v. Babbitt</u>, 24 F. Supp. 2d 1074, 1076 (D. Haw. 1998) ("In setting a timetable for agency action,

13   the Ninth Circuit has instructed courts to follow a standard of reasonableness."); <u>Center for</u>

14   <u>Biological Diversity v. Norton</u>, 212 F. Supp. 2d 1217, 1221 (S.D. Cal. 2002) (in setting "a

15   reasonable timeline" for critical habitat determinations, court "exercise[d] its discretion to

16

17   consider the Service's budgetary shortfalls, workload constraints and other relevant factors");

18   <u>Center for Biological Diversity v. Norton</u>, 208 F. Supp. 2d 1044, 1050-1051 (N.D. Cal. 2002)

19   (noting that "the ESA does not divest the Court of its equitable discretion to fashion a reasonable

20

21   remedy," and adopting Service's proposed deadline for making final listing determination);

22   <u>Center for Biological Diversity v. Norton</u>, 304 F. Supp. 2d 1174, 1184 (D. Ariz. 2003) (although

23   district court found that Service had been in violation of mandatory duty to designate critical

24   habitat for ten years, court noted that "[i]n setting a timetable for agency action, the Ninth

25

26   Circuit has instructed courts to follow a standard of reasonableness"); <u>Western Watersheds</u>

27   <u>Project v. Foss</u>, Civ. No. 04-168, 2006 U.S. Dist LEXIS 73577, at *15 (Oct. 4, 2006) (noting that

28   "the Court may set a reasonable timetable for agency action" and ordering Service to issue final

1  listing determination within 90 days) (attached hereto as Exhibit 2).  Likewise, in this case the

2  Court should exercise its discretion to fashion a reasonable compliance schedule for the Service

3  to complete the final listing determination for the polar bear.

4

5       Plaintiffs ask the Court to order Defendants to issue, and publish in the <u>Federal</u> <u>Register</u>,

6  a final listing determination within seven days of the hearing on their motion.  Pl. Mem. at 16.[2]

7  In support of this request, they cite <u>Marbled Murrelet v. Lujan</u>, 1992 U.S. Dist. LEXIS 14645

8  (W.D. Wash. Sept. 15, 1992) (attached hereto as Exhibit 3).  In that case the district court,

9  having found that the Service had improperly invoked the statutory provision permitting a six-

10  month extension, 16 U.S.C. § 1533(b)(6)(B)(I), ordered the Service to issue a final listing rule

11  within three days of the court's order.  <u>See</u> <u>id.</u> at * 3.  In its brief opinion, the court did not

12  expressly take into account any equitable considerations, such as the Service's workload, but did

13  note that a final rule had already been drafted by the regional office.  <u>Id.</u>  <u>Marbled Murrelet</u> is

14  inconsistent with the subsequent decision in <u>Environmental Defense Center</u> and the rule in this

15  Circuit that a remedial schedule imposed in a deadline case should be governed by a standard of

16  reasonableness, and the Court should decline to follow that case here.

17

18       A reasonable compliance schedule in this case should take into account the complexity

19  of the proposed rule and the remaining steps necessary to ensure a thorough and scientifically

20  supportable final determination.  The tremendous number of comments on the proposed rule –

21  approximately 670,000 – reflect the level of public interest in the listing status of the polar bear.

22

23

24

25

26  [2] Plaintiffs seek an order requiring not only that the Secretary make the final determination
   within seven days of the hearing, but also that the determination be published in the <u>Federal</u>
27  <u>Register</u> by that date.  Because Defendants cannot control the date of publication in the <u>Federal</u>
   <u>Register</u>, any order should specify the date by which Defendants must <u>submit</u> the final
28  determination to the <u>Federal</u> <u>Register</u>, rather than the date of publication.

The positions reflected in the comments were widely varying, and addressing those views has required considerable effort by the Department.  See Laverty Decl. at ¶ 13.  The Assistant Secretary must ensure that the final determination has adequately addressed the public comments, is supported by the best available scientific and commercial data, and is legally sufficient.  See id.  The Assistant Secretary anticipates that his review, including a final legal review by the Department's Office of the Solicitor, and the review and clearance by the Department's Chief of Staff will require an additional ten weeks.  See id. at ¶¶ 12-13.  This time is necessary to permit the Assistant Secretary, in coordination with the Office of the Solicitor and the Service, to address the complex factual and legal issues raised by the listing determination.  See id. at ¶¶ 11-12 (issues to be resolved include "the meaning and application to the polar bear of the term 'foreseeable future' within the definition of a threatened species, whether the species is endangered through all or a significant portion of its range, what are the significant portions of the range of the polar bear, the reliability of the data being used for the listing determination, and the degree of uncertainty attached to the modeling tools available to predict the future location and extent of Arctic sea ice").  Thus, the Service proposes to complete a final determination by June 30, 2008.  See id. at ¶ 12.  This schedule is reasonable, and should be adopted by the Court.

