1   Richard Joseph Finn, State Bar No. 99659
    Richard J. Finn, State Bar No. 099659
2   Burnham Brown
    1901 Harrison Street, 11th Floor
3   Oakland, CA 94612
    Phone: (510) 835-6821
4   Fax: (510) 835-6666
    Email: rfinn@burnhambrown.com

5   Michael A. Oropallo
    Hiscock & Barclay LLP
6   300 South State Street
    Syracuse, New York 13202-2078
7   Phone: (315) 425-2831
    Fax: (315) 703-7367
8   Email: moropallo@hiscockbarclay.com

9   John J. Jackson
    Conservation Force
10  3240 S I-10 Service Road W.
    Suite 200
11  Metairie, LA 70001
    Phone: (504) 837-1233
12  Fax: (504) 837-1145
    Email: jjj@conservationforce.org

13  Attorneys for Intervenors
    CONSERVATION FORCE

14

15          UNITED STATES DISTRICT COURT FOR THE

16          NORTHERN DISTRICT OF CALIFORNIA

17                  OAKLAND DIVISION

18

| | |
|---|---|
| 19  CENTER FOR BIOLOGICAL DIVERSITY, a non-profit corporation, NATURAL RESOURCES DEFENSE COUNCIL, a non-profit corporation, and GREENPEACE, INC., a non-profit corporation, | No. C-08-1339-CW |
| 21 | **INTERVENOR CONSERVATION FORCE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR INTERVENTION** |
| 22          Plaintiffs, | |
| 23  v. | |
| 24  DIRK KEMPTHORNE, United States Secretary of the Interior and UNITED | Complaint Filed: March 10, 2008 |
| 25  STATES FISH AND WILDLIFE SERVICE; | |
| 26          Defendants. | |

27  ///

28

## I.    PRELIMINARY STATEMENT

1.    Conservation Force, along with its supporting organizations, and specific individuals that will be adversely affected by this action ("Intervenors"), move this Court for the reasons that follow, to intervene and participate in this action, including the recently filed motion for summary judgment.  The petitioners, the Center for Biological Diversity ("CBD"), Natural Resources Defense Counsel ("NRDC") and Greenpeace, Inc. ("Greenpeace")(collectively referred to as "Petitioners") filed this suit on March 10, 2008 against Dirk Kempthorne, the Secretary of the United States Department of the Interior ("Secretary") and the United States Fish & Wildlife Service ("USFWS" or "Service")(collectively referred to as "Defendants"), seeking to mandate a listing of the Polar Bear under the Endangered Species Act ("ESA"), due to the Service's failure to comply with certain time frames contained in the ESA.

2.    This issue of "climate change," its existence, cause, and potential impacts have been the subject of great debate among the world's foremost authorities.  The Polar Bear has been used as an icon for certain organizations causes and in an attempt to garner sympathy for its suppositions.  In addition to being directly affected by the proposed listing, in the form of a denial of due process, and a deprivation of their property, Intervenors seek to protect their rights and set the record straight.

3.    Intervenors further submit that the difficulty the Service has had in reaching a decision on whether to list the species, is the widely divergent scientific data, evidence, and opinion, that is in a constant state of flux.   For example, many of the assumptions upon which Petitioners' opinions are based, have been eviscerated by falling temperatures and increased ice thickness during the winter of 2007-2008.  Suffice it to say, listing a species on such tenuous theories, with significant potential impacts on many industries and segments of the human population, with limited ability to reverse such a listing, is premature.  The ESA's legislative history

INTERVENORS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION    NO C-08-1339-CW.
FOR INTERVENTION

suggests a listing should be denied under such circumstances, at least until consensus is reached in the scientific community on both impact and redressability.

4.    More significantly, Petitioners' recently filed a motion for summary judgment seeks to void the necessary administrative and procedural safeguards in both the ESA and the Administrative Procedure Act ("APA"), that allow persons adversely affected by an ESA listing a right to due process of law, by seeking to make any listing of the polar bear effective immediately instead of the mandatory thirty day period before the listing becomes effective.

