J. Jeffries Goodwin, CASBN 099310
Goodwin Law Corporation
2300 Bell Executive Lane
Sacramento, CA 95825
Telephone: (916) 929-6000
Facsimile: (916) 929-5137
jjg@goodwinlawcorp.com

Douglas S. Burdin
D.C. Bar # 434107
Safari Club International
501 2nd Street N.E.
Washington, D. C. 20002
Telephone: (202) 543-8733
Facsimile: (202) 543-1205
dburdin@safariclub.org

Counsel for Safari Club International and
Safari Club International Foundation

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
(OAKLAND DIVISION)**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.* ) | Case No. 08-cv-1339 (CW) |
| ) | |
| Plaintiffs, ) | |
| ) | **AMICI CURIAE BRIEF OF SAFARI CLUB INTERNATIONAL AND SAFARI CLUB INTERNATIONAL FOUNDATION** |
| v. ) | |
| ) | |
| DIRK KEMPTHORNE, *et al.* ) | |
| ) | |
| Defendants, ) | |
| ) | |
| SAFARI CLUB INTERNATIONAL, SAFARI CLUB INTERNATIONAL FOUNDATION ) | |
| ) | |
| Amici Movants. ) | |
| _____) | |

1

## I.  INTRODUCTION

Safari Club International and Safari Club International Foundation ("SCI and SCIF"), by and through counsel, submit this *amici curiae* brief in support of the defendants, Dirk Kempthorne *et al.* ("Federal Defendants").  SCI and SCIF are international hunting and conservation organizations with longstanding interests in polar bear issues, including advocating in the 1990s for a provision in the Marine Mammal Protection Act, 16 U.S.C. §§ 1361-1417, that allows for the import of legally hunted polar bears from approved populations in Canada.  *Id.* § 1374(c)(5).[1]

Although this case involves a procedural challenge to a missed deadline for making a listing decision, the remedy that Plaintiffs seek would harm the interests of SCI and SCIF in a fully-considered listing decision and one that does not adversely affect SCI and SCIF's and SCI members' interests.  In short, the U.S. Fish and Wildlife Service should be given sufficient time to conclude this complex decision-making process.  Plaintiffs have not justified their call for the Court to order a final decision within one week of the hearing scheduled for May 8, 2008.  SCI and SCIF also wish to inform the Court of relevant statutory authority that bears on the Court's consideration of what remedy is appropriate here.

## II.  INTERESTS OF SCI AND SCIF

SCI is a nonprofit corporation incorporated in the State of Arizona, operating under § 501(c)(4) of the Internal Revenue Code, with principal offices and place of business in Tucson, Arizona.  Its membership includes approximately 53,000 individuals from the United States and many countries around the world.  Its missions are the conservation of wildlife, protection of the hunter, and education of the public concerning hunting and its use as a conservation tool.

---

[1] Members of SCI in the past have hunted polar bear in Canada and imported their trophy into the United States and have plans to do so in the future (if legally permitted).  According to the Federal Defendants, an Endangered Species Act ("ESA") listing will end these imports.

2

SCI carries out its conservation mission through its sister organization, Safari Club International Foundation. SCIF is a non-profit corporation, incorporated in the State of Nevada, operating under § 501(c)(3) of the Internal Revenue Code, with principal offices and place of business in Tucson, Arizona. Its missions are conservation of wildlife, education of the public concerning hunting and its use as a conservation tool, and humanitarian services. The conservation mission of SCIF is: (a) to support the conservation of the various species and populations of game animals and other wildlife and the habitats on which they depend, and (b) to demonstrate the importance of hunting as a conservation and management tool in the development, funding and operation of wildlife conservation programs. See Declaration of Kevin Anderson, ¶¶ 3-6, Exhibit 1 to the Motion/Memorandum in Support for *Amici* Status, filed concurrently with this Brief. SCI and SCIF are organizations that promote the principle and practice of sustainable use conservation. Anderson Decl. ¶ 4. Further information about SCI and SCIF's conservation activities is found in the Anderson Declaration, ¶¶ 5-8.

