J. Jeffries Goodwin, CASBN 099310
Goodwin Law Corporation
2300 Bell Executive Lane
Sacramento, CA 95825
Telephone:  (916) 929-6000
Facsimile:  (916) 929-5137
jjg@goodwinlawcorp.com

Douglas S. Burdin
Admitted Pro Hac Vice
D.C. Bar # 434107
Safari Club International
501 2nd Street N.E.
Washington, D. C.  20002
Telephone: (202) 543-8733
Facsimile: (202) 543-1205
dburdin@safariclub.org

Counsel for Safari Club International and
Safari Club International Foundation

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
(OAKLAND DIVISION)**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*  )<br>)<br>Plaintiffs,  )<br>)<br>v.  )<br>)<br>DIRK KEMPTHORNE, *et al.*  )<br>)<br>Defendants,  )<br>)<br>SAFARI CLUB INTERNATIONAL, SAFARI  )<br>CLUB INTERNATIONAL FOUNDATION  )<br>)<br>Amici Movants.  )<br>_____ ) | Case No. 08-cv-1339 (CW)<br><br>**SECOND AMICI CURIAE BRIEF OF SAFARI CLUB INTERNATIONAL AND SAFARI CLUB INTERNATIONAL FOUNDATION ON ISSUE OF RECONSIDERATION OF REMEDY ORDER** |

1

## I. INTRODUCTION

Safari Club International and Safari Club International Foundation ("SCI and SCIF"), by and through counsel, submit this Second *Amici Curiae* Brief in support of the Court reconsidering "effective immediately" aspect of its April 28, 2008 Order (Dkt. 35). SCI and SCIF are international hunting and conservation organizations with longstanding interests in polar bear issues, including advocating in the 1990s for a provision in the Marine Mammal Protection Act, 16 U.S.C. §§ 1361-1417, that allows for the import of legally hunted polar bears from approved populations in Canada. *Id.* § 1374(c)(5).[1] Further, as discussed in detail below and in the accompanying declarations, SCI members have a strong interest in being able to import polar bears legally hunted in Canada, an interest that will be lost if the U.S. Fish and Wildlife Service ("FWS") lists the polar bear under the Endangered Species Act ("ESA") on May 15, 2008, and that decision is made effective immediately, as ordered by this Court.

The Court can consider the issue of whether it has jurisdiction to order that any listing decision be made effective immediately, even if only raised by *amici curiae*, as the Court must consider its own jurisdiction *sua sponte*. The Court exceeded its jurisdiction in issuing this aspect of its April 28, 2008 Order on remedy. The relevant statute directs that substantive rules of agencies be made effective 30 days after publication unless the agency determines, for good cause found, to apply a shorter period. The important purposes underlying this statute are undermined, or at least not properly considered, when the Court makes the "good cause" determination in the first instance. In this situation, the Court also fails to accord proper deference to an agency decision already made. Finally, the Court's equitable powers to remedy

---

[1] Members of SCI in the past have hunted polar bear in Canada and imported their trophy into the United States and have plans to do so in the future (if legally permitted). According to the Federal Defendants, an Endangered Species Act ("ESA") listing will end these imports.

2

a violation of ESA Section 4 does not include the ability to contravene another federal statute and usurp a function statutorily assigned to an Executive Branch agency.

## II. INTERESTS OF SCI MEMBERS IN RECONSIDERATION OF REMEDY

As the attached declarations demonstrate, members of SCI will be harmed if the Court's Order that any listing decision be made effective immediately, as opposed to a date 30 or more days after the listing is published in the Federal Register (as determined by the FWS), remains in effect. Eleven members of SCI have applications filed with the FWS and recently noticed by the FWS in the Federal Register for a 30-day period. Declaration of Douglas S. Burdin, ¶ 3, citing Federal Register Notices. Four of those members provide declarations in support of this amici brief.[2] If the effective date of a listing is May 15, 2008, only one of eleven SCI members who have noticed applications will have any chance of importing his trophy (application noticed on April 7, 2008). The other ten, including the four declarants, will have no opportunity as the 30-day comment period will end after May 15, 2008. *Id.* ¶ 4.

