1  Richard Joseph Finn (CA Bar No. 99659)
   Burnham Brown
2  1901 Harrison Street, 11th Floor
   Oakland, CA 94612
3  Phone: (510) 835-6821
   Fax: (510) 835-6666
4  Email: rfinn@burnhambrown.com

5  Michael A. Oropallo, Pro Hac Vice
   Ellen K. Eagen (CA Bar. No. 230802)
6  Hiscock & Barclay LLP
   One Park Place
7  300 South State Street
   Syracuse, New York 13202-2078
8  Phone: (315) 425-2831
   Fax: (315) 703-7367
9  Email: moropallo@hiscockbarclay.com
   Email: eeagen@hiscockbarclay.com
10
   John J. Jackson
11 Conservation Force
   3240 S I-10 Service Road W.
12 Suite 200
   Metairie, LA 70001
13 Phone: (504) 837-1233
   Fax: (504) 837-1145
14 Email: jjj@conservationforce.org

15 Attorneys for Prospective Intervenor

16

## IN THE UNITED STATES DISTRICT COURT

17

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

18

## OAKLAND DIVISION

19

20 | CENTER FOR BIOLOGICAL DIVERSITY, A NON-PROFIT CORPORATION, NATURAL RESOURCES DEFENSE COUNCIL, A NON-PROFIT CORPORATION, AND GREENPEACE, INC., A NON-PROFIT CORPORATION,

                    Plaintiff,

           v.

   DIRK KEMPTHORNE, UNITED STATES SECRETARY OF THE INTERIOR AND UNITED STATES FISH AND WILDLIFE SERVICE;

                    Defendants,

No. C-08-1339-CW

Complaint Filed: March 10, 2008

INTERVENOR'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OF APRIL 28, 2008 ORDER FOR THE LIMITED PURPOSE OF ALLOWING CONTINUED IMPORT OF LAWFULLY ACQUIRED HUNTING TROPHIES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1

| | |
|---|---|
| 1 | v. |
| 2 | SAFARI CLUB INTERNATIONAL FOUNDATION |
| 3 | Third-Party Defendant, |
| 4 | v. |
| 5 | SAFARI CLUB INTERNATIONAL AND SAFARI CLUB INTERNATIONAL |
| 6 | FOUNDATION |
| 7 | Amicus, |
| 8 | CONSERVATION FORCE, INC. |
| 9 | Intervenor. |

Pursuant to Local Rule 7-9, Conservation Force, Prospective Intervenor ("Intervenor") respectfully moves for leave to file an expedited[1] motion for reconsideration of the Court's April 28, 2008 order ("Order"), which makes any final listing determination for the polar bear on May 15, 2008 immediately effective, on the grounds that in dismissing Intervenor's motion to intervene as moot, the Court failed to take into consideration disputed material facts and legal arguments relating to Intervenor's interests.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Intervenor asks the Court for leave of court to file this motion to reconsider a portion of the Order and to modify as follows: ***to extend the effective date of any final listing determination for the polar bear by ninety days for the limited purpose of importing hunting trophies taken before the date of any listing.***

By ordering that any final listing will become immediately effective on May 15, the Court did not take into consideration disputed material facts and dispositive legal arguments relating to Intervenor's interests. There are approximately sixty constituents of the Intervenor

---

[1] Concurrently, Prospective Intervenor's are filing a Notice of Motion to Shorten Time to Consider Notice of Motion and Motion for Leave to File Motion for Reconsideration.

PROSPECTIVE INTERVENOR'S MOTION
FOR RECONSIDERATION
SYLIB01\6236990\4

NO. C-08-1339-CW

(who have already paid thousands of dollars for their permit applications and an average of $40,000 for their hunts, approximately 2.4 million dollars) who have legally harvested trophies and who are waiting for import permits from the United States Fish and Wildlife Service ("USFWS") in order to transport those trophies into the United States.[2] On May 15, if the polar bear is listed, the listing will go into affect immediately, and, as a result, import of such lawfully obtained property will be prohibited and will be considered contraband. Intervenor asks this Court to modify its Order to extend the effectiveness of any listing for ninety days for the limited purpose of allowing import of those trophy imports and to give the constituents of Intervenor time to comply with the law.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY[3]

Intervenor timely filed their Motion to Intervene upon learning of Petitioners' prayer in their Motion for Summary Judgment.[4] Having met the filing deadline, Intervenor was in the throes of moving for an expedited determination so that they could participate in the hearing on the Motion for Summary Judgment scheduled for May 8, 2008. The Court, however, decided the case without the scheduled hearing. The Court granted the preliminary injunction and denied the motion for intervention as moot, having *not taken in* consideration the interests of Intervenor whatsoever.

