1   René P. Tatro (SBN 78383)
    Juliet A. Markowitz (SBN 164038)
2   TATRO TEKOSKY SADWICK LLP
    333 S. Grand Avenue, Suite 4270
3   Los Angeles, California 90071
    Telephone:    (213) 225-7171
4   Facsimile:    (213) 225-7151
    E-mail:       renetatro@ttsmlaw.com
5                 jmarkowitz@ttsmlaw.com

6   Jeffrey M. Feldman (AK Bar #7605029)
7   Kevin M. Cuddy (MA Bar #647799)
    *Pro hac vice applications pending*
8   FELDMAN ORLANSKY & SANDERS
9   500 L Street, Suite 400
    Anchorage, Alaska 99501
10  Telephone:    (907) 272-3538
    Facsimile:    (907) 274-0819
11  Email:        feldman@frozenlaw.com
12                cuddy@frozenlaw.com

13  *Attorneys for Proposed Intervenor-Defendant*
14  *Arctic Slope Regional Corporation*

15              UNITED STATES DISTRICT COURT

16             NORTHERN DISTRICT OF CALIFORNIA

17                    OAKLAND DIVISION

18

19  CENTER FOR BIOLOGICAL          )  Case No. CV-08-1339-CW
    DIVERSITY, et al.,             )
20                                 )
                                   )  **NOTICE OF MOTION AND MOTION**
21              Plaintiffs,        )  **OF ARCTIC SLOPE REGIONAL**
                                   )  **CORPORATION TO INTERVENE;**
22          v.                     )  **MEMORANDUM OF POINTS AND**
                                   )  **AUTHORITIES IN SUPPORT**
23  DIRK KEMPTHORNE, et al.,       )  **THEREOF**
                                   )
24                                 )
                                   )  Date:        August 14, 2008
25              Defendants.        )  Time:        2:00 p.m.
                                   )  Courtroom:   2
26  _____ )
                                      Honorable Claudia Wilkin
27

28

1   TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2          PLEASE TAKE NOTICE that on August 14, 2008, at 2:00 p.m. in Courtroom 2 of

3   the above entitled court, located at located at 1301 Clay Street, Oakland, CA 94612-5212,

4   Proposed Intervenor-Defendant Arctic Slope Regional Corporation ("ASRC") will move this

5   Court to intervene as a defendant in the above-captioned matter.

6          This motion is brought pursuant to Federal Rules of Civil Procedure 24(a) and, in the

7   alternative, 24(b), for the reasons set forth in the attached Memorandum of Points and

8   Authorities and the accompany Declaration of Jacob Adams.  ASRC and its members have a

9   direct interest in the "4(d) Rule" promulgated by defendants on May 15, 2008, and now

10  challenged by plaintiffs in their First Amended Complaint (Dkt. No. 76).  ASRC's motion

11  seeks an order pursuant to Federal Rule of Civil Procedure 24, granting it status as an

12  intervenor-defendant to protect that interest.

13         This motion is based upon the accompanying Memorandum of Points and

14  Authorities, Declaration of Jacob Adams, and [Proposed] Order, all records and pleadings

15  on file herein and on such further oral and documentary evidence as may be presented at the

16  hearing.

17

18  DATED:      July 2, 2008                    Respectfully submitted,
                                                TATRO TEKOSKY SADWICK LLP
19

20                                              By:  /s/ *René P. Tatro*
                                                     René P. Tatro
21                                                   Attorneys for Intervenor Defendant Arctic
                                                     Slope Regional Corporation
22

23

24                                              FELDMAN ORLANSKY & SANDERS

25                                              By:  /s/ *Jeffrey M. Feldman*

26                                                   Jeffrey M. Feldman
                                                     *Pro hac vice application pending*
27                                                   Attorneys for Intervenor Defendant Arctic
                                                     Slope Regional Corporation
28

-1-

NOTICE OF MOTION AND MOTION OF ARCTIC                                    C-08-1339-CW
SLOPE REGIONAL CORPORATION TO INTERVENE;
MEMORANDUM OF POINTS AND AUTHORITIES

**MEMORANDUM OF POINTS AND AUTHORITIES
OF ARCTIC SLOPE REGIONAL CORPORATION
IN SUPPORT OF MOTION TO INTERVENE**

## I.    INTRODUCTION

Arctic Slope Regional Corporation ("ASRC") is an Alaska Native Regional Corporation that represents the business interests of the Iñupiat of the Arctic Slope, an area that Iñupiaq Eskimos have shared with polar bears for generations. ASRC's[1] shareholders living on the Arctic Slope are, without question, the people most directly affected by the Defendants' recent determination that polar bears are a "threatened" species. Likewise, these Alaska Natives' daily life, property, and economic welfare would be impacted dramatically if the 4(d) Rule[2] is suddenly vacated. Pursuant to ANCSA, every Iñupiaq Eskimo living on the North Slope of Alaska in 1971 was enrolled as a shareholder in ASRC. ASRC has since issued additional shares to their descendants, giving the company a 9,600 member shareholder base that includes almost every Iñupiaq Eskimo living in or with historical ties to the North Slope. As a result, ASRC is uniquely capable of presenting first-hand the Iñupiat experience with polar bears, their cultural importance, and the economic hardships that ASRC's shareholders may suffer if the 4(d) Rule is vacated. Their voice should be heard in this case.

