SETH D. HILTON (SB #181899)
sdhilton@stoel.com
ANDREW F. BRIMMER (SB#179146)
afbrimmer@stoel.com
sdhilton@stoel.com
STOEL RIVES LLP
980 Ninth Street, 19th Floor
Sacramento, CA  95814
Telephone:  (916) 447-0700
Facsimile:  (916) 447-4781

JEFFREY W. LEPPO (*Pro Hac Vice*)
jwleppo@stoel.com
Jason T. Morgan (*Pro Hac Vice*)
jtmorgan@stoel.com
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA  98101
Telephone:  (206) 624-0900
Facsimile:  (206) 386-7500

Attorneys for Proposed Intervenor-Defendant
Alaska Oil and Gas Association

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al.;<br><br>Plaintiffs,<br><br>v.<br><br>DIRK KEMPTHORNE, United States Secretary of the Interior, et al,<br><br>Defendants. | Case No. 08-1339 CW<br><br>**REPLY MEMORANDUM OF THE ALASKA OIL AND GAS ASSOCIATION IN SUPPORT OF INTERVENTION**<br><br>Date:     July 17, 2008[1]<br>Time:    2:00 p.m.<br>Dept:    Courtroom 2, 4th Floor<br>Judge:   Hon. Claudia Wilken |

### I.     INTRODUCTION

As addressed in the Alaska Oil and Gas Association's ("AOGA's") motion and supporting materials, AOGA represents the one industry that unavoidably operates in polar bear habitat on

---

[1] The Court has given notice that it intends to take this motion under submission on the papers alone. *See* Docket 99 (Clerk's Notice Taking Motion Under Submission).

the North Slope of Alaska and in adjacent offshore waters of the Beaufort and Chukchi Seas. As a consequence, the effects of the polar bear listing decision and the companion interim final 4(d) rule, and the implications of Plaintiffs' litigation challenging these decisions, are direct, immediate, unique and long-term. AOGA and its members have a direct regulatory, economic, safety and conservation stake in the outcome of this litigation.

Plaintiffs do not oppose AOGA's intervention in this case. *See* Docket 114 at 4 ("Plaintiffs, however, are not opposed to AOGA's participation in the merits of this case."); Docket 114-2 (Plaintiffs' proposed order granting AOGA intervention). Nevertheless, Plaintiffs belittle AOGA's interests, and invite clear error in suggesting that intervention as of right is not available to AOGA in Plaintiffs' ESA and APA claims. Ultimately, Plaintiffs seek to confine AOGA's involvement in the case on the pretense that doing so is necessary to ensure AOGA does not "disrupt or delay this case through the filing of other motions." *Id.* at 2.

AOGA's interests will not benefit from disruption or delay of this, or any other, litigation. AOGA stipulates to abide by the case management statement of the principal parties, the related schedule already established, or such other schedule as this Court may order. Because AOGA's interests are significant and legally protectable, and because the principal parties do not oppose its motion, AOGA's motion for intervention should be granted to allow for full and meaningful participation.

## II.   ARGUMENT

### A.   AOGA's Interests In The Merits Are Significant And Legally Protectable

The principal claims to be decided in this litigation under both the present First Amended Complaint, or the soon-to-be-filed second amended complaint, arise under the Endangered Species Act ("ESA") or the Administrative Procedure Act ("APA").[2] AOGA is entitled to intervention as of right in all such claims pursuant to Civil Rule 24(a) and controlling Ninth

---

[2] *See* Docket 102 at 2 (Joint Case Management Statement characterizing Plaintiffs' claims and identifying only ESA and APA claims Plaintiffs intend to include in their second amended complaint); Docket 114 at 4 n.1 (Plaintiffs' brief similarly characterizing the new claims it will file under ESA § 4).

Circuit authority. In addition, as stated in AOGA's opening brief, AOGA seeks permissive intervention pursuant to Civil Rule 24(b) in the merits of Plaintiffs' lone NEPA claim.

It bears restating here that AOGA's right to intervene under Civil Rule 24(a) must be determined based upon a practical inquiry regarding: (1) the timeliness of the motion; (2) the existence of a protectable interest relating to the subject matter of the lawsuit; (3) whether the disposition of the action may impair AOGA's ability to protect its interests; and (4) whether AOGA's interest is adequately represented by defendants. Plaintiffs have not addressed, let alone contested, these factors directly. Nor have Plaintiffs disputed that the Ninth Circuit requires application of its intervention test broadly to favor intervention. *See United States v. City of Los Angeles*, 288 F.3d 391, 397-98 (9th Cir. 2002)("'A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts.'")(quoting *Forest Conservation Council v. U.S. Forest Service*, 66 F.3d 1489, 1496 n.8 (9th Cir. 1995)).

Nevertheless, Plaintiffs conflate intervention in ESA and APA claims with the limits placed on intervention as of right in National Environmental Policy Act ("NEPA") cases by the Ninth Circuit. AOGA has explicitly identified for the Court the Ninth Circuit rule limiting intervention as of right in NEPA actions to the remedy or injunctive phase. *See* Docket 96 at 4 n.1.[3] Accordingly, AOGA seeks permissive intervention on the merits of Plaintiffs' NEPA claim (to which Plaintiffs do not object) and intervention as of right in any related remedy phase (to which Plaintiffs also do not object). *See id.* However, the applicable Ninth Circuit rule for the vast majority of the claims in this litigation, which are brought or will be brought under the ESA and APA, is – as Plaintiffs well know – different. *See, e.g., Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397-98 (9th Cir. 1995)(upholding grant of intervention as of right as a defendant in ESA and APA challenge to listing decision under ESA § 4).

