Andrew M. Hawley (Cal. Bar No. 229274)
Brian Segee (Cal. Bar No. 200795)
Defenders of Wildlife
1130 Seventeenth Street, N.W.
Washington, D.C. 20036
(202) 682-9400 x124
ahawley@defenders.org
bsegee@defenders.org

Attorneys for Plaintiff-Intervenor

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DIRK KEMPTHORNE, et al.,<br><br>Defendants. | CASE NO.: C-08-1339-CW<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDERS OF WILDLIFE TO INTERVENE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE**<br><br>**Date:** August 28, 2008<br>**Time:** 2:00 p.m.<br>**Judge:** Honorable Claudia Wilken<br>**Courtroom:** Courtroom 2, 4th Floor |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that at 2:00 p.m. on August 28, 2008, or as soon thereafter as the matter may be heard in the Honorable Judge Claudia Wilken's courtroom of the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, California, Defenders of Wildlife ("Defenders") will move this Court for intervention as a plaintiff in the above captioned case.

This motion is brought pursuant to Federal Rule of Civil Procedure 24(a) and, in the alternative, 24(b). For the reasons set forth in the accompanying Memorandum of Points and

Authorities, Defenders seeks intervention to protect its significant protectable interest in the conservation of the polar bear and its habitat that will be harmed as a result of Defendants, Dirk Kempthorne, Secretary of the Interior, and the United States Fish and Wildlife Service, failure to issue regulations necessary to provide for the conservation of the polar bear, as required by section 4(d) of the Endangered Species Act ("ESA"), 16 U.S.C. § 1533(d). Defenders' motion seeks an order pursuant to Fed. R. Civ. P. 24 granting it status as a plaintiff-intervenor to protect its interests.

This motion is based on the accompanying Memorandum of Points and Authorities, the pleadings, records and files in this action, and other such documentary and oral evidence that may be supplied at the hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDERS OF WILDLIFE IN SUPPORT OF MOTION TO INTERVENE**

**Table of Contents**

INTRODUCTION .......... 1

APPLICANT .......... 3

ARGUMENT .......... 4

I. DEFENDERS SATISFIES RULE 24(a) AND SHOULD BE GRANTED INTERVENTION OF RIGHT .......... 4

A. Intervention Will Allow for the Most Efficient Resolution of the Issues Arising From the FWS's Listing of the Polar Bear and the Related 4(d) Rule .......... 4

B. Defenders Satisfies All Requirements for Intervention of Right .......... 7

1. Defenders' Motion is Timely .......... 7

2. Defenders Has Significantly Protectable Interests in this Action .......... 8

3. Disposition of this Case May Impair or Impede Defenders' Interests .......... 9

4. None of the Parties Adequately Represent Defenders' Interests .......... 10

II. DEFENDERS SATISFIES THE STANDARD FOR PERMISSIVE INTERVENTION .......... 13

CONCLUSION .......... 14

**Table of Authorities**

**Cases**

California v. United States, 450 F.3d 436 (9th Cir. 2006) .......... 8,9

County of Fresno v. Andrus, 622 F.2d 436 (9th Cir. 1980) .......... 8

Employee Staffing Servs. v. Aubry, 20 F.3d 1038 (9th Cir. 1994) .......... 13

Forest Cons. Council v. U.S. Forest Service, 66 F. 3d 1489 (9th Cir. 1995) .......... 10

Greene v. United States, 996 F.2d 973 (9th Cir. 1993) .......... 13

Gifford Pinchot Task Force v. U.S. Fish & Wildlife Serv., 378 F.3d 1059 (9th Cir. 2004) .......... 5

Home Builders Ass'n of N. Cal. v. U.S. Fish & Wildlife Serv., 2006 U.S. Dist. LEXIS 34803 (E.D. Cal. April 19, 2006) .......... 11

Idaho Farm Bureau Fed'n v. Babbitt, 58 F.3d 1392 (9th Cir. 1995) ................................ 8

Kootenai Tribe of Idaho v.Veneman, 313 F.3d 1094 (9th Cir. 2002)............................. 13

