Andrew M. Hawley (Cal. Bar No. 229274)
Brian Segee (Cal. Bar No. 200795)
Defenders of Wildlife
1130 Seventeenth Street, N.W.
Washington, D.C. 20036
(202) 682-9400 x 124
ahawley@defenders.org
bsegee@defenders.org

Attorneys for Plaintiff-Intervenor

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., Plaintiffs; DEFENDERS OF WILDLIFE, Plaintiff-Intervenor, v. DIRK KEMPTHORNE, et al., Defendants. | CASE NO.: C-08-1339-CW **[LODGED] COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF** |

**INTRODUCTION**

1. In this action, plaintiff-intervenor DEFENDERS OF WILDLIFE ("Defenders") alleges that Defendants DIRK KEMPTHORNE, United States Secretary of the Interior, and the UNITED STATES FISH AND WILDLIFE SERVICE (collectively "FWS") are in violation of the Endangered Species Act ("ESA" or "Act"), 16 U.S.C. §§ 1531 et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq., with regard to the May 15, 2008 "interim final rule" for the polar bear promulgated pursuant to section 4(d) of the ESA, 16 U.S.C. § 1533(d). 73 Fed. Reg. 28,306 (May 15, 2008) ("4(d) Rule").

2. On May 15, 2008, the FWS listed the polar bear as a "threatened" species under the ESA. 73 Fed. Reg. 28,212 (May 15, 2008). Although the listing provided long-overdue

recognition that the bear faces grave threats to its survival due to global warming, FWS on the same day promulgated a second rule that undermines much of the conservation value of the listing, and in fact would exempt many of the threats that have pushed the polar bear toward extinction from liability for take under section 9 of the ESA, 16 U.S.C. § 1538. 73 Fed. Reg. at 28,318.

3. This rule was promulgated under section 4(d) of the ESA, which directs the Secretary to establish regulations that are "necessary and advisable to provide for the conservation" of the species. 16 U.S.C. § 1533(d). Such regulations may extend the ESA's prohibition against the "take" of endangered species to threatened species. Id. The 4(d) Rule, however, declares that "existing conservation regulatory requirements" generally are sufficient to ensure the continued survival and recovery of the polar bear with respect to activities in Alaska, and withholds any ESA incidental take protections for the polar bear resulting from activities within the jurisdiction of the United States outside Alaska. 73 Fed. Reg. at 28,318. The 4(d) Rule thus fails to meet the ESA's conservation mandate.

4. Defenders challenges the issuance of the 4(d) Rule because FWS violated the ESA and the APA in determining the 4(d) Rule was "necessary and advisable to provide for the conservation" of the species.

5. Further, Defenders challenges FWS's failure to comply with public notice and comment procedures required under the ESA and APA before promulgating the 4(d) Rule.

6. Defenders seeks judicial relief declaring that the 4(d) Rule promulgated by FWS violates the ESA and APA. Defenders also asks the Court to vacate the 4(d) Rule.

## JURISDICTION, VENUE, AND INTRADISTRICT ASSIGMENT

7. The Court has jurisdiction over this action pursuant to 16 U.S.C. §§ 1540(c) and (g) (action arising under the ESA and citizen suit provision), 28 U.S.C. § 1331 (federal question), 5 U.S.C. § 702 (APA), and 28 U.S.C. § 1361 (Mandamus). The relief sought is authorized by 28 U.S.C. §§ 2201 (declaratory judgment), 28 U.S.C. § 2202 (injunctive relief), 16 U.S.C. § 1540(g) and 5 U.S.C. §§ 701-706.

8. Venue is proper in the Northern District of California pursuant to 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e) because this civil action is brought against an agency of the United States and officers and employees of the United States acting in their official capacities and under the color of legal authority, at least one plaintiff resides in this judicial district, and no real property is involved in this action.

9. Pursuant to Local Rules 3-5(b) and 3-2(c) and (d), assignment of this case to the Oakland Division is appropriate because plaintiffs are located in San Francisco County.

10. By written notice hand-delivered to Defendants DIRK KEMPTHORNE and U.S. FISH AND WILDLIFE SERVICE on May 16, 2008, more than sixty days prior to the filing of the Complaint, as required by the ESA, 16 U.S.C. § 1540(g), Defenders informed Defendants of violations of the ESA stemming from the Secretary's issuance of the 4(d) Rule.

