René P. Tatro (SBN 78383)
Juliet A. Markowitz (SBN 164038)
TATRO TEKOSKY SADWICK LLP
333 S. Grand Avenue, Suite 4270
Los Angeles, California 90071
Telephone:   (213) 225-7171
Facsimile:    (213) 225-7151
E-mail:        renetatro@ttsmlaw.com
                    jmarkowitz@ttsmlaw.com

Jeffrey M. Feldman (AK Bar #7605029)
Kevin M. Cuddy (MA Bar #647799)
*Pro hac vice applications pending*
FELDMAN ORLANSKY & SANDERS
500 L Street, Suite 400
Anchorage, Alaska 99501
Telephone:    (907) 272-3538
Facsimile:     (907) 274-0819
Email:         feldman@frozenlaw.com
                    cuddy@frozenlaw.com

*Attorneys for Proposed Intervenor-Defendant*
*Arctic Slope Regional Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., <br><br> Plaintiffs, <br> v. <br><br> DIRK KEMPTHORNE, et al., <br><br> Defendants. | Case No. C-08-1339-CW <br><br> **REPLY MEMORANDUM OF ARCTIC SLOPE REGIONAL CORPORATION IN SUPPORT OF INTERVENTION** <br><br> Honorable Claudia Wilkin[1] |

---

[1]   The Court has given notice that it intends to take this motion under submission on the papers alone. *See* Docket #124 (Clerk's Notice Taking Motion Under Submission).

**REPLY MEMORANDUM OF ARCTIC SLOPE REGIONAL CORPORATION IN SUPPORT OF INTERVENTION**                                                                                                    C-08-1339-CW

# I. INTRODUCTION

Plaintiffs do not dispute that Arctic Slope Regional Corporation (ASRC) should be allowed to intervene. Nor do Plaintiffs dispute any of the essential underlying facts set forth in ASRC's motion and supporting memorandum. The only dispute is over whether ASRC will come into the litigation as a fully-entitled party – as it has shown it needs to do and is entitled to do under the law – or in a dramatically limited role as Plaintiffs propose. Plaintiffs' proposed restrictions are unfounded, unnecessary, and unfair. For the reasons set forth herein, ASRC's motion to intervene should be granted without the restrictions proposed by Plaintiffs.

ASRC represents the interests of the Iñupiat of the Arctic Slope, both in business matters and to protect their general welfare. Contrary to the exclusively economic interests of most corporations, ASRC is specifically authorized by Congress "to provide benefits to its shareholders who are Natives or descendants of Natives or to its shareholders' immediate family members who are Natives or descendants of Natives to promote *the health, education or welfare* of such shareholders or family members." 43 U.S.C. § 1606(r) (2006). The Iñupiat are the very people whose daily lives, property, and welfare are most directly affected by the Department of Interior's polar bear listing decision and the validity of the 4(d) Rule. ASRC has a substantial need to be heard in this litigation to address issues that are critically important to Alaska Natives, including the importance of polar bears to Iñupiaq culture and the practical necessity of using non-lethal force to deter polar bears from destroying essential property in Arctic villages. The Iñupiat live with the polar bears on a daily basis. The bears are a part of *where* the Iñupiat live, a part of *how* the Iñupiat live. The 4(d) Rule is not an abstraction to the Iñupiat, as it is to Plaintiffs. It impacts the Iñupiat, and impacts them directly. Moreover, the fate of the 4(d) Rule is inextricably bound with the future of ASRC's shareholders. ASRC has a statutory duty and authority to provide for the economic well-being of the Arctic Slope's Iñupiat Eskimos as well as their general health, education and welfare, and ASRC's ability to continue the responsible use of its natural resources toward that end will be impaired if the 4(d) Rule is altered.