Plaintiffs further ask the Court to order Defendants to make the final rule effective immediately upon publication in the Federal Register, contrary to 5 U.S.C. § 553(d).  This provision of the APA requires that publication or service of a substantive rule shall be made not less than 30 days before its effective date, unless: (a) the rule is for an exemption or relieves a restriction; (b) the rule is an interpretive rule or statement of policy; or (c) as otherwise provided

by the agency for good cause.  5 U.S.C. § 553(d).  The purpose of this 30-day delay in

effectiveness is to accommodate those subject to the new regulation:

> Unlike the notice and comment requirements, which are designed to ensure public participation in rulemaking, the 30-day waiting period is intended to give affected parties time to adjust their behavior before the final rule takes effect.  This is sensible; until the final rule is published, the public is not sure of what the rule will be or when the rule will actually be promulgated.  In addition, a window of time usually causes no harm.

Riverbend Farms, Inc. v. Madigan, 958 F.2d 1479, 1485 (9th Cir. 1992).

Here a waiting period as provided by 5 U.S.C. § 553(d) is appropriate to permit any

affected entities to become familiar with the substance of the final rule and adjust their behavior

accordingly.  Moreover, a waiting period will have a negligible effect on the status of the polar

bear.  The Service has determined that the species is adequately protected in the short-term by

the Marine Mammal Protection Act ("MMPA").  See Laverty Decl. at ¶ 13 (impact on polar

bears between now and June 30, 2008 will be negligible due to MMPA restrictions).  Pursuant to

the MMPA, any take of polar bears is prohibited unless it is exempt (e.g., take incidental to

commercial fishing operations), or specifically authorized under the statute.  See id.  The Service

may not authorize incidental take of polar bears by activities other than commercial fishing

unless it finds that the take "will have no more than a negligible impact on the species. . . ."  Id.

Further, at no time have Plaintiffs petitioned for emergency listing of the polar bear, as is

authorized by the ESA.  See 16 U.S.C. § 1533(7).  There is no evidence that a waiting period

will harm the polar bear, and the Court should decline to adopt Plaintiffs' request to waive the

waiting period in this case.

**CONCLUSION**

For the foregoing reasons, the Court should grant summary judgment in favor of

Plaintiffs, but should deny Plaintiffs' requested remedy and adopt the Service's proposed

deadline of June 30, 2008 for submission of the final listing determination for the polar bear to

the <u>Federal</u> <u>Register</u>.

Respectfully submitted this 17th day of April, 2008.

RONALD J. TENPAS
Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division
JEAN E. WILLIAMS, Chief
LISA LYNNE RUSSELL, Assistant Chief

<u>/s/ Kristen Byrnes Floom</u>
KRISTEN BYRNES FLOOM, Trial Attorney
DC Bar No. 469615
United States Department of Justice
Environment & Natural Resources Division
Wildlife and Marine Resources Section
Benjamin Franklin Station, P.O. Box 7369
Washington, DC 20044-7369
Telephone: (202) 305-0340
Facsimile: (202) 305-0275
Kristen.Floom@usdoj.gov

Attorneys for Defendants

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that a copy of Defendants' Opposition to Plaintiffs' Motion for Summary

3

Judgment was submitted to the Court electronically on this 17th day of April, 2008 for filing and

service on the following parties:

4

5

Kassia Siegel

ksiegel@biologicaldiversity.org

6

7

Brendan Cummings

bcummings@biologicaldiversity.org

8

9

Miyoko Sakashita

miyoko@biologicaldiversity.org

10

Attorneys for Plaintiffs

11

12

I further certify that, on this 17th day of April, 2008, a copy of Defendants' Opposition to

13

Plaintiffs' Motion for Summary Judgment was sent via first-class mail, postage prepaid, to:

14

Andrew E. Wetzler

Natural Resources Defense Council

15

544 White Oak Place

16

Worthington, OH 43085

17

Attorney for Plaintiffs

18

19

/s/ Kristen Byrnes Floom

Kristen Byrnes Floom

20

21

22

23

24

25

26

27

28

**EXHIBIT 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | )     Case No.   C-08-1339-CW |
| v. | ) |
| | ) |
| DIRK KEMPTHORNE, et al., | ) |
| | ) |
| Defendants | ) |
| | ) |

**Declaration of Lyle Laverty**

I, Lyle Laverty, declare as follows:

1.      I am the Assistant Secretary for Fish and Wildlife and Parks within the U.S.

Department of the Interior (Department), located in Washington, D.C.  In my

position, I am responsible to the Secretary of the Interior who is charged by

Congress to administer the Endangered Species Act (ESA), 16 U.S.C. § 1531 *et*

*seq*.  As Assistant Secretary, I oversee the U.S. Fish and Wildlife Service

(Service) which, along with my office, administers programs under the ESA for

the listing of certain species and designation of their critical habitat.