5.    Intervenors would be irreparably harmed and prejudiced by such relief if granted. Intervenors include individuals whose livelihood depend upon the lawful harvest of polar bears in regions of sustained and/or increasing populations.  Intervenors include archers and hunters who have lawfully expended significant sums in reliance upon the current state of the law, and who have submitted the requisite applications to the Service in order to import their lawfully harvested trophies.  If Petitioner's relief is granted, these Intervenors, who have relied to their potential detriment on the ESA as written, will be deprived of their property and rights without due process of law and will be irreparably harmed.

6.    Suffice it to say, Intervenors have a legally cognizable interest in this action, and for the reasons that follow, are entitled to intervention as a matter of law.

## II.    BACKGROUND

7.    This action is in its infancy.  It was filed on March 10, 2008, Defendants have yet to file a responsive pleading, and Petitioners have recently filed a motion for summary judgment that is returnable on May 8, 2008.  In general terms, the motion seeks, as a matter of law, to compel the Secretary and/or USFWS, to "publish in the Federal Register a final listing determination for the polar bear within seven (7) days of this (the) Order."

8.    The motion also seeks the extraordinary and *ultra vires* relief of eliminating the APA and ESA's procedural safeguards by making the listing "effective immediately upon

3

publication in the Federal Registered," rather than following the usual statutory 30 day period following publication as mandated by the ESA and APA. Intervenors should be permitted to raise these and other issues in this action, and in the pending motion, to protect their rights and property interests. Intervenors are the persons that the ESA and APA deadlines were intended to protect, and will be irreparably harmed by any deviation from these mandatory provisions.

9.     These fixed deadlines were adopted after "oversight hearings" during the 1980s that explicitly afford protection to the stakeholders affected by the uncertainty of an ESA listing, including individuals such as the U.S. hunters, brokers, taxidermists, wildlife managers, and Inuits, in this instance, among others.

10.     Based upon Petitioners own logic, and a careful review of the ESA and its legislative history and intent, if anything, the proposed listing of the polar bear should be dismissed as a *de facto* withdrawal of the petition, as the evidence upon which it is based is lacking, inaccurate, incomplete and unsettled, thus making a decision on listing premature.

**III.     DISPUTED ALLEGATIONS OF FACT**

11.     Inasmuch as neither the Secretary or Service have to date responded to the Complaint, nor have they yet responded to the recently filed summary judgment motion, Intervenors take issue with at least some of the factual allegations contained in Petitioners' Complaint and summary judgment motion, and would like to note some of them here.

12.     For example, Petitioners state polar bear are "completely dependant upon Arctic sea ice for survival." Such a statement is misleading. Only summer sea ice is at issue here, not year-round ice, and some healthy and abundant populations have lived for centuries without summer ice, such as those in the Davis Strait.

13.     Another is a half-truth. Petitioners correctly state that the first documented "changes in polar bear parameters such as declining body condition, lowered reproductive rates, and reduced cub survival" started in the late 1980s. However, and because it would harm their

INTERVENORS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION     NO C-08-1339-CW.
FOR INTERVENTION

tenuous theory, they then incorrectly state it was "attributed…to climate warming and predicted that they would ultimately lead to population declines." In reality, the late 1980s was a period of extreme cold. Scientists actually attributed the change in bear characteristics to the weather being *too cold* and/or to an overpopulation of the species (density), not "climate warming."

14.     Petitioners also repeatedly state that "global warming" and "ice melt" are occurring at a more drastic rate than the models projected. However, the record (such record keeping only started in 1980) tells a different story, of which Petitioners are well aware. The purported "record" ice melt of 2007 that Petitioners so dramatically highlight, was *not* due to warming *per se*. According to NASA, the record melt was due to a weather front that blew off the cloud cover, and held it off and exposed the ice to direct sunlight, longer than is normal. A modest understanding of the "greenhouse effect," that forms the basis for Petitioners' "global warming" panic, would lead one to expect an increase in cloud cover over the Arctic, not the opposite.