SCI and SCIF's and SCI members' interests include the sound management and conservation of polar bears and SCI members' ability to hunt polar bears and import trophies into the United States from Canada, as is currently allowed under the law. The sport hunting of polar bear in Canada, primarily by U.S. hunters, supports sustainable use conservation and proper management of this species.

## III.    ARGUMENT

### A.    The Court Has the Discretion to Consider the Appropriate Remedy Under the Circumstances

As even Plaintiffs appear to agree, this Court has discretion to determine what remedy to fashion. *See* Pls. Memo in Support at 14 ("The only issue remaining is how long the Court should give the Secretary to come into compliance with the law."). In a similar case, this Court allowed the

3

FWS time to make a proper decision under the circumstances. *Center for Biological Diversity v. Norton,* 208 F.Supp.2d 1044, 1050 (N.D. Cal. 2002); *see also Biodiversity Legal Foundation v. Norton* 285 F.Supp.2d 1, 16-17 (D.D.C. 2003) (allowing FWS to decide on a reasonable timetable for critical habitat designation); *Conservation Council for Hawaii v. Babbitt,* 24 F.Supp. 2d 1074, 1076 (D.Haw. 1998) ("In setting a timeline for agency action, the Ninth Circuit has instructed Courts to follow a standard of reasonableness."). The Federal Defendants have explained what that timetable should be.

**B.   Considering the Polar Bear's Situation, Plaintiffs Ask for an Unnecessarily Short Deadline to Impose on the Fish and Wildlife Service**

**1.   The Polar Bear Currently Enjoys High Population Numbers and is not "Poised" on the Brink of Extinction**

No one disputes that the current worldwide polar bear populations numbers between 20,000-25,000. Pls. Memo in Support of SJ at 4-5, citing 72 Fed. Reg. 1068. Despite alleged imperilment caused by climate change and overhunting, this number has increased from (roughly) estimated population numbers of 6,000-8,000 in the 1950-60s. Presumably to try to justify their request that the FWS be given only one week from the date of the hearing to issue a final decision, Plaintiffs paint a picture of a critically imperiled species, a picture that is not justified by the facts. According to Plaintiffs, the polar bear is "poised to become one of the first species to fall victim to global warming." Pls. Memo in Support at 1. Without support, Plaintiffs claim that it is increasingly likely that the polar bear's seasonal sea ice "will be gone in less than a decade." *Id.* Yet the FWS is considering whether the polar bear is threatened with extinction within the "foreseeable future," a period of time they claim is 45 years from now. Proposed Rule, 72 Fed. Reg. at 1095. If the polar

4

bear was on the brink of extinction, the FWS would be considering it for endangered status, not threatened status.[2]

Plaintiffs also assert that recent events involving the polar bear can be definitively attributed to climate change and are harbingers of things to come (again presumably in the near future).  For example, Plaintiffs claim that "Polar bears are drowning, starving, and even resorting to cannibalism as global warming transforms the Arctic."  *Id.* at 7, citing Proposed Rule, 72 Fed. Reg. at 1076.  But on page 1076 the FWS only discusses that such events are occurring in one population and presents one researchers view on the possible meaning of these events, but does not definitively claim that they are the result of "global warming transform[ing] the Arctic":

> Regehr et al. (2006, p. 27) indicate that these *anecdotal* observations, in combination with changes in survival of young and declines in size and weights reported above *suggest* mechanisms by which a changing sea ice environment can affect polar bear demographics and population status.  (Emphasis provided.)

No one can assert with any certainty that climate change caused these events or that they are indicative of imminent peril to the polar bear species or even of things to come.

The current status of the polar bear and the time horizon at issue in the listing decision argue against the Plaintiffs' request for a deadline one week from the date of the hearing.