These sportsmen participated in a legal activity in Canada, at a time when it was legal to import any polar bear hunted from an approved population, as is the case with all eleven SCI members.[3] They planned their trip in 2007 and expected to either know that a listing had occurred before their trip, in which case they could have cancelled their trip, or to have at least 30 days after any listing decision to import their trophy prior to the listing effective date. *See* Ladd Decl., ¶¶ 12-13; Martell, ¶¶ 12-13; Remillard Decl., ¶¶ 11-12; Steiner Decl., ¶¶ 12-13.

---

[2] Declaration of William Allyn Ladd; Declaration of James R. Martell; Declaration of Robert P. Remillard; Declaration of Larry R. Steiner.

[3] The MMPA only allows for the import of sport-hunted polar bears from certain populations in Canada. 16 U.S.C. § 1374(c)(5). The FWS must first determine that the population has "a sport-hunting program based on scientifically sound quotas ensuring maintenance of the affected population stock at a sustainable level." U.S. Fish and Wildlife Service, Importing Your Sport-Hunted Polar Bears, http://www.fws.gov/international/pdf/polarbearsporthunted.pdf. There are currently six such populations in Canada. *Id.*

3

Their fees paid to outfitters and other service providers in Canada supports polar bear conservation and management in a number of ways. Sport hunting contributes to the conservation and management of polar bears by indirectly supporting sound management practices and research by making the polar bear even more valuable to local native communities in Canada. The funds paid by U.S. hunters provide cash for these cash-strapped communities. As the harvest management scheme must be approved by the FWS for import permits to occur, the value of the polar bears give the local communities another reason to accept the scientific management and sustainable use principles the FWS requires. 16 U.S.C. § 1374(c)(5); *see also* Ladd Decl., ¶ 4, 7; Martell Decl., ¶¶ 4, 7; Remillard Decl., ¶¶ 4, 7; Steiner Decl., ¶¶ 4, 7. In addition, each import permit requires the payment of $1,000/permit to polar bear research and management in Alaska and Russia under the MMPA. 16 U.S.C. § 1374(c)(5).

These significant interests warrant the Court's consideration of this Brief and whether the Court exceeded its jurisdiction in ordering that any final listing decision be made effective immediately.

## III. ARGUMENT

### A. The Court Must Consider its Jurisdiction Even if Only *Amici Curiae* Raises the Issue

*Amici* SCI and SCIF can raise this jurisdictional challenge to the Court's ability to issue a remedy that requires that any listing decision published on May 15, 2008, be made effective immediately. *Amicus* can raise jurisdictional issues even if no party raises them, as the Court is under a *sua sponte* obligation to consider (or reconsider) its jurisdiction to take a particular action. As the Ninth Circuit has explained, the courts generally "do not consider on appeal an issue raised only by an amicus. [citations omitted] … [but] have reached the issue where it involves a jurisdictional question or touches upon an issue of federalism or comity that could be

4

considered sua sponte. *See Stone v. City and County of San Francisco,* 968 F.2d 850, 855-56 (9th Cir.1992) (federalism and comity), *cert. denied,* 506 U.S. 1081, 113 S.Ct. 1050, 122 L.Ed.2d 358 (1993); *Miller-Wohl Co. v. Commissioner of Labor and Industry,* 694 F.2d 203, 204 (9th Cir.1982) (jurisdiction); *Chadha v. INS,* 634 F.2d 408, 411-12 (9th Cir.1980) (same), *aff'd,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983)." *Swan v. Peterson,* 6 F.3d 1373, 1383 (9th Cir. 1993).

**B.    The Court Lacked Jurisdiction to Order any Listing Decision Be Made Effective Immediately**

While the Court had jurisdiction to order the FWS to issue the final decision on the polar bear listing by a date certain, it lacked jurisdiction to determine that "good cause" existed to make that decision effective immediately. The Administrative Procedure Act (APA") places the authority to determine whether to make a rule effectively immediately (or any period less than 30 days) squarely in the hands of the agency issuing the rule:

> (d) The required publication or service of a substantive rule shall be made not less than 30 days before its effective date, except--
>     (1) a substantive rule which grants or recognizes an exemption or relieves a restriction;
>     (2) interpretative rules and statements of policy; or
>     (3) as otherwise provided by the agency for good cause found and published with the rule.