Because Intervenor's interests are directly related to material facts and legal arguments that the Court never considered, Intervenor respectfully submits that the Court grant Intervenor leave, permit this motion for reconsideration, consider Intervenor's interests and extend the effectiveness of any polar bear listing by ninety-days for the limited purpose of trophy import.

## ARGUMENT

Motions for reconsideration are decided within the discretion of the district court. "To prevail on a motion to reconsider, a party must set forth facts or law of a strongly convincing

---

[2] Under the 50 CFR §§ 18.30 and 18.33, these permit applications must be published in the Federal Register for thirty days in advance of their issuance.
[3] Intervenors will not go into detail on the facts of the underlining case which have been extensively briefed to date.
[4] Note to Intervenor's prejudice, Petitioners did not even include a prayer in their Complaint for making the listing effective immediately upon publication in the Federal Register.

3

PROSPECTIVE INTERVENOR'S MOTION　　　　　　　　　　　　　　　　　　　　　　NO. C-08-1339-CW
FOR RECONSIDERATION
SYLIB01\623699\4

nature to induce the Court to reverse its prior decision." <u>Walker v. Carnival Cruise Lines, 107 F. Supp. 2d 1135, 1138 (N.D. Cal. 2000)</u>. Pursuant to Civil Local Rule 7-9(b), motions for leave to file a motion for reconsideration may be filed if a party can demonstrate either: (1) that there is a material difference of fact or law between the time of the motion for leave and the time of an entry of an interlocutory order; (2) that new material facts emerged or a change of law occurred after the entry of the order; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments which were presented before the interlocutory order was entered. However, "no motion … for reconsideration shall repeat any oral or written argument made by the applying party in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered." Civil Local Rule 7-9(c).

**THE COURT'S FAILURE TO TAKE INTO ACCOUNT THE INTERESTS OF INTERVENOR WARRANT A MODIFICATION OF ITS ORDER, FOR THE LIMITED PURPOSE OF ALLOWING FOR CONTINUED IMPORT OF LAWFULLY ACQUIRED HUNTING TROPHIES.**

**A.    The Court's Denial of Conservation's Motion to Intervene Amounts to a Manifest Failure by the Court to Consider Material Facts Before the Order Was Entered.**

(1)    **The Court failed to take into account the interest of hunters who are in the middle of the trophy importation process.**

As discussed in Intervenor's previously-filed motion to intervene, the issue at hand is limited to the trophy import application process as it applies to the polar bear. The American hunters pay $32,000 to $50,000.00 per hunt to the Innuits who hold the hunting permits (Jackson Decl. ¶ 11.) Under the regulations, they are only permitted to import their trophies from pre-approved areas within the Northwest Territories and Nunavut, Canada. Upon submission of the import application, it must be published in the Federal Register for a 30-day comment period. *See* 50 CFR § 18.33 (Jackson Decl. ¶ 8.)[5] The approval of the US polar bear

---

[5] Ironically, the listing order does not allow Intervenor's members a notice period, but the regulation requires them to notice others, making the order even more incongruous.

import permit is conditional upon the pre-payment of $1,000.00 to the USF&WS above the importation fee of $100.00.[6]

By dismissing Intervenor's motion to intervene as moot, the Court failed to take into account that there are a number of people who will be adversely affected by any listing that is made effective immediately on May 15. Many constituents of Intervenor are in the middle of their permit importation approval process for their lawfully taken trophies. There are approximately sixty people (many who have already paid for their permit applications) who have legally harvested trophies and who are waiting for import permits or are in the process of filing permits with the USFWS in order to transport those trophies into the United States.[7] (Jackson Declaration, ¶ 14.) On May 15, if the polar bear is listed, under the Court's Order the listing will go into affect immediately, and, as a result, the import of such lawfully obtained property will be prohibited.[8] It is to be noted that the polar bears at issue here are already dead. Denying the hunters the right to bring their trophies into the United States will not affect the present population of the polar bear. Moreover, it is to be noted that the revenue generated from the hunting and import process funds the conservation of the bear – one of the most successful polar bear conservation programs in the world. (Jackson Decl, ¶ 10.)