In addition, ASRC owns approximately 5,000,000 acres of land on the North Slope, including both surface and subsurface lands, much of it located along the coastline of the Beaufort and Chukchi Seas. These lands were conveyed to ASRC by the federal government pursuant to ANCSA to provide for the economic well-being of the North Slope's Iñupiat

---

[1] ASRC is the Inupiat-owned Native Regional Corporation formed pursuant to the Alaska Native Claims Settlement Act, 43 U.S.C. §1601, et seq. ("ANCSA").

[2] The so-called "4(d) Rule" is the name adopted by the parties for the special rule created by the Defendants under authority of section 4(d) of the Endangered Species Act of 1973 ("ESA"). *Endangered and Threatened Wildlife and Plants; Special Rule for the Polar Bear*, 73 Fed. Reg. 28,306 (May 15, 2008).

-1-

1  Eskimos. The ability of ASRC to succeed in this congressionally-mandated mission, while
2  preserving the 4,000 year old subsistence culture of the Iñupiat, depends on striking a careful
3  balance of environmental and economic interests. Of all the voices represented in this
4  lawsuit, ASRC alone represents those with the most diverse, personal, and immediate stake
5  in its outcome.

6        ASRC moves to intervene as a matter of right pursuant to Federal Rules of Civil
7  Procedure 24(a) or, in the alternative, with the permission of the Court pursuant to Rule
8  24(b). ASRC's Iñupiat Eskimo shareholders (the "Iñupiat") are the aboriginal owners of,
9  and predominant local residents in, the affected area. The Arctic (or North) Slope is home to
10  both the Iñupiat and polar bears, and interactions with polar bears are part of the Iñupiat's
11  regular existence. In their recently amended complaint, Plaintiffs seek to vacate the 4(d)
12  Rule and remand it to the Secretary of Interior indefinitely while certain steps are taken. *See*
13  First Amended Complaint for Declaratory Judgment and Injunctive Relief, Dkt. # 76. If the
14  4(d) Rule is vacated, the everyday existence of the Iñupiat – not Plaintiffs – will be affected
15  immediately. Further, the Iñupiat living on the North Slope are wholly dependent on the
16  region's abundant natural resources to provide them with the necessities of life, including
17  subsistence hunting, jobs, economic activity, and tax revenues that allow them to live in the
18  harsh arctic. The Iñupiat's ability to continue the responsible use of their natural resources
19  will be substantially constrained if the 4(d) Rule is altered. ASRC is entitled, on its
20  shareholders' behalf, to intervene in this action.

21  **II.    BACKGROUND**

22        The Arctic Slope region encompasses the entire North Slope of Alaska north of the
23  Brooks Range. There are eight Iñupiat Villages in the region, six of which are located on or
24  near the coastline of the Beaufort and Chukchi Seas. While the Defendants have not yet
25  proposed a "critical habitat" designation, the U.S. Fish & Wildlife Service has reported that
26  both the Southern Beaufort and the Chukchi/Bering Seas polar bear stocks are distributed, in
27  part, across the North Slope. The Iñupiat have engaged in polar bear subsistence hunting for
28  centuries. *See* 73 Fed. Reg. 28,278 (May 15, 2008); Declaration of Jacob Adams ("Adams

-2-

1    Decl.") ¶ 4.  In addition to hunting, the Iñupiat also have had an increasing number of

2    interactions with bears who are foraging for food.  *See* 73 Fed. Reg. 28,279-80; Adams Decl.

3    ¶ 5.  Consistent with Section 101(a)(4) of the Marine Mammals Protection Act, the Iñupiat

4    must occasionally use non-lethal force to deter polar bears from damaging fishing gear,

5    catch, or other private property.  *See* Adams Decl. ¶ 5.  This is a fact of life in the Arctic.

6    These acts of non-lethal deterrence help encourage the bears to hunt for themselves and,

7    more importantly, lessen the likelihood that the Iñupiat will be forced to kill the bears in self-

8    defense.  *See id.*; 73 Fed. Reg. 28,309.