---

[3] For the reasons adopted by other circuits, AOGA respectfully disagrees with the Ninth Circuit's position. *See, e.g., Kleissler v. U.S. Forest Service*, 157 F.3d 964, 971-72 (3d Cir. 1998)(rejecting Ninth Circuit rule on the grounds that it "contravenes a major premise of intervention – the protection of third parties affected by pending litigation" and acknowledging that NEPA actions often have immediate and deleterious effects on entities and individuals other than plaintiffs).

Plaintiffs' efforts to belittle and distinguish AOGA's interest as merely economic interests that fall outside the concern of the ESA is belied by the record before this Court. Along with the widely dispersed Native communities located on Alaska's North Slope, AOGA's members are the principal human occupants of polar bear habitat in Alaska. *See* Docket 97 at ¶ 4(a). AOGA's members face serious human safety dangers in operating in proximity to the Arctic's top predator species. *Id.* at ¶ 4(b). Moreover, AOGA's members are well-cognizant of the link between the health and productivity of the Alaskan Arctic, and federal, state and local regulatory authority allowing responsible oil and gas exploration and development. *Id.* at ¶¶ 4-5. Because polar bear habitat overlaps with oil and gas resources in Alaska, AOGA's members must expend significant efforts securing federal authorizations, avoiding interactions with polar bears, and minimizing and mitigating any adverse impacts. *Id.*[4] Accordingly, for far longer than Plaintiffs' focus on polar bears, AOGA's members have had a very substantial stake in conservation and management programs involving the Alaskan Arctic ecosystem. *Id.* at ¶ 4. In any event, Plaintiffs' contention directly contradicts the unequivocal holding of the U.S. Supreme Court that economic concerns are "plainly" within the zone of interests protected by the ESA:

> We think it readily apparent that another objective [in addition to species preservation] (if not indeed the primary one) is to avoid needless economic dislocation produced by agency officials zealously but unintelligently pursuing their environmental objectives. That economic consequences are an explicit concern of the ESA is evidenced by § 1536(a)(2)'s no-jeopardy mandate where there are not reasonable and prudent alternatives to the agency action and the benefits of the agency action clearly outweigh the benefits of the alternatives.

*Bennett v. Spear*, 520 U.S. 154, 176-77 (1997)(holding that range operators and irrigation districts have standing to challenge biological opinion because ESA's zone of protected interests includes economic interests); *see also Sierra Club v. U.S. EPA*, 995 F.2d 1478, 1483 (9th Cir. 1993)

---

[4] As a result of these efforts, AOGA's members have been able to conduct oil and gas exploration and development for decades with no more than a negligible effect on survival and recruitment of polar bear populations. 73 Fed. Reg. 28211 at 28266, 28284 (May 15, 2008) (polar bear listing decision finding that oil and gas activities in Alaska do not threaten the polar bear species, and that such activities, as regulated under the Marine Mammal Protection Act ("MMPA"), have not affected rates of recruitment or survival). Since implementation of the incidental take program under the MMPA, there have been no fatal encounters between polar bears and industry activities on the North Slope of Alaska. *Id.* at 28266.

(granting intervention to third parties and stating that "[o]ur adversary process requires that we hear from both sides before the interests of one side are impaired by a judgment").

## B. AOGA Is Entitled To Full Rights Of Participation

Instead of objecting to AOGA's intervention, Plaintiffs contend that AOGA's participation should be constrained to prohibit AOGA from filing any non-dispositive motions. However, AOGA should not be precluded from participating as a full-status intervenor-defendant, including the right to file any necessary or appropriate procedural motions that may be warranted during the course of the litigation. AOGA has no intent or interest in delaying this litigation; nor do Plaintiffs provide any basis for expecting otherwise. Nevertheless, AOGA stipulates to abide by the existing case management statement and scheduling orders, or such other scheduling orders as this Court may establish. *See* Docket 116 (order adopting parties' amended schedule). This Court is otherwise well-equipped in the ordinary course to address dilatory behavior, disruptive tactics or frivolous motions.

AOGA's interest in participating as a full-status intervenor is especially important in this case because the Plaintiffs have yet to file the operative complaint, and the Defendants have not yet filed the administrative record. Plaintiffs, in essence, are asking this Court to blindly prohibit any appropriate motion practice, such as a motion to supplement the record or a motion to strike, without any factual basis or legal authority, and without the Court, Defendants or AOGA having seen either the ultimate complaint establishing the legal issues in this case or the supporting administrative record establishing the underlying factual and scientific basis for both the challenged decisions and Plaintiffs' contentions. While the tactical advantage to Plaintiffs from blanket and uninformed restraint is clear, there is no reason for or fairness in imposing such extraordinary and preemptive restrictions in this case.[5]

---

[5] *See, e.g.*, *Center for Biological Diversity v. Kempthorne*, Case No. C-07-0894 EDL, Docket 23 (N.D.Cal. 2007)(order granting AOGA intervention in polar bear MMPA incidental take regulations litigation). Upon the motion of the United States, joined in by AOGA, this litigation was subsequently transferred to the U.S. federal district court in Anchorage where it was resolved on its merits. *See id.* at Docket 44 (order granting motion for transfer).

### III. CONCLUSION

For the foregoing reasons, AOGA's *unopposed* motion to intervene should be granted in full.

DATED: July 3, 2008

STOEL RIVES LLP

By: /s/ Jeffrey W. Leppo
JEFFREY W. LEPPO, *pro hac vice*
SETH D. HILTON (SB #181899)
Attorneys for Proposed
Intervenor-Defendant
Alaska Oil and Gas Association