LG Elecs., Inc. v. Asustek Computer, Inc., 2002 U.S. Dist. LEXIS 23932 (N.D. Cal. Dec. 4, 2002)....................................................................... 11

Natural Res. Def. Council v. Costle, 561 F.2d 904 (D.C. Cir. 1977) .........................11,12

Northwest Forest Resource Council v. Glickman, 82 F.3d 825 (9th Cir. 1996) .............. 13

United States v. Alisal Water Corp., 370 F.3d 915 (9th Cir. 2004)................................. 7

United States v. City of Los Angeles, 288 F.3d 391 (9th Cir. 2002)............................. 4,8

Sagebrush Rebellion, Inc. v. Watt, 713 F.2d 525 (9th Cir. 1983) ............................... 8,10

SEC v. United States Reality & Improvement Co., 310 U.S. 434 (1940)........................ 12

Sierra Club v. Clark, 755 F.2d 608 (8th Cir. 1985) .................................................... 3, 9

Sierra Club v. EPA, 995 F.2d 1478 (9th Cir.1993)..................................................... 7,10

Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d 810 (9th Cir. 2001)...................... 7,10

Trbovich v. United Mine Workers, 404 U.S. 528(1972).....................................10,11,12

TVA v. Hill, 437 U.S. 153, 172 (1978)........................................................................ 5

**Statutes**

5 U.S.C. § 551....................................................................................................... 1

16 U.S.C. § 1361 ................................................................................................... 2

16 U.S.C. § 1532(19)............................................................................................... 6

16 U.S.C. § 1533(d) .............................................................................................. 1,5

**Regulations**

50 C.F.R. § 17.3 ..................................................................................................... 6

50 C.F.R. § 17.31 ................................................................................................... 6

**Rules**

Fed. R. Civ. P. 24(a)............................................................................................. 1,7

Fed. R. Civ. P. 24(b)........................................................................................1,12,13

**Federal Register**

73 Fed. Reg. 28,212 (May 15, 2008)......................................................................... 6

73 Fed. Reg. 28,305 (May 15, 2008)............................................................... 1,2,6

**Miscellaneous**

Fed. R. Civ. P. 24 Advisory Comm. Notes........................................................... 4

Dan Rohlf, Top 10 Issues under ESA Section 4, 34 Envtl. L. 483, 531 (Spring 2004).... 10

On Thin Ice: The Future of the Polar Bear: Hearing Before the H. Select Comm. on Energy Independence and Global Warming,110th Cong. (Jan. 17, 2008) (statement of Jamie Clark, Executive Vice-President of Defenders)................. 2,4

Endangered Species Implementation: Hearing Before the H. Natural Resources Comm., 110th Cong. (May 9, 2007) (Statement of Jamie Clark, Executive Vice President) ......................................... 4

Wildlife, Oceans, and Climate Change: Hearing Before the H. Natural Resources Comm., 110th Cong. (April 17, 2007) (Statement of Chris Haney, Chief Scientist)......................................................... 4

**INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 24(a), Defenders of Wildlife ("Defenders") moves to intervene as a plaintiff in this action as a matter of right in order to challenge an "interim final rule" issued by the U.S. Fish and Wildlife Service ("FWS") on May 15, 2008 pursuant to section 4(d) of the Endangered Species Act ("ESA"), 16 U.S.C. § 1533(d). 73 Fed. Reg. 28,305 (May 15, 2008) ("4(d) Rule"). The 4(d) Rule, which purports to limit the extent to which the polar bear (Ursus maritimus) is subject to "take" prohibitions under the ESA, fails to provide for the conservation of the polar bear in violation of the substantive and procedural mandates of the ESA and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq. If this court determines that Defenders is not entitled to intervene as a matter of right, Defenders alternatively moves for permissive intervention pursuant to Federal Rule of Civil Procedure 24(b).[1]

Under Federal Rule of Civil Procedure 24(a), an applicant may intervene in a case where: (1) its motion is timely; (2) it has "an interest relating to the property or transaction which is the subject of the action;" (3) "the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest;" and (4) the applicant's interest is not "adequately represented by existing parties." Fed. R. Civ. P. 24(a). As addressed in detail below, Defenders satisfies these requirements and therefore is entitled to intervene in this action as a matter of right. Defenders' members are injured by the FWS's 4(d) Rule, since it fails to provide appropriate protection to the polar bear, and Defenders accordingly has a legal right to challenge the rule in federal court pursuant to the ESA's citizen suit provisions and the APA. Presenting this challenge through intervention in the ongoing litigation before this Court over the listing of the polar bear and the related decisions and omissions by FWS will permit efficient resolution of these issues while allowing Defenders to protect its significant interests.