**PARTIES**

11. Plaintiff-intervenor DEFENDERS OF WILDLIFE is a non-profit organization based in Washington, D.C., with a field office in Anchorage, Alaska. Defenders is dedicated to the protection of all native wild animals and plants in their natural communities, including the polar bear. Defenders has approximately 525,000 members nationwide and over 1500 in Alaska. Defenders advocates new approaches to wildlife conservation that will help keep species from becoming endangered, and employs education, litigation, research, legislation, and advocacy to defend wildlife and their habitat. Defenders' members derive scientific, aesthetic, and spiritual benefit from the existence of the polar bear in the wild and from the arctic ecosystem upon which the species depends. Defenders' members have educational and scientific interests in the preservation of the critically imperiled polar bear. The FWS's failure to properly protect the polar bear and its habitat harms Defenders and its members by facilitating the species' decline.

12. Defenders' members include individuals with varying interests in polar bears and their habitat ranging from scientific, professional, and educational to recreational, aesthetic, moral, and spiritual interests. Defenders' members enjoy, on an on-going basis, the biological, scientific, research, education, conservation, recreational and aesthetic values of the Arctic

region inhabited by this species. Defenders' members observe and study polar bears and their habitat, and derive professional, scientific, educational, recreational, aesthetic, inspirational, and other benefits from these activities and have an interest in preserving the possibility of such activities in the future. An integral aspect of the Defenders members' use and enjoyment of polar bears is the expectation and knowledge that the species is in its native habitat. For this reason, Defenders members' use and enjoyment of polar bears is entirely dependent on the continued existence of healthy, sustainable populations in the wild. Defenders brings this action on its own behalf and on behalf of its adversely affected members.

13. Defenders and its members are adversely affected or aggrieved by federal agency action and are entitled to judicial review of such action within the meaning of the ESA and the APA. FWS's failure to comply with the ESA's mandates prevents the full implementation of measures to protect polar bears pursuant to the ESA. Without the substantial protections of the ESA, polar bears are more likely to continue to decline and become extinct. Defenders is therefore injured because its members' use and enjoyment of polar bears and their habitat is threatened by the decline and likely extinction of the bears. These are actual, concrete injuries to Defenders and its members, caused by the FWS's failure to comply with the ESA and the APA, and the implementing regulations. The relief requested will fully redress those injuries.

14. Defendant DIRK KEMPTHORNE, United States Secretary of the Interior, is the highest ranking official within the Department of Interior and, in that capacity, has ultimate responsibility for the administration and implementation of the ESA with regard to the polar bear, and for compliance with all other federal laws applicable to the Department of the Interior. He is sued in his official capacity.

15. Defendant UNITED STATES FISH & WILDLIFE SERVICE is a federal agency within the Department of Interior authorized and required by law to protect and manage the fish, wildlife and native plant resources of the United States, including enforcing the ESA. FWS has been delegated authority by the Secretary of the Interior to implement the ESA for the polar bear.

**FACTUAL BACKGROUND**

**A. The Polar Bear**

16. The polar bear (Ursus maritimus), the largest of the world's bear species, is distributed among nineteen arctic subpopulations, two of which--the Chukchi Sea and the Southern Beaufort Sea populations, totaling approximately 3500 individuals--are located within the United States.

17. The total polar bear population is thought to be between 20,000 and 25,000, but accurate population data for many areas is lacking and even those populations that are stable or increasing are at risk from the loss of arctic sea ice as a result of global warming.

18. As FWS acknowledges, the best available science relating to global warming and the polar bear indicates that the species faces extinction from the United States by mid-century. See 73 Fed. Reg. at 28,292.

19. Polar bears are completely dependent on Arctic sea ice for survival. 73 Fed. Reg. at 28,214. If the rate of melting observed in 2007 continues, the Arctic could be completely ice free in the summer by mid-century or earlier. 73 Fed. Reg. at 28,228.