As noted above, Plaintiffs do not deny any of this. Nor do Plaintiffs oppose ASRC's intervention in this case. *See* Docket #127 at 5 ("Plaintiffs, however, are not opposed to ASRC's limited participation in this case."). Instead, Plaintiffs contend that ASRC should be permitted to address only a few issues handpicked by the Plaintiffs, *id.*, because ASRC's interests in the case are supposedly "purely economic," *id.* at 3. Plaintiffs apparently misunderstand and, as a result, inaccurately describe ASRC's interests in this case. Plaintiffs' misunderstanding of ASRC's role reinforces the need for ASRC to participate fully in the case. Only by doing so can ASRC ensure that its shareholders' wide-ranging interests – including cultural, subsistence, economic, safety,[2] and environmental – are considered here. Plaintiffs' chief concern about ASRC's intervention, ensuring the prompt resolution of their claims, is a non-issue and is insufficient to justify the limitations on ASRC's participation that Plaintiffs propose. ASRC will, of course, abide by any schedules or case management orders entered by this Court. ASRC has no interest in delaying resolution of this case. Because ASRC's interests are significant and legally protectable, and because the principal parties do not oppose its motion, ASRC's motion for intervention should be granted to allow for full participation.

## II.    ARGUMENT

### A.    ASRC's Interests in the Merits Are Significant and Undisputed

The principal claims to be decided in this litigation arise under the Endangered Species Act ("ESA") or the Administrative Procedure Act ("APA"). *See* Docket #126 at 33-38. ASRC

---

[2] In a startling passage, Plaintiffs state their belief that the "purported benefits of [non-lethal harassment allowed by the] 4(d) Rule to polar bears and people are illusory." *Id.* at 4. Plaintiffs offer no facts in support of this novel view. Plaintiffs' sole "support" for this odd contention is a pleading that references regulations allowing wildlife management officials to deter polar bears. However, the 4(d) Rule permits ordinary citizens, including Iñupiaq Eskimos who are the people most likely to have encounters with polar bears, to use non-lethal force to deter polar bears from destroying essential private property. As averred in ASRC's affidavit supporting its motion to intervene, the benefits of the 4(d) Rule to polar bears and people are concrete and obvious: if polar bears are not discouraged from destroying private property in villages and elsewhere, there will undoubtedly be more fatal encounters. *See* Docket #117-2, ¶ 5.

is entitled to intervene as of right in all such claims pursuant to Rule 24(a) and controlling Ninth Circuit authority.[3]  In addition, as stated in ASRC's opening brief, ASRC seeks permissive intervention pursuant to Rule 24(b) in the merits of plaintiffs' lone claim under the National Environmental Policy Act ("NEPA").  The Ninth Circuit requires application of its intervention test broadly to favor intervention.  *See United States v. City of Los Angeles*, 288 F.3d 391, 397-98 (9th Cir. 2002) ("A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts.") (quoting *Forest Conservation Council v. U.S. Forest Service*, 66 F.3d 1489, 1496 n.8 (9th Cir. 1995)).

In its opening brief, ASRC set forth the four-part test for intervention as of right under Fed. R. Civ. P. 24(a) and explained in detail how it satisfied each of those elements.  *See* Docket #117, at 5-9.  In their opposition, Plaintiffs do not dispute that ASRC satisfies those elements.  Instead, Plaintiffs cite inapposite cases relating to proposed intervenors with "purely economic interests" and assert that these decisions provide a basis for (1) denying intervention as of right for the merits of Plaintiffs' NEPA claim, and (2) limiting the scope of ASRC's intervention as of right under the APA and ESA claims.  *See* Docket #127, at 3.  Plaintiffs' arguments fail for three reasons.

First, it is undisputed that ASRC's interests are not "purely economic" in this case.  Even Plaintiffs concede in their opposition that ASRC is seeking "to protect the subsistence rights of its shareholders" and to protect its shareholders' ability to use non-lethal force to deter bears from destroying essential private property.  *See id.* at 4 & n.1.  In addition, ASRC's interests include protecting the environment as well as its shareholders' general health, education and welfare, including their ability to make certain cultural exchanges and authentic native handicrafts.  *See* Docket #117, at 8; Docket #117-2, ¶¶ 4, 8, 12; 43 U.S.C. § 1606(r).

---

[3] In the newly amended Complaint, Plaintiffs also allege a violation of the Marine Mammals Protection Act.  ASRC is also entitled to intervention as of right as to this claim for the same reasons set forth in its opening brief and in this reply memorandum.