2.      On February 17, 2005, the Service received a petition from the Center for

Biological Diversity, dated February 16, 2005, requesting that the Service list the

polar bear as a threatened species throughout its range and that critical habitat be

designated concurrently with the listing.  The Service was unable to begin work

on a 90-day finding due to funding constraints and the need to comply with court

orders and settlement agreements.  On December 15, 2005, the petitioners filed a

complaint in the U.S. District Court for the Northern District of California

challenging the Service's failure to issue a 90-day finding.  On February 7, 2006,

the Service made its 90-day finding that the petition presented substantial

scientific information indicating that listing the polar bear may be warranted; the

finding and initiation of a status review was published in the *Federal Register* on

February 9, 2006 (71 Fed. Reg. 6745).  In a stipulated settlement agreement

approved by the district court on July 5, 2006, the agency agreed to submit a 12-

month finding to the *Federal Register* by December 27, 2006.

3.     On December 27, 2006, the Director of the Service (Director) signed and

submitted to the *Federal Register* for publication the 12-month finding on the

petition and a proposed rule to list the polar bear under the ESA as a threatened

species throughout its range.  The finding and proposed listing rule were

subsequently published in the *Federal Register* on January 9, 2007 (72 Fed. Reg.

1063).  The polar bear listing proposal was based on both observed and projected

future effects of the expected modification or curtailment of polar bear habitat or

range, specifically from receding sea ice, and the absence of any known

regulatory mechanisms at the national or international level effectively addressing

this threat to polar bear habitat.  As part of the threats assessment for the proposed

rule, the Service evaluated the potential threat from oil and gas development,

hunting, and subsistence harvest and determined, based on a review of various

factors, that these activities do not threaten the polar bear throughout its range.

4.     At the time that the Secretary of the Interior announced the proposal, he directed

the U.S. Geological Survey (USGS) to gather additional information aimed at

providing further analysis that would assist the Service's process of recommending a final listing determination. The Secretary also directed the Service to work with the public and pertinent sectors of the scientific community to broaden its understanding of what factors affect the species and to gather additional information to inform the final decision on whether the species qualifies as a threatened or endangered species under the ESA. On January 9, 2007, the Service opened a three-month public comment period on the proposal and held public hearings in Anchorage and Barrow, Alaska, and in Washington D.C. In June 2007 the Service hosted a meeting of countries that are part of the polar bear's range, including official representatives from the United States, Canada, Norway, Russia and Greenland. The meeting provided a forum for the exchange of scientific, management, and technical information among the range countries.

5.    In September 2007, USGS scientists provided the results of their new research to the Service. This research included an evaluation of polar bears occupying similar physiographic ecoregions and a determination of how the observed and projected changes in sea ice translate into changes in polar bear habitat availability and status. It updated population information on polar bears of the Southern Beaufort Sea of Alaska, and provided new information on the status of two other polar bear populations (Northern Beaufort Sea and Southern Hudson Bay). The USGS studies also provided additional data on arctic climate and sea ice trends and modeled probabilities of change to polar bear numbers throughout the species' range over various time periods.

6.      The Service reopened and later extended a second comment period, which closed

on October 22, 2007, to allow the public time to review and respond to the new

USGS findings.  At the time the decision was made to reopen and extend the

comment period, the Director of the Service alerted the Department that extra

time would likely be needed to adequately evaluate and address the information in

the numerous comments that had been received.  In total, the Service received

over 670,000 comments on the proposed rule and the USGS reports.  The Service

had to analyze and prepare responses to the information provided in the public

comments and incorporate the USGS information into the draft final

determination.

7.      On December 14, 2007, the Service's Alaska Regional Office transmitted the

draft final listing determination to the Service's Washington Office for review.  In

the Service's Washington Office, the draft document was first reviewed for

biological adequacy and consistency with national policy by the Service's

Division of Conservation and Classification.  The draft was then forwarded to the

Service's Assistant Director for Endangered Species and, on February 5, 2008,

sent to the Director of the Service for his review.

8.      Given the complexity of the legal and scientific issues, the need to review

approximately 670,000 public comments, the extended comment periods for

consideration of the USGS reports, and the need to conduct a thorough and

accurate analysis, the Service was unable to complete its work by January 9,

2008, one year from publication of the proposed rule.  On January 7, 2008, the

Director publicly announced that the Service continued to work diligently on the

final listing determination for the polar bear and expected to forward a

recommendation to the Secretary of the Interior and finalize the decision within

30 days.

9. In early February 2008, the Service had developed a draft listing determination

that raised various factual and legal issues with the Office of the Solicitor. A

working group comprised of staff from both the Service and the Office of the

Solicitor was convened to begin addressing these issues. The working group

concluded its efforts on February 15, 2008.

10. Based on the working group's efforts, on February 22, 2008, a new draft of the

listing determination prepared by the Service was approved by the Director. A

copy of this new version was then provided to me by the Director for review

within the Office of the Secretary. As Assistant Secretary for Fish and Wildlife

and Parks, I am responsible for reviewing and approving all draft final listing

determinations under the ESA.