15.     Petitioners also neglect to point out that the Arctic refroze earlier than normal this winter, that temperatures are now colder than average, the ice has refrozen, and now exceeds the three year average ice extent by 4 percent.

## IV.  INTERVENORS

### A.  Conservation Force

16.     Intervenor Conservation Force is a nonprofit 501(c)(3) foundation formed for the purpose of wildlife conservation, related education and wildlife research. It advocates and represents hunters and their conservation interests, particularly concerning the polar bear. Its name stands for the popular belief in the American and international scientific and professional wildlife management community that the sustainable use of wildlife, most particularly recreational hunting, has been the foremost force for wildlife and habitat conservation for over a century. Hunters are the founders and funders of the most significant wildlife conservation developments of the past century. No one contributes more than sportsmen and women for the

5

conservation of wildlife and habitat, nor has anyone contributed more to the conservation of the polar bear that today is at record high numbers.

17.    Conservation Force has wildlife conservation projects around the world to conserve, manage and protect species that are listed on the ESA and CITES.  Its leaders and officers have been participants in the ESA and CITES process since the inception of the ESA and CITES.  It provides supportive services to over 160 sportsmen's conservation organizations that in turn support it in a concerted effort to propagate and perpetuate all game animals, particularly those at risk and listed on CITES and/or the ESA, and the polar bear.  Most of its supporting organizations are committed to polar bear conservation and the proper implementation of the ESA regarding those polar bear, many of which organizations have invested heavily in polar bear conservation, including but not limited to Dallas Safari Club, Houston Safari Club, Shikar Safari Club, Grand Slam/OVIS, Foundation for North American Wild Sheep, National Taxidermists Association, African Safari Club of Florida, the North American Bear Foundation, Dallas Ecological Foundation, the International Council for Game and Wildlife Conservation, the Guide Outfitters Association of British Columbia, the Canadian Federation of Outfitter.

18.    Conservation Force is committed to and is directly participating in the conservation of polar bear.  Its officers pioneered the U.S. importation of polar bear hunting trophies that has been the principle incentive and source of funding for polar bear conservation in the Northwestern Territories and Nunavut.  Conservation Force has also issued comprehensive comments opposing the polar bear listing in issue.  Conservation Force intervenes in its own capacity and as a representative of American polar bear hunters and its supporting organizations and conservation partners.  Most of the U.S. hunters that have hunted this spring season for polar bear have consulted Conservation Force as have the Inuit community leaders,

hunting/outfitting brokers and others dependent upon polar bear hunting as a livelihood, conservation incentive, and funding from the hunts for conservation of the bear.

19.    Conservation Force advised all parties in interest that they would get 30 days published notice before any listing became effective and know for a fact that those advised have relied upon that notice to conduct their affairs.  Those that have consulted Conservation Force directly and read Conservation Force's public advisories have been informed that they would have a 30 day notice before any listing was made effective.

**B.    Mike Adams, DDS**

20.    Intervenor Mike Adams has been supporting the polar bear conservation activities of Conservation Force for over a decade and is a supporting member.  After years of planning, he went polar bear hunting in April 2008 at a cost exceeding $40,000.  His trophy import permit for his polar bear is being processed by the USF&WS permitting office at this time.  If the bear is listed before the permit is approved and the final rule is made effective immediately rather than 30 days thereafter, he will not be able to import the trophy that has cost him so much and means so very much to him.  He risked his life and limbs hunting by dog sled to get his bear in a population that the recent USGS Report concludes has a had stable population for over a decade.  He will be deprived of his lawfully acquired property if the bear is listed and the 30-day notice period upon which he relied is revoked.  He has relied upon the rule of law that there would be a 30-day notice before the effective date of any listing as did his Inuit outfitter and guides that make their livelihoods from the hunt.