### 2. Plaintiffs Overstate the Import and Conclusions of the USGS Reports

The United States Geological Survey ("USGS") reports that Plaintiffs discuss, Pls. Memo in Support at 8, did not conclude that worldwide populations *would be* reduced by 2/3 by 2050 (as is often reported in the media).  Instead, the USGS report on future population made *projections* based on uncertain (1) climate change models, (2) impacts to sea ice from any climate change, and (3) impacts to polar bears from any change to sea ice.  As discussed below, the computer model they used for making their prediction relied on the input of a "single polar bear expert," an approach the

---

[2] An "endangered species" is one "in danger of extinction"; a "threatened species" is one "likely to become an endangered species within the foreseeable future … ."  16 U.S.C. § 1532(6), (19).

authors admit is inadequate. They called for further research and modeling. While Plaintiffs quote the conclusion from the "Executive Summary" of all nine reports prepared by the USGS for public information, Pls. Memo in Support at 8, the author/scientists state their conclusions more precisely and much less definitively:

> Our *modeling suggests that realization* of the sea ice future which *is currently projected*, would mean loss of ~2/3 of the world's current polar bear population by mid-century. (Emphasis provided.)

"Forecasting the Range-wide Status of Polar Bears at Selected Times in the 21st Century," Amstrup et al., at 2 (2007) ("Forecasting Report") (emphasis provided).

The conclusion of another of the USGS Reports, "Uncertainty in Climate Model Projections of Arctic Sea Ice Decline: An Evaluation Relevant to Polar Bears," DeWeaver (2007) ("Uncertainty Report"),[3] highlights the presumptions made in the Forecasting Report and further undermines the overly simplistic statement of the Executive Summary the Plaintiffs cite. The Uncertainty Report addresses the uncertainty of the climate and sea ice models used in the USGS Reports. The Uncertainty Report confirms there is ample uncertainty surrounding this crucial underlying scientific information, for example:

> A key point in the discussion is that the inherent climate sensitivity of sea ice leads inevitably to uncertainty in simulations of sea ice decline. [page 1]
> …
> I describe the kinds of uncertainty inherent in climate models, particularly those uncertainties that directly affect the reliability of their projection of future Arctic sea ice conditions. [page 1]
> …
> A variety of simplifications are necessary for the relevant physical laws to be implemented as computer programs. [page 5]
> …
> Since tuning introduces arbitrary choices into climate models, and even into the same model when used at different resolutions, it constitutes a large source of uncertainty in climate model construction. [page 6]

---

[3] Both Reports are available at http://www.usgs.gov/newsroom/special/polar_bears/.

The modeling in the Forecasting Report not only relies on speculative sea-ice conditions at the 45, 75, and 100 year time points, but itself attempts to make predictions about the future of polar bears based on mathematical modeling that cannot replicate natural variable conditions in such a complex and incompletely understand system, and relies on interpretation of data, and the expert judgment of only one polar bear expert. *See* Forecasting Report at 16. The Forecasting Report acknowledges that using a single expert is undesirable and was done only because of the perceived deadline by which the FWS must make a final determination. *Id.* The report also acknowledges that the "Bayesian Network" model the authors devised is only a "prototype" that needs significant refinement. *Id.*

As discussed below, the publication and subsequent public comment on the nine USGS Reports and FWS's need to review the Reports and public comments provide another reason for the Court to exercise its discretion in favor of providing the FWS sufficient time to complete this complex rulemaking.

### C. Section 4(b)(6)(B)(i) of the ESA, While not Invoked by the Fish and Wildlife Service Here, Informs this Court's Exercise of its Discretion

A statutory provision authorizing the FWS to take up to an additional six months to make a final listing decision, while not expressly invoked here, helps guide the Court's determination of the proper remedy here:

> (i) If the Secretary finds with respect to a proposed regulation referred to in subparagraph (A)(i) that there is substantial disagreement regarding the sufficiency or accuracy of the available data relevant to the determination or revision concerned the Secretary may extend the one-year period specified in subparagraph (A) for not more than six months for purposes of soliciting additional data.

15 U.S.C. 1533(b)(6)(B)(i); *see also* 50 C.F.R. § 424.17(a). In commissioning the USGS Reports in early 2007, the Secretary of the Interior at least indicated that he believed that there were some questions about the sufficiency of the data and research on the polar bear as it pertained to the

listing decision. Those nine reports contain a total of 470 pages of dense scientific data and analysis. The FWS provided the public with an opportunity to comment, which ended on October 22, 2007, about 2½ months prior to the deadline for a final decision.