5 U.S.C. § 553(d). By statute, the agency cannot make a "substantive rule" effective less than 30 days after it is published in the Federal Register, unless the "agency" finds good cause to make the rule's effective date something less than 30 days. Nothing in the statute supports that the Court can make this determination before the expert agency has had an opportunity to pass judgment on this issue.

The agency must conduct the analysis of whether the substantive rule should be effective immediately under Section 553(d). The Ninth Circuit has explained the purpose of the statute.

The legislative history of 5 U.S.C. § 553(d) indicates that the primary purpose of

5

> the provision was not to encourage prepublication dialogue, but rather to permit petitions for reconsideration and "to 'afford persons affected a reasonable time to prepare for the effective date of a rule or rules or to take other action which the issuance may prompt.'" *United States v. Gavrilovic,* 551 F.2d 1099, 1104 (8th Cir. 1977) (quoting S.Rep.No.752, 79th Cong., 1st Sess. 15 (1946); H. R. Rep. No.1980, 79th Cong., 2d Sess. 25 (1946)).

*Nance v. EPA,* 645 F.2d 701, 708-09 (9th Cir.), *cert. denied,* 454 U.S. 1081, 102 S.Ct. 635, 70 L.Ed.2d 615 (1981). The Tenth Circuit has explained further, citing *Nance*:

> "The legislative history also indicates the APA was not intended to unduly hamper agencies from making a rule effective immediately or at some time earlier than 30 days. However, proponents of the bill make clear that the good cause exception was not to be an 'escape clause which may be arbitrarily exercised ***but requires legitimate grounds supported in law and fact by the required finding***.' Legitimate grounds were defined as an 'urgency of conditions coupled with demonstrated and unavoidable limitations of time,' and that the primary consideration was to be the 'convenience or necessity of the people affected.'"
>
> *United States v. Gavrilovic,* 551 F.2d 1099, 1104 (8th Cir.1977) (footnotes omitted); *see also Nance v. EPA,* 645 F.2d 701, 708-09 (9th Cir.), *cert. denied,* 454 U.S. 1081, 102 S.Ct. 635, 70 L.Ed.2d 615 (1981). In determining whether to invoke the exception, the agency is "required to balance the necessity for immediate implementation against principles of fundamental fairness which require that all affected persons be afforded a reasonable time to prepare for the effective date of its ruling." *Gavrilovic,* 551 F.2d at 1105.

*Northern Arapahoe Tribe v. Hodel,* 808 F.2d 741, 752 (10th Cir. 1987) (agency's "good cause" determination upheld by court on review of agency action) (emphasis added).

Until the agency issues a final rule and decides whether or not there is "good cause" to make the rule effective immediately, the Court has no final agency action to review and the Court has no authority to issue a remedy for a statutory violation that has not yet occurred. Perhaps recognizing this fact, Plaintiffs did not include a claim for an immediate effective date in either their 60-day notice letter or their Complaint (Dkt. 1). Plaintiffs waited until briefing on a different and separate statutory violation to ask for relief involving the APA Section 553(d) good cause determination. In essence, by deciding that "good cause" existed to make any listing

decision effective immediately, the Court has issued an advisory opinion on what the Court directs the FWS to do if and when the FWS is faced with the need to make this "good cause" determination. The Federal judicial system does not, of course, permit such advisory opinions.

Another jurisdictional flaw with the Court ordering immediate effectiveness is that it fails to recognize the need to defer to the agency's determination. The APA contemplates that the agency will conduct the balancing necessary to determine whether to override the statutory presumption that substantive rules should not be effective until at least 30 days after publication in the Federal Register. *See Northern Arapahoe*, 808 F.2d at 752. Here, the Court has conducted that balancing itself on limited briefing during summary judgment. By doing so, the Court avoids according the agency the deference normally due to an expert agency charged with administering a statute (here both the ESA and the APA).