Additionally, having not been granted Intervenor status, Intervenor could not respond to Petitioners' reply brief's unfounded allegations that the hunters had sufficient notice. Petitioners mistakenly argued without basis in either fact or affidavit as follows:

> [M]embers of Conservation Force took the gamble that they could rely on Defendant's illegal decision to not finalize the rule until sometime this summer...Such unwise and self-interested reliance on Defendants' illegal delay is simply is not sufficient (sic) reason to justify further delay....

---

[6] That money is dedicated to expenditure in Russia on polar bear conservation (16 USC 1374). The sum is believed to have exceeded 1 million dollars in direct conservation funding. (Jackson Decl. ¶.) Note, there is no provision for anything comparable for foreign species under the ESA should the bear be listed as a threatened or endangered species.
[7] Under the 50 CFR §§ 18.30 and 18.33, these permit applications must be published in the Federal Register for thirty days in advance of their issuance.
[8] The Marine Mammal Protection Act that prohibits the import of marine mammals (such as polar bear) if they are listed as threatened, 16 USC 1362(1)(c).

(Plaintiff's Reply in Support of Motion for Summary Judgment, p. 12.) To the contrary, Intervenor's members purchased their hunts years in advance. Most, if not all of those hunts this spring (March, April, May) were paid for in advance. Had the listing been made in a timely fashion in January and had it listed a particular population, most of the hunters would have been refunded their money. The hunters have been prejudiced by the delay. Moreover, the Defendant's published proposal to list the bear confused and misled the public to believe that the listing would not necessarily prevent the import of trophies from approved areas. (Jackson Decl. ¶ 21, Ex. B 50 CFR Part 17, pg.1098). Petitioner's comment in their Reply Brief was incorrect to suggest that Intervenors took a "gamble." Intervenors were lead to believe that imports would not be prohibited (and in most instances were contractually obligated, but could have been refunded had the bear been listed in a timely fashion, January 2008).

(2) **The Court failed to take into account that Intervenor's have relied on a minimum statutory 30 day-notice period.**

Intervenor relied on a minimum 30-day grace period after any listing of the polar bear. *See* 305 5 USC § 553(d)(3); 16 U.S.C. 553(d). The very purpose of the minimum 30-day delay in effectiveness is to accommodate those subject to the new regulation:

> Unlike the notice and comment requirements, which are designed to ensure public participation in rulemaking, the 30-day waiting period is intended to give affected parties time to adjust their behavior before the final rule takes effect. This is sensible; until the final rule is published, the public is not sure of what the rule will be or when the rule will actually be promulgated. In addition, a window of time usually causes no harm.

*Riverbend Farms, Inc. v. Madigan*, 958 F.2d 1479, 1485 (9th Cir. 1992).

Intervenors will be irreparably harmed and prejudiced by the court order to dispense with the minimum 30-day notice or greater notice that the Service may have chosen to provide. As stated the constituents of the Intervenor include archers and hunters who have lawfully expended significant sums in reliance upon the current state of the law, and many who have already submitted the requisite applications to the Service in order to import their lawfully harvested trophies. If Petitioner's relief is granted, those hunters, who have relied to their potential

detriment on the ESA as written, will be deprived of their property and rights without due process of law and will be irreparably harmed. On the other hand, in this case a ninety-day window of time will cause no harm to the polar bear. Not only are the to-be-imported polar bears in question already dead but the existing population of polar bears is not in such imminent harm that a 90-day period will have any substantial effect on their population according to the findings and the proposed rule itself.

### B. The Court's Denial of Conservation's Motion to Intervene Amounts to a Manifest Failure by the Court to Consider Dispositive Legal Arguments Before the Order Was Entered.

With regards to waiving the thirty-day waiting period, the District Court mistakenly waived the waiting period *sua sponte* and shifted the burden of proof holding, "Defendants fail to show that the thirty-day waiting period will not pose a threat to the polar bear." (Order, p. 10.) The Court has no such authority and Defendants have no such burden. Rather, the applicable statute provides as follows:

> The required publication or service of a substantive rule shall be made not less than 30 days before its effective date, except . . . .
> (3) as otherwise provided <u>by the agency</u> for good cause found and published with the rule.