9         Congress provided through ANCSA for the creation of ASRC and eleven other land-

10   owning regional corporations to receive title to the subsurface estate of all lands conveyed in

11   settlement of Alaska Native land claims, as well as large surface land entitlements.  It did so

12   with the expectation that those regional corporations would be the engines providing for the

13   economic well-being of Natives within the region and, through the resource revenue-sharing

14   mechanism of Section 7(i) of ANCSA, 43 U.S.C. § 1606(i), the economic well-being of all

15   Alaska Natives in perpetuity.  *Ukpeagvik Iñupiat Corp. v. Arctic Slope Regional Corp.*, 517

16   F.Supp. 1255, 1262 (D. Alaska 1981).[3]

17        Because of its inhospitable climate, there were few non-Native inhabitants in the area

18   prior to the discovery of oil at Prudhoe Bay in the 1960s.  In a few short decades, the Iñupiat

19   have adapted from an economy based largely on subsistence to a mixed economy.  The cash

20   portion of that mixed economy depends on oil and gas activity to provide the jobs, economic

21   activity, and tax base that make available basic amenities such as schools, health care and

22   sanitation facilities – all of which are taken for granted elsewhere in the United States.  The

23

24        [3] As a general rule, ANCSA centered Native land conveyances around existing Native
      Villages.  Those Villages that organized as Village Corporations pursuant to Section 8 of
25    ANCSA, 43 U.S.C. § 1607, were eligible to receive conveyances of surface estate surrounding
      the Village site.  Simultaneously with the conveyance of the surface to the Village, the Secretary
26    conveyed the subsurface to the regional corporation.  43 U.S.C. § 1613.  ASRC also owns vast
      areas of land outside of these eight village locations, including both surface and subsurface lands.
27    In total, ASRC owns approximately 5,000,000 acres, much of it along the coastlines of the
      Beaufort and Chukchi Seas, representing 10% of the land area of the North Slope.
28

-3-

1    economy of the North Slope is unique because its villages exist as isolated islands of land in

2    a sea of roadless public lands. Subsistence hunting continues to provide 40% of caloric

3    intake for Iñupiat Eskimos on the North Slope, with substantially higher percentages in the

4    more rural villages.[4] Unlike diversified economies in less remote areas, the decisions as to

5    the scope and pace of economic activity are controlled to a very significant degree by two

6    things: (1) federal agencies' decisions concerning management of public lands; and (2) the

7    prudent management and development of ASRC's environmental resources and subsurface

8    mineral resources. To that end, the Defendants clearly recognized that their decision to list

9    the polar bear as a threatened species would have a critical impact on the Iñupiat. Two of the

10   three public hearings on the proposed listing were held in Alaska (one in Barrow, the ASRC

11   village that is located on the point that demarcates the Beaufort and Chukchi Seas), and

12   Alaska Native Tribes and tribal organizations were specifically solicited for comments. *See*

13   73 Fed. Reg. 28,234-35.[5]

14        It is critically important to ASRC's shareholders that the Court appreciate how any

15   decision affecting the 4(d) Rule will impact the day-to-day life of the Iñupiat who live in the

16   Arctic and co-exist with polar bears.

17

18

19

20

21

22

23        [4] It is unclear whether Alaska Natives' ability to subsistence hunt would be affected if
     the 4(d) Rule were vacated. Section 10(e)(1) of the ESA exempts Alaska Natives from certain
24   permit requirements when the taking of endangered or threatened species is primarily for
     subsistence purposes and the taking is not accomplished in a wasteful manner. 16 U.S.C. §
25   1539(e)(1). However, the Secretary of Interior may prescribe regulations limiting Alaska
     Natives' rights to subsistence hunt under certain conditions. *See id.* § 1539(e)(4).
26

27        [5] For the Barrow hearing, teleconferencing was made available to receive testimony from
     outlying areas, including Kaktovik and Point Lay. Barrow, Kaktovik, and Point Lay are all
28   Inupiat Villages.

-4-

1 | **III.    ARGUMENT**

2 |     **A.    ASRC is Entitled to Intervention as of Right**

3 |          Pursuant to Federal Rule of Civil Procedure 24(a), ASRC is entitled to intervention as

4 | of right to defend its direct interests in the 4(d) Rule.  In addition, ASRC is entitled to

5 | intervention as of right in the remedy phase of Plaintiffs' NEPA claim.[6]

6 |          The Ninth Circuit employs a four-part test to determine whether a party may

7 | intervene as of right:  (1) the motion must be timely; (2) the movant must claim a

8 | "significantly protectable" interest relating to the property or transaction which is the subject

9 | of the action; (3) the movant must be so situated that the disposition of the action may, as a

10 | practical matter, impair or impede its ability to protect that interest; and (4) the movant's

11 | interest must not be adequately represented by the existing parties to the action.  *See, e.g.*,

12 | *Smith v. Marsh*, 194 F.3d 1045, 1049 (9th Cir. 1999).  The Ninth Circuit applies this test

13 | broadly in favor of intervention.  *United States v. City of Los Angeles*, 288 F.3d 391, 397-98

14 | (9th Cir. 2002) ("A liberal policy in favor of intervention services both efficient resolution of

15 | issues and board access to the courts.") (internal quotation omitted).  ASRC meets each of

16 | these requirements.