---

[1] Through respective counsel, Plaintiffs have indicated that they do not oppose this motion and Defendants have indicated that they will take no position with regard to this motion.

Defenders and its members have long been committed to the protection of the polar bear and its habitat, and are increasingly focused on addressing the impacts of climate change on the polar bear and other imperiled wildlife. See generally Declaration of Jamie Rappaport Clark. In addition, Defenders has a deep organizational interest in the lawful administration of the ESA and specifically, the proper application of Section 4(d) to protect threatened species. Reflecting these interests, Defenders participated throughout the rulemaking process to list the polar bear; in addition to submitting detailed comments in support of the listing, Clark Decl. ¶3, Defenders' Executive Vice President, Jamie Rappaport Clark, a former Director of the FWS, testified before Congress on FWS's failure to timely issue a final listing rule. On Thin Ice: The Future of the Polar Bear: Hearing Before the H. Select Comm. on Energy Independence and Global Warming, 110th Cong. (Jan. 17, 2008) (statement of Jamie Clark, Executive Vice-President of Defenders).

Defenders has not previously sought intervention in this case because plaintiffs' claims, while important to polar bear conservation, were focused on various procedural deadlines imposed by the ESA on FWS during the listing process. FWS's new 4(d) Rule for the polar bear, however, provides sweeping and unprecedented exemptions from the ESA's prohibitions against the "take" of listed species, exempting any take of polar bear that is incidental to activities undertaken anywhere in the United States outside of Alaska (including projects that will emit greenhouse gases and contribute to global warming), and also exempting any activity conducted within Alaska that is consistent with the requirements of the Marine Mammal Protection Act ("MMPA"), 16 U.S.C. § 1361 et seq., and the Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES"). 73 Fed. Reg. at 28,318. The 4(d) Rule thus plainly threatens polar bear conservation; it also has important implications for the overall administration of the ESA. Indeed, the polar bear 4(d) Rule is of profound importance, as its purported exemption of greenhouse gas emissions from the ESA's take prohibitions would not only give free license to the very activities which most threaten the future of the polar bear, but in the process would also create de facto policy that the ESA's provisions do not apply to global warming impacts. These issues go to the heart of Defenders'

conservation mission. Defenders thus respectfully requests that its motion for intervention be granted.

**APPLICANT**

Formed in 1947, Defenders is a non-profit organization based in Washington, D.C., with a field office in Anchorage, Alaska, dedicated to the protection of all native wild animals and plants in their natural communities, including the polar bear. Defenders has approximately 525,000 members nationwide, including over 1,500 in Alaska. Defenders advocates new approaches to wildlife conservation that will help keep species from becoming endangered, and employs education, litigation, research, legislation, and advocacy to defend wildlife and their habitat. Defenders' members derive scientific, aesthetic, and spiritual benefit from the existence of the polar bear in the wild and from the Arctic ecosystem upon which the species depends. The 4(d) Rule harms Defenders and its members by failing to provide for the polar bear's continued survival and recovery as required by the ESA. It also establishes precedent for the protection of threatened species under the ESA that may harm untold species in the future.

Defenders has a long-standing commitment to the lawful administration of the ESA, and has long been recognized for its expertise on ESA law, policy, and administration. This commitment extends specifically to section 4(d) of the ESA, which until recently was a relatively obscure and little-used provision of the Act. More than twenty years ago, however, Defenders of Wildlife was one of two plaintiffs that successfully challenged FWS's attempt to rely on 4(d) to allow the sport hunting of threatened gray wolves in northern Minnesota. Sierra Club v. Clark, 755 F.2d 608 (8th Cir. 1985). In striking down that rule, the Eighth Circuit agreed with Defenders' argument that "[t]he extent of the Secretary's discretion [under section 4(d)] is limited by the requirement that the regulations he is to issue must provide for the conservation of threatened species." Id. at 612-13 (emphasis in original). This fundamental principle is directly threatened by FWS's polar bear 4(d) Rule.