20. The melting of the sea ice as a result of human caused global warming is directly and adversely impacting the polar bear. Melting sea ice shortens the time frame in which polar bears can hunt seals due to earlier ice break-up and later freeze-up dates, reduces availability of prey, increases distances bears need to swim, and increases bear-human conflicts as bears move into terrestrial and populated areas in search of food. 73 Fed. Reg. at 28,275-76.

21. Given the polar bears' dependence upon sea ice for access to marine prey, and based on direct observations of adverse effects on polar bear populations associated with reduced sea ice (reduced body condition, reproduction, survival, and population size), the polar bear's survival is clearly imperiled by global warming. See 73 Fed. Reg. at 28,275 ("The ultimate net effect of these interrelated factors will be that polar bear populations will decline or continue to decline.").

22. Recent studies by the United States Geological Survey, a branch of the Department of Interior, estimating maximum carrying capacity and population persistence

based on predicted climate change impacts and sea ice declines predict that polar bear populations within the United States "will most likely be extirpated by mid century." 73 Fed. Reg. at 28,274. Given that the actual loss of Arctic sea ice in recent years exceeds that predicted under climate models, however, it is possible that the polar bear may face extinction in the United States much sooner than mid-century. Id.

**B. Procedural History**

23. The Center for Biological Diversity, the Natural Resources Defense Council and Greenpeace filed a petition with FWS to list the polar bear as a threatened species under the ESA. In response to the petition, FWS published a proposed rule to list the polar bear as threatened. 72 Fed. Reg. 1064 (Jan. 9, 2007). The publication of the proposed rule triggered a January 9, 2008 statutory deadline for publication of the final listing decision. However, on January 7, 2008, FWS Director Hall announced that the final listing decision would be delayed. On April 28, 2008, this Court ordered a halt to this continued and unlawful delay and ordered a final listing decision be made by May 15, 2008. Center for Biological Diversity v. Kempthorne, Case No. C-08-1339-CW (Order Granting Plaintiffs' Motion for Summary Judgment and Injunction, Docket # 35).

24. On May 15, 2008, FWS published a final regulation listing the polar bear as a threatened species under the ESA. 73 Fed. Reg. at 28,212.

25. At the same time, FWS issued an "Interim Final Rule," without prior publication of a draft rule or opportunity for public comment, pursuant to section 4(d) of the ESA, 16 U.S.C. § 1533(d), declaring the extent to which the ESA's prohibitions on the "take" of endangered species would apply to the polar bear. 73 Fed. Reg. at 28,306.

**C. The 4(d) Rule**

26. Pursuant to Section 4(d) of the ESA, the Secretary must establish regulations that are "necessary and advisable to provide for the conservation" of the species. 16 U.S.C. § 1533(d).

27. "Conservation" is "the use of all methods and procedures which are necessary to bring any endangered species or threatened species back to the point at which the measures

provided are no longer necessary," 16 U.S.C. § 1532(3). Any regulation promulgated pursuant to Section 4(d) must meet this conservation standard. 16 U.S.C. § 1533(d).

28. Such regulations may extend the Act's prohibition against the "take" of endangered species to threatened species. Id. The ESA defines "take" to include engaging in or attempting to engage in conduct that will "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect" an individual of a listed species. 16 U.S.C. § 1532(19); see also 50 C.F.R. § 17.3.

29. Indeed, a central component of the ESA's protections for imperiled species is the prohibition in Section 9 of the Act against the unpermitted "take" of an "endangered" animal. 16 U.S.C. § 1538(a)(1). Yet the ESA does not automatically provide the same level of protection for threatened species as it does for endangered species. Instead, FWS has issued regulations broadly applying the Section 9 take prohibitions to threatened species, 50 C.F.R. § 17.31, which remain in place unless FWS promulgates a special rule pursuant to Section 4(d) for a particular threatened species altering these protections. 50 C.F.R. § 17.31(c).

30. FWS's 4(d) Rule here created two sweeping exemptions from the ESA's take prohibitions that would normally have applied to the polar bear. First, it declared that the prohibition against take under the ESA will not apply to activities in Alaska that are conducted in a manner that is consistent with requirements of the Marine Mammal Protection Act ("MMPA"), 16 U.S.C. § 1361 et seq., and the Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES"). 73 Fed. Reg. at 28,318 (codified at 50 C.F.R. § 17.40(q)(2)). FWS attempted to justify this rule by stating that "for the most part, the MMPA . . . already provide[s] more protective measures than" the ESA. 73 Fed. Reg. at 28,313. Thus, FWS "determined that requiring additional authorization to carry out activities that are already strictly regulated under the MMPA and CITES would not increase protection for polar bears." 73 Fed. Reg. at 28,315.