**REPLY MEMORANDUM OF ARCTIC SLOPE REGIONAL CORPORATION IN SUPPORT OF INTERVENTION**                                         3                                                                                                          C-08-1339-CW

While ASRC also has important economic interests in this case,[4] Plaintiffs' contention that ASRC has "purely" economic interests is demonstrably false and inconsistent with the act of Congress that created ASRC and other Alaska Native Corporations. Plaintiffs seek to paint Iñupiat Eskimos – who for many generations have used polar bears for subsistence purposes and cultural exchanges that are fundamental to Iñupiat heritage – as caring only about money. This is beyond insulting. The Iñupiat work to carefully balance their own economic needs with environmental protection, the subsistence-hunting of polar bears and other wildlife, and responsible development of natural resources. *See* Docket #117-2, ¶ 8. Because ASRC's interests are not "purely economic," it follows that all of the cases cited by Plaintiffs in an effort to limit ASRC's participation are inapposite.

Second, as Plaintiffs are well aware, ASRC is not seeking to intervene as of right on the merits of Plaintiffs' NEPA claim. ASRC acknowledged the Ninth Circuit rule limiting intervention of right in NEPA actions to the remedy phase and explicitly sought "intervention as of right with regard to the remedy phase of Plaintiffs' NEPA claims and permissive intervention on the merits." Docket #117, at 5 n.6. Accordingly, Plaintiffs' arguments that ASRC may not intervene as of right with regard to the merits of the NEPA claim are wholly irrelevant. ASRC seeks permissive intervention on the merits of Plaintiffs' NEPA claim (to

---

[4] Plaintiffs note that one of ASRC's subsidiaries is a member of Intervenor-Applicant AOGA and argue that ASRC's interests thus must be adequately represented by AGOA, at least with respect to oil development activities. *See* Docket #127, at 4 n.1. Plaintiffs are mistaken. AOGA's membership includes both oil producers/developers and refiners. Petro Star Inc., an ASRC subsidiary and member of AOGA, is a refining and fuel marketing company – not a developer. In any event, ASRC and its shareholders have a different and broader range of interests (economic and otherwise) than AOGA, including: lost job opportunities for ASRC shareholders; lost contracting opportunities to ASRC subsidiaries; possible lost production of oil and gas from ASRC's lands; and reduction in quality of life for ASRC's shareholders on the Arctic Slope, the economy of which is heavily dependent on jobs, economic activity, and tax revenues from oil and gas activities. *See* Docket #117-2, at 4-5. "The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).

which Plaintiffs do not object) and intervention as of right in any related remedy phase (to which Plaintiffs also do not object).

Third, Plaintiffs improperly conflate the standards for intervention in ESA and APA claims with the limits placed on intervention as of right in NEPA cases by the Ninth Circuit. The restrictive rule employed for intervention in NEPA claims does not apply to claims under other statutes like ESA and APA. *See, e.g.*, *Idaho Farm Bureau Fed'n v. Babbitt,* 58 F.3d 1392, 1397-98 (9th Cir. 1995) (upholding grant of intervention as of right as a defendant in ESA and APA challenge to listing decision under ESA § 4); *South Yuba River Citizens League & Friends of the River v. Nat'l Marine Fisheries Svc.*, 2007 WL 3034887, at *11-15 (E.D. Cal. Oct. 16, 2007) (permitting intervention as of right, not limited to remedy phase, as a defendant in ESA and APA claims); *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) (reversing lower court and granting intervention as of right in claim under ESA); *see also Sierra Club v. U.S. EPA*, 995 F.2d 1478, 1483 (9th Cir. 1993) (granting intervention as of right to third parties for Clean Water Act claims). The lone case cited by Plaintiffs for the proposition that the restrictive NEPA standard purportedly applies to APA claims is *Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489 (9th Cir. 1995). That case, however, does not address APA claims whatsoever – only claims under NEPA and the National Forest Management Act. *Id.* at 1499 n.11. In short, ASRC has satisfied all of the elements of Rule 24(a), which Plaintiffs do not dispute, and there is no rule in the Ninth Circuit – nor any good reason here – that would limit ASRC's participation to the remedy phase for APA and ESA claims.