11. I have today asked the Solicitor to ensure that the listing determination meets all

statutory and regulatory requirements -- substantive as well as procedural. I am

informed that public comments and internal Departmental review of this listing

determination raised significant and complex factual and legal issues, including

the meaning and application to the polar bear of the term "foreseeable future"

within the definition of a threatened species, whether the species is endangered

through all or a significant portion of its range, what are the significant portions of

the range of the polar bear, the reliability of the data being used for the listing

determination, and the degree of uncertainty attached to the modeling tools

available to predict the future location and extent of Arctic sea ice.

12.    My office and the Office of the Solicitor, in coordination with the Service, will

continue to analyze and address these new and complex issues. At this point it

would be pre-decisional to speculate on the outcome of that analysis or even some

of the intricate nuances involved in a resolution. It is anticipated that the legal

review will be completed on each of the outstanding issues. Once this review is

complete, however, and any clarifications have been incorporated into the final

listing determination, it will be forwarded in accordance with our procedures to

the Department's Office of the Executive Secretary for final review and clearance

by the Department's Chief of Staff, as required for all Departmental documents

that are to be published in the *Federal Register*.  The internal executive review for

completeness, accuracy, and format normally takes one week. The final listing

determination will then be sent to the Office of the Federal Register for

publication. The Service will publish the listing decision on its website when the

document is sent to the *Federal Register*.

13.    In my opinion, the Department needs 10 weeks, or until June 30, 2008, to

complete the legal and policy review steps necessary to ensure that the final

determination is supported by the best available scientific and commercial data

and that all relevant legal standards and procedures under Section 4 of the

Endangered Species Act and the requirements of the Administrative Procedure

Act have been addressed successfully.  Due to the wide range of positions raised

by those who submitted public comments — from outright opposition to any

listing of polar bears as a threatened or endangered species to aggressive advocacy for an endangered classification — care must be taken to ensure that the decision document addresses all statutory standards with clarity and thoroughness. I am informed by the Service that the impact on polar bears of any activities between now and June 30, 2008, will be negligible due to the existing regulatory restrictions of the Marine Mammal Protection Act (MMPA), which apply to polar bears. The MMPA prohibits any take, including incidental take, unless that take is exempt or has been authorized under the statute. Incidental take of polar bears caused by activities other than commercial fishing cannot be authorized unless the Service finds that any take that is likely to occur will have no more than a negligible impact on the species and will not have an unmitigable adverse impact on the availability of the species for subsistence uses (16 U.S.C. § 1371(a)(5)).

This Declaration is made pursuant to 28 U.S.C. § 1746. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed in Washington, D.C., on this __16__ day of April 2008.


_____
Lyle Laverty
Assistant Secretary for Fish and Wildlife and Parks

**EXHIBIT 2**

LEXSEE

**WESTERN WATERSHEDS PROJECT, Plaintiff, v. JEFFREY FOSS, Supervisor, Snake River Office, USFWS; U.S. FISH AND WILDLIFE SERVICE, and GALE NORTON, Secretary of the Department of the Interior, Defendants, JAMES E. RISCH, OFFICE OF SPECIES CONSERVATION, and JAMES L. CASWELL, Defendant-Intervenors**

**CASE NO. CV 04-168-MHW**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO**

*2006 U.S. Dist. LEXIS 73577*

**October 4, 2006, Decided**

**PRIOR HISTORY:** *Western Watersheds Project v. Foss, 2005 U.S. Dist. LEXIS 45753 (D. Idaho, Aug. 19, 2005)*

**COUNSEL:** [*1] For Western Watersheds Project, Plaintiff: Laurence J Lucas, Law Office of Laurence J. Lucas, Boise, ID; Todd C Tucci, ADVOCATES FOR THE WEST, Boise, ID.

For Jeffrey Foss, Supervisor, Snake River Office, USFWS, Fish and Wildlife Service, United States, Gale Norton, Secretary of the Department of the Interior, Defendant: Meredith L Flax, US Department of Justice/ENRD, Wildlife & Marine Resources Section, Washington, DC.

For Governors Office of Species Conservation, James L Caswell, Dirk Kempthorne, Governor, Intervenor Defendant: David F Hensley, Office of Species Cons, Boise, ID.

**JUDGES:** Honorable Mikel H, Williams, United States Magistrate Judge.

**OPINION BY:** Honorable Mikel H, Williams

**OPINION**

**MEMORANDUM DECISION AND ORDER**

Currently pending before the Court is Plaintiff's Motion to Enforce Memorandum Decision and Order (Docket No. 92), filed September 7, 2006. For the reasons that follow, the Motion will be granted.