**C.    Timothy Decker**

21.    Intervenor Timothy Decker lawfully participated in a successful quest for polar bear in the Spring of 2008.  He has applied for an importation permit for his trophy, and will be

NO C-08-1339-CW

irreparably harmed by a listing of the polar bear, and/or a deviation from the ESA's 30 day notice provision before any listing becomes effective.

### D.    Joseph Verni

22.    Intervenor Joeseph Verni is the owner of a Montreal based booking agency who built his business and reputation largely, although not exclusively around a traditional polar bear hunting expeditions in several Arctic communities including Clyde River , Pond Inlet , Coral harbor and Arctic Bay . His business and those similarly situated will be irreparably harmed by the polar bear listing.

### E.    Pat Frederick

23.    Intervenor Pat Frederick is a travel agency specializing in hunting and fishing in Canada.

The 30 day prior notice before the rule comes into effect is very important to the Inuit village in Canada's Arctic, including the livelihood of the hunters and trappers that rely on the regulated sport hunting of  Polar Bear.

24.    The 30 day notice is also a major factor for his company and his livelihood.

Many of his clients rely on the original wording of the government study on the Polar Bear . This point is on the original study paper.  All of the USA citizens arranged their trip knowing this.

25.    This 30 prior notice is the major factor in this spring hunt for the Inuit Village, the sport hunter, his company, along with all the spin off to related business and people working/involved in the hunting tour.  If this was to be changed at the last minute it would be a major hardship on the Inuit Village and all concerned.

INTERVENORS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION    NO C-08-1339-CW.
FOR INTERVENTION

26.    Due to the cutbacks in the USFW and the process of acquiring the Polar Bear permits, the 30 day prior notice should be increased to make sure all legal sport hunted Polar Bears harvested in Canada will be allowed to be imported into the USA.

**F.    Steve Horniday**

27.    Intervenor Steve Horniday lawfully participated in a successful quest for polar bear in the Spring of 2008. He has applied for an importation permit for his trophy, and will be irreparably harmed by a listing of the polar bear, and/or a deviation from the ESA's 30 day notice provision before any listing becomes effective.

**G.    William Allyn Ladd**

28.    Intervenor William Allyn Ladd lawfully participated in a successful quest for polar bear in the Spring of 2008. He has applied for an importation permit for his trophy, and will be irreparably harmed by a listing of the polar bear, and/or a deviation from the ESA's 30 day notice provision before any listing becomes effective.

**H.    Mark Beeler**

29.    Intervenor Mark Beeler lawfully participated in a successful quest for polar bear in the Spring of 2008. He has applied for an importation permit for his trophy, and will be irreparably harmed by a listing of the polar bear, and/or a deviation from the ESA's 30 day notice provision before any listing becomes effective.

**I.    Thomas Kooistra**

30.    Intervenor Thomas Kooistra lawfully participated in a successful quest for polar bear in the Spring of 2008. He has applied for an importation permit for his trophy, and will be irreparably harmed by a listing of the polar bear, and/or a deviation from the ESA's 30 day notice provision before any listing becomes effective.

**J.    Tom Moore**

31.    Intervenor Tom Moore lawfully participated in a successful quest for polar bear in the Spring of 2008. He has applied for an importation permit for his trophy, and will be irreparably harmed by a listing of the polar bear, and/or a deviation from the ESA's 30 day notice provision before any listing becomes effective.

**K.    Dave Rutledge**

32.    Intervenor David Rutledge lawfully participated in a successful quest for polar bear in the Spring of 2008. He has applied for an importation permit for his trophy, and will be irreparably harmed by a listing of the polar bear, and/or a deviation from the ESA's 30 day notice provision before any listing becomes effective.

**L.    Randy Ulmer**

33.    Intervenor Randy Ulmer lawfully participated in a successful quest for polar bear in the Spring of 2008. He has applied for an importation permit for his trophy, and will be irreparably harmed by a listing of the polar bear, and/or a deviation from the ESA's 30 day notice provision before any listing becomes effective.