Although the Secretary did not specifically invoke this provision, for reasons unknown to SCI and SCIF, this statutory safety hatch does indicate that Congress recognized that in some circumstances, such as here, it was more important for the FWS to take the time necessary to reach a well-considered decision than for the statutory deadlines to be strictly met. If ever there was a case for following at least the spirit and intent of this provision to govern the issue at hand, this is it. The listing decision is incredibly complex, relying on studies predicting far into the future climate change, sea ice change, and impacts on a species that has survived past warmings. See discussion above on the USGS reports. The time horizon for the "foreseeable future" is 45 years. Nine extensive governmental reports were made available a few months before the final decision.

Invocation of this provision would have provided the FWS until June 9, 2008 to make a final decision. SCI and SCIF are not arguing that this provision governs this case, but it should help guide the Court's consideration of what remedy to apply.

**D.    The Polar Bear is Currently Protected by International and U.S. Laws**

The Polar Bear is currently protected under International treaty and the U.S. law that guard against short-term and long-term imperilment of the species. The treaty between the five nations where polar bears reside has lead to a currently stable population and ensures protection into the future. Agreement on the Conservation of Polar Bears, Nov. 15, 1973, T.I.A.S. No. 8409, 27 U.S.T. 3918 (Nov. 15, 1973). The 1973 Agreement prohibits unregulated hunting and outlaws the hunting of the bears from aircraft and icebreakers and obligates each nation to protect polar bear denning sites and migration routes, as well as to undertake, and share information on, polar bear research. This agreement and the resulting actions by the signatory nations were responsible for the recovery

of the polar bear.  *See generally* Donald C. Baur, Reconciling Polar Bear Protection Under United States and the International Agreement for the Conservation of Polar Bears, 2 Animal Law 9, 26-30 (1996).

In addition, the Marine Mammal Protection Act ("MMPA"), *see, e.g.,* 16 U.S.C. §§ 1361-1375, protects the species from take and overutilization.[4]  The MMPA and the 1973 Agreement will continue to protect the species until a listing decision is made.  While an ESA listing might provide additional protection (SCI and SCIF assert that these protections are not warranted or needed at this time), the existence of an extensive body of laws that have long protected the species undermines Plaintiffs' request for an Order requiring a listing decision within one week of the May 8, 2008 hearing.

## IV.    CONCLUSION

The Plaintiffs have not justified the unreasonably short deadline they seek from the Court. On behalf of the approximately 53,000 members of SCI around the world, SCI and SCIF respectfully request that this Court provide the Federal Defendants with a reasonable period of time in which to issue their final decision on the polar bear listing.

---

[4] The MMPA also allows for the import of sport-hunted polar bears from certain populations in Canada.  16 U.S.C. § 1374(c)(5).  The FWS must first determine that the population has "a sport-hunting program based on scientifically sound quotas ensuring maintenance of the affected population stock at a sustainable level."  U.S. Fish and Wildlife Service, Importing Your Sport-Hunted Polar Bears, http://www.fws.gov/international/pdf/polarbearsporthunted.pdf.  There are currently six such populations in Canada.  *Id.*  SCI and SCIF, and others, have submitted extensive comments documenting that sport hunting contributes to the conservation and management of polar bears by indirectly supporting sound management practices and research and directly contributing $1,000/permit to polar bear research under the MMPA.  16 U.S.C. § 1374(c)(5).  In other words, the listing of the polar bear could result in more harm to the species than good.

Dated: April 18 2008.

        Respectfully Submitted,

/s/ J. Jeffries Goodwin
J. Jeffries Goodwin
Goodwin Law Corporation
2300 Bell Executive Lane
Sacramento, CA 95825
Telephone:  (916) 929-6000
Facsimile:  (916) 929-5137
jjg@goodwinlawcorp.com

Douglas S. Burdin*
D.C. Bar # 434107
Safari Club International
501 2nd Street N.E.
Washington, D. C.  20002
Telephone: (202) 543-8733
Facsimile: (202) 543-1205
dburdin@safariclub.org

Anna M. Seidman
(D.C. Bar # 417091)
Safari Club International
501 2nd Street N.E.
Washington, D. C.  20002
Telephone: (202) 543-8733
Facsimile: (202) 543-1205
aseidman@safariclub.org

Counsel for
Safari Club International and
Safari Club International Foundation

*Pro Hac Vice Motion to be submitted.