Different degrees of deference apply to agency decisions and actions, depending on the situation. But the bottom line is that some deference would be due the FWS decision whether or not to make a substantive rule effective immediately. Courts in this Circuit apply one of two forms of deference, either the well-known *Chevron* deference or *Skidmore* deference:

> Generally, when Congress has "explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation," and "[s]uch legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron,* 467 U.S. at 843-44, 104 S.Ct. 2778. …
>
> But not all agency determinations are accorded *Chevron* deference."[A]gencies charged with applying a statute necessarily make all sorts of interpretive choices, and ... not all of those choices bind judges to follow them." *United States v. Mead Corp.,* 533 U.S. 218, 227, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). Even where not binding, those agency choices "certainly may influence ***courts facing questions the agencies have already answered***." *Id.* In such an instance, "[t]he fair measure of deference to an agency administering its own statute has been understood to vary with circumstances." *Id.* at 228, 121 S.Ct. 2164. Generally referred to as *Skidmore* deference, the weight given to the agency's interpretation depends on "the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position." *Id.* (footnotes omitted) (citing *Skidmore v. Swift & Co.,* 323 U.S. 134, 139-40, 65 S.Ct.

161, 89 L.Ed. 124 (1944)).

*Tualatin Valley Builders Supply, Inc., v. United States*, __ F.3d __, 2008 WL 962106 ∗3 (9th Cir. April 10, 2008) (emphasis added). The key to both forms of deference is that the court is "facing questions the agencies have already answered." *Id.*

Review of agency action under the Administrative Procedure Act, as would occur in a review of a decision on the effective date of a substantive rule, also would be deferential. The Ninth Circuit has explained:

> We review the Service's decision on the Washington gray squirrel under the APA, which provides that an agency action may be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This standard of review is "**highly deferential**, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." *Independent Acceptance Co. v. California,* 204 F.3d 1247, 1251 (9th Cir.2000) (citations omitted). We may not consider information outside of the administrative record, *Love v. Thomas,* 858 F.2d 1347, 1356 (9th Cir.1988), and **may not "substitute [our] judgment for that of the agency**." *Citizens To Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), *abrogated on other grounds by Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Our task is simply to ensure that the agency "considered the relevant factors and articulated a rational connection between the facts found and the choices made." *Nat'l Ass'n of Home Builders v. Norton,* 340 F.3d 835, 841 (9th Cir.2003) (quoting *Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc.,* 462 U.S. 87, 105, 103 S.Ct. 2246, 76 L.Ed.2d 437 (1983)); ….

*Northwest Ecosystem Alliance v. U.S. Fish and Wildlife Service,* 475 F.3d 1136, 1140 (9th Cir. 2007) (emphasis added). One of the key components of this deference is that the Court is not to "substitute [its] judgment for that of the agency." When, as here, the Court makes a determination entrusted to the agency and does not give the agency an opportunity to decide the issue first, the Court necessarily substitutes its judgment for that of the agency.[4]

---

[4] In addition, the Court reversed the presumption established in the APA. Section 553(d) states "The required publication or service of a substantive rule shall be made not less than 30 days before its effective date, except -- … (3) as otherwise provided by the agency for good cause found and published with the rule." The Court's April 28, 2008 Order at page 10 states "Defendants fail to show that the thirty-day waiting period will not pose a threat to the polar bear." In a case properly challenging an effective date decision, the plaintiff would have to prove that the agency's decision to *not* make a rule effective immediately was arbitrary and capricious.

The FWS must be allowed to balance the interests of the polar bear in immediate listing against the public interest in having advance notice of exactly what a final rule is going to be and adjusting their conduct accordingly.[5] Here, as the attached declarations demonstrate, members of the public will be adversely affected by the Court's order requiring any listing decision be made effective immediately.

Nor does the Court's authority to fashion a remedy to cure the FWS's violation of ESA Section 4, the listing statute, give the Court authority to contravene the statutory scheme set up by Section 553(d) of the APA. "The jurisdiction to review the orders of the Labor Relations Board is vested in a court with equity powers, and while ***the court must act within the bounds of the statute and without intruding upon the administrative province***, it may adjust its relief to the exigencies of the case in accordance with the equitable principles governing judicial action." *Ford Motor Co. v. NLRB,* 305 U.S. 364, 373, 59 S.Ct. 301 (1939) (emphasis added).