5 USC § 553(d)(3).

The USFWS has a burden to show there is good cause, if and only if they want to dispense with the minimum of a 30 day notice. (The notice can be and in this case should be at least 90 days to comply with the purpose of the statute) Under 5 USC 553(d), it is USFWS, not the Court, that must grant a minimum of 30 days published notice unless it finds and publishes with the rule "good cause" for not doing so. The USFWS, however, has neither decided to forego the waiver period nor shown good cause to not give the minimum 30-day waiver. This notice period is fundamental to "due process." *Bill Lines, Inc. v. U.S.*, D.C. W. Va. 1967, 263 F. Supp 40.

Even if the USFWS wanted to forego the waiver period, there is no "good cause" to do so in this case. Neither the hunting of the bear nor petroleum production were factors cited by the Defendants in their proposed rule as immediate threats to the bear. Those two activities are

7

not related to the perceived threat that forms the basis for the Petitioner's position -- climate change causing a reduction in habitat in the long-term, foreseeable future. The bear is under no immediate harm and the proposed rule is not an emergency proposal.

The Court states that the "affected parties will have had adequate notice that publication was forthcoming." (Order, page 9). The notice intended by the statute is from the date of publication, not the date of the petition to list or any other date or deadline in the process other than the date of publication of the final rule. (The notice the public received suggested that import of trophies would not be stopped, but as per the Court's Order the permitting office of Defendant intends to stop imports on the 15th of May if the bear is listed. Jackson Decl. ¶ 21, Ex. B.) The various dates cited by the Court are irrelevant to the notice protection provided by Congress. The mere existence of a deadline for agency action, whether set by statute or court order, does not in itself constitute "good cause" to waive the effective delay. *U.S. Steel Corp. v. U.S. E.P.A.*, C.A. 5, 1979, 595 F.2d 207. *U.S. Steel Corp. V. E.P.A.*, C.A. 8, 1981, 649 F.2d 572. *Woods Psychiatric Institute v. U.S.*, 1990, affirmed 925 F.2d 1454.[9]

The trial court cites one prior instance to support waiver of the notice period, citing 63 FR 13134, 13149 (March 18, 1988 [sic – should be 1998]). That case, however, is highly distinguishable from the case on hand. In that case, the Service made specific findings that there were less than 300 of the sheep in existence and that they could be wiped out completely within 30 days by the principle threats if the final rule was not made immediately effective. The sheep population was 300 and declining, not 25,500 and increasing as it is in this case; the sheep was a small, isolated population, not 19 populations across the globe, as the polar bear. In addition the

---

[9] Note delay in and of itself does not amount to good cause for a listing to take effect immediately. To the contrary, ESA does not provide express legal authority to list a species beyond the binding period deadlines or to publish a Final Rule at all once the deadlines are missed. The mandatory, non-discretionary time frame for completion or withdrawal was added by amendment in 1982 (PL 97-304). See report accompanying S-2307 of the Senate Committee on Environment and Public Works and House Report 97-567 of the Committee on Merchant Marine and Fisheries. It changed the mandated period from two years to one year. It was the practice of the Service to withdraw proposed rules if they could not be made within the 2-year deadline. *See* 62 FR 39147 at 39149 (where the Service withdrew a jaguar proposal because the EAS "mandates withdrawal of proposed rules to list species which have not been finalized" within the prescribed time limits.) "If a proposed listing is not promulgated as a final regulation within the one year period . . . the proper course is for the Secretary to make a finding that there is insufficient evidence at that time to justify a listing, and immediately withdraw the regulation. *Idaho Farm Bureau Federation v. Babbitt*, 839 F. Supp. 739, 746 (D. Idaho 1993).

sheep were facing immediate extinction from the identified threat, not projected decline over future 45-year period as allegedly is the polar bear. Hunting trophies were not in issue. The factors behind the sheep's listing posed imminent and absolute extinction, unlike the bear in issue. The particular threats necessitated action within the 30 days as it was a true "emergency situation." [10]

Thus on the grounds of *ultra vires*, this Order should be modified to conform with 5 USC § 553(d)(3). Prospective Intervenors waive and dispense with oral argument and all delays to expedite this motion.

## CONCLUSION

In conclusion, Intervenor respectfully requests that this Court grant prospective Intervenor leave to file a expedited motion for reconsideration of its motion intervention and to reconsider that portion of the Order relating to the waiver of the notice-period as to the import of hunting trophies. In addition, upon reconsidering its Order, Intervenor asks this Court to extend the deadline for the effectiveness of the listing by 90 days for the limited purpose of import of hunting trophies.