17 |          ASRC's motion is timely.  In assessing timeliness, courts in the Ninth Circuit

18 | consider the stage of the proceedings, the prejudice to the other parties, and the reasons for

19 | and length of the delay.  *State of Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317,

20 | 1319 (9th Cir. 2007).  A motion to intervene may be timely where the "litigation has entered a

21 | new stage, where the would-be intervenor's rights would be jeopardized."  *See Natural*

22 | *Resources Defense Council v. Guiterrez*, Slip Copy, 2007 WL 1518359, 14 (N.D.Cal. 2007)

23 | (citing *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984)).  The amended complaint

24 |

25 |          [6] ASRC acknowledges the Ninth Circuit rule limiting intervention of right in NEPA
   | actions to the remedy or injunctive phase.  *See, e.g., Kootenai Tribe of Idaho v. Veneman*, 313
26 | F.3d 1094, 1108 (9th Cir. 2002).  Consistent with the Ninth Circuit rule, ASRC seeks intervention
27 | as of right with regard to the remedy phase of Plaintiffs' NEPA claims and permissive
   | intervention on the merits.  *Id.* at 1108-10 (granting permissive intervention to third parties on
28 | merits of NEPA claim).

NOTICE OF MOTION AND MOTION OF ARCTIC                                    C-08-1339-CW
SLOPE REGIONAL CORPORATION TO INTERVENE;
MEMORANDUM OF POINTS AND AUTHORITIES

1   recently filed by plaintiffs is a "new stage" in the litigation. The new claims asserted by
2   Plaintiffs were "based on events that transpired after the lawsuit was commenced." Order
3   Denying Defendants' Motion To Strike Amended Complaint, Dkt. # 108. The First
4   Amended Complaint was filed on May 16, and the decision denying Defendants' motion to
5   strike that complaint was issued on June 17.[7] Insofar as this action will now address the new
6   claims asserted in CBD's First Amended Complaint, this litigation is still in its preliminary
7   stages. Answers were only recently filed, and ASRC has submitted a proposed answer to the
8   amended complaint along with this motion to avoid any possible delay. Pursuant to the Joint
9   Case Management Statement, Dkt. # 102, the parties anticipate no discovery will be taken
10  and no briefing schedule has yet been finalized. Further, Plaintiffs will be filing a second
11  amended complaint in the next several weeks. Therefore, no prejudice, delay or inefficiency
12  will result.

13       ASRC has a significant protectable interest in the challenged agency decisions.
14  Whether the moving party demonstrates sufficient interest to intervene is a "practical,
15  threshold inquiry" for which "[n]o specific legal or equitable interest need be established."
16  *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993), *aff'd by Greene v. Babbitt*, 64
17  F.3d 1266 (9th Cir. 1995). As noted by the court in *City of Los Angeles*:

18       A liberal policy in favor of intervention serves both efficient resolution
19       of issues and broad access to the courts. By allowing parties with a
         *practical* interest in the outcome of a particular case to intervene, we
20       often prevent or simplify future litigation involving related issues; at the
         same time we allow an additional interested party to express its views
21       before the court.

22  288 F.3d at 397-98 (internal quotations and citations omitted). Consequently, the interest
23  requirement is "primarily a practical guide to disposing of lawsuits by involving as many
24  apparently concerned persons as is compatible with efficiency and due process." *Id.* at 398;
25

26       [7] ASRC did not intervene in the first stage of this case because it related solely to the
27  Defendants' failure to make any listing determination on the polar bear, and ASRC did not
    dispute the government's obligation to make such a determination. Only now that a listing has
28  occurred has the validity of the 4(d) Rule been called into question.

-6-

1   *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967).[8]  ASRC has obvious protectable

2   interests in the 4(d) Rule. The 4(d) Rule incorporates exemptions from the Marine Mammal

3   Protection Act of 1972 (the "MMPA") that recognize Alaska Natives' unique relationship

4   with polar bears and permit certain conduct.  Only some of those exemptions can be found in

5   the ESA.  Vacating the 4(d) Rule would instantly and dramatically reduce the Iñupiat's

6   rights, as described below.  Further, ASRC is the steward of 5,000,000 acres of lands which

7   it manages for their subsistence, environmental, and natural resource values for the economic

8   and cultural benefit of the current and all future generations of its Iñupiat shareholders.  To

9   the extent that those activities depend upon new permit requirements under ESA, ASRC risks

10  the loss of subsistence rights for its shareholders, contracting opportunities, jobs for its

11  shareholders, and essential gas- and oil-related revenues.

12       Disposition of the case in Plaintiffs' favor would harm ASRC's interest.  Intervention

13  as of right is particularly appropriate where, as here, the relief sought is injunctive. *See City*

14  *of Los Angeles,* 288 F.3d at 399; *Sagebrush Rebellion,* 713 F.2d at 528 (where relief sought

15  by plaintiffs will have direct, immediate, and harmful effects upon a third party's legally

16  protectable interests, the party satisfies the "interest" test), *aff'd by Sagebrush Rebellion, Inc.*

17  *v. Hodel*, 790 F.2d 760 (9th Cir. 1986).  Here, the purpose of Plaintiffs' amended claims is to

18  invalidate the 4(d) Rule, which exempts from the ESA take prohibition takings of polar bear

19  approved through the rigorous processes, or simply permitted outright, under the MMPA.