Defenders' recognized leadership and special expertise on ESA issues is further bolstered by its executive staff, which include both a former FWS Director and former Deputy

Assistant Secretary for Fish, Wildlife and Parks in the Interior Department. Defenders staff is frequently asked to testify before Congress on issues relating to ESA law, policy, and administration. Among other issues, Defenders has recently testified regarding the delay of the polar bear's listing, the Bush administration's implementation of the ESA, and the effects of global warming and climate change on wildlife, including the polar bear. See Endangered Species Implementation: Hearing Before the H. Natural Resources Comm., 110th Cong. (May 9, 2007) (Statement of Jamie Clark, Executive Vice President); Wildlife, Oceans, and Climate Change: Hearing Before the H. Natural Resources Comm., 110th Cong. (April 17, 2007) (Statement of Chris Haney, Chief Scientist); On Thin Ice: The Future of the Polar Bear: Hearing Before the H. Select Comm. on Energy Independence and Global Warming, 110th Cong. (Jan. 17, 2008) (statement of Jamie Clark, Executive Vice President).

## ARGUMENT

### I. DEFENDERS SATISFIES RULE 24(a) AND SHOULD BE GRANTED INTERVENTION OF RIGHT

#### A. Intervention Will Allow for the Most Efficient Resolution of the Issues Arising From the FWS's Listing of the Polar Bear and the Related 4(d) Rule

Defenders' motion should be granted as a matter of both policy and law. As noted by both the Ninth Circuit and the authors of the Federal Rules of Civil Procedure, intervention requirements should be applied in a pragmatic fashion to help serve the goals of judicial economy and broadened access to the courts. See United States v. City of Los Angeles, 288 F.3d 391, 397-98 (9th Cir. 2002) ("A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts. By allowing parties with a practical interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues; at the same time, we allow an interested party to express its views before the court.") (emphasis in original); Fed. R. Civ. P. 24 Advisory Comm. Notes ("If an [applicant] would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene ...."). In this instance, the FWS has promulgated an ESA Section 4(d) rule that provides sweeping

exemptions from the ESA's Section 9 take prohibitions—an action that will both directly undermine polar bear conservation and establish damaging precedent for future ESA decisions. Defenders, which has demonstrable and long-standing interests in wildlife conservation and the lawful administration of the ESA, intends to challenge the legality of the FWS's 4(d) Rule. Recognizing that plaintiffs in the present action before this court will raise claims closely related to those that Defenders intends to bring, Defenders seeks intervention in the present case rather than initiating its own independent action as a matter of judicial economy. Given that Defenders can unquestionably pursue these claims as a matter of right in an independent action, granting this motion will best serve the goal of judicial efficiency while allowing Defenders to vindicate its strong interest in challenging the 4(d) Rule.

Defenders' focus is on the legality of the FWS's 4(d) Rule, because the rule threatens both the conservation of the polar bear and proper administration of the ESA for other threatened species. Under Section 4(d) of the ESA, the FWS must issue "such regulations as [it] deems necessary and advisable to provide for the conservation of [threatened] species." 16 U.S.C. § 1533(d); TVA v. Hill, 437 U.S. 153, 172 (1978) ("By § 4 (d) Congress has authorized—indeed commanded—the Secretary to 'issue such regulations as he deems necessary and advisable to provide for the conservation of such species.'"). The ESA defines "conservation" as "the use of all methods and procedures which are necessary to bring any endangered species or threatened species back to the point at which the measures provided are no longer necessary." 16 U.S.C. § 1532(3). While the ESA provides FWS with some flexibility in addressing the take of threatened species (as compared with endangered species, for which take is flatly prohibited), it also constrains this flexibility by requiring that any rule developed pursuant to section 4(d) help achieve the ESA's primary objective "not merely to forestall the extinction of species (i.e., promote a species' survival), but to allow a species to recover to the point where it may be delisted." Gifford Pinchot Task Force v. U.S. Fish & Wildlife Serv., 378 F.3d 1059, 1070 (9th Cir. 2004).