31. Second, the 4(d) Rule contains a sweeping and unprecedented blanket exemption from the ESA's "incidental take" prohibition for all activities affecting the polar bear outside of Alaska. 73 Fed. Reg. at 28,318 (codified at 50 C.F.R. § 17.40(q)(4) ("None of

the prohibitions in § 17.31 of this part apply to any taking of polar bears that is incidental to, but not the purpose of, carrying out an otherwise lawful activity within any area subject to the jurisdiction of the United States except Alaska."). This latter provision received no analysis or justification in the preamble.

32. The 4(d) Rule fails to carry out the conservation mandate of the ESA and the polar bear will not receive the full protections of the ESA it needs, and to which it is legally entitled, until the 4(d) Rule is vacated.

33. To comply with section 4(d)'s conservation mandate, FWS must promulgate such regulations as are necessary to protect the polar bear from both immediate and long-term threats to its survival. The principal threat to the polar bear's continued survival and recovery is the loss and degradation of the species' habitat. In listing the species, the FWS determined that polar bears "are reliant on sea ice as a platform to hunt and feed on ice-seals, to seek mates and breed, to move to feeding sites and terrestrial maternity denning areas, and for long-distance movements." 73 Fed. Reg. at 28,292. The rapid loss of sea ice in the Arctic, which "is unequivocal and extensively documented in scientific literature" and "projected by the majority of state-of-the art climate models," thus threatens the polar bear throughout its range. Id.

34. The 4(d) Rule fails, however, to provide the polar bear with any meaningful protection for its habitat. By withholding the ESA's protection against take of a listed species, the FWS in fact has deprived the polar bear of one of the Act's primary protections for a listed species' habitat. "Take" under the ESA includes "harm," 16 U.S.C. § 1532(19), which the Service defines by regulation to include "significant habitat modification or degradation [that] actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering." 50 C.F.R. § 17.3. Neither the MMPA nor CITES provide similar protections for the polar bear against habitat destruction.

35. Moreover, the 4(d) Rule flatly rejects any protections for the polar bear from the significant threats to the species' continued survival and recovery from greenhouse gas emissions that are causing global warming. The primary basis for listing the polar bear as

threatened is the melting of the polar bears' sea ice habitat as a result of global warming, yet the rule specifically exempts from potential take liability the vast majority of the domestic greenhouse gas emitters that are contributing to global warming. 73 Fed. Reg. at 28,318 (codified at 50 C.F.R. § 17.40(q)(4)) (the FWS has exempted all activities "within any area subject to the jurisdiction of the United States except Alaska.").

36. The 4(d) Rule also fails to ensure the polar bear is protected from other threats. While the primary threat to the polar bear is the melting of sea-ice habitat due to global warming, the bear faces a daunting suite of other threats. These include an increase in bear-human interactions as larger numbers of bears remain on land during the summer and as bears in poorer condition due to food deprivation come into human settlements to scavenge refuse; an increase in human disturbances associated with greater oil and gas exploration and development in many northern areas as the sea ice disappears; an increase in disturbance in the marine environment due to higher levels of shipping and marine traffic as the northern passage becomes navigable throughout the year; and an increase in exposure to contaminants due to increased rainfall and terrestrial run-off that drains into rivers and discharge into the arctic seas. As the FWS acknowledges, these threats "may become more significant threats in the future for polar bear populations experiencing declines related to nutritional stress brought on by sea ice and environmental changes," 73 Fed Reg. at 28,292, yet its 4(d) rule does nothing to insulate the polar bear from these threats.

37. The 4(d) Rule was issued by FWS as an "interim final rule" without any advance public notice of, or opportunity for public comment. FWS determined that allowing public comment prior to the rule taking effect would be "contrary to the public interest." 73 Fed. Reg. at 28,315-16.