**B.     ASRC Is Entitled to Full Rights of Participation**

Plaintiffs contend that ASRC should only be granted a limited right to intervene and address just two issues hand-picked by Plaintiffs: the legality of the 4(d) Rule and any issues relating to remedy regarding the 4(d) Rule. In Plaintiffs' view, this limitation is needed in

order to avoid any delay to Plaintiffs' case. *See* Docket #127, at 5.[5] This restriction would cripple ASRC's ability to protect its shareholders' interests and would serve no useful purpose. ASRC does not wish to delay this case and Plaintiffs offer no facts to indicate that ASRC would endeavor to do so. ASRC is keenly interested in affording polar bears appropriate protections for the reasons described above. ASRC is prepared to abide by the Court's scheduling orders. Plaintiffs' suspicions that ASRC would delay the case or engage in dilatory tactics are groundless, but should such action occur they can be addressed by the Court under its traditional powers. Plaintiffs' proposed restrictions are simply unnecessary.

ASRC would be severely prejudiced by this proposed restriction. Plaintiffs seek to restrict the Alaska Natives who are most directly affected by the government's determinations on the polar bear, including the 4(d) Rule. In essence, Plaintiffs ask the Court to blindly prohibit any appropriate motion practice by ASRC – including motions already contemplated by the Joint Case Management Statement[6] – without any factual basis or legal authority, and without the Court, defendants or ASRC having seen the record with the underlying factual and scientific basis for the challenged decisions. While the tactical advantage to Plaintiffs from blanket and uninformed restraint is clear, there is no reason for or fairness in imposing such extraordinary and pre-emptive restrictions in this case.

---

[5] Plaintiffs also contend that ASRC's intervention should be limited – though they fail to say how – because ASRC did not identify interests in certain parts of the 4(d) Rule (i.e., the purported exemptions of non-Alaska activities from the ESA's take prohibitions and of greenhouse gas emissions). There is no obligation to spell out each and every element of the 4(d) Rule that impacts ASRC's shareholders in order to satisfy Rule 24(a). In any event, ASRC has substantial non-Alaska operations and numerous shareholders living outside of Alaska that would be impacted if non-Alaska activities and greenhouse gas emissions were suddenly subjected to ESA permitting requirements due to any decision rendered in this litigation. As the Court might reasonably expect, ASRC's principal concern at this time is the specific activity in Alaska that is most directly impacted by the 4(d) Rule.

[6] As noted in Docket #102, this could include a motion to transfer this case to another appropriate judicial district.

**REPLY MEMORANDUM OF ARCTIC SLOPE REGIONAL CORPORATION IN SUPPORT OF INTERVENTION**  6

C-08-1339-CW

### III.   CONCLUSION

For the foregoing reasons, ASRC's *unopposed* motion to intervene should be granted in full, without restriction or limitation.

DATED this 31st day of July, 2008.

        Respectfully submitted,
        TATRO TEKOSKY SADWICK LLP

        By:   /s/ *René P. Tatro*
            René P. Tatro
            Attorneys for Intervenor Defendant
            Arctic Slope Regional Corporation

        FELDMAN ORLANDSKY & SANDERS

        By:   /s/ *Jeffrey M. Feldman*
            Jeffrey M. Feldman
            *Pro hac vice application pending*
            Attorneys for Intervenor Defendant
            Arctic Slope Regional Corporation

# PROOF OF SERVICE BY ELECTRONIC TRANSMISSION

I, the undersigned, declare that I am a citizen of the United States, over the age of 18 years and not a party to this action. I am employed in the County of Los Angeles and my business address is 333 S. Grand Avenue, Suite 4270, Los Angeles, CA 90071.

On July 31, 2008, I electronically served a copy of the foregoing:

**REPLY MEMORANDUM OF ARCTIC SLOPE REGIONAL CORPORATION IN SUPPORT OF INTERVENTION**

on the recipients designated on the Notice of Electronic Filing generated by the Electronic Case File website of the Northern District of California.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed July 31, 2008, at Los Angeles, California.

By: /s/ ***Beth Robinson***
     Beth Robinson