**I.**

**Background**

Plaintiff, Western Watersheds Project ("Plaintiff), filed an action against Jeffrey Foss, Supervisor of the Snake River Field Office of the United States Fish and Wildlife Service, the United States Fish and Wildlife Service ("The Service"), [*2] and Gale Norton, the Secretary of the Department of the Interior, also collectively referred to as the "the Service" for declaratory and injunctive relief. Plaintiff was challenging the agency action that occurred on January 22, 2004, when The Service published its withdrawal of the proposed rule to list the slickspot peppergrass as endangered pursuant to the Endangered Species Act ("ESA"). *See 69 Fed. Reg. 3,094 (Jan. 22, 2004)*. On August 19, 2005, this Court entered a Memorandum Decision and Order ("August 2005 Order") granting summary judgment for the Plaintiff and reversing "the decision to withdraw the proposed rule, with directions that the case be remanded to the Secretary of the Department of Interior for reconsideration, in accordance with legal standards outlined in this opinion, the question whether a proposed rule listing the slickspot peppergrass as either threatened or endangered should be adopted."

Plaintiff brought this current motion to enforce this August 19, 2005 judgment and requests that the Court issue an order enforcing its Memorandum Decision and Order by directing the Service to finalize its listing rule within 30 days.

**II.**

**Plaintiffs** [*3] **Motion to Enforce** Memorandum Decision and Order

Plaintiff brought this Motion as over a year has passed since this Court issued its Memorandum Decision

and Order and the Service has failed to issue a final decision. Plaintiff urges that although the Court did not specify a date for the Service to issue its decision on whether a proposed rule listing the slickspot peppergrass as either endangered or threatened should be adopted, under *Section 4 of the ESA*, the Service must issue a final listing within one year after issuing a rule proposing to protect a species as threatened or endangered under the ESA. *See 16 U.S.C. § 1533(b)(6)(A).* [1] Plaintiff notes that the Service issued a proposed rule protecting the slickspot peppergrass in July 2002 and has since failed to comply with the ESA's one-year deadline for a final listing. Plaintiff asserts, at the least, the Service should have adopted a final listing rule within one year of the August 2005 Order. It also submits that the Service repeatedly advised Plaintiff that it was interpreting the August 2005 Order as imposing a one-year deadline for a final listing rule. Third Tucci Decl. PP 4-5. Additionally, [*4] Plaintiff wants the Court to require the Service to issue a final listing rule within 30 days and points out that the Service does not dispute that its staff has fully prepared a listing rule that can be published on very short notice.

1   *16 U.S.C. § 1533(b)(6)(A)* states:

> Within the one-year period beginning on the date on which general notice is published in accordance with paragraph 5(A)(I) regarding a proposed regulation, the Secretary shall publish in the Federal Register - (i) if a determination as to whether a species is an endangered species or a threatened species, or a revision of critical habit is involved, either - (I) a final regulation to implement such determination, (11) a final regulation to implement such revision or a finding that such revision should not be made, (IH) notice that such one-year period is being extended under subparagraph (B)(I), or (IV) notice that the proposed regulation is being withdrawn under subparagraph (B)(ii), together with the finding on which such withdrawal is based; or (ii) subject to subparagraph(c), if a designation of critical habitat is involved, either - (I) a final regulation to implement such designation, or (II) notice that such one-year period is being extended under such subparagraph.

[*5] In response, the Service asserts that it has indeed been complying with the Court's August 2005 Order by diligently working to issue a new final listing determination based on the "best scientific and commercial information available." *See 16 U.S.C. § 1533(b)(1)(A).* Since the Court's decision, the Service has solicited new data and scientific information on the slickspot peppergrass from interested parties to update its summary of relevant information on the species. The Service has also solicited public review and comment and peer review on the updated Best Available Biological Information ("BAI") document, completed a new analysis Under the Service's Policy for Evaluation of Conservation Efforts When Making Listing Decisions, convened a new expert panel, convened a new management panel, and developed a draft listing recommendation. *See* Declaration of Marshall P. Jones, Jr., "Marshall Decl.", PP 5-7. The Service now would like to open a comment period to give the public and interested parties the opportunity to review and comment on recent, new information that has not been subject to public review and comment previously. Marshall Decl. PP 8-9. The [*6] Service believes it can complete a new final listing determination by April 27, 2007. Marshall Decl. PP 9-11.

The Service maintains that the one-year deadline from *Section 4 of the ESA* does not apply to rulemaking conducted on remand. Plaintiff points out that the Service cites no authority for this proposition. It also asserts that the Court left the timeframe to the Service's discretion as it did not provide a date by which the Service had to complete the remand and therefore there is no violation of the August 2005 Order. The Service maintains that Plaintiff is under a mistaken belief that the Court's August 2005 Order mandated that the slickspot peppergrass be listed. The Service believes the Order only mandated that a new final listing determination be made, which is all it could do under the APA, because a court cannot direct the substance of an agency determination on remand. *See S. Prairie Constr. Co. v. Local No. 627,425 U.S. 800, 96 S. Ct. 1842, 48 L. Ed. 2d 382 (1976).* The Service points out that although the Court lacks discretion to direct the substantive decision on remand, the Court does have discretion as to whether to specify a date certain for completion of that decision and, if [*7] so, what is the proper timeframe within which the Service must make a new decision on remand. They do assert that if the Court is to issue a timeframe for completion, it must be reasonable and only done if there is substantial justification. [2] The Service maintains that if the Court does fashion a deadline for the agency action, it must apply a reasonableness standard in doing so due

2006 U.S. Dist. LEXIS 73577, *

to the reality of the Service's funding and workload limitations.