**V.    DISCUSSION**

**A.    MOVANTS ARE ENTITLED TO INTERVENE OF RIGHT.**

34.    Federal Rule of Civil Procedure 24(a) provides:

> Upon timely application," a court shall permit intervention of right where the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

FED. R. CIV. P. 24(a)(2). *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir.2003)[1].

35.    To intervene as of right under FRCP 24, the applicant must claim an interest the protection of which may, as a practical matter, will be impaired or impeded if the lawsuit proceeds without him.  The court applies a four part test under this rule:

        (1)    the motion must be timely ;

        (2)    the applicant must claim a significantly protectable interest relating to the property or transaction which is the subject of the action;

        (3)    the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and

        (4)    the applicant's interest must be inadequately represented by the parties to the action.

*Id.*  The Ninth Circuit applies this test broadly in favor of intervention. *United States v. City of Los Angeles*, 288 F.3d 391, 397-398 (9th Cir. 2002).

36.    A court considers three criteria in determining whether a motion to intervene is timely: (1) the stage of the proceedings, (2) whether the parties would be prejudiced, and (3) the reason for any delay in moving to intervene.  *See Northwest Forest Resource Council v. Glickman*, 82 F. 3d 825, 836-37 (9th Cir. 1996); *Idaho Farm Bureau Fed. v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995).

37.    As demonstrated below, Intervenors readily satisfy this test.

      **a.    The Motion To Intervene Is Timely.**

---

[1] Conservation Force was an intervenor in this case, and represented the NRD of Mongolia who was denied intervenor status at the district court level.

INTERVENORS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION      NO C-08-1339-CW. FOR INTERVENTION

38.    The timeliness of a motion to intervene "is to be determined from all the circumstances, "*NAACP v. New York*, 413 U.S. 345, 366 (1973), including "time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case," *AT&T*, 642 F.2d at 1295; *see also NRDC v. Costle*, 561 F.2d at 907. The determination of timeliness is within "the sound discretion" of the district court, "but a court should be more reluctant to refuse when," as here, "intervention is sought of right." *Williams & Humbert, Ltd. v. W. & H. Trademarks, Ltd.*, 840 F.2d 72, 74-75 (D.C. Cir. 1988).

39.    Intervenors' motion for intervention is plainly timely. As of the date of this motion, neither the Secretary nor the Service have responded to the complaint, Petitioner has only recently filed a motion for summary judgment, and the Court has issued no substantive rulings. *Cf. Admiral Ins. Co. v. National Casualty Co.*, 137 F.R.D. 176, 177 (D.D.C. 1991) (finding intervention timely where the "major substantive issues in th[e] case ha[d] not yet been argued or resolved"). Consequently, Intervenors' motion cannot be considered untimely.

      **b.    Intervenors Claim an Interest Relating To the Subject of this Action.**

40.    Rule 24(a)(2)'s "interest" requirement is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981) (citation omitted). *Accord, NRDC v. Costle*, 561 F.2d 904, 910-11 (D.C. Cir. 1977). The applicant must establish that the interest asserted is protectable under some law, and there is a relationship between the protected interest and the claims at issue. *City of Los Angeles*, 228 F.3d at 398.

41.    As the D.C. Circuit has observed, "[t]he right of intervention conferred by Rule 24 implements the basic jurisprudential assumption that the interest of justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard." *Hodgson*

INTERVENORS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION        NO C-08-1339-CW.
FOR INTERVENTION

*v. United Mine Workers*, 473 F.2d 118, 130 (D.C. Cir. 1972). Thus, Rule 24(a)'s "interest" test "has been interpreted in broad terms." *NRDC v. EPA*, 99 F.R.D. 607, 609 (D.D.C. 1983).

42.    Intervenors, a nonprofit organization, businesses and individuals, whose interests and property will be adversely effected by the relief demanded by Petitioners, satisfy the interest test for at least three reasons.