While the Court enjoys broad discretion to fashion a remedy addressing the violation of law, that discretion is not boundless. When fashioning equitable relief to remedy a statutory violation, two principles, among others, help guide the court: (1) the court should not usurp powers and duties entrusted to the agency by the relevant statute; and (2) the agency should be given the opportunity to correct its own mistakes. *Placid Oil Co. v. U.S. Dept. of the Interior,* 491 F.Supp. 895, 901 (N.D. Texas 1980) (discussing "the role of administrative autonomy" in context of an injunction involving exhaustion of administrative remedies). As further explained by the Fifth Circuit, "[t]hose who seek equity must of course do equity, but equity does not authorize a district court to disregard Congress's statutory scheme. … The Administrative

---

[5] SCI and SCIF note that the Court found that the public had notice that a final listing determination was forthcoming. April 28, 2008 Order at 8. But the public has not had notice of what the final listing determination will be. There are three possibilities: a listing of the polar bear worldwide, no listing at all, or a listing of some but not all distinct population segments. The public cannot become familiar with the exact contours of the final determination (and adjust their behavior accordingly) until that final rule is published. *See Riverbend Farms Inc. v. Madigan,* 958 F.2d 1479, 1485 (9th Cir. 1992) ("This is sensible; until the final rule is published, the public is not sure of what the rule will be or when the rule will actually be promulgated. In addition, a window of time usually causes no harm.").

Procedure Act does not allow judicial usurpation of powers granted to an agency. It permits judicial review only of final agency actions." *U.S. Postal Serv. v. Notestine,* 857 F.2d 989, 993 (5th Cir. 1988).[6]

Here, the Court addressed the violation of the listing deadline by ordering the publication of a final determination by a date certain (May 15, 2008), a date six weeks before the date the FWS requested. This part of the Order addressed the concern that listing decisions be made in a timely fashion under ESA Section 4, the substantive statute that Plaintiffs invoked. But Section 553 of the APA addresses a completely separate issue, how much time the public should have to adjust to a new rule, particularly a rule such as an ESA listing, which has the effect of making previously legal activity (*e.g.,* importing a polar bear trophy) illegal. The Court should not contravene a Federal statute in the name of vindicating a violation of another statute and should not usurp a discretionary decision delegated to the agency in the first instance.

## IV.    CONCLUSION

The Court can and should reconsider whether it has jurisdiction to order any listing decision be made effective immediately. The Court has properly exercised its equitable powers to set a date certain for issuing a final listing decision. But the Court exceeded its jurisdiction when it ordered relief addressing a violation that has not yet occurred and in a way that contravenes the delegation of decision-making power to the agency in the first instance. For these reasons, SCI and SCIF request that the Court *sua sponte* amend its Order of April 29, 2008 to remove the directive to make any final listing decision effective immediately. The Fish and Wildlife Service can then decide when to make any listing determination effective, as contemplated by the APA.

---

[6] The *Marbled Murrelet* case cited by Plaintiffs in the briefing on summary judgment is not binding and did not appear to consider this jurisdictional issue. In fact, the passage from the case cited by Plaintiffs states that the "good cause" issue was brought to the court's attention during oral argument. Pls. Reply at 9 (Dkt. 33).

Dated: May 6, 2008.

        Respectfully Submitted,

        /s/ J. Jeffries Goodwin
J. Jeffries Goodwin
Goodwin Law Corporation
2300 Bell Executive Lane
Sacramento, CA 95825
Telephone:  (916) 929-6000
Facsimile:  (916) 929-5137
jjg@goodwinlawcorp.com

/s/ Douglas S. Burdin
Douglas S. Burdin
Admitted Pro Hac Vice
D.C. Bar # 434107
Safari Club International
501 2nd Street N.E.
Washington, D. C.  20002
Telephone: (202) 543-8733
Facsimile: (202) 543-1205
dburdin@safariclub.org

Counsel for
Safari Club International and
Safari Club International Foundation