Alternatively, in consideration of comity, jurisdiction and due process and in light of the issues relating to when the ruling will be effective, this Court should amend its April 28, 2008 Order *sua sponte* to permit the USF&WS to determine the delay period after publication of the final rule (whether the statutory 30-day minimum or more) as justice requires.

---

[10] In addition, those sheep were wholly within the U.S. jurisdiction where action addressing the threats to them could be timely addressed, unlike most polar bear. The state in which those sheep resided were also already listed by the state under its own Act that welcomed the listing, unlike the range nations in this case that uniformly oppose the ESA listing. The Service also specifically found that there were projects directly destroying the critical habitat of the tiny sheep population. In this case most of the population and their habitat are beyond the jurisdiction and management powers of the Service.[10] The small fractional share within the U.S. is probably not significant enough to constitute a legally significant part of the polar bear range.

| | | |
|---|---|---|
| 1 | | |
| 2 | DATE: May 8, 2008 | Respectfully submitted, |
| 3 | | |
| 4 | | By:    s/Michael A. Oropallo |
| 5 | | Richard Joseph Finn (CA Bar No. 99659) |
| 6 | | Burnham Brown<br>1901 Harrison Street, 11th Floor |
| 7 | | Oakland, CA 94612<br>Phone: (510) 835-6821 |
| 8 | | Fax: (510) 835-6666<br>Email: rfinn@burnhambrown.com |
| 9 | | |
| 10 | | Michael A. Oropallo, *Pro Hac Vice*<br>Ellen K. Eagen (CA 230802) |
| 11 | | Hiscock & Barclay LLP<br>One Park Place |
| 12 | | 300 South State Street<br>Syracuse, New York 13202-2078 |
| 13 | | Phone: (315) 425-2831<br>Fax: (315) 703-7367 |
| 14 | | Email: moropallo@hiscockbarclay.com<br>Email: eeagen@hiscockbarclay.com |
| 15 | | |
| 16 | | John J. Jackson<br>Conservation Force |
| 17 | | 3240 S I-10 Service Road W.<br>Suite 200 |
| 18 | | Metairie, LA 70001<br>Phone: (504) 837-1233 |
| 19 | | Fax: (504) 837-1145 |
| 20 | | Email: jjj@conservationforce.org |
| 21 | | *Attorneys for Intervenor* |

## CERTIFICATE OF SERVICE

I certify that on May 8, 2008, I filed the foregoing Request for Stay Pending Appeal with the Clerk of the Court through the CM/ECF system which provided automatic notice to the following:

**Kassia Rhoades Siegel**
Center for Biological Diversity
P.O. Box 549
Joshua Tree, CA 92252
Phone: 760-366-2232
Fax: 760-366-2669
Email: ksiegel@biologicaldiversity.org

**Andrew E. Wetzler**
Natural Resources Defense Council, Inc.
544 White Oak Place
Worthington, OH 43085
Phone: 614-840-0891
Fax: 415-875-6161

**Brendan R. Cummings**
Center for Biological Diversity
P.O. Box 549
Joshua Tree, CA 92252
Phone: 760-366-2232
Fax: 760-366-2669
Email: bcummings@biologicaldiversity.org

**Miyoko Sakashita**
Center for Biological Diversity
1095 Market Street, Suite 511
San Francisco, CA 94103
Phone: 415-436-9682
Fax: 415-436-9683
Email: miyoko@biologicaldiversity.org

**ATTORNEYS FOR PLAINTIFFS**

**Kristen Byrnes Floom**
United States Department of Justice
P.O. Box 7369
Washington, DC 20044-736
Phone: (202) 305-0340
Email: Kristen.Floom@usdoj.gov

**ATTORNEYS FOR DEFENDANTS**

| | |
|---|---|
| 1 | **James Jeffries Goodwin**<br>Goodwin Law Corporation<br>2300 Bell Executive Lane |
| 2 | Sacramento, CA 95825<br>Phone: 916-929-6000 |
| 3 | Fax: 916-929-5137<br>Email: jeffriesgoodwin@gmail.com |
| 4 | |
| 5 | **Douglas S. Burdin**<br>Safari Club International |
| 6 | Safari Club International Foundation<br>500 Indiana Avenue., NW #6000 |
| 7 | Washington, DC 20001<br>Email: dburdin@safariclub.org |

                                                                                 s/Michael A. Oropallo
                                                   MICHAEL A. OROPALLO

PROSPECTIVE INTERVENOR'S MOTION
FOR RECONSIDERATION
SYLIB01\623699\4

NO. C-08-1339-CW