20  For example, the Iñupiat are currently allowed to use non-lethal force to deter polar bears

21

22  _____

23       [8]  A protectable interest sufficient to support intervention exists where the interest
    asserted is protectable under some law, and where there is a relationship between the protected

24  interest and the claims at issue.  *City of Los Angeles,* 288 F.3d at 398 (relationship requirement is
    met where "resolution of plaintiff's claim actually will affect the application"); *Southwest Center*

25  *for Biological Diversity v. Berg,* 268 F.3d 810, 818 (9th Cir. 2001) (determination of interest is a
    "practical, threshold inquiry.  No specific legal or equitable interest need to be established");

26  *Sagebrush Rebellion, Inc. v. Watt,* 713 F.2d 525, 528 (9th Cir. 1983) (intervenor's interest need

27  not be protected by statute put at issue by complaint so long as it is protected by law and relates
    to claim).  ASRC clearly has a protectable interest in the 4(d) Rule because it and its

28  shareholders are among the few classes of persons to which the 4(d) Rule applies.

-7-

NOTICE OF MOTION AND MOTION OF ARCTIC                                    C-08-1339-CW
SLOPE REGIONAL CORPORATION TO INTERVENE;
MEMORANDUM OF POINTS AND AUTHORITIES

1  from damaging private property, fishing gear, and catch.  While the Secretary of Interior is

2  obliged to recommend specific measures for non-lethal deterrence of marine mammals listed

3  as endangered species or threatened species under the ESA, *see* MMPA §101(a)(4)(B), the

4  4(d) Rule is the only such guidance available for polar bears.  If the 4(d) Rule is vacated, as

5  Plaintiffs request, the Iñupiat will be unable to deter polar bears from destroying essential

6  private property indefinitely.[9]  Interactions with polar bears will inevitably become more

7  frequent and dangerous.  Likewise, certain cultural exchanges and authentic native

8  handicrafts by the Iñupiat, which are permitted under the MMPA and 4(d) Rule, would be

9  outlawed if Plaintiffs prevail.  Permits for the incidental take of polar bears would be subject

10  to a new approval process, which could impede the development of ASRC's natural

11  resources, the safety of life in the Arctic for its shareholders, and the ability of shareholders

12  to provide for their families.  Thus, the 4(d) Rule pertains directly to the lawful activities of

13  ASRC's shareholders.

14       Fourth, and finally, ASRC's interests are sufficiently different from those of the

15  USFWS, the Alaska Oil and Gas Association, or any other interested party, to warrant

16  intervention.  ASRC must only show that its interests are sufficiently different from the

17  existing parties such that their representation "may be" inadequate.  *Trbovich v. United Mine*

18  *Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).  The court must consider:

19       (1) whether the interest of a present party is such that it will
20       undoubtedly make all the intervenor's arguments; (2) whether the
         present party is capable and willing to make such arguments; and (3)
21       whether the would be intervenor would offer any necessary elements to
         the proceedings that other parties would neglect.
22

23  *City of Los Angeles*, 288 F.3d at 398 (*citing Northwest Forest Resource Council*, 82 F.3d at

24  838).  Here, the interests of ASRC and its shareholders are different from any other party.

25

26   [9]  Polar bears occasionally destroy buildings and their contents, damage vehicles, and
     take food that is essential to survival by the Inupiat.  *See* Adams Decl. ¶ 5.  Under the ESA, these
27   polar bears could only be taken if they posed a direct threat to personal safety.  In the Arctic, the
     loss of transportation or other essential property can sometimes be as much of a threat to one's
28   survival as an attack itself.

-8-

1   Alone among all the parties represented before this Court, ASRC and its shareholders will
2   live forever with the consequences of this litigation. It may determine how and whether the
3   North Slope can continue to sustain ASRC's 9,600 shareholders, as it has their ancestors over
4   the past 4,000 years. ASRC is uniquely position to represent the complex web of
5   environmental and economic interests of Alaska Natives in this litigation.

6       **B.**    **ASRC Should Be Granted Permissive Intervention on the Merits of**
7                     **Plaintiffs' NEPA and, Alternatively, on All Claims**

8         District courts may grant permissive intervention pursuant to Rule 24(b) of the
9   Federal Rules of Civil Procedure. *See Kootenai*, 313 F.3d at 1108. As with intervention as
10  of right, motions for permissive intervention are construed liberally in favor of the moving
11  party. Permissive intervention should be allowed under Rule 24(b) as long as the applicant
12  seeking intervention establishes that: "(1) it shares a common question of law or fact with
13  the main action; (2) its motion is timely; and (3) the court has an independent basis for
14  jurisdiction over the applicant's claims." *See Donnelly v. Glickman*, 159 F.3d 405, 411-12
15  (9th Cir. 1998). Under this standard, neither the inadequacy of representation, nor a direct
16  interest in the subject matter of the action need be shown. *Kootenai*, 313 F.3d at 1108.