The polar bear 4(d) Rule, however, virtually ignores the central mandate of section 4(d) to provide the measures necessary and advisable for the conservation of the species. FWS

makes no real attempt to evaluate what measures are needed to address the immediate and long-term threats to the bear's existence, or what further measures are needed for the species to ensure its conservation and achieve recovery. The primary threat to the polar bear's existence, as the FWS openly admits, is the loss of its habitat, the Arctic sea ice on which it depends for its hunting, breeding, and survival. 73 Fed. Reg. 28,212, 28,292 (May 15, 2008). Yet FWS wholly fails to address this principal threat to the species' continued existence with the 4(d) Rule; indeed, by exempting the polar bear from the ESA's prohibition of incidental take, the 4(d) rule eliminates the primary protection the ESA affords to species' habitat. Moreover, the 4(d) Rule fails to protect the polar bear from other serious threats to the species' continued existence and survival, including increased bear-human interactions as larger numbers of bears remain on land during the summer and increased human disturbance from greater oil and gas development and higher levels of marine traffic in the Arctic as the sea ice disappears.

Rather, the FWS focuses on justifying its decision not to provide protections for the polar bear normally afforded threatened species as a matter of course under the FWS's regulations. See 50 C.F.R. § 17.31 (applying the take prohibition of section 9 of the Act to threatened species unless the Service specifically provides otherwise). The FWS argues that the polar bear is already substantially protected from take under the MMPA and CITES. 73 Fed. Reg. at 28,313. While the MMPA and CITES indeed provide important protections for marine mammals, these programs are not identical to the specific protections afforded listed species by the ESA. The ESA's prohibition against take is significantly broader than that under the MMPA, for example, and includes "harm," 16 U.S.C. § 1532(19), which FWS defines by regulation to include "significant habitat modification or degradation [that] actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering." 50 C.F.R. § 17.3. The MMPA does not provide any similar protection for the polar bear against habitat destruction, the primary threat to its existence. The FWS's narrow and improper application of Section 4(d) thus leaves the polar bear and its habitat without the protections necessary for the species' recovery.

FWS's fundamental failure to comply with the mandates of the ESA significantly impacts fundamental interests of Defenders and its more than 500,000 members in polar bear conservation and the lawful administration of the ESA. While Defenders is prepared to initiate its own litigation, Defenders believes that intervention in this ongoing litigation will facilitate the efficient resolution of these issues while protecting its own vital interests.

**B. Defenders Satisfies All Requirements for Intervention of Right**

The Ninth Circuit, which "construe[s] Rule 24(a) liberally in favor of potential intervenors," Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 818 (9th Cir. 2001), applies a four-part test in determining whether intervention under that rule is warranted:

> (1) The application for intervention must be timely;
>
> (2) The applicant must have a "significantly protectable" interest relating to the property or transaction that is the subject of the action;
>
> (3) The applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and
>
> (4) The applicant's interest must not be adequately represented by the existing parties in the lawsuit.

Sierra Club v. EPA, 995 F.2d 1478, 1481 (9th Cir.1993); Fed. R. Civ. P. 24(a). Defenders satisfies these criteria, and thus should be granted intervention of right.