## CLAIMS FOR RELIEF

### Failure to Promulgate a 4(d) Rule that Provides for the Conservation of the Polar Bear

38. Paragraphs 1 through 37 are hereby fully incorporated into this section.

39. For species listed as "threatened," section 4(d) of the ESA states that the FWS "shall issue such regulations as he deems necessary and advisable to provide for the

conservation of such species." 16 U.S.C. § 1533(d). "Conservation" is defined by the ESA as "the use of all methods and procedures which are necessary to bring any endangered species or threatened species back to the point at which the measures provided are no longer necessary." 16 U.S.C. § 1532(3).

40. FWS's 4(d) Rule for the polar bear fails to provide protections the polar bear needs for its survival and recovery. FWS's 4(d) Rule thus does not "provide for the conservation of" the polar bear, and violates the ESA and its implementing regulations. 16 U.S.C. §§ 1533(d); 1540(g). FWS's failure to perform its mandatory, non-discretionary duty to issue regulations providing for the conservation of the polar bear also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA. 5 U.S.C. § 706(1). FWS's failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA. 5 U.S.C. § 706(2).

**Failure to Comply with the Notice and Comment Requirements of the ESA and APA with Regard to the 4(d) Rule**

41. Paragraphs 1 through 40 are hereby fully incorporated into this section.

42. The ESA incorporates the APA notice and comment requirements for all actions taken pursuant to Section 4 of the ESA. 16 U.S.C. § 1533(b)(4) (". . . the provisions of section 553 of title 5 (relating to rulemaking procedures), shall apply to any regulation promulgated to carry out the purposes of this chapter.").

43. The APA governs the issuance of proposed and final regulations by federal agencies. A central component of this framework is opportunity provide to the public to submit written comments on proposed rule. 5 U.S.C. § 553. Pursuant to the APA all federal agencies must provide "general notice" of any "proposed rule making" to the public by publication in the Federal Register. The publication must include: "(1) a statement of the time, place, and nature of public rule making proceedings; (2) reference to the legal authority under which the rule is proposed; and (3) either the terms or substance of the proposed rule or a description of the subjects and issues involved." 5 U.S.C. § 553(b). Moreover, the APA requires that "the

agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose." 5 U.S.C. § 553(c).

44. A limited exception to this public notice and comment process is available only where an agency determines "for good cause" that "notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(B).

45. FWS's rulemaking, which resulted in the promulgation of the 4(d) Rule, was conducted without any publication of a general notice of proposed rule making in the Federal Register and without any opportunity for interested persons to participate in the rule making process, as required by sections 553(b) and (c) of the APA, 5 U.S.C. § 553(b), (c), and section 4(b)(4) of the ESA, 16 U.S.C. § 1533(b)(4).

46. FWS's determination that advanced publication of a proposed 4(d) Rule and providing the public with an opportunity to participate in the 4(d) Rule rulemaking process was either impracticable, unnecessary, or contrary to the public interest was arbitrary, capricious, and not in accordance with law. 5 U.S.C. § 706(2).

**PRAYER FOR RELIEF**

WHEREFORE, Defenders respectfully requests that this Court:

(1) Declare that FWS's 4(d) Rule fails to provide for the conservation of the polar bear and was issued in violation of the ESA, and is unlawful;

(2) Declare that the FWS's promulgation of the 4(d) Rule without providing general notice of, or an opportunity for interested persons to participate in, the 4(d) Rule rulemaking process violated the procedural requirements of the ESA and APA, and is unlawful;

(3) Vacate the 4(d) Rule and remand it to FWS until such time as FWS has complied with the requirements of the ESA and APA;

(4) Award Plaintiffs their costs of litigation, including reasonable attorneys fees under the citizen suit provision of the ESA; and

(5) Grant Plaintiffs such other relief as the Court deems just and proper.

Date: July 24, 2008

Respectfully Submitted,

By: /s/Andrew M. Hawley

Andrew M. Hawley (Cal. Bar. 229274)
Brian Segee (Cal. Bar. 200795)
Defenders of Wildlife
1130 Seventeenth Street, N.W.
Washington, D.C. 20036
(202) 682-9400

Attorneys for Plaintiff-Intervenor