2   The case the Service uses to support this "substantial justification" standard involved a Federal Power Commission order and the court's determination that additional evidence was requisite for adequate review is not applicable to the facts at hand.

The Defendant-Intervenors in this case, the Governor of Idaho and the Governor's Office of Species Conservation ("Governor's Office"), support the Service's interpretation that a new status review is necessary to comply with the "best available" information mandate thereby reviving the decision-making process. It also [*8] submits that if the Service simply reconsidered the information upon which it relied in promulgating the 2002 proposed rule, without considering the recent additional information, a question of staleness would attach to the preexisting information. It contends that a determination following this remand period is necessary for interested parties to provide comment on the ultimate conclusions of the Service. Plaintiff maintains that the public, including the Governor's Office, has already had ample opportunity to review and comment on the existing science on slickspot peppergrass and the Service has now allowed public comment on the science surrounding this species on six occasions in the last four years.

The Governor's Office points out that should the Service decide to not to list the slickspot peppergrass as endangered or threatened after applying the five listing criteria [3] , then that decision could be judicially reviewed and, in the alternative, if a determination is reached based on those listing criteria, the APA and ESA require federal agencies to publish a proposed rule to "give interested persons an opportunity to participate in the rule making through submission of written [*9] data, views, or arguments with or without the opportunity for oral presentation" and granting Plaintiff's Motion to issue a final rule within 30 days would conflict with these requirements. *See* Marshall Decl. P 10. The Governor's Office maintains it has not had an opportunity to view or comment on the Service's conclusions based on the information and analysis contained in the new status review. Additionally, it points out that the Service's proposed timeline of April 2007 does not pose an imminent risk to the slickspot peppergrass. *See* Pl P 10 ("None of the seven scientists in the May 2006 expert panel regarding extinction risk indicated that they believe the species will go extinct in the next few years"). Plaintiff contends however that this 8-month delay will further imperil the slickspot peppergrass and seriously prejudice the interests of Plaintiff and other interested parties. As well, Plaintiff urges that the record shows that

the slickspot peppergrass population and habitat trends have worsened. Additionally, Plaintiff seeks immediate action so that there is time to allow the Service, the BLM, and federal grazing permitees to [*10] conduct an *ESA Section 7* consultation over the impacts of grazing and other activities on slickspot peppergrass, which will be required as soon as the plant is listed.

3    (1) The present or threatened destruction, modification, or curtailment of its habitat or range; (2) overutilization for commercial, recreational, scientific, or educational purposes; (3) diseases or predation; (4) the inadequacy of existing regulatory mechanisms; or (5) other natural or mandate factors affecting its continued existence. *16 U.S.C. § 1533(a)(1)(A)-(E).*

## III.

### Discussion

All the parties to this litigation realize that the Court has the inherent power to enforce its orders and decisions and thus there is no merit to the Service's argument that this Motion to Enforce should have been brought as a *Fed. R. Civ. Pro. Rule 60(b)* motion instead.

The Ninth Circuit has held that *Section 4 of the ESA*, which requires the Secretary to act on a proposed rule to list [*11] a species as endangered within one year of the date of its publication, is a mandatory, nondiscretionary duty which may be enforced by citizen suit. *Envt'l Def. Ctr. v. Babbitt, 73 F.3d 867, 871(9th Cir. 1995)*; *see 16 U.S.C. § 1533(b)(6)(A)*. When an entity governed by the Administrative Procedures Act ("APA") fails to comply with a statutorily imposed absolute deadline, then that agency has unlawfully withheld agency action and courts, upon proper application, must compel the agency to act. *Forest Guardians v. Babbitt, 174 F.3d 1178, 1190 (10th Cir. 1999).* [4] There is no discretion in this. *Id.* The agency must act by the deadline and if it does not, a reviewing court must compel the action. *Id.* "To hold otherwise would be an affront to our tradition of legislative supremacy and constitutionally separated powers." *Id.* In reviewing the legislative history behind *Section 4 of the ESA*, the Ninth Circuit has stated that the reasoning behind the 1982 amendments (which includes *Section 4's* one year deadline) was Congress's "concern about the lower number of additions to the list of endangered species." *Idaho Farm Bureau Fed'n v. Babbitt, 58 F.3d 1392, 1400 (9th Cir. 1995).* [*12] Thus, to expedite the listing process, Congress shortened the time frames for action, including the shortening of the allowable time for final action on *Section 4* proposals from two years to one year from date of proposal. *Id. at 1401.* This indicates the importance of having species listed in a timely manner.

4  *Cf. Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 124 S. Ct. 2373, 159 L. Ed. 2d 137 (2004)* (dealing with the BLM's discretion in how to achieve objective of managing off-road vehicle use in federal lands and stating "[t]he principal purpose of the APA limitations. . . is to protect agencies from undue judicial interference with their lawful discretion and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve.")