43.    First, Conservation Force and its supporting organizations are committed to and are directly participating in the conservation of polar bear. Conservation Force officers pioneered the U.S. importation of polar bear hunting trophies that has been the principle incentive and source of funding for polar bear conservation in the Northwestern Territories and Nunavut. Conservation Force has also issued comprehensive comments opposing the polar bear listing in issue. Conservation Force intervenes in its own capacity and as a representative of American polar bear hunters and its supporting organizations and conservation partners. Most of the U.S. hunters that have hunted this spring season for polar bear have consulted Conservation Force as have the Inuit community leaders, hunting/outfitting brokers and others dependent upon polar bear hunting as a livelihood, conservation incentive, and funding from the hunts for conservation of the bear.

44.    Second, individual Intervenors have expended considerable sums to lawfully pursue polar bear, have successfully harvested their trophies, and have applied for their importation – all by lawful means.

45.    Third, Intervenors include businesses that represent those that will be significantly adversely affected by a listing of the polar bear.

46.    If this Court were to adopt Petitioners' contentions and request for relief, including the abandonment of mandatory procedural safeguards and due process, then Intervenors legal and property interests would be irreparably damaged. *See e.g., Idaho Farm Bureau Fed'n v. Babbit*,

INTERVENORS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION        NO C-08-1339-CW.
FOR INTERVENTION

58 F.3d 1392, 1397-98 (9th Cir. 1995) ("A public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported"); *see also NRDC v. EPA*, 99 F.R.D. at 609 (would-be Intervenors had sufficient interest where they benefited from a government decision that would be set aside if plaintiffs were successful).

47.    Given that Intervenors interests are sufficient to confer standing, they are necessarily also sufficient to warrant intervention. *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir.1998) ("Upjohn need not show anything more than that it has standing to sue in order to demonstrate the existence of a legally protected interest for purposes of Rule 24(a)."). *Accord Fund for Animals*, 322 F.3d at 735.

### c.    Intervenors' Interests May Be Impaired If They Are Not Permitted to Intervene in this Action.

48.    Concerning Rule 24(a)(2)'s impairment prong, the D.C. Circuit recently observed:

> Prior to 1966, Rule 24(a)(2) required the applicant to show that it "may be bound by a judgment in the action." Fed. R. Civ. P. 24(a)(2) (1966); *see* Fed. R. Civ. P. 24(a)(2) advisory committee's note on 1966 amendment; *Nuesse v. Camp*, 385 F.2d 694, 701 (D.C. Cir. 1967). But the 1966 amendments to Rule 24 eliminated that requirement and substituted the present language, which we have read "as looking to the 'practical consequences' of denying intervention, even where the possibility of future challenge to the regulation remain[s] available." *Natural Res. Def. Council*, 561 F.2d at 909 (quoting *Nuesse*, 385 F.2d at 702). Regardless of whether the NRD could reverse an unfavorable ruling by bringing a separate lawsuit, there is no question that the task of reestablishing the status quo if the Fund succeeds in this case will be difficult and burdensome. *See id.* at 910 ("[I]t is not enough to deny intervention under 24(a)(2) because applicants may vindicate their interests in some later, albeit more burden- some, litigation."). Moreover, as the NRD further argues, its loss of revenues during any interim period would be substantial and likely irreparable. *Cf. Mova Pharm.*, 140 F.3d at 1076 (holding that danger of loss of market share due to denial of a preliminary injunction satisfied the third Rule 24(a)(2) factor).

*Fund for Animals, Inc. v. Norton*, 322 F.3d 728 (D.C. Cir. 2003). For the reasons noted above, Intervenors satisfy this prong of the analysis.