17        ASRC meets the requirements of permissive intervention as to Plaintiffs' NEPA
18  claims as well as to all other claims in this case. ASRC seeks to uphold the 4(d) Rule
19  challenged here. ASRC's interests thus present issues of law or fact common to the main
20  action. ASRC's shareholders have a strong interest in ensuring the continued viability of
21  subsistence hunting, environmental protection, and oil and gas exploration, development and
22  production in the North Slope consistent with sound science. *See Adams Decl.* ¶¶ 8-12.
23  Moreover, ASRC's shareholders have unique and expansive knowledge regarding the effects
24  of their activities on the polar bear, *see id.* ¶ 6, as well as the confusion that would
25  undoubtedly arise in Native Villages if the 4(d) Rule were suddenly vacated. Thus, ASRC's
26  intervention would aid the court in clarifying the issues raised in this lawsuit. Finally, as
27  noted above, ASRC's application for intervention is timely and will not prejudice the
28  existing parties. Permissive intervention on the merits of Plaintiffs' NEPA claim should be

NOTICE OF MOTION AND MOTION OF ARCTIC
SLOPE REGIONAL CORPORATION TO INTERVENE;
MEMORANDUM OF POINTS AND AUTHORITIES
                        C-08-1339-CW

1    granted. If the court denies intervention as of right as requested above, ASRC respectfully

2    requests permissive intervention on all claims. ASRC is the representative of the people

3    whose livelihood and daily existence are most directly impacted by the designation of polar

4    bears as a "threatened" species and the implementation of the 4(d) Rule. ASRC thus brings

5    to this litigation a perspective shared by none of the other litigants. The Iñupiat's unique

6    perspective deserves consideration in this important case.

7    **IV.    CONCLUSION**

8         For the foregoing reasons, ASRC respectfully requests that this Court grant its motion

9    to intervene as a matter of right pursuant to Rule 24(a), or, in the alternative, that it grant

10   permission to intervene pursuant to Rule 24(b).

11

12

13   DATED:      July 2, 2008                Respectfully submitted,
                                             TATRO TEKOSKY SADWICK LLP

14

15                                           By:  /s/ *René P. Tatro*

16                                                René P. Tatro
                                                  Attorneys for Intervenor Defendant Arctic
17                                                Slope Regional Corporation

18

19                                           FELDMAN ORLANSKY & SANDERS

20
                                             By:  /s/ *Jeffrey M. Feldman*
21
                                                  Jeffrey M. Feldman
22                                                *Pro hac vice application pending*
                                                  Attorneys for Intervenor Defendant Arctic
23                                                Slope Regional Corporation

24

25

26

27

28

-10-

## PROOF OF SERVICE BY ELECTRONIC TRANSMISSION

I, the undersigned, declare that I am a citizen of the United States, over the age of 18 years and not a party to this action. I am employed in the County of Los Angeles and my business address is 333 S. Grand Avenue, Suite 4270, Los Angeles, CA 90071.

On July 3, 2008, I electronically served a copy of the foregoing:

**NOTICE OF MOTION AND MOTION OF ARCTIC SLOPE REGIONAL CORPORATION TO INTERVENE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

On the recipients designated on the Notice of Electronic Filing generated by the Electronic Case File website of the Northern District of California.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed July 3, 2008, at Los Angeles, California.

/s/ *Karen L. Roberts*
Karen L. Roberts

NOTICE OF MOTION AND MOTION OF ARCTIC
SLOPE REGIONAL CORPORATION TO INTERVENE;
MEMORANDUM OF POINTS AND AUTHORITIES

C-08-1339-CW

René P. Tatro (SBN 78383)
Juliet A. Markowitz (SBN 164038)
TATRO TEKOSKY SADWICK LLP
333 S. Grand Avenue, Suite 4270
Los Angeles, California 90071
Telephone:    (213) 225-7171
Facsimile:     (213) 225-7151
E-mail:         renetatro@ttsmlaw.com
                    jmarkowitz@ttsmlaw.com

Jeffrey M. Feldman (AK Bar #7605029)
Kevin M. Cuddy (MA Bar #647799)
*Pro hac vice applications pending*
FELDMAN ORLANSKY & SANDERS
500 L Street, Suite 400
Anchorage, Alaska 99501
Telephone:    (907) 272-3538
Facsimile:     (907) 274-0819
Email:          feldman@frozenlaw.com
                    cuddy@frozenlaw.com

*Attorneys for Proposed Intervenor-Defendant*
*Arctic Slope Regional Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., | ) ) ) Case No. C-08-1339-CW ) ) |
| Plaintiffs, | ) **DECLARATION OF JACOB ADAMS IN** ) **SUPPORT OF MOTION OF ARCTIC** |
| v. | ) **SLOPE REGIONAL CORPORATION** ) **TO INTERVENE** |
| DIRK KEMPTHORNE, et al., | ) ) |
| Defendants. | ) Date:        August 14, 2008 ) Time:        2:00 p.m. ) Courtroom:  2 ) |
| | ) Honorable Claudia Wilkin |

JACOB ADAMS, under penalty of perjury, declares:

1.      I am an Iñupiaq Eskimo.  I have resided on the Arctic Slope of Alaska all my life.  From 1972 to 1983, except for a nine-month period in 1980 (when I served as Mayor of the North Slope Borough), I served as the Vice-President for Lands of the Arctic Slope Regional Corporation ("ASRC").  From 1983 to 2006, I served as the President of ASRC.  I remain a member of ASRC's Board of Directors.  I am a subsistence hunter and fisherman and also a whaling captain.