**1. Defenders' Motion is Timely**

Defenders' motion to intervene is timely under the three-factor test relied upon by the Ninth Circuit, which considers (1) the stage of the proceedings; (2) prejudice to existing parties; and (3) the reason for delay in moving to intervene. United States v. Alisal Water Corp., 370 F.3d 915, 921 (9th Cir. 2004). Defenders is moving to intervene at the beginning of a new phase of this litigation triggered by the FWS's listing decision and associated 4(d) Rule, which is wholly distinct from the earlier phase in which plaintiffs sought only to compel FWS to make a timely decision. Plaintiffs filed their Second Amended Complaint on July 16, 2008 (Docket Entry ("DE") 126), raising claims related directly to the FWS's actions listing the polar bear and issuing the 4(d) rule. Defenders' motion for intervention is now being filed

only one week later, and well before the September 15, 2008 deadline established by the Court's June 17, 2008, Minute Order (DE 111) for federal defendants to file an Answer to the Second Amended Complaint and to produce the Administrative Record. Defenders could not file more quickly because of the ESA's requirement that it give FWS 60 days notice of its claims, 16 U.S.C. § 1540(g)(2), which it provided to FWS one day after the promulgation of the 4(d) Rule. Moreover, briefing on the substantive matters arising from the most recent complaint is not scheduled to begin until October 2008, with a hearing currently scheduled in January of 2009. Defenders thus filed its intervention motion as early as possible after the FWS's action promulgating the 4(d) rule, at the very beginning of the new phase of this litigation that focuses on the substantive validity of the FWS's listing decision. Its timely motion can cause no prejudice to the other parties.

**2. Defenders Has Significantly Protectable Interests in this Action**

Defenders—a non-profit organization dedicated to wildlife conservation, habitat protection, and the lawful implementation of our Nation's environmental statutes—has significant protectable interests in this litigation. The interest test is not a bright-line rule, but a "practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." City of Los Angeles, 288 F.3d at 398 (quoting County of Fresno v. Andrus, 622 F.2d 436, 438 (9th Cir. 1980)); see also California v. United States, 450 F.3d 436, 441 (9th Cir. 2006) ("[A] party has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation."). Defenders, which has a demonstrated interest in polar bear conservation and FWS's fulfillment of its duties under the ESA toward the species, plainly has a significant protectable interest in the resolution of this case.

Indeed, the Ninth Circuit has expressly recognized environmental protection and wildlife conservation, the interests Defenders seeks to advance, as protectable interests sufficient to justify intervention of right. Idaho Farm Bureau Fed'n v. Babbitt, 58 F.3d 1392, 1397 (9th Cir. 1995) (conservation group entitled to intervene based on interest in protecting endangered species); Sagebrush Rebellion, Inc. v. Watt, 713 F.2d 525, 528 (9th Cir. 1983)

(allowing conservation organization to intervene of right in case challenging creation of protected area where an adverse decision "would impair the society's interest in the preservation of birds and their habitats."). For example, Defenders has a long organizational history and involvement in conservation of the polar bear and its habitat, as well as other top predators throughout North America. See Clark Decl. ¶¶2-3. Recognizing that the polar bear plays a critical role in Arctic ecosystems, and that its loss would threaten a "trophic cascade" similar to those observed when other top predators have been removed from ecosystems, Defenders has been actively engaged in the controversy surrounding the listing of the polar bear and worked previously to secure protections for the species and its habitat. Defenders actively supported the listing of the polar bear and submitted comments urging the FWS to comply with the law and list the species. Id. ¶3. Moreover, Defenders has submitted extensive comments to FWS detailing the legal deficiencies of the 4(d) Rule. Id. ¶5.

Moreover, Defenders has a longstanding interest in the proper administration of the ESA, including in particular Section 4(d) of that Act. Id. Section 4(d) allows flexibility in the protection afforded to threatened species, as compared to species listed as endangered, but for that very reason it risks abuse by government agencies concerned about impacts not on threatened species but on other interests, such as industries operating in such species' habitat. Defenders took strong action to halt such abuse in the most prominent prior case involving Section 4(d), Sierra Club, 755 F.2d 608, in which the federal court declared a proposed sport hunt of the threatened species contrary to the conservation purpose of the ESA. Defenders is very concerned that the polar bear 4(d) rule, unless overturned by this court, will create a damaging precedent that will prompt future efforts to narrowly tailor and minimize the protections of the Act for other threatened species.