When courts have set a timetable for agency action, the Ninth Circuit has instructed them to follow a standard of reasonableness. *Conservation Council for Hawaii v. Babbitt, 24 F. Supp. 2d 1074, 1076 (D. Haw. 1998)* [*13] (imposing a deadline for determination of a designation or nondesignation of a critical habitat for 245 endangered or threatened Hawaiian plant species). Additionally, in following this "reasonableness" standard in setting a timeline, courts may exercise discretion and consider the Service's budgetary shortfalls, workload constraints, and other relevant factors. *Ctr. for Biological Diversity v. Norton, 212 F. Supp. 2d 1217, 1221 (S.D. Cal. 2002)* (imposing an appropriate timeline for new critical habitat determinations for eight different plant species). Although these previous two cases dealt with the designation of critical habitats, the Ninth Circuit has issued an injunction requiring the Service to complete listing determinations within twelve months as mandated under *Section 4* of the ESA. *Biodiversity Legal Found., v. Badgley, 390 F.3d 1166, 1178 (9th Cir. 2002)*. Additionally, in another case, a court found that where the Service has prepared a draft but had not yet published the twelve-month finding as required under *Section 4 of the ESA*, thirty days was sufficient for the Secretary of the Department of Interior to issue the twelve-month finding [*14] of whether listing was warranted Pursuant to *16 U.S.C. § 1533(b)(3)(B). Ctr. for Biological Diversity v. Norton, 163 F. Supp. 2d 1297 (D.N.M. 2001)*.

In regards to the "best available science" concerns and an additional public comment period, the Ninth Circuit has maintained that the public is "not entitled to review and comment on every piece of information utilized during rule making." *Kern County Farm Bureau v. Allen, 450 F.3d 1072, 1076 (9th Cir. 2006)* (finding that since there were no alleged inaccuracies in the new studies, the information was not hidden from public, and the information was just supplemental and not critical to the listing decision, there was no need to reopen the comment period). Agencies will often receive new information after a comment period and an agency should be encouraged to use this new information without thereby risking the requirement of a new comment period. *Id.* (quoting *BASF Wyandotte Corp. v. Costle, 598 F.2d 637, 644-45 (1st Cir. 1979)*).

## IV.

## Conclusion

It is clear that this Court has the power to enforce its own orders and has much discretion in choosing [*15] to do so. It is also clear under relevant caselaw that the Court may set a reasonable timetable for agency action. Under the ESA, the maximum time period allowable for decisions to be made, whether it be that petition action is warranted or that a species is endangered or threatened, is one year. *See 16 U.S.C. § 1533(b)(3)(B), § 1533(b)(6)(A)*. Congress shortened the deadline for listing a species as endangered or threatened in order to encourage and expedite the listing process. It has been over a year since this Court issued its Memorandum Decision and Order ordering the Service to issue a final listing determination and over four years since the Service issued a proposed rule on the slickspot peppergrass. There has been sufficient time for the Service to issue its final listing determination. Additionally, there has been comment on the science surrounding the slickspot peppergrass six times in the last four years. The Court orders the Defendants to issue a final listing determination within ninety (90) days from the date of this Order, or by January 4, 2007. No extensions of this deadline will be granted. This will allow sufficient [*16] time for any further actions the Service wishes to conduct and help to avoid subsequent litigation on procedural matters. As well, it will provide for a determination to be in effect prior to the beginning of the next grazing season and allow for necessary consultation under the ESA. The Court finds ninety (90) days is a reasonable timeframe in which the Defendants can comply with the Court's order.

## ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED** that:

1) Plaintiff's Motion to Enforce the August 19, 2005 Memorandum Decision and Order (Docket No. 92), filed September 7, 2006, is **GRANTED.**

2) Defendants must issue a final listing determination on the slickspot peppergrass by January 4, 2007.

DATED: October 4, 2006

Honorable Mikel H, Williams

United States Magistrate Judge

**EXHIBIT 3**

LEXSEE 1992 US DIST LEXIS 14645

**MARBLED MURRELET (BRACHYRAMPHUS MARMORATUS); THE PIL-CHUCK AUDUBON SOCIETY; THE PORTLAND AUDUBON SOCIETY; THE NORTH CASCADES AUDUBON SOCIETY; THE CAPE ARAGO AUDUBON SOCIETY; and THE REDWOOD REGION AUDUBON SOCIETY, Plaintiffs, v. MANUEL LUJAN, in his official capacity as SECRETARY OF THE INTERIOR; JOHN F. TURNER, in his official capacity as DIRECTOR OF THE UNITED STATES FISH AND WILDLIFE SERVICE; MARVIN PLENART, in his official capacity as REGIONAL DIRECTOR OF THE UNITED STATES FISH AND WILDLIFE SERVICE; and THE UNITED STATES FISH AND WILDLIFE SER-VICE, Defendants.**