**d.      Intervenors' Interests May Not Be Adequately Represented By Existing Parties to this Action.**

49.     In reviewing the question of whether an applicant's interests will be adequately presented by a party, the court must consider: whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; whether the present party is capable and willing to make such arguments; and whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect. *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996). The Supreme Court has ruled that this "adequate representation" requirement is satisfied if the applicant shows that "representation of his interest 'may be' inadequate; and that the burden of making that showing should be treated as minimal". *Trbovich v. United Mine Workers* 404 U.S. 528, 538 n.10 (1972) (citation omitted).

50.     Concerning the inadequate representation prong of Rule 24(a)(2), the D.C. Circuit recently observed, the Supreme Court has held that this "requirement of the Rule is satisfied if the applicant shows that representation of his interest **'may be'** inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). Citing *Trbovich*, we have described this requirement as "not onerous." *Dimond v. District of Colum- bia*, 792 F.2d 179, 192 (D.C. Cir. 1986); *see also Foster*, 655 F.2d at 1325; *American Tel. & Tel. Co.*, 642 F.2d at 1293 (stating that a petitioner " 'ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee' " (quoting 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1909 (1st ed. 1972))). Measured by that standard, we conclude that neither of the two groups of existing parties in this case - the federal defendants and the other intervenors - adequately represents the NRD's interests.[7] *Fund for Animals*, 322 F.3d at 735-36 (emphasis added).

INTERVENORS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION          NO C-08-1339-CW.
FOR INTERVENTION

51.     In particular, representation may be inadequate where the interests of the party seeking intervention and an existing party are "different," even if they are not "wholly 'adverse,'" *Nuesse,* 385 F.2d at 703, or where they are "similar but not identical," *United States v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1293 (D.C. Cir. 1980). Indeed, even where parties share broad strategic objectives, they may have differing interests and goals with respect to particular issues at stake in a given case, and those differences may support intervention. *Id.* at 1293; *NRDC v. Costle*, 561 F.2d at 912.

52.     As the D.C. Circuit recently noted, "we have often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals*, 322 F.3d at 736. Even where both the federal defendants and the would-be intervenor "agree that the FWS's current rules and practices are lawful." *Id*. at 736. As the *Fund for Animals* court recognized, the federal defendants would not give the proposed intervenor's concerns "the kind of primacy" that intervenor would give them. *Id.*   The court then concluded, "[i]t is ... not hard to imagine how the interests of the [proposed Intervenor] and those of the [federal defendants] might diverge during the course of litigation." *Id.*

53.     As with the divergent interests of the  Secretary and Service in *Fund for Animals*, their broader interests here prevent them from adequately representing Intervenors' specific interests in this case.

## VI.     ALTERNATIVELY, THIS COURT SHOULD GRANT INTERVENORS' PERMISSIVE INTERVENTION.

54.     Federal Rule of Civil Procedure 24(b) provides for permissive intervention, upon timely motion, "when an applicant's claim or defense and the main action have a question of law or fact in common." FED. R. CIV. P. 24(b)(2). In exercising its discretion to consider a motion for permissive intervention, "the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id*.   Permissive intervention to

16

litigate a claim on the merits under Rule 24(b) requires (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between movant's claim or defense and the main action. *See See Northwest Forest Resource Council v. Glickman*, 82 F. 3d 825, 839 (9th Cir. 1996).

55.    Intervenors meet the prerequisites for permissive intervention. First, as demonstrated above, their motion is timely, coming before any significant action has been taken in the case. Second, the arguments that Intervenors intend to raise share common questions of law and fact with the claims and defenses raised or asserted in Petitioners' complaint and motion for summary judgment.   Finally, allowing intervention will not unduly delay the litigation or prejudice the rights of existing parties, as this action has yet to progress beyond the initial stages.

56.    Moreover, in view of Intervenors' substantial interest and experience in the subject of this case, allowing them to intervene would assist the Court, and ensure all points of view are presented on this critical scientific and legal issues. *See Fund for Animals,* supra (Conservation Force and its supporting organizations helpful on ESA and importation issues). *See also NRDC v. Costle*, 561 F.2d at 913 (observing that a prospective intervenor's experience and expertise can contribute significantly to the "informed resolution[ ]" of questions before the court, and "serve as a vigorous and helpful supplement to [the government's] defense"); *Hodgson*, 473 F.2d at 130 (recognizing that "the interest of justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard"). Thus, if the Court does not grant Intervenors intervention of right, they respectfully request that the Court exercise its discretion to grant them permissive intervention.