2.      I have firsthand knowledge of the matters discussed below.

3.      ASRC was established in 1972, pursuant to Section 7 of the Alaska Native Claims Settlement Act ("ANCSA") to receive and administer lands and monetary benefits provided to North Slope Iñupiat as part of the land claims settlement.  ASRC is wholly owned by the Iñupiat of the Arctic Slope.  Most Iñupiaq residents of the Arctic Slope are ASRC shareholders.  ASRC's corporate mission requires it to be a responsible steward of the land and its resources, and to be ever mindful that development in the Arctic must protect the fragile land and the subsistence resources on which we all rely.

4.      Polar bears live in several areas around the Arctic, including the North Slope.  For many generations, the Iñupiat have hunted polar bears for subsistence and have used them in Native handicrafts.  The Iñupiat also engage in cultural exchanges of these handicrafts, gifts, and clothing with other Native inhabitants of Russia, Canada, and Greenland.  These activities are an important part of our Native heritage.

5.      Because we share the land with the polar bears, the Iñupiat inevitably come into contact with polar bears from time to time.  These interactions appear to be increasing in recent years.  In order to avoid a dangerous or even lethal encounter, it is critically

1

important that we be able to take necessary non-lethal steps to discourage the polar bears from damaging our property, fishing gear, and catch.  If such non-lethal deterrence were outlawed, I have no doubt that more interactions would result in the killing of polar bears.

6.    The Arctic Slope Iñupiat have depended upon the marine mammals and upland species for their subsistence from time immemorial, and so our information concerning these species and their environment may be superior to that of the scientists working for the government and environmental organizations.    Iñupiaq provide a component of practical, experience-based knowledge of the Arctic environment that is unavailable from other sources.  Government planners have learned to value Iñupiat input. In recent years, Iñupiaq estimates of the health of the bowhead whale population, for example, have proved more accurate than the predictions of government scientists.

7.    The Iñupiat have a great deal of respect for wildlife, including polar bears. As confirmed by the federal government, our activities on the North Slope have very little impact on the sustainable population.  While we are concerned by the recent loss of sea ice, we are equally concerned that the remedies being discussed in this case – possibly vacating the so-called "4(d) Rule" or listing the polar bear as an endangered species – will not solve the problem.    Instead, those remedies would directly and disproportionately harm the Iñupiat people whose research and responsible stewardship have arguably helped polar bears the most.  The development of our villages and resources are directly affected by the U.S. Fish and Wildlife Service's listing determinations for the polar bear.

8.    In the space of a few decades, we have gone from an economy based almost entirely on subsistence to a mixed economy.  Our cash jobs, economic activity, and a

2

commercial tax base are necessary to maintain the schools, transportation, health care, sanitation facilities and other amenities that are taken for granted elsewhere in the United States. The only Arctic Slope resource capable of supporting and sustaining this economic structure is environmentally responsible oil and gas exploration, development, and production. Resource development in the Arctic requires a careful balance of the economic, subsistence-hunting, and environmental protection interests of the Iñupiaq people. All three elements are critical to the preservation of their lives and culture.

9. It is very important to the State of Alaska's and the Arctic Slope's economy that gas and oil resources in the Arctic Slope be developed. Arctic Slope oil development currently funds most of the State of Alaska's budget. ASRC's shareholders and other Arctic Slope residents benefit from state-funded programs. Arctic Slope oil production also provides a large and important property tax base for the North Slope Borough government. Borough tax revenue is used to provide for education and many other essential public services and facilities to our eight Arctic Slope villages, to our shareholders, and to other Borough residents. Oil and gas-related activities are the primary private sector economy in the Arctic. Oil development creates jobs for our shareholders as well as oil field services contract opportunities for ASRC, its subsidiary companies, our village corporations, and the other Arctic Slope businesses. Certain revenues received by ASRC from oil development will be shared with all Alaska Natives pursuant to the sharing mechanism of ANCSA Section 7(i).

10. ASRC and its subsidiary companies have been active in almost every aspect of North Slope oil exploration, development, production and transportation since 1971.

3

ASRC's involvement has included serving as a contractor on oil field developments, performing design and engineering work, building and maintaining pipelines, leasing its private lands for exploration and development, protecting shareholder interests, and a variety of other oil field service and related Arctic Slope activities.

11.    Energy companies are sensitive to local hire/ contracting demands.  As the resident regional corporation, ASRC has a reasonable expectation that one or more of its subsidiaries will receive contracts in connection with exploration, development of and production from the area's natural resources.