**3. Disposition of this Case May Impair or Impede Defenders' Interests**

Once a potential intervenor has established a protectable interest, the Ninth Circuit has found "little difficulty concluding that the disposition of [a] case may, as a practical matter, affect" that interest. California v. United States, 450 F.3d at 442. Disposition of the present case plainly threatens to impair Defenders' demonstrated interests in protecting the polar bear

and its habitat and in the lawful administration of the ESA. As noted supra, FWS's 4(d) rule for the polar bear fails to carry out the conservation mandate of the ESA. The polar bear will not receive the full protections of the ESA it needs, and to which it is legally entitled, until the 4(d) Rule is vacated. If this court were instead to sustain the validity of the 4(d) rule, the polar bear would be deprived of protections it badly needs to avoid extinction, directly impairing Defenders' demonstrated interest in polar bear conservation.

In addition to the direct effect resolution of this case would have on Defenders' conservation interests, the Ninth Circuit has held that the stare decisis effect of a district court decision can be a sufficient basis for demonstrating impairment of interests. Sierra Club v. EPA, 995 F.2d at 1486. The judicial contours of the conservation mandate of section 4(d) are in many respects undefined, particularly when compared to other elements of the ESA. See Dan Rohlf, Top 10 Issues under ESA Section 4, 34 Envtl. L. 483, 531 (Spring 2004) (Until recently, section 4(d) has been nothing more than "an interesting footnote" in the history of the ESA.). Defenders has a long-standing commitment to ensuring that the ESA's conservation mandate, including Section 4(d), is properly administered. FWS's 4(d) rule for the polar bear is unprecedented in its substantive effect, as well its lack of compliance with procedural requirements. The potential stare decisis effects of the Court's ruling on this issue is thus of great interest to Defenders.

**4. None of the Parties Adequately Represent Defenders' Interests**

A prospective intervenor bears the burden of proving that existing parties may not adequately represent its own interests. Sagebrush Rebellion, Inc. v. Watt, 713 F.2d 525, 528 (9th Cir. 1983). The Supreme Court, however, has described this burden as "minimal," emphasizing that the applicant need only show that representation of its interests by the existing parties "may be" inadequate. Trbovich v. United Mine Workers, 404 U.S. 528, 538 n. 10 (1972); Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d at 823; Forest Cons. Council v. U.S. Forest Service, 66 F. 3d 1489, 1498 (9th Cir. 1995). Any doubts regarding the adequacy of representation should be resolved in favor of the intervenor. Forest Cons. Council, 66 F.3d at 1493.

In contrast to Defenders, which seeks only to challenge the 4(d) Rule, plaintiffs have asserted numerous claims relating to both the Final Listing Rule and the 4(d) Rule. See Plfs. Second Amended Complaint ¶¶ 144-185 (raising claims challenging FWS's failure to designate the polar bear as an endangered species; its failure to designate critical habitat for the polar bear; its failure to prepare an Environmental Impact Statement or environmental assessment for the 4(d) Rule in violation of the National Environmental Policy Act; and its failure to promulgate a list of measures for nonlethal deterrence of polar bears in violation of the MMPA). These additional arguments, while fully legitimate, will necessarily divert plaintiffs' resources away from what is Defenders' primary objective in this litigation—ensuring that FWS is not permitted to maintain a regulation ostensibly promulgated pursuant to section 4(d) of the ESA that does not provide for the conservation of the species. In light of the much broader scope of plaintiffs' challenge, when compared to Defenders' limited interest in the 4(d) Rule, plaintiffs will not provide "adequate representation" for Defenders' interests. See Trbovich, 404 U.S. at 538; Home Builders Ass'n of N. Cal. v. U.S. Fish & Wildlife Serv., 2006 U.S. Dist. LEXIS 34803, *16-17 (E.D. Cal. April 19, 2006) (granting intervention of right to plaintiff-intervenor where they had "more specific goal for their involvement in the case" than plaintiffs); LG Elecs., Inc. v. Asustek Computer, Inc., 2002 U.S. Dist. LEXIS 23932, *17 (N.D. Cal. Dec. 4, 2002) (granting intervention of right to defendant-intervenor where Court found that defendant's emphasis on other defenses may preclude it from asserting defenses specific to defendant-intervenor).