**No. C91-522WDR**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON, SEATTLE DIVISION**

*1992 U.S. Dist. LEXIS 14645*

**September 15, 1992, Decided
September 15, 1992, Filed; September 16, 1992, Entered**

**COUNSEL:** [*1] For MARBLED MURRELET (BRACHYRAMPHUS MARMORATUS), PILCHUCK AUDUBON SOCIETY, PORTLAND AUDUBON SOCIETY, NORTH CASCADES AUDUBON SOCIETY, CAPE ARAGO AUDUBON SOCIETY, REDWOOD REGION AUDUBON SOCIETY, OREGON NATU-RAL RESOURCES COUNCIL, plaintiffs: Victor M Sher, 343-7340, SIERRA CLUB LEGAL DEFENSE FUND, 203 Hoge Building, 705 Second Avenue, Seattle, WA 98104-1711, 343-7340.

For MANUEL LUJAN, in his official capacity as Secre-tary of the Interior, JOHN F TURNER, in his official capacity as Director of The United States Fish and Wild-life Service, MARVIN PLENART, in his official capac-ity as Regional Director of the United States Fish and Wildlife Service, UNITED STATES FISH AND WILD-LIFE SERVICE, defendants: Brian C Kipnis, 442-7970, U. S. ATTORNEY'S OFFICE, 800 5th Ave., 3600 Sea-first 5th Ave. Plaza, Seattle, WA 98104, 553-7970. Rich-ard B Stewart, 202-633-4114, U. S. DEPARTMENT OF JUSTICE, Environment and Natural Resources Div., P.O. Box 7611, Ben Franklin Station, Washington, DC 20044-7611, 202-514-1684. Diane M Connolly, 202-724-6600, Christiana P Perry, 202-272-6496, U. S. DE-PARTMENT OF JUSTICE, Land and Natural Resources Division, P. O. Box 7369, Benjamin Franklin Station, Washington, DC [*2] 20044-7369, 202-272-4463.

For HOH RIVER TIMBER CO, intervenor-defendant: Peter McNaughton Vial, CULP, GUTERSON & GRADER, 600 University St., 27th Floor One Union Square, Seattle, WA 98101-3143, 624-7141.

**JUDGES:** ROTHSTEIN

**OPINION BY:** BARBARA J. ROTHSTEIN

**OPINION**

ORDER GRANTING IN PART PLAINTIFFS' SECOND MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the court on plain-tiffs' second motion for summary judgment. Having re-viewed the motion together with all documents filed in support and in opposition including the administrative record, having heard oral argument, and being fully ad-vised, the court GRANTS plaintiffs' motion to the fol-lowing extent:

The court finds that defendant Secretary of the Inte-rior's Notice of Six-Month Extension regarding his deci-sion on whether to list the marbled murrelet under the Endangered Species Act ("ESA"), *16 U.S.C. § 1533*, does not comply with the requirements of the Act in that the Secretary has not established the existence of any "substantial disagreement regarding the sufficiency or accuracy of the available data relevent to the determina-tion . . . concerned." *16 U.S.C. § 1533(b)(6)(B)(i)*. For

the same reason, the Secretary's [*3] decision to file the Notice of Six-Month Extension constitutes an arbitrary and capricious agency action in violation of the Administrative Procedures Act ("APA"), *5 U.S.C. § 706.*

Therefore, the Secretary was legally bound by the ESA, *16 U.S.C. § 1533(b)(6)(A)*, to make a determination on the status of the tri-state marbled murrelet population within one year of June 20, 1991, the date on which the proposed rule for listing the murrelet was published. *56 Fed. Reg. 28362 (June 20, 1991).*

The court accordingly orders the Secretary to carry out his congressionally mandated duty under the ESA, *16 U.S.C. § 1533(b)-(6)(A)*, to publish his determination in the Federal Register no later than noon, Eastern Standard Time, on Friday, September 18, 1992. The court notes that the Secretary's task should be assisted markedly by the fact that a final rule has already been drafted by the Region One Field Office of the United States Fish and Wildlife Service.

Counsel for defendants is directed to inform the court as soon as the Secretary has made a final determination. Any concerns or objections [*4] which the plain-tiffs may have about the Secretary's final determination may be raised before this court on a shortened time basis.

Finally, it was brought to the court's attention during oral argument that under the APA, *5 U.S.C. § 553(d)*, a rule is normally not effective until thirty days after the date of publication. However, an exception is available under *§ 553 (d)(3)* if "otherwise provided by the agency for good cause found and published with the rule." The court finds that, in view of the unlawful delay which has already occurred in complying with the ESA, a final determination by the Secretary to list the tri-state murrelet population as threatened should be accompanied by an agency waiver for good cause of the 30-day delay in the effective date of the determination.

The brevity of this Order is dictated by the time constraints under which the court is acting. An Order fully discussing the court's reasoning length will be issued shortly.

DATED at Seattle, Washington this 15th day of September, 1992.

BARBARA J. ROTHSTEIN

CHIEF UNITED STATES DISTRICT JUDGE