**VII.    THE ESA'S LEGISLATIVE HISTORY COMPELS THE CURRENT PROPOSED LISTING BE DISMISSED.**

57.    During the Legislative "oversight hearings" that preceded the "Endangered Species Act Amendments of 1982" (S. 2309), House Report 97-567 noted the need for scientific evidence as support for a lsiting.  P.L 97-304 at p. 22.  In particular, noted where there is "substantial disagreement among specialists regarding the sufficiency or accuracy of the information concerning the status of a species" the proposed listing should be extended or withdrawn.  *Id.*  In further noting that many species on the list were "improperly listed," the report states:

> The listing of a species for emotional reasons or based on
> improper biological data is just as improper as not listing a species
> for economic reasons.

*Id.*

58.    Intervenors submit that insufficient scientific evidence exists for the extraordinary relief demanded by Petitioners, let alone to list the species.  Comments submitted by "specialists" are, at the very least, in "substantial disagreement regarding the sufficiency or accuracy of the information concerning the status of [the polar bear]."   Therefore, any listing is premature, and the petition should be dismissed.  *See* ESA at section 4(b)(6)(A, B)[2].  Intervenors argue that the time limitations in the ESA mandate that the failure to act within the statutory time frame warrants a dismissal of the petition, and the primary purpose for the 1982 Amendments to the ESA were to ***prevent*** the listing of species where "substantial disagreement" exists, not in listing more species as the *Idaho Farm Bureaus* court held.  *See* House Report 97-567 at p. 22 ("The listing of species for emotional reasons or based on improper biological data is … improper. … Thus, the Committee fully intends that the time frames for consideration of petitions *apply to delisting proposals* and the Secretary make final determinations on proposals to delist *within one year* of the date of proposal …")(emphasis added).

---

[2]  *Idaho Farm Bureau Federation v. Babbit*, 58 F.3d 1392 (9th Cir. 1995) does not preclude the Service from abandoning a petition to list after the statutory period ends.  It simply states that the Service was not precluded from listing the species after that time period ended.  Intervenors submit that because of the substantial disagreement over the scientific evidence, and the lack of consensus over the cause and status of any  climate change, let alone the

18

59.    Intervenors seek to present argument on this and other issues, and respectfully seek a determination of their status prior to holding a hearing, or issuing a decision, regarding Petitioners' pending motion for summary judgment.

## VIII.   CONCLUSION

In light of the foregoing, Inverners respectfully request that their motion be granted in its entirety, that this Court stay the currently pending motion for summary judgment in accordance with Local Rules 6.1, 7.1, and 7.2, and for such other and further r as to this Court may seem just, proper and equitable.

DATE:    April 17, 2008                    Respectfully Submitted,

By:  _____/s/_____

Richard Joseph Finn
Robert M. Bodzin
Burnham Brown
1901 Harrison Street, 11th Floor
Oakland, CA 94612
Phone:  (510) 835-6821
Fax:  (510) 835-6666
Email:  rfinn@burnhambrown.com

Michael A. Oropallo
Hiscock & Barclay LLP
300 South State Street
Syracuse, New York 13202-2078
Phone:  (315) 425-2831
Fax:  (315) 703-7367
Email:  moropallo@hiscockbarclay.com

John J. Jackson
Conservation Force
3240 S I-10 Service Road W.
Suite 200
Metairie, LA 70001
Phone:  (504) 837-1233
Fax:  (504) 837-1145
Email:  jjj@conservationforce.org

Attorneys for Intervenors

857748

polar bear population, any determination is premature.

INTERVENORS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION        NO C-08-1339-CW.
FOR INTERVENTION