12.    ASRC has a number of interests that would be directly and negatively impacted by a decision vacating the 4(d) Rule, ordering that polar bears be listed as "endangered," or otherwise restricting responsible oil and gas development on the North Slope.  These interests include:

> a.   Lost job opportunities to ASRC shareholders.
>
> b.   Lost contracting opportunities to ASRC subsidiaries.
>
> c.   Possible lost production of oil and gas from ASRC's lands.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

4

d. Reduction in quality of life on the Arctic Slope, the economy of which is now heavily dependent on jobs, economic activity and tax revenues from oil and gas activities.

e. Lost opportunities for cultural exchanges with other Natives.

f. Lost ability to protect essential private property through the use of non-lethal deterrents against polar bears.

13.    ASRC, on behalf of itself and its shareholders, is in a unique position to provide useful information to the Court. ASRC and its shareholders are perhaps the only parties to this litigation that can see the dispute from both sides. The economic well-being of ASRC as a corporation and each of its shareholders is critically dependent upon the continuation of oil and gas exploration, development and production on the Arctic Slope. At the same time, as the only residents of the rural areas who regularly interact with polar bears and depend upon them for food and cultural needs, the Inupiat of the Arctic Slope have insisted that development occur in a manner that respects wildlife like polar bears as well as the subsistence lifestyle and culture of area residents.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _1st_, July, 2008, at Barrow, Alaska.

_____
Jacob Adams

SUBSCRIBED AND SWORN TO before me this _1st_ day of July, 2008 at Barrow, Alaska.

_____
Notary Public in and for Alaska
My commission expires: _5/25/2010_

CBD v. Dirk Kempthorne, et al.
Declaration of Jacob Adams

Case No. C 08-01339 (CW)
Page 6 of 7

## **PROOF OF SERVICE BY ELECTRONIC TRANSMISSION**

I, the undersigned, declare that I am a citizen of the United States, over the age of 18 years and not a party to this action.  I am employed in the County of Los Angeles and my business address is 333 S. Grand Avenue, Suite 4270, Los Angeles, CA  90071.

On July 3, 2008, I electronically served a copy of the foregoing:

### **DECLARATION OF JACOB ADAMS IN SUPPORT OF MOTION OF ARCTIC SLOPE REGIONAL CORPORATION TO INTERVENE**

On the recipients designated on the Notice of Electronic Filing generated by the Electronic Case File website of the Northern District of California.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed July 3, 2008, at Los Angeles, California.

_____/s/ *Karen L. Roberts*_____
Karen L. Roberts

René P. Tatro (SBN 78383)
Juliet A. Markowitz (SBN 164038)
TATRO TEKOSKY SADWICK LLP
333 S. Grand Avenue, Suite 4270
Los Angeles, California 90071
Telephone:    (213) 225-7171
Facsimile:    (213) 225-7151
E-mail:    renetatro@ttsmlaw.com
          jmarkowitz@ttsmlaw.com

Jeffrey M. Feldman (AK Bar #7605029)
Kevin M. Cuddy (MA Bar #647799)
*Pro hac vice applications pending*
FELDMAN ORLANSKY & SANDERS
500 L Street, Suite 400
Anchorage, Alaska 99501
Telephone:    (907) 272-3538
Facsimile:    (907) 274-0819
Email:    feldman@frozenlaw.com
          cuddy@frozenlaw.com

*Attorneys for Proposed Intervenor-Defendant*
*Arctic Slope Regional Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DIRK KEMPTHORNE, et al., <br><br><br> Defendants. | Case No. C-08-1339-CW <br><br> **[PROPOSED] ORDER GRANTING INTERVENTION** <br><br> Date:    August 14, 2008 <br> Time:    2:00 p.m. <br> Courtroom:    2 <br><br> Honorable Claudia Wilkin |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

     After considering the Motion for Leave to Intervene and supporting papers filed by applicant for intervention, Arctic Slope Regional Corporation ("ASRC") and any responses and replies thereto, it is hereby ORDERED that the Motion is GRANTED and ASRC's Proposed Answer shall be filed in the form of the Proposed Answer submitted with ASRC's moving papers.  ASRC is hereby granted leave to intervene as of right in all claims challenging the May 15, 2008 regulations issued by the defendants and in any remedy phase of plaintiffs' National Environmental Policy Act claims, and is further granted permissive intervention with respect to the merits of plaintiffs' National Environmental Policy Act claims.

     DATED this _____ day of _____, 2008.


_____
Honorable Claudia Wilken
United States District Judge

[PROPOSED] ORDER GRANTING
INTERVENTION

C-08-1339-CW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PROOF OF SERVICE BY ELECTRONIC TRANSMISSION

I, the undersigned, declare that I am a citizen of the United States, over the age of 18 years and not a party to this action.  I am employed in the County of Los Angeles and my business address is 333 S. Grand Avenue, Suite 4270, Los Angeles, CA  90071.

On July 3, 2008, I electronically served a copy of the foregoing:

### [PROPOSED] ORDER GRANTING INTERVENTION

On the recipients designated on the Notice of Electronic Filing generated by the Electronic Case File website of the Northern District of California.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed July 3, 2008, at Los Angeles, California.


　　　　　　　　　　　　_____/s/ *Karen L. Roberts*_____
　　　　　　　　　　　　Karen L. Roberts