In addition, only Defenders can adequately represent its own interests and the interests of its more than 500,000 members in this case, given its long-standing and demonstrated expertise on ESA issues generally, and the administration of section 4(d) specifically. The existing plaintiffs to this suit unquestionably have significant ESA expertise and both Defenders and plaintiffs share the broad goal of ensuring polar bear conservation and the lawful administration of the ESA. However, a "shared general agreement . . . does not necessarily ensure agreement in all particular respects about what the law requires." Natural Res. Def. Council v. Costle, 561 F.2d 904, 912 (D.C. Cir. 1977). In Costle, the D.C. Circuit granted

intervention of right to a defendant-intervenor industry group in an environmental challenge to EPA pollutant regulations despite the fact that not only was EPA defending the legality of the regulations, but several other industry groups had already intervened as defendants. Noting the "minimal burden" upon applicants to show that representation "may be" inadequate, the Court held that the putative intervenor's interests were more "narrow and focused" than the existing parties, and that its arguments could "supplement" the EPA's and existing intervenors' defense of the rule. Id. at 913 (citing Trbovich, 404 U.S. 528). This case presents similar circumstances: Defenders is in "shared general agreement" with plaintiffs about what the law requires, but its interests are solely focused on FWS's 4(d) Rule and are thus more narrow and focused than plaintiffs' challenges to the legality of both the polar bear Final Listing Rule and the 4(d) Rule. Moreover, Defenders has demonstrated long-term expertise and experience on ESA and section 4(d) issues that will serve to supplement plaintiffs' existing arguments, and that preclude plaintiffs from fully representing Defenders' interests. Defenders thus respectfully requests that the Court grant its motion to intervene of right.

## II. DEFENDERS SATISFIES THE STANDARD FOR PERMISSIVE INTERVENTION

If the court denies Defenders' motion to intervene as of right, the Court should alternatively grant Defenders permission to intervene pursuant to Rule 24(b)(2). The rule provides in relevant part:

> Upon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common . . .. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b)(2). Such permissive intervention "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." Employee Staffing Servs. v. Aubry, 20 F.3d 1038, 1042 (9th Cir. 1994) (quoting SEC v. United States Reality & Improvement Co., 310 U.S. 434, 459 (1940)). Notably, "[u]nlike rule 24(a), a 'significant protectable interest' is not required by Rule 24(b) for

intervention; all that is necessary for permissive intervention is that intervenor's 'claim or defense and the main action have a question of law or fact in common.'" Kootenai Tribe of Idaho v.Veneman, 313 F.3d 1094, 1108 (9th Cir. 2002) (internal citation omitted).

The Ninth Circuit has held that "a court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." Northwest Forest Resource Council v. Glickman, 82 F.3d 825, 839 (9th Cir. 1996) (citing Greene v. United States, 996 F.2d 973, 978 (9th Cir. 1993)). In this case, Defenders seeks to ensure the lawful administration of the ESA, and presents claims that arise from the same Section 4(d) rule that is being challenged by plaintiffs. Defenders therefore satisfies the requirement of Rule 24(b)(2) respecting a common question of law or fact. Moreover, Defenders seeks to intervene early in this phase of the lawsuit, before the Administrative Record has been produced, and prior to any substantive briefing or rulings, see supra at 7-8. Finally, Defenders, is able to establish independent grounds for jurisdiction; indeed, it could freely file its complaint as a free-standing action in this court. See Lodged Complaint for Declaratory Judgment and Injunctive Relief ¶¶7, 10; see also supra at 4-6. Thus, permissive intervention is appropriate in this case.

**CONCLUSION**

For the foregoing reasons, Defenders respectfully requests that the Court grant its motion to intervene as plaintiff in this action as a matter of right, or in the alternative, that the Court, in its discretion, permit Defenders to intervene.

Respectfully submitted this 24th day of July 2008,

/s/Andrew M. Hawley
Andrew M. Hawley (Cal. Bar. 229274)
Brian Segee (Cal. Bar. 200795)
Defenders of Wildlife
1130 Seventeenth Street, N.W.
Washington, D.C. 20036
(202) 682-9400

Attorneys for Plaintiff-Intervenor