1  Steven P. Rice (SBN 094321)
   CROWELL & MORING LLP
2  3 Park Plaza
   20th Floor
3  Irvine, CA 92614-8505
   Phone:  949-263-8400
4  Facsimile:  949-263-8414
   srice@crowell.com
5
   Steven P. Quarles
6  J. Michael Klise (*pro hac vice application pending*)
   jmklise@crowell.com
7  Chet M. Thompson
   Thomas R. Lundquist
8  CROWELL & MORING LLP
   1001 Pennsylvania Ave., NW
9  Washington, D.C. 20004-2595
   Phone:  202-624-2600
10 Facsimile:  202-628-5116

11 Attorneys for Proposed Intervenor-Defendant Edison Electric Institute

12                 IN THE UNITED STATES DISTRICT COURT

13             FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                          OAKLAND DIVISION

15 _____
                                    )
16 CENTER FOR BIOLOGICAL            )   No. C 08-1339 CW
   DIVERSITY, *et al.*,             )
17              Plaintiffs,         )   NOTICE OF MOTION AND
                                    )   MOTION FOR LEAVE TO
18        v.                        )   INTERVENE AS DEFENDANT;
                                    )   MEMORANDUM OR POINTS AND
19 DIRK KEMPTHORNE, *et al.*,       )   AUTHORITIES IN SUPPORT
              Defendants,           )   THEREOF
20                                  )
          and                       )   Hearing Date:  Oct. 2, 2008
21                                  )   Time:  2:00 p.m.
   EDISON ELECTRIC INSTITUTE,       )   Courtroom 2, 4th Floor
22            Proposed Intervenor-  )
              Defendant.            )   The Honorable Claudia Wilken
23 _____)

24

25

26

27

28

**TABLE OF CONTENTS**

TABLE OF CONTENTS.............................................................................................................i

TABLE OF AUTHORITIES ....................................................................................................ii

NOTICE TO PLAINTIFFS, DEFENDANTS, AND THEIR ATTORNEYS OF RECORD.........1

POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE .......................2

INTRODUCTION ....................................................................................................................2

PROPOSED INTERVENOR EDISON ELECTRIC INSTITUTE  AND ITS INTERESTS IN
    THIS ACTION....................................................................................................................4

ARGUMENT ...........................................................................................................................9

    I.      EEI Is Entitled to Intervention of Right ...................................................................9

          A.     This Motion to Intervene Is Timely .......................................................10

          B.     EEI Has Legally Protectable Interests That May Be Impaired
                by Disposition of This Case....................................................................10

          C.     EEI's Interests Are Not Adequately Represented by Existing
                Parties....................................................................................................14

    II.     Permissive Intervention Should Be Granted ........................................................16

CONCLUSION ......................................................................................................................18

CERTIFICATION OF INTERESTED PERSONS OR ENTITIES...........................................18

# TABLE OF AUTHORITIES

**Cases**

*Babbitt v. Sweet Home Chapter, Communities for Great Ore.*, 515 U.S. 687 (1995)........................12

*County of Fresno v. Andrus*, 622 F.2d 436 (9th Cir. 1980) ........................................10, 14

*Entergy Corp. v. Riverkeeper, Inc.*, Nos. 07-588, et al. (consolidated) (U.S., pending) ...................5

*Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392 (9th Cir. 1995) ...................................10, 11, 13

*In re Deseret Power Electric Cooperative*, PSD Appeal No. 07-03 (pending) .................................6

*In re Desert Rock Energy Co., LLC*, PSD Appeal No. 08-03, 08-04 (EAB, filed Aug. 13, 2008) ...............................................................................................................6

*In re: Christian County Generation, LLC*, PSD Appeal No. 07-01 (EAB Jan. 28, 2008) .................6

*Kleissler v. U.S. Forest Serv.*, 157 F.3d 964 (3d Cir. 1998) ................................................14

*Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094 (9th Cir. 2002)..................................17

*Louisiana Envtl. Action Network v. EPA*, 172 F.3d 65 (D.C. Cir. 1999) .............................5

*Massachusetts v. EPA*, 549 U.S. 497 (2007)......................................................................5

*National Ass'n of Home Builders v. Defenders of Wildlife*, 127 S. Ct. 2518 (2007) ..........................5

*Northwest Forest Resource Council v. Glickman*, 82 F.3d 825 (9th Cir. 1996)................................10

*S.D. Warren Co. v. Maine Board of Environmental Protection*, 547 U.S. 370 (2006)........................5

*SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434 (1940) ............................................17

*Sierra Club v. EPA*, 995 F.2d 1478 (9th Cir. 1993) ......................................................9, 10

*Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885 (9th Cir. 2003)...............................5

*Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001) ...........................11

*The Wilderness Soc'y v. Dep't of Energy*, No. 08-71074 (9th Cir., pending) ...................................5

*Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972)..................................14, 15

*TVA v. Hill*, 437 U.S. 153 (1978) ..............................................................................7

*United States v. Stringfellow*, 783 F.2d 821 (9th Cir. 1986)...............................................14

*Wetlands Action Network v. U.S. Army Corps of Eng'rs*, 222 F.3d 1105 (9th Cir. 2000) .................11

**Statutes**

5 U.S.C. §§ 701-706 ...............................................................4 16 U.S.C. § 1371

16 U.S.C. § 1532(19) ................................................................................................12

16 U.S.C. § 1533(d) ............................................................................................2, 13

16 U.S.C. § 1533(d)(4) ..............................................................................................2

16 U.S.C. § 1536(a)(2) ...............................................................................................3

16 U.S.C. § 1538(a)(1) ...............................................................................................2

16 U.S.C. § 1540(g) .............................................................................................11, 13

42 U.S.C. §§ 4321, *et. seq.* .....................................................................................4

**Rules**

Fed. R. Civ. P. 24(a)(2) ..............................................................................2, 9, 10, 12

Fed. R. Civ. P. 24(b)(2) ................................................................................2, 16, 17

Fed. R. Civ. P. 24(c) ..................................................................................................2

**Regulations and Preambles**

50 C.F.R. § 17.3 ......................................................................................................13

50 C.F.R. § 17.31 ...............................................................................................3, 13

50 C.F.R. § 17.40(q) ..........................................................................................2, 3, 15

73 Fed. Reg. 28212-303 (May 15, 2008) ..............................................................2, 16

73 Fed. Reg. 28306-18 (May 15, 2008) ..................................................................2, 3

**Treatises**

7C CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE
    AND PROCEDURE § 1916 (2d ed. 1986) ........................................................10

**Other Authorities**

Brendan R. Cummings and Kassie R. Siegel, <u>*Ursus maritimus: Polar Bears on Thin Ice*</u>, 22
    Natural Resources & Environment 3 (ABA Section of Environment, Energy, and
    Resources, Fall 2007) ....................................................................................7

Energy Information Administration, ANNUAL ENERGY OUTLOOK 2008 (June 2008) ..........6

Tony Davis, *Polar bear listing is big win for area group*, ARIZONA DAILY STAR, May 27,
    2008 ...............................................................................................................7

U.S. EPA, INVENTORY OF U.S. GREENHOUSE GAS EMISSIONS AND SINKS: 1990-2005 (Apr.
    15, 2007) .........................................................................................................5

1    **NOTICE TO PLAINTIFFS, DEFENDANTS, AND THEIR ATTORNEYS OF RECORD**

2         **PLEASE TAKE NOTICE** that on October 2, 2008, at 9:00 a.m., or as soon as the matter

3    may be heard, Courtroom 2 of the above-styled Court, located at 1301 Clay Street, Oakland,

4    California, Applicant for Intervention Edison Electric Institute will and does hereby move the Court

5    to grant it intervention under Rule 24 of the Federal Rules of Civil Procedure.

6         This motion will be based upon this Notice of Motion, Motion to Intervene, and the Points

7    and Authorities in Support thereof, as well as the pleadings and papers filed herein.

8    DATED: August 28, 2008

9                                    By:    _/s/ J. Michael Klise_____
                                            J. Michael Klise (*pro hac vice application pending*)
10                                           jmklise@crowell.com
                                            Steven P. Quarles
11                                           Chet M. Thompson
                                            Thomas R. Lundquist
12                                           CROWELL & MORING LLP
                                            1001 Pennsylvania Ave., NW
13                                           Washington, D.C. 20004-2595
                                            Phone:  202-624-2600
14                                           Facsimile:  202-628-5116

15                                           Steven P. Rice (SBN 094321)
                                            CROWELL & MORING LLP
16                                           3 Park Plaza
                                            20th Floor
17                                           Irvine, CA 92614-8505
                                            Phone:  949-263-8400
18                                           Facsimile:  949-263-8414
                                            srice@crowell.com

19

20

21

22

23

24

25

26

27

28

1          **POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE**

2          Pursuant to Rules 24(a)(2) and 24(b)(2) of the Federal Rules of Civil Procedure, Edison

3   Electric Institute ("EEI") moves for intervention of right or permissive intervention. EEI would be

4   aligned with Federal Defendants, and against Plaintiffs Center for Biological Diversity, *et al.*

5   ("Plaintiffs" or "CBD"). Pursuant to Rule 24(c), a proposed Answer accompanies this motion, as

6   does a proposed Order.

7          EEI has conferred with the Plaintiffs and the Federal Defendants through counsel concerning

8   whether there is opposition to EEI's intervention. Counsel for Plaintiffs (Ms. Siegel) advises that

9   her clients cannot take a position on EEI's proposed intervention without reviewing this motion

10  itself. Counsel for the Federal Defendants (Ms. Floom) advises that her clients take no position on

11  EEI's proposed intervention.

12                              **INTRODUCTION**

13         **Polar Bear Rulemakings.** This lawsuit challenges multiple facets of the decision by the

14  Secretary of the Interior ("Secretary"), acting through the U.S. Fish and Wildlife Service ("FWS"),

15  to list the polar bear as a "threatened species" under the Endangered Species Act ("ESA"), 16 U.S.C.

16  §§ 1531, et seq. The Secretary published the listing determination on May 15, 2008. 73 Fed. Reg.

17  28212-303 ("listing decision").

18         On that same date, the Secretary also published an interim final rule under § 4(d) of the ESA,

19  16 U.S.C. § 1533(d) ("interim 4(d) rule"), that defines the extent of ESA protections for the polar

20  bear as a listed "threatened species." 73 Fed. Reg. 28306-18 (to be codified at 50 C.F.R. § 17.40(q)).

21  ESA § 4(d) enables the Secretary to specify prohibitions and authorizations for threatened species

22  that "he deems necessary and advisable to provide for the conservation" of the species, and also

23  provides that the Secretary "may by regulation prohibit with respect to any threatened species any

24  act prohibited under" § 9(a)(1) of the ESA with respect to endangered species – notably the

25  prohibition of "take" of the species. 16 U.S.C. § 1533(d)(4); *see id.* § 1538(a)(1)(B)-(C).

26         The interim 4(d) rule for the polar bear states that an "activity conducted in a manner that is

27  consistent with the requirements of the Marine Mammal Protection Act (MMPA) . . . and the

28

1  Convention on International Trade in Endangered Species or Wild Fauna and Flora (CITES)" will

2  not be found to violate any of the ESA § 9 prohibitions which 50 C.F.R. § 17.31(a) generally extends

3  to threatened wildlife.  50 C.F.R. § 17.40(q)(1)-(3).  It further provides that:

4      None of the prohibitions in § 17.31 of this part apply to any taking of polar bears that
       is incidental to, but not the purpose of, carrying out an otherwise lawful activity
5      within any area subject to the jurisdiction of the United States except Alaska.

6  73 Fed. Reg. 28318 (to be codified as 50 C.F.R. § 17.40(q)(4)).

7      In addition, the preamble to the interim 4(d) rule states that greenhouse gas ("GHG")

8  emissions from or facilitated by a specific federal agency action, including any federally permitted

9  or assisted project, do not trigger the consultation provisions of ESA § 7(a)(2) (16 U.S.C.

10  § 1536(a)(2)) and need not be assessed in any ESA § 7(a)(2) consultation conducted for other

11  reasons.  73 Fed. Reg. 28312-13.  The Secretary solicited public comment on the interim 4(d) rule

12  for 30 days.  *Id.*

13      **CBD's Complaint.**  CBD's Second Amended Complaint (July 16, 2008) broadly challenges

14  the listing decision, the interim 4(d) rule, and the Secretary's position on GHG emissions and ESA

15  § 7(a)(2) consultation.  It states seven claims for relief:

16      • The First Claim alleges the Secretary failed to make a timely final ESA listing

17        determination for the polar bear.  Compl. ¶¶ 144-145.  This claim dates from CBD's

18        original complaint (Dkt. 1, Mar. 10, 2008) and has been overtaken by events.  On April

19        28, 2008, this Court granted CBD's motion for summary judgment on the claim and

20        ordered the Secretary to publish a final listing determination on or before May 15, 2008.

21        *CBD v. Kempthorne*, 2008 WL 1902703 (N.D. Cal. Apr. 28, 2008) (Dkt. 35).  The

22        Secretary "complied with this order" when he published the listing decision.  *CBD v.*

23        *Kempthorne*, 2008 WL 3822948, slip op. at 2 (N.D. Cal. Aug. 13, 2008) (Dkt. 139)

24        ("Aug. 13 Order").

25      • The Second Claim alleges the Secretary violated the ESA by not listing the polar bear as

26        an "endangered species" rather than a "threatened species."  Compl. ¶¶ 146-154.

27

28

- The Third Claim alleges the Secretary violated the ESA by failing to designate critical habitat for the polar bear. Compl ¶¶ 155-160.

- The Fourth Claim alleges the Secretary substantively violated the ESA and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, in promulgating the interim 4(d) rule, including the preamble statement that GHG emissions from or facilitated by a specific federal agency action or federally permitted or assisted project do not trigger the consultation provisions of ESA § 7(a)(2). Compl. ¶¶ 161-169.

- The Fifth Claim alleges the interim 4(d) rule is procedurally defective for the Secretary's failure to provide notice of and opportunity for public comment. Compl. ¶¶ 170-173.

- The Sixth Claim alleges the Secretary violated the APA and the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321, *et. seq.*, by failing to prepare an environmental impact statement ("EIS") on the interim 4(d) rule.

- The Seventh Claim alleges the Secretary violated § 101 of the Marine Mammal Protection Act ("MMPA"), 16 U.S.C. § 1371, and the APA by failing to promulgate a list of measures for the nonlethal deterrence of polar bears. Compl. ¶¶ 179-185.

CBD seeks declaratory and injunctive relief, including a remand of the listing decision (while leaving the listing of the polar bear as "threatened species" in place) and the vacatur and remand of the interim 4(d) rule. Compl. at 38-40.

**PROPOSED INTERVENOR EDISON ELECTRIC INSTITUTE
AND ITS INTERESTS IN THIS ACTION**

EEI is the association of U.S. shareholder-owned electric companies. EEI's members own electric generation and transmission systems and deliver electricity to end users in virtually all U.S. states. EEI's members serve 95 percent of the ultimate customers in the shareholder-owned segment of the electric industry, and represent approximately 70 percent of the U.S. electric power industry. *See* Declaration of Quinlan J. Shea, III ¶ 2 (appended as Ex. 1 to this Motion). A list of EEI member companies and a map depicting their service territories nationwide are appended to that supporting declaration. *See* Shea Decl. Ex. A.

EEI advocates on behalf of its members before Congress, federal and state regulatory agencies, the courts, and various industry organizations.[1] EEI takes an active role in monitoring, advocating, and commenting on, issues of importance to its members, including the ongoing public dialogue about global climate change and related issues such as the climate-based listing of the polar bear and other wildlife as "endangered species" or "threatened species" under the ESA. Shea Decl. ¶¶ 3-4.

Most of the electricity required for homes and businesses in the U.S. is generated at thousands of individual generating units through means that produce carbon dioxide ($CO_2$) and other GHGs. In 2007, 48.6 percent of our nation's electricity was generated from coal, an additional 21.5 percent from natural gas, and 1.6 percent from fuel oil. Shea Decl. ¶ 5. Moreover, according to a study by the U.S. Environmental Protection Agency ("EPA"), utilities are responsible for roughly 40% of the carbon emissions in this country and are the biggest single class of carbon emitters. EPA, INVENTORY OF U.S. GREENHOUSE GAS EMISSIONS AND SINKS: 1990-2005 at p. 2-6 (Table 2-3) and p. 2-25 (Table 2-15) (Apr. 15, 2007) (http://www.epa.gov/climatechange/emissions/usgginv_archive.html). Thus, our nation's electricity supply relies heavily on fuels that produce GHGs but that offer substantial advantages, such as being available domestically and being relatively affordable.

---

[1] Cases in which EEI is participating or has participated on behalf of its members on various environmental and economic issues include: *Entergy Corp. v. Riverkeeper, Inc.*, Nos. 07-588, et al. (consolidated) (U.S., pending) (EPA Clean Water Act § 316(b) rule for existing power plant cooling water intake structures; participating as member of Petitioner Utility Water Act Group); *National Ass'n of Home Builders v. Defenders of Wildlife*, 127 S. Ct. 2518 (2007) (applicability of ESA to Clean Water Act § 402 permitting; participated as a member of *amicus* Utility Water Act Group); *Massachusetts v. EPA*, 549 U.S. 497 (2007) (regulation of GHGs under Clean Air Act; member of *amicus* Utility Air Regulatory Group); *S.D. Warren Co. v. Maine Board of Environmental Protection*, 547 U.S. 370 (2006) (*amicus*; application of Clean Water Act section 401 in hydropower relicensing context); *The Wilderness Soc'y v. Dep't of Energy*, No. 08-71074 (9th Cir., pending) (intervenor in action seeking review of orders designating electric transmission corridors); *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885 (9th Cir. 2003) (*amicus*; increases in franchise fees not in accordance with city's agreement with affected utilities); and *Louisiana Envtl. Action Network v. EPA*, 172 F.3d 65 (D.C. Cir. 1999) (intervenor; variances from waste treatment standards under Resource Conservation and Recovery Act). *See* Shea Decl. ¶ 3.

1    The Energy Information Administration ("EIA") of the U.S. Department of Energy projects

2    net electric demand to increase 30 percent by 2030, even after taking into account energy-efficiency

3    gains due to market-driven efficiency improvements, stricter building codes, and appliance and other

4    efficiency standards mandated by the Energy Independence and Security Act of 2007.  EIA,

5    ANNUAL ENERGY OUTLOOK 2008 at 10 (June 2008) (http://www.eia.doe.gov/oiaf/aeo/).  Even with

6    substantial energy-efficiency measures, new and replacement power plant capacity is projected to

7    total 150,000 megawatts (MW) and cost $560 billion by 2030.  And even with an aggressive use of

8    renewable and carbon free renewable energy sources much of this new capacity is likely to be in the

9    form of power plants that also rely on fossil fuels.  Transmission and distribution investment needs

10   are projected to total an even larger $900 billion by 2030.  It is important to avoid unnecessary

11   analyses and delays in siting and permitting facilities, in order to facilitate compliance with

12   mandatory reliability standards and reduce the risk of power supply disruptions.  Thus, EEI has a

13   direct and substantial interest in proceedings that may affect the permitting of electric utility

14   facilities that rely on fossil fuels and generate GHGs.  Shea Decl. ¶ 6.

15          This case is such a proceeding.  Groups aligned with the Plaintiffs' interests in this case,

16   including some of the Plaintiffs themselves, have mounted an active and aggressive campaign

17   seeking to stop the construction of new coal-fired power plants in actions before EPA's

18   Environmental Appeals Board ("EAB").  *See, e.g., In re Desert Rock Energy Co., LLC*, PSD Appeal

19   No. 08-03, 08-04 (EAB, filed Aug. 13, 2008) (petitioners include Plaintiff Natural Resources

20   Defense Counsel, Environmental Defense Fund, Sierra Club, Dine Care, Grand Canyon Trust, San

21   Juan Citizens Alliance, and WildEarth Guardians); *In re Deseret Power Electric Cooperative*, PSD

22   Appeal No. 07-03 (pending) (petitioner is Sierra Club; amici curiae include Plaintiff CBD,

23   Environmental Defense, National Parks Conservation Association, Physicians for Social

24   Responsibility); *In re: Christian County Generation, LLC*, PSD Appeal No. 07-01 (EAB Jan. 28,

25   2008) (petitioner was Sierra Club).  The present lawsuit, if plaintiffs achieve their desired result,

26   could have a similar effect on EEI's members by increasing ESA constraints and requirements

27   related to the polar bear and eliminating exemptions that the interim 4(d) rule and current FWS

28

1   policy provide for potential ESA § 9 take liability and, as described in the next paragraph, ESA

2   § 7(a)(2) consultation provisions applicable to federally permitted activities involving GHG

3   emissions.[2]

4       The siting, construction, and continued operation of existing and new facilities frequently

5   require permitting by federal agencies. These permits can include permits under the Clean Air Act

6   related to air emissions, under the Clean Water Act related to water discharges or impacts on

7   wetlands, and under the Resource Conservation and Recovery Act as to management of solid waste.

8   They also can include authorizations to use various federal lands, such as those issued by the U.S.

9   Bureau of Land Management and the U.S. Forest Service. As a result, the siting, construction, and

10   operation of electricity generation and transmission facilities can trigger permit-related federal

11   environmental reviews, including the potential need for consultations, biological assessments, and

12   biological opinions under § 7(a)(2) of the ESA. This consultation process adds costs to projects and

13   can produce costly delays and even block projects entirely[3] if they are found to be a likely cause of

14   jeopardy to any ESA-listed species, such as the polar bear. Shea Decl. ¶ 7.

15       EEI has been actively involved in the ongoing public dialogue about GHG emissions, which

16   are highlighted in this case by the listing of the polar bear as a "threatened species" under the ESA.

17   EEI supports federal action or legislation to reduce GHG emissions that: ensures the development

18

19   [2]    The common goal for challenging coal-fired power plants and seeking enhanced ESA

20   protections for the polar bear is well known to Plaintiffs. An article by their counsel of record in this litigation on CBD's role in the polar bear listing stressed the point. *See* Brendan R. Cummings and

21   Kassie R. Siegel, *Ursus maritimus: Polar Bears on Thin Ice*, 22 Natural Resources & Environment 3, 7 (ABA Section of Environment, Energy, and Resources, Fall 2007) (citing "approval of new coal

22   fired power plants" as an agency action that may trigger ESA § 7 because of the alleged effects of GHG emissions on ESA-listed species). Similarly, CBD's strategy is recounted in a newspaper

23   article about Plaintiff CBD that appeared shortly after the Secretary issued the polar bear listing decision. As described there, CBD's "blueprint for saving the polar bear" includes a "large scale

24   challenge to the licensing of coal fired power plants." The article reports CBD's interest in having the polar bear listing "upgraded from threatened to endangered" and in that context cites CBD

25   Executive Director and founder Kieran Suckling's statement that "there is a compelling case to be made for not allowing any more coal-fired plants." Tony Davis, *Polar bear listing is big win for*

26   *area group*, ARIZONA DAILY STAR, May 27, 2008, http://www.azstarnet.com/sn/printDS/240802 (viewed Aug. 27, 2008).

27   [3]    *See, e.g., TVA v. Hill*, 437 U.S. 153 (1978) (enjoining operation of Tellico Dam as result of ESA § 7 consultation).

28

1    and cost-effective deployment of a full suite of climate-friendly technologies, and helps provide for

2    their funding; minimizes economic disruption to customers and avoids harm to the competitiveness

3    of the U.S. industry; and ensures an economy-wide approach to GHG reductions.  Shea Decl. ¶ 8.

4        The plaintiffs in this case are challenging the Secretary of the Interior's polar bear listing

5    decision and interim 4(d) rule.  On July 14, 2008, EEI submitted 40 pages of comments on the

6    interim 4(d) rule.  Shea Decl. ¶ 9.  The listing decision raised concerns about loss of polar bear

7    habitat (principally sea ice) and the possible (but uncertain) relationship of that loss to global climate

8    change, among other factors.  The interim 4(d) rule provides assurances against imposing ESA

9    liabilities and procedural burdens on activities (such as the operation of electric power plants) merely

10   because they emit GHGs.

11       EEI's interest in the listing of the polar bear and EEI's comments on the interim 4(d) rule

12   were informed by the significant need to increase power supply and transmission throughout the

13   U.S. to provide electricity to a growing population and economy, as described above.  EEI's

14   comments on the interim 4(d) rule support the 4(d) rule and urge the Secretary to adopt it as a final

15   rule following consideration of public comments.  In particular, EEI's comments explain that the

16   interim 4(d) rule addresses two sets of ESA issues which, in cases involving other ESA-listed

17   species, have proven to be significant causes for delay and even cancellation of worthwhile projects

18   in both the public and private sectors, and reaches the sound conclusions that: (1) GHG emissions do

19   not trigger the consultation provisions of ESA § 7(a)(2); and (2) activities which occur hundreds and

20   even thousands of miles away from polar bear habitat, such as GHG emissions from power plants in

21   the lower 48 states, cannot be culpable causes of "take" of the polar bear under ESA § 9.  Shea Decl.

22   ¶ 10.

23       For these same reasons, EEI has a direct interest in this litigation.  This litigation challenges

24   the Secretary's final rule under the ESA listing the polar bear as a "threatened species" and the

25   related interim final rule addressing measures to protect the polar bear under ESA § 4(d).  The

26   interim 4(d) rule provides helpful clarity and certainty for EEI that GHG-emitting sources in the

27   lower 48 states are not affected by the listing, because any contribution those sources may make to

28

global climate change is too remote and miniscule to be a "cause" of ESA take or trigger the ESA's consultation provision. The plaintiffs in this case are seeking to reclassify the polar bear under the ESA as a more highly protected "endangered species" and overturn the interim 4(d) rule, even as FWS is evaluating comments on the interim rule, and thus threaten to undermine the helpful clarity, certainty, and protections that the rule provides to EEI's members. Shea Decl. ¶ 11.

EEI's interest in this case relates to electric utility facilities, which are essential to the U.S. infrastructure. EEI's interest relates directly to GHG emissions and their interplay with the ESA, the focus of this litigation. EEI's interest is nationwide and relates directly to the interim 4(d) rule, which in particular addresses GHG-emitting activities in the lower 48 states. Shea Decl. ¶ 12. As described in the Argument below, EEI's members' interests would be substantially impaired if CBD's requested relief is granted. Thus, EEI moves to intervene in this action in support of the Secretary.

## ARGUMENT

### I. EEI Is Entitled to Intervention of Right

Rule 24(a)(2) provides for intervention of right: "On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). A party seeking intervention of right must satisfy four requirements: "(1) the motion must be timely; (2) the applicant must have a 'significantly protectable' interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action." *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993) (finding the City of Phoenix was entitled to intervention of right to protect its Clean Water Act permit). The "rule is construed broadly, in favor of the applicants for intervention." *Id*. (internal quotation omitted). *Accord CBD v. Kempthorne*, Aug. 13 Order at 3-4.

### A.    This Motion to Intervene Is Timely

Courts "consider three criteria in determining whether a motion to intervene is timely: (1) the stage of the proceedings; (2) whether the parties would be prejudiced; and (3) the reason for any delay in moving to intervene." *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 833 (9th Cir. 1996). EEI's motion is timely under those criteria.

This case is at an early stage following the filing of CBD's Second Amended Complaint on July 16, 2008. *See Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (intervention motion filed four months after the Complaint's filing found to be timely in an ESA case). Defendants' Answer is not due until September 15, 2008. For that reason alone, this motion is timely. *See Sierra Club v. EPA*, 995 F.2d at 1481 (granting intervention where motion was filed "before the EPA had even filed its answer"); 7C CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1916, at 435-39 (2d ed. 1986) (a motion to intervene "made before the existing parties have joined issue in the pleadings has been regarded as clearly timely").

Moreover, neither Plaintiffs nor Defendants will suffer undue delay by the timing of this motion to intervene. EEI agrees to abide by the litigation schedule set by the Court in its order granting intervention to Alaska-based interests. *See* Aug. 13 Order at 9. Under that schedule, Plaintiffs' motion for summary judgment is not due until October 30, 2008; and opening briefs from defendant-side intervenors are not due until December 4, 2008.

### B.    EEI Has Legally Protectable Interests That May Be Impaired by Disposition of This Case

Rule 24(a)(2) is satisfied "when the applicant claims an interest relating to the property or transaction which is the subject of the action" and "disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest." The interest test seeks to involve "as many apparently concerned persons as is compatible with efficiency and due process." *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980).

Despite such statements on broad intervention, within the Ninth Circuit, as "a general rule, 'the federal government is the only proper defendant in an action to compel compliance with

NEPA.'" *Wetlands Action Network v. U.S. Army Corps of Eng'rs*, 222 F.3d 1105, 1114 (9th Cir. 2000). "'The rationale for our rule is that, because NEPA requires action only by the government, only the government can be liable under NEPA'" – "Because a private party can not violate NEPA, it can not be a defendant [on the merits of] in a NEPA compliance action" as a matter of intervention of right, but can only intervene with respect to the remedy. *Id. See* August 13 Order at 5-6.

But, as this Court has noted, "the Ninth Circuit's special approach to intervention is NEPA cases does not extend to claims alleging violations of other environmental laws." *Id.* at 6 (citing *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 817-24 (9th Cir. 2001) and *Idaho Farm Bureau Fed'n*, 58 F.3d at 1397-98 & n.3.). Thus, except for CBD's lone NEPA claim (Claim Six), that limiting principle does not apply here.

As described above, EEI's members have economic interests that may be impaired and that warrant full intervention of right on the non-NEPA claims, and full intervention of right in any remedial stage of this case, as explained below. Specifically, EEI's members have protectable interests in constructing and operating power plants and engaging in other activities that produce GHGs but offer substantial advantages, such as providing electricity using domestically available, dependable, and relatively affordable fuel sources. *See* Shea Decl. ¶¶ 2, 5-7, 10-12. But for the interim 4(d) rule, as tied to the listing of the polar bear under the ESA as a "threatened" rather than an "endangered" species, those operations could be subject to additional ESA constraints, if not outright prohibitions, as causes of ESA "take" of the polar bear; and could be subject to civil and criminal penalties and judicial injunction as a result of federal agency enforcement action or ESA citizen suits under ESA § 11(g) (16 U.S.C. § 1540(g)).

Moreover, EEI has an interest in ensuring that the listing of the polar bear as a "threatened species" is not upgraded to an "endangered species," as CBD ultimately wishes. "Endangered" status automatically brings the "take" prohibition of ESA § 9 into play, whereas the applicability of § 9 to "threatened species" is a matter of the Secretary's discretion and expertise under § 4(d). Lastly, the policy on ESA § 7(a)(2) consultation stated in the interim 4(d) rule's preamble prevents GHG emissions from EEI's members' operations from triggering the ESA's consultation provisions.

1   EEI's members clearly have an interest in ensuring that, insofar as their operations require federal

2   permits, licenses, or authorizations, that nexus with federal agency action does not lead to the delays

3   and added expense that ESA § 7(a)(2) consultation would bring.  *See* Shea Decl. ¶ 7.

4        In particular, one of the main reasons EEI supports the interim 4(d) rule and has an interest in

5   the vindication of the rule in this case is that the rule honors the Supreme Court's holding that

6   liability for ESA § 9 "take" is limited by "ordinary requirements of proximate causation and

7   foreseeability."  *Babbitt v. Sweet Home Chapter, Communities for Great Ore.*, 515 U.S. 687, 696 n.9

8   and 700 n.13 (1995).  It is impossible to develop a chain of proximate causation between GHG

9   emissions from any individual facility and impacts upon global climate, let along upon the habitat of

10  a species affected by climate or the impact upon any individual member of that species.  EEI has a

11  strong interest in not having individual projects delayed by being required to study and refute such a

12  chain of causation in case after case.

13       EEI's members' interests would be substantially impaired if CBD's requested relief is

14  granted, particularly given Rule 24(a)(2)'s focus on avoiding "practical" impairment.  If Plaintiffs

15  prevail, in particular in forcing the listing of the polar bear as an endangered species, EEI members

16  would lose the critical protections the interim 4(d) rule now provides them against civil and criminal

17  liability for ESA § 9 "take" of the polar bear as a result of their operations outside Alaska, and

18  against subjecting their GHG-emitting activities to the costly, time-consuming, and potentially

19  prohibitive consultation process under ESA § 7(a)(2).  Shea Decl. ¶¶ 11-12.

20       CBD's suit threatens to impair EEI's interests in several ways.  First, CBD attacks the listing

21  decision directly and substantively, alleging that the polar bear should have been listed as an

22  "endangered species," not a "threatened species."  If the polar bear were listed as an "endangered

23  species," the "take" prohibitions of ESA § 9 would automatically apply.  The broadest term in the

24  definition of "take" of wildlife is "harm."  16 U.S.C. § 1532(19).  Harm is defined in a FWS rule as

25  follows.

26       *Harm* in the definition of "take" in the Act means an act which actually kills or
     injures wildlife.  Such act may include significant habitat modification or degradation

27       where it actually kills or injures wildlife by significantly impairing essential
     behavioral patterns, including breeding, feeding or sheltering.

28

50 C.F.R. § 17.3.  ESA § 11(g) allows citizen suits to enjoin ESA and regulatory violations.  16 U.S.C. § 1540(g).  One theory (which CBD advocates but with which EEI strongly disagrees) is that proposed GHG-emitting projects are culpable causes of global climate change, which "harms" and "takes" polar bears in violation of ESA § 9.  Hence, under CBD's view, a proposed GHG-emitting project could be enjoined by the court in an ESA § 11(g) citizen suit.

Second, if the polar bear were listed as an "endangered species" as CBD wishes, the interim 4(d) rule, with its provision excluding from ESA "take" liability activities occurring outside Alaska, would be eliminated by operation of law, since 4(d) rules apply only to "threatened species."  *See* 16 U.S.C. § 1533(d).  In that event, the interests of EEI's members outside Alaska would be impaired because their GHG-emitting operations would be subject to potential "take" liability.

Third, regardless of whether CBD succeeds in challenging the listing decision, CBD's separate claims seek to invalidate the interim 4(d) rule.  In the absence of a 4(d) rule, the ESA's protections for, and prohibitions on "take" of, *endangered* species would apply to the *threatened* polar bear by default under 50 C.F.R. § 17.31.  Here again, a ruling in CBD's favor would expose EEI's members to potential liabilities from which they are currently sheltered by the interim 4(d) rule.

Fourth, a ruling in CBD's favor on the applicability of ESA § 7(a)(2) consultation to GHG emissions from or facilitated by a specific federal agency action, including any federally permitted or assisted project, could subject EEI's members' power plants and other activities requiring federal permits or authorizations, to the additional costs, delays, and impediments that ESA § 7(a)(2) consultation can entail.

Fifth, EEI has a legally cognizable interest in ensuring that the views it has advocated on matters such as the interim 4(d) rule and the reduction of GHG have a voice in this lawsuit, which is the lead case to date attacking the listing decision and interim 4(d) rule for being insufficiently protective of the polar bear.  *See* Shea Decl. ¶ 8.  EEI should be "entitled to intervene as of right" because this action "challenge[s] the legality" of "a measure it has supported."  *Idaho Farm Bureau*, 58 F.3d at 1397.

1    Lastly, due process and simple fairness suggest that all the stakeholders potentially affected

2    by the challenged federal actions should be represented in this litigation. Those stakeholders are the

3    Plaintiffs, the Defendants who issued the challenged decisions, and the private-sector economic

4    interests that will bear the brunt of a decision in Plaintiffs' favor, including in this case intervenors

5    whose interests entail GHG emissions and are focused not just in Alaska but nationwide. *See*

6    *County of Fresno*, 622 F.3d at 438 (the interest test allows involvement by "as many apparently

7    concerned persons as is compatible with efficiency and due process"); *Kleissler v. U.S. Forest Serv.*,

8    157 F.3d 964, 971 (3d Cir. 1998) (in cases pitting private, state, and federal interests against each

9    other, "[r]igid rules [barring intervention] contravene a major premise of intervention – the

10   protection of third parties affected by the pending litigation. Evenhandedness is of paramount

11   importance.").

12       **C.**    **EEI's Interests Are Not Adequately Represented by Existing Parties**

13

14   The final criterion for intervention of right is whether the representation of EEI's interests by

15   existing parties "may be" inadequate. The "burden of that showing should be treated as minimal."

16   *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538-39 n.10 (1972); *Southwest Center*,

17   268 F.3d at 822-23.

18   EEI's interests clearly are not adequately represented by the Plaintiffs. They seek to upend

19   the listing decision and interim 4(d) rule, whereas EEI would intervene in defense of those actions.

20   *See United States v. Stringfellow*, 783 F.2d 821, 828 (9th Cir. 1986) (adverse party cannot

21   adequately represent applicant's interests).

22   There is some overlap of interests among Federal Defendants, Intervenor-Defendants Alaska

23   Oil and Gas Association ("AOGA") and Arctic Slope Regional Corporation ("ASRC"), and EEI, in

24   the sense that all will defend – in whole or in part – the Secretary's actions against CBD's desire for

25   greater protections for the polar bear. But there are distinct differences among these parties that

26   merit separate intervenor status for EEI. First, while Federal Defendants must represent the broad

27   public interest, EEI has distinguishable private economic interests in avoiding disruption of its

28

Edison Elec. Instit. Mot. to Intervene and Mem. in Supp., No. C 08-1339 CW               Page 14

1  members' business operations.  *See Trbovich*, 404 U.S. at 538-39.  *See also* Aug. 13 Order at 7

2  (finding that private-sector interests are "disparate from those of the government").

3  Second, EEI's membership is a *nationwide* constituency, with a substantial interest in

4  preserving the interim 4(d) rule's exemption from incidental take liability for activities occurring

5  outside Alaska, including the underlying rationale that those activities cannot be a proximate cause

6  of "take" of the polar bear.  50 C.F.R. § 17.40(q)(4).  *See* Shea Decl. ¶¶ 2, 13.  The comments EEI

7  submitted on the interim 4(d) rule strongly express support for that aspect of the rule.  The Court has

8  denied intervention to other groups (AOGA and ASRC) on that issue.  August 13 Order at 8.[4]  Thus,

9  EEI's private-sector interest in the exemption is not adequately represented by any existing party.

10  Third, because many of EEI's members' operations emit GHGs, EEI has a strong interest in

11  the portion of the interim final rule that exempts GHG emissions from § 7(a)(2) of the ESA.  The

12  Court has denied intervention to AOGA and ASRC on that issue.  August 13 Order at 8.  Thus,

13  EEI's private-sector interest in the § 7(a)(2) exemption is not adequately represented by any existing

14  party.

15  Fourth, EEI's interest in this case, unlike those of other intervenors, relates to electric utility

16  facilities, which are essential to the U.S. infrastructure and, as noted above, have been identified

17  collectively by EPA as the biggest single class of GHG emitters in the country – precisely the

18  emissions that plaintiffs allege are responsible for decline in polar bear habitat.  For that reason

19  alone, EEI has a Rule 24(a)(2) right to intervene and protect its members' interests in engaging in

20  activities that lie at the heart of this litigation.  No other party represents an industry with comparable

21  GHG emissions and comparable potential effects via the federal permitting process and its

22  interaction with the ESA.

23

24  _____

25  [4]    Similarly, the Court's order granting limited intervention to Conservation Force occurred in
an earlier phase of the case, well before the filing of the Second Amended Complaint, and granted

26  intervention for the limited purpose of addressing the issue "of whether provision may be made
under the [ESA] for the import of" certain polar bear trophies.  Amended Order (May 13, 2008) at 2

27  (Dkt. 69).  EEI's interests are distinct from that narrow issue and thus are not represented by
Conservation Force.

28

Fifth, no other party represents an industry whose principal focus is on its demonstrated nationwide interests. Shea Decl. ¶¶ 2, 13 & Ex. A. AOGA represents the interests of "commercial oil and gas activity in Alaska." Aug. 13 Order at 3. ASRC represents the "economic interests of the Iñupiaq, a group of Native Alaskans living on the North Slope of the State." *Id.* Neither of them purports to speak for the electric power industry, whose generating plants irrespective of location have been noted in the listing decision as sources of GHG emissions. *See* 73 Fed. Reg. 28247-48, 28300.

Sixth, EEI, the Federal Defendants, and the other intervenors may well take different positions on jurisdictional, merits, and remedy issues. Should settlement negotiations commence, EEI, the Federal Defendants, AOGA, and ASRC are likely to have different perspectives on items to be included in any settlement. Since this case impacts EEI's members' economic future, the Court should grant intervention to provide EEI with a seat at the settlement table.

Lastly, EEI will add a necessary element to the proceedings. Granting intervention will ensure that all affected interests (the environmentalists, the Federal agency Defendants, the affected industries (national as well as local), and Alaska Native interests) are heard. This will promote the interests of fairness and a more informed decision by the Court.

## II.    Permissive Intervention Should Be Granted

The Court could decide not to issue a ruling on the technical aspects of intervention of right and simply grant permissive intervention under Rule 24(b)(2). Further, though as discussed above the Ninth Circuit generally proscribes intervenor of-right participation as to the merits of plaintiff NEPA claims, the Court can and should grant EEI permissive intervention to participate in this case on merits of the Plaintiff's NEPA claims (and should grant EEI either permissive or of-right intervention as to all other claims presented, including both the merits and remedial aspects of the claims), given the integral importance of the underlying issues to this case.

Permissive intervention can be granted for all phases of a case (including NEPA claims in the Ninth Circuit) if the applicant's: (1) motion is timely; and (2) its claim or defense and the main action share a common question of law or fact. *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094,

1110-11 (9th Cir. 2002) (affirming that environmental groups were correctly granted permissive

intervention by the district court and could defend the merits of NEPA and land-use planning

compliance of roadless area rules on appeal). Since Rule 24(b) "plainly dispenses with any

requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the

litigation," the interest-based limitation on intervention of right on the merits of NEPA claims

simply does not arise. *Kootenai Tribe*, 313 F.3d at 1108 (quoting *SEC v. U.S. Realty &*

*Improvement Co.,* 310 U.S. 434, 459 (1940)).

EEI's motion is timely for the reasons presented in Section I.A. EEI also satisfies element

the commonality element of Rule 24(b). As was found true of the intervenors in *Kootenai Tribe*,

313 F.3d at 1110-11, because EEI seeks to defend the challenged federal agency actions, EEI's

defenses have questions of law and fact in common with CBD's claims.

In *Kootenai Tribe*, the Ninth Circuit found that the "magnitude of th[e] case is such" that

environmental groups' "intervention will contribute to the equitable resolution of this case." 313

F.3d at 1111. Similarly here, EEI's nationwide perspective clearly deserves to be in this case in light

of: (1) the potential to expand the ESA § 9 "take" prohibition exponentially to reach activities outside

of Alaska; (2) the centrality of GHG emissions to this lawsuit; (3) the potential for finding that GHG

emissions hundreds or thousands of miles from polar bear habitat are a culpable cause of "take" of

the polar bear or a trigger for ESA § 7(a)(2) consultation; and (4) EEI's participation in public

comment on the interim 4(d) rule. Equally important to the Court's exercise of discretion, it is in the

interest of justice to allow all affected interests to participate in this important case.

Thus, EEI (like the affected and participating environmental groups in *Kootenai Tribe*)

should be granted at least permissive intervenor status in this entire action. EEI could make do with

a simple order granting permissive intervention here. In that event, or if intervention of right is

granted, we only urge the reasonable condition that, due to EEI's distinct interests, it should not be

compelled to brief jointly with either the Federal Defendants or the existing Intervenor-Defendants.

EEI agrees to confer with those other parties prior to filing to avoid unnecessary duplication of

argument. *See* Aug. 13 Order at 9 (allowing AOGA and ASRC to file separate briefs).

1

**CONCLUSION**

2          The Edison Electric Institute should be granted Intervenor-Defendant status to participate

3    fully in this case.

4          .

5                                              Respectfully submitted,

6

7    Steven P. Rice (SBN 094321)              By:    */s/ J. Michael Klise*_____
     CROWELL & MORING LLP                            J. Michael Klise (*pro hac vice*
8    3 Park Plaza                                    *application pending*)
     20th Floor                                      Steven P. Quarles
     Irvine, CA 92614-8505                           Chet M. Thompson
9    (949) 263-8400                                  Thomas R. Lundquist
     Fax: (949) 263-8414                             CROWELL & MORING LLP
10   srice@crowell.com                               1001 Pennsylvania Avenue, N.W.
                                                      Washington, D.C. 20004-2595
11                                                    (202) 624-2500
                                                      Fax: (202) 628-5116
12                                                    jmklise@crowell.com

13
                          Attorneys for Proposed Intervenor Edison Electric Institute
14
     Dated: August 28, 2008
15

16

17                   **CERTIFICATION OF INTERESTED PERSONS OR ENTITIES**

18          Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the

19   named parties, there is no such interest to report.

20

21   Dated: August 28, 2008                          */s/ J. Michael Klise*_____
                                                      J. Michael Klise
22                                                    Attorney for Proposed Intervenor

23

24

25

26

27

28

Exhibit 1

1  Steven P. Rice (SBN 094321)
   CROWELL & MORING LLP
2  3 Park Plaza
   20th Floor
3  Irvine, CA 92614-8505
   Phone:  949-263-8400
4  Facsimile:  949-263-8414
   srice@crowell.com
5
   J. Michael Klise (*pro hac vice application pending*)
6  jmklise@crowell.com
   Steven P. Quarles
7  Chet M. Thompson
   Thomas R. Lundquist
8  CROWELL & MORING LLP
   1001 Pennsylvania Ave., NW
9  Washington, D.C. 20004-2595
   Phone:  202-624-2600
10 Facsimile:  202-628-5116

11 Attorneys for Proposed Intervenor-Defendant Edison Electric Institute

12              IN THE UNITED STATES DISTRICT COURT
13           FOR THE NORTHERN DISTRICT OF CALIFORNIA
14                        OAKLAND DIVISION
15 _____

16 CENTER FOR BIOLOGICAL          )
   DIVERSITY, *et al.*,           )
17            Plaintiffs,         )
                                  )
18       v.                       )     No. C 08-1339 CW
                                  )
19 DIRK KEMPTHORNE, *et al.*,     )
            Defendants,           )
20                                )     DECLARATION OF
        and                       )     QUINLAN J. SHEA, III
21                                )
   EDISON ELECTRIC INSTITUTE,     )
22          Proposed Intervenor-  )
            Defendant.            )
23 _____)

24       I, Quinlan J. Shea, III, make this declaration based upon my personal knowledge and belief

25 and state:

26       1.      I am the Executive Director, Environment, of the Edison Electric Institute ("EEI"),

27 located in Washington, DC.  In that capacity, I am familiar with EEI's makeup, purposes, and

28

1    activities.  I execute this declaration in support of EEI's motion to intervene in this action, based on

2    my personal knowledge of EEI and a review of EEI's records, where necessary.

3         2.     EEI is the association of U.S. shareholder-owned electric companies.  EEI's members

4    own electric generation and transmission systems and deliver electricity to end users in virtually all

5    U.S. states.  EEI's members serve 95 percent of the ultimate customers in the shareholder-owned

6    segment of the electric industry, and represent approximately 70 percent of the U.S. electric power

7    industry.  A list of EEI member companies and a map depicting their service territories nationwide

8    are appended at Exhibit A to this declaration.

9         3.     EEI advocates on behalf of its members before Congress, federal and state regulatory

10   agencies, the courts, and various industry organizations.  Cases in which EEI is participating or has

11   participated on behalf of its members on various environmental and economic issues include:

12   *Entergy Corp. v. Riverkeeper, Inc.*, Nos. 07-588, et al. (consol.) (U.S., pending) (EPA Clean Water

13   Act § 316(b) rule for existing power plant cooling water intake structures; participating as member

14   of Petitioner Utility Water Act Group); *National Ass'n of Home Builders v. Defenders of Wildlife*,

15   127 S. Ct. 2518 (2007) (applicability of ESA to Clean Water Act § 402 permitting; participated as a

16   member of *amicus* Utility Water Act Group); *Massachusetts v. EPA*, 549 U.S. 497 (2007)

17   (regulation of greenhouse gases ("GHGs") under Clean Air Act; member of *amicus* Utility Air

18   Regulatory Group); *S.D. Warren Co. v. Maine Board of Environmental Protection*, 547 U.S. 370

19   (2006) (*amicus*; application of Clean Water Act section 401 in hydropower relicensing context); *The*

20   *Wilderness Soc'y v. Dep't of Energy*, No. 08-71074 (9th Cir., pending) (intervenor in action seeking

21   review of orders designating electric transmission corridors); *Southern California Gas Co. v. City of*

22   *Santa Ana*, 336 F.3d 885 (9th Cir. 2003) (*amicus*; increases in franchise fees not in accordance with

23   city's agreement with affected utilities); and *Louisiana Envtl. Action Network v. EPA*, 172 F.3d 65

24   (D.C. Cir. 1999) (intervenor; variances from waste treatment standards under Resource Conservation

25   and Recovery Act).

26        4.     EEI takes an active role in monitoring, advocating, and commenting on issues of

27   importance to its members, including the ongoing public dialogue about global climate change and

28

1    related issues such as the climate-based listing of the polar bear and other wildlife as "endangered

2    species" or "threatened species" under the Endangered Species Act ("ESA").

3          5.      Most of the electricity required for homes and businesses in the U.S. is generated is

4    generated at thousands of individual generating units through means that produce carbon dioxide

5    ("$CO_2$") and other GHGs.  Information compiled by EEI shows that in 2007, 48.6 percent of our

6    nation's electricity was generated from coal, an additional 21.5 percent from natural gas, and 1.6

7    percent from fuel oil.  STATISTICAL YEARBOOK OF THE ELECTRIC POWER INDUSTRY – 2006 AND 2007

8    DATA at 38, Chart 4.1, Generation by Fuel, Total Electric Industry (EEI 2008).  Thus, our nation's

9    electricity supply relies heavily on fuels that produce GHGs but that also offer substantial

10   advantages, such as being available domestically and being relatively affordable.

11         6.      The Energy Information Administration ("EIA") of the U.S. Department of Energy

12   projects net electric demand to increase 30 percent by 2030, even after taking into account energy-

13   efficiency gains due to market-driven efficiency improvements, stricter building codes, and

14   appliance and other efficiency standards mandated by the Energy Independence and Security Act of

15   2007.  EIA, ANNUAL ENERGY OUTLOOK 2008 at 10 (June 2008) (http://www.eia.doe.gov/oiaf/aeo/).

16   Even with substantial energy-efficiency measures, new and replacement power plant capacity is

17   projected to total 150,000 megawatts (MW) and cost $560 billion by 2030.  And even considering

18   renewable energy sources, much of this new capacity is likely to be in the form of power plants that

19   also rely on fossil fuels.  Transmission and distribution investment needs are projected to total an

20   even larger $900 billion by 2030.  TRANSFORMING AMERICA'S POWER INDUSTRY:  THE INVESTMENT

21   CHALLENGE (PRELIMINARY FINDINGS) (The Brattle Group, April 2008).  It is important to avoid

22   unnecessary analyses and delays in siting and permitting these facilities, in order to facilitate

23   compliance with mandatory reliability standards and reduce the risk of power supply disruptions.

24   Thus, EEI has a direct and substantial interest in proceedings that may affect the permitting of

25   electric utility facilities that rely on fossil fuels and generate GHGs.

26         7.      The siting, construction, and continued operation of these existing and new facilities

27   frequently require permitting by federal agencies.  These permits can include permits under the

28   Clean Air Act related to air emissions, under the Clean Water Act related to water discharges or

1   impacts on wetlands, and under the Resource Conservation and Recovery Act as to management of

2   solid waste.  They also can include authorizations to use various federal lands, such as those issued

3   by the U.S. Bureau of Land Management and the U.S. Forest Service.  As a result, the siting,

4   construction, and operation of electricity generation and transmission facilities can trigger permit-

5   related federal environmental reviews, including the potential need for consultations, biological

6   assessments, and biological opinions under § 7(a)(2) of the ESA.  The consultation process adds

7   costs to projects and can produce costly delays and even block projects entirely if they are found to

8   be a likely cause of jeopardy to any ESA-listed species, such as the polar bear.

9       8.   EEI has been actively involved in the ongoing public dialogue about GHG emissions.

10  EEI supports federal action or legislation to reduce GHG emissions that: ensures the development

11  and cost-effective deployment of a full suite of climate-friendly technologies, and helps provide for

12  their funding; minimizes economic disruption to customers and avoids harm to the competitiveness

13  of the U.S. industry; and ensures an economy-wide approach to GHG reductions.

14      9.   The Secretary of the Interior's decision to list the polar bear as a "threatened species"

15  was published in the Federal Register on May 15, 2008, 73 Fed. Reg. 28212-303 ("listing decision"),

16  and is challenged by Plaintiffs Center for Biological Diversity, *et al.* ("CBD") in this lawsuit.  On

17  July 14, 2008, EEI submitted 40 pages of comments on the ESA § 4(d) interim rule for the polar

18  bear (73 Fed. Reg. 28306), which accompanied the listing decision and is also challenged in this

19  lawsuit.

20      10.   EEI's interest in the listing of the polar bear and our comments on the interim 4(d)

21  rule were informed by the significant need to increase power supply and transmission throughout the

22  United States to provide electricity to a growing population and economy, as I have described above.

23  EEI's comments on the interim 4(d) rule explain that, given the Secretary's decision to list the polar

24  bear as a "threatened species," EEI supports the 4(d) rule and urges the Secretary to adopt it as a

25  final rule following consideration of public comments.  In particular, EEI's comments explain that

26  the interim 4(d) rule addresses two sets of ESA issues which, in cases involving other ESA-listed

27  species, have proven to be significant causes for delay and even cancellation of worthwhile projects

28  in both the public and private sectors, and reaches the sound conclusions that: (1) GHG emissions do

1  not trigger the consultation provisions of ESA § 7(a)(2); and (2) activities which occur hundreds and

2  even thousands of miles away from polar bear habitat, such as GHG emissions from power plants in

3  the lower 48 states, cannot be culpable or proximate causes of "take" of the polar bear under ESA

4  § 9.

5      11.    For these same reasons, EEI has a direct interest in this litigation.  This litigation

6  challenges the Secretary's final rule under the ESA listing the polar bear as a "threatened species"

7  and the related interim final rule addressing measures to protect the polar bear under section 4(d) of

8  the ESA.  The interim 4(d) rule provides helpful clarity and certainty that GHG-emitting sources in

9  the lower 48 states are not affected by the listing, because any contribution those sources may make

10  to global climate change is too remote and miniscule to trigger the ESA's consultation provision or

11  takings' prohibition.  The Plaintiffs in this case are seeking to reclassify the polar bear under the

12  ESA as a more highly protected "endangered species" and overturn the interim 4(d) rule, even as

13  FWS is evaluating comments on the interim rule, and thus threaten to undermine the helpful clarity,

14  certainty, and protections that the rule provides to EEI's members.

15      12.    EEI's interest in this case relates to electric utility facilities, which are essential to the

16  U.S. infrastructure.  Our interest relates directly to GHG emissions and their interplay with the ESA,

17  the focus of this litigation.  Our interest is nationwide and relates directly to the interim 4(d) rule,

18  which in particular addresses GHG-emitting activities in the lower 48 states.  EEI's members'

19  interests would be substantially impaired if CBD's requested relief is granted.  EEI's members

20  would lose the critical protections the interim 4(d) rule now provides them against civil and criminal

21  liability for ESA § 9 "take" of the polar bear as a result of their operations outside Alaska, and

22  against subjecting their GHG-emitting activities to the costly, time-consuming, and potentially

23  prohibitive consultation process under ESA § 7(a)(2).

24      13.    Further, EEI's interests will not be adequately represented by any other party to the

25  litigation.  No other party represents an industry with comparable GHG emissions and comparable

26  potential effects via the federal permitting process and its interaction with the ESA, and no other

27  party represents an industry whose principal focus is on nationwide interests.

28

1    I declare under penalty of perjury that the foregoing is true and correct to the best of my
2  knowledge.
3    Executed this 28th day of August, 2008.

4
5                                                    /s/ Quinlan J. Shea, III
                                                     Quinlan J. Shea, III
6

7                                    **ATTESTATION**

8    I hereby attest that I am the registered ECF User whose User ID and Password will be
9  utilized in the electronic filing of this declaration, and that concurrence in the filing of this
10  declaration has been obtained from the declarant.
11    Executed this 28th day of August, 2008.

12
13                                                   /s/ J. Michael Klise
                                                     J. Michael Klise
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit A

# EEI U.S. Member Company Service Territories AUGUST 2008

Edison Electric Institute



## Map Abbreviation Key

AEP = American Electric Power, Inc.
Alliant/IP&L = Interstate Power and Light Company
Alliant/WPL = Wisconsin Power and Light Company
CEI = Cleveland Electric Illuminating Company, The
CHG&E = Central Hudson Gas & Electric Corporation
ConEd = Commonwealth Edison Company
ConEd = Consolidated Edison Company of New York, Inc
CVPS = Central Vermont Public Service Corporation
DP&L = Dayton Power and Light Company, The
IMP = Indiana Michigan Power
IPL = Indianapolis Power & Light Company
LG&E = Louisville Gas and Electric Company
MGE = Madison Gas and Electric Company
NYSEG = New York State Electric & Gas Corporation

NIPSCO = Northern Indiana Public Service Co.
OG&E = OG&E Electric Services
Penelec = Pennsylvania Electric Company
Penn Power = Pennsylvania Power Company
PG&E = Pacific Gas & Electric Company
PPL = PPL Electric Utilities Corporation
PSC of NH = Public Service Company of New Hampshire
PSO = Public Service Company of Oklahoma
RG&E = Rochester Gas and Electric Corporation
SWEPCO = Southwestern Electric Power Company
TolEd = Toledo Edison Company, The
UGI = UGI Utilities, Inc.
UI = United Illuminating Company, The
WPS = Wisconsin Public Service Corporation

Produced by Edison Electric Institute's Project Support Group.    Data Source: Ventyx,Inc., The Velocity Suite 2008.

## EEI Member Lookup By Operating Company

| Operating Company | Parent |
|---|---|
| AEP Ohio | American Electric Power, Inc. |
| AEP Texas | American Electric Power, Inc. |
| Alabama Power Company | Southern Company |
| Alaska Electric Light and Power Company | No Parent |
| Allegheny Power | Allegheny Energy, Inc. |
| AmerenCILCO | Ameren Corporation |
| AmerenCIPS | Ameren Corporation |
| AmerenIP | Ameren Corporation |
| AmerenUE | Ameren Corporation |
| Appalachian Power | American Electric Power, Inc. |
| Arizona Public Service Company | Pinnacle West Capital Corporation |
| Atlantic City Electric | Pepco Holdings, Inc. |
| Avista Utilities | Avista Corporation |
| Baltimore Gas and Electric Company | Constellation Energy Group, Inc. |
| Black Hills Energy | Black Hills Corporation |
| Black Hills Power | Black Hills Corporation |
| Cap Rock Energy Corporation | No Parent |
| CenterPoint Energy, Inc. | No Parent |
| Central Hudson Gas & Electric Corporation | CH Energy Group, Inc. |
| Central Maine Power Company | Energy East Corporation |
| Central Vermont Public Service Corporation | No Parent |
| Cheyenne Light, Fuel & Power Company | Black Hills Corporation |
| Cleco Power LLC | Cleco Corporation |
| Commonwealth Edison Company | Exelon Corporation |
| Consolidated Edison Company of New York, Inc. | Consolidated Edison, Inc. |
| Consumers Energy | CMS Energy Corporation |
| Delmarva Power | Pepco Holdings, Inc. |
| Dominion | No Parent |
| Duke Energy Corporation | No Parent |
| Edison Sault Electric Company | Wisconsin Energy Corporation |
| El Paso Electric Company | No Parent |
| Empire District Electric Company, The | No Parent |
| Entergy Arkansas, Inc. | Entergy Corporation |
| Entergy Louisiana, Inc. | Entergy Corporation |
| Entergy Mississippi, Inc. | Entergy Corporation |
| Entergy New Orleans, Inc. | Entergy Corporation |
| Entergy Texas, Inc. | Entergy Corporation |
| Florida Power & Light Company | FPL Group, Inc. |
| Georgia Power Company | Southern Company |
| Green Mountain Power Corporation | No Parent |
| Gulf Power Company | Southern Company |
| Hawaii Electric Light Company, Inc. | Hawaiian Electric Industries, Inc. |
| Hawaiian Electric Company, Inc. | Hawaiian Electric Industries, Inc. |
| Idaho Power Company | IDACORP, Inc. |
| Indiana Michigan Power | American Electric Power, Inc. |
| Indianapolis Power & Light Company | AES Corporation |
| Interstate Power and Light Company | Alliant Energy Corporation |
| Jersey Central Power & Light Company | FirstEnergy Corp. |
| Kansas City Power & Light Company | Great Plains Energy, Inc. |
| Kentucky Power | American Electric Power, Inc. |
| Kentucky Utilities Company | E.ON U.S. |
| Louisville Gas and Electric Company | E.ON U.S. |
| Madison Gas and Electric Company | MGE Energy, Inc. |
| Maui Electric Company, Ltd. | Hawaiian Electric Industries, Inc. |
| Metropolitan Edison Company | FirstEnergy Corp. |
| Minnesota Power | ALLETE |
| Mississippi Power Company | Southern Company |
| Montana-Dakota Utilities Co. | MDU Resources Group, Inc. |
| Mt. Carmel Public Utility Company | No Parent |
| National Grid | No Parent |
| Nevada Power Company | Sierra Pacific Resources |
| New York State Electric & Gas Corporation | Energy East Corporation |
| Northern Indiana Public Service Co (NIPSCO) | NiSource Inc. |
| NorthWestern Energy | No Parent |
| NSTAR | No Parent |
| OG&E Electric Services | OGE Energy Corporation |
| Ohio Edison Company | FirstEnergy Corp. |
| Oncor | Energy Future Holdings |
| Orange and Rockland Utilities, Inc. | Consolidated Edison, Inc. |
| Otter Tail Power Company | Otter Tail Corporation |
| Pacific Gas & Electric Company | PG&E Corporation |
| PECO Energy | Exelon Corporation |
| Pennsylvania Electric Company | FirstEnergy Corp. |
| Pennsylvania Power Company | FirstEnergy Corp. |
| Pepco | Pepco Holdings, Inc. |
| Pike County Light & Power Company | Consolidated Edison, Inc. |
| PNM | PNM Resources, Inc. |
| Portland General Electric | No Parent |
| PPL Electric Utilities Corporation | PPL Corporation |
| Progress Energy Carolinas, Inc. | Progress Energy, Inc. |
| Progress Energy Florida, Inc. | Progress Energy, Inc. |
| Public Service Company of New Hampshire | Northeast Utilities |
| Public Service Company of Oklahoma | American Electric Power, Inc. |
| Public Service Electric and Gas Company | Public Service Enterprise Group, Inc. |
| Puget Sound Energy | Puget Energy, Inc. |
| Rochester Gas and Electric Corporation | Energy East Corporation |
| Rockland Electric Company | Consolidated Edison, Inc. |
| Sierra Pacific Power Company | Sierra Pacific Resources |
| Southern California Edison Company | Edison International |
| Southwestern Electric Power Company | American Electric Power, Inc. |
| Superior Water, Light and Power Company | ALLETE |
| Tampa Electric Company | TECO Energy, Inc. |
| Texas-New Mexico Power Company | PNM Resources, Inc. |
| The Cleveland Electric Illuminating Company | FirstEnergy Corp. |
| The Connecticut Light and Power Company | Northeast Utilities |
| The Dayton Power and Light Company | DPL Inc. |
| The Detroit Edison Company | DTE Energy Company |
| The Toledo Edison Company | FirstEnergy Corp. |
| The United Illuminating Company | UIL Holdings Corporation |
| Tucson Electric Power Company | UniSource Energy Corporation |
| UGI Utilities, Inc. | UGI Corporation |
| UniSource Energy Services | UniSource Energy Corporation |
| Upper Peninsula Power Company | Integrys Energy Group |
| Vectren Energy Delivery-South | Vectren Corporation |
| We Energies | Wisconsin Energy Corporation |
| Westar Energy Inc. | No Parent |
| Western Massachusetts Electric Company | Northeast Utilities |
| Wisconsin Power and Light Company | Alliant Energy Corporation |
| Wisconsin Public Service Corporation | Integrys Energy Group |

## EEI Member Lookup By Parent Company

**AES Corporation**
Indianapolis Power & Light Company

**Alaska Electric Light and Power Company**

**Allegheny Energy, Inc.**
Allegheny Power

**ALLETE**
Minnesota Power
Superior Water, Light and Power Company

**Alliant Energy Corporation**
Interstate Power and Light Company
Wisconsin Power and Light Company

**Ameren Corporation**
AmerenCILCO
AmerenCIPS
AmerenIP
AmerenUE

**American Electric Power, Inc.**
AEP Ohio
AEP Texas
Appalachian Power
Indiana Michigan Power
Kentucky Power
Public Service Company of Oklahoma
Southwestern Electric Power Company

**Avista Corporation**
Avista Utilities

**Black Hills Corporation**
Black Hills Energy
Black Hills Power
Cheyenne Light, Fuel & Power Company

**Cap Rock Energy Corporation**

**CenterPoint Energy, Inc.**

**CentralVermontPublicServiceCorporation**

**CH Energy Group, Inc.**
Central Hudson Gas & Electric Corporation

**Cleco Corporation**
Cleco Power LLC

**CMS Energy Corporation**
Consumers Energy

**Consolidated Edison, Inc.**
Consolidated Edison Company of New York, Inc.
Orange and Rockland Utilities, Inc.
Pike County Light & Power Company
Rockland Electric Company

**Constellation Energy Group, Inc.**
Baltimore Gas and Electric Company

**Dominion**

**DPL Inc.**
The Dayton Power and Light Company

**DTE Energy Company**
The Detroit Edison Company

**Duke Energy Corporation**

**Edison International**
Southern California Edison Company

**El Paso Electric Company**

**Empire District Electric Company, The**

**Energy East Corporation**
Central Maine Power Company
New York State Electric & Gas Corporation
Rochester Gas and Electric Corporation

**Energy Future Holdings**
Oncor

**Entergy Corporation**
Entergy Arkansas, Inc.
Entergy Louisiana, Inc.
Entergy Mississippi, Inc.
Entergy New Orleans, Inc.
Entergy Texas, Inc.

**E.ON U.S.**
Kentucky Utilities Company
Louisville Gas and Electric Company

**Exelon Corporation**
Commonwealth Edison Company
PECO Energy

**FirstEnergy Corp.**
Jersey Central Power & Light Company
The Cleveland Electric Illuminating Company
Ohio Edison Company
The Toledo Edison Company
Metropolitan Edison Company
Pennsylvania Electric Company
Pennsylvania Power Company

**FPL Group, Inc.**
Florida Power & Light Company

**Great Plains Energy, Inc.**
Kansas City Power & Light Company

**Green Mountain Power Corporation**

**Hawaiian Electric Industries, Inc.**
Hawaiian Electric Company, Inc.
Hawaii Electric Light Company, Inc.
Maui Electric Company, Ltd.

**IDACORP, Inc.**
Idaho Power Company

**Integrys Energy Group**
Upper Peninsula Power Company
Wisconsin Public Service Corporation

**MDU Resources Group, Inc.**
Montana-Dakota Utilities Co.

**MGE Energy, Inc.**
Madison Gas and Electric Company

**Mt. Carmel Public Utility Company**

**National Grid**

**NiSource Inc.**
Northern Indiana Public Service Co (NIPSCO)

**Northeast Utilities**
The Connecticut Light and Power Company
Public Service Company of New Hampshire
Western Massachusetts Electric Company

**NorthWestern Energy**

**NSTAR**

**OGE Energy Corporation**
OG&E Electric Services

**Otter Tail Corporation**
Otter Tail Power Company

**Pepco Holdings, Inc.**
Atlantic City Electric
Delmarva Power
Pepco

**PG&E Corporation**
Pacific Gas & Electric Company

**Pinnacle West Capital Corporation**
Arizona Public Service Company

**PNM Resources, Inc.**
PNM
Texas-New Mexico Power Company

**Portland General Electric**

**PPL Corporation**
PPL Electric Utilities Corporation

**Progress Energy, Inc.**
Progress Energy Carolinas, Inc.
Progress Energy Florida, Inc.

**Public Service Enterprise Group, Inc.**
Public Service Electric and Gas Company

**Puget Energy, Inc.**
Puget Sound Energy

**Sierra Pacific Resources**
Nevada Power Company
Sierra Pacific Power Company

**Southern Company**
Alabama Power Company
Georgia Power Company
Gulf Power Company
Mississippi Power Company

**TECO Energy, Inc.**
Tampa Electric Company

**UGI Corporation**
UGI Utilities, Inc.

**UIL Holdings Corporation**
The United Illuminating Company

**UniSource Energy Corporation**
Tucson Electric Power Company
UniSource Energy Services

**Vectren Corporation**
Vectren Energy Delivery-South

**Westar Energy Inc.**

**Wisconsin Energy Corporation**
Edison Sault Electric Company
We Energies

**Xcel Energy Inc.**

### EEI Member Companies with No Service Territory

American Transmission Company LLC
Dynegy Inc.
Electric Energy, Inc.
ITC Holdings Corp.
Mirant Corporation
Ohio Valley Electric Corporation
Vermont Electric Power Company, Inc.
Wolf Creek Nuclear Operating Corporation

■ Operating Utility
■ Parent Company
Updated June 4, 2008



EDISON ELECTRIC INSTITUTE
701 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2696
202-508-5000
www.eei.org

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,<br>            Plaintiffs,<br><br>        v.<br><br>DIRK KEMPTHORNE, *et al.*,<br>            Defendants,<br><br>        and<br><br>EDISON ELECTRIC INSTITUTE,<br>            Proposed Intervenor-<br>            Defendant. | No. C 08-1339 CW<br><br>[PROPOSED] ORDER<br><br>The Honorable Claudia Wilken |

The motion of Edison Electric Institute to intervene of right under Federal Rule of Civil Procedure 24(a)(2) is hereby GRANTED in all phases of all claims raised in the Second Amended Complaint, with the exception of Plaintiffs' claims alleging violation of the National Environmental Policy Act ("NEPA"), on which intervention of right is granted in any remedy phase of this case;

And it is further ordered that the motion of Edison Electric Institute for permissive intervention under Federal Rule of Civil Procedure is hereby GRANTED with respect to the merits phase of Plaintiffs' NEPA claims.

Dated this _____ day of _____, 2008.

_____
CLAUDIA WILKEN
United States District Judge

1   Steven P. Rice (SBN 094321)
    CROWELL & MORING LLP
2   3 Park Plaza
    20th Floor
3   Irvine, CA 92614-8505
    Phone:  949-263-8400
4   Facsimile:  949-263-8414
    srice@crowell.com
5
    J. Michael Klise (*pro hac vice application pending*)
6   jmklise@crowell.com
    Steven P. Quarles
7   Chet M. Thompson
    Thomas R. Lundquist
8   CROWELL & MORING LLP
    1001 Pennsylvania Ave., NW
9   Washington, D.C. 20004-2595
    Phone:  202-624-2600
10  Facsimile:  202-628-5116

11  Attorneys for Intervenor-Defendant Edison Electric Institute

12                    IN THE UNITED STATES DISTRICT COURT

13                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                              OAKLAND DIVISION

15  _____
                                    )
16  CENTER FOR BIOLOGICAL           )
    DIVERSITY, *et al.*,            )        No. C 08-1339 CW
17            Plaintiffs,           )
                                    )
18       v.                         )
                                    )        [PROPOSED] ANSWER OF
19  DIRK KEMPTHORNE, *et al.*,      )        INTERVENOR-DEFENDANT
            Defendants,             )        EDISON ELECTRIC INSTITUTE
20                                  )
        and                         )
21                                  )
    EDISON ELECTRIC INSTITUTE,      )        The Honorable Claudia Wilken
22          Intervenor-Defendant.   )
                                    )
23  _____)

24
            Intervenor-Defendant Edison Electric Institute ("EEI" or "Intervenor") files this Answer
25
    pursuant to Rules 12 and 24 of the Federal Rules of Civil Procedure.  Any allegation not specifically
26
    admitted below is denied.  Answering the numbered paragraphs of the Second Amended Complaint
27

28

1    (July 16, 2008) filed by Plaintiffs Center for Biological Diversity, *et al.*, Intervenor admits, denies,
2    and avers as follows:

3        1.    Paragraph 1 consists of Plaintiffs' characterization of their lawsuit, to which no
4    response is required.

5        2.    EEI lacks sufficient information to form a belief as to the truth of the allegations of
6    Paragraph 2 and therefore denies those allegations..

7        3.    EEI lacks sufficient information to form a belief as to the truth of the allegations of
8    Paragraph 3 and therefore denies those allegations..

9        4.    EEI lacks sufficient information to form a belief as to the truth of the allegations of
10   Paragraph 4 and therefore denies those allegations..

11       5.    EEI lacks sufficient information to form a belief as to the truth of the allegations of
12   Paragraph 5 and therefore denies those allegations..

13       6.    EEI admits the allegations stated in Paragraph 6.

14       7.    EEI admits the allegations stated in Paragraph 7.

15       8.    EEI admits the allegations stated in Paragraph 8.

16       9.    EEI admits that the Secretary of the Interior issued an interim final rule under § 4(d)
17   of the Endangered Species Act ("ESA") on May 15, 2008 in conjunction with the listing of the polar
18   bear as a "threatened species" under the ESA.  The interim final rule and accompanying preamble
19   speak for themselves and are the best evidence of their content.  Any allegations in this Paragraph to
20   the contrary of that best evidence are denied.

21       10.    The interim final rule and accompanying preamble speak for themselves and are the
22   best evidence of their content.  Any allegations in this Paragraph to the contrary of that best evidence
23   are denied.  In addition, this Paragraph states conclusions of law, to which no response is required.

24       11.    This Paragraph states conclusions of law, to which no response is required.

25       12.    This Paragraph states conclusions of law, to which no response is required.

26       13.    This Paragraph states conclusions of law, to which no response is required.

27

28

14.     EEI lacks sufficient information about Plaintiffs' motives to form a belief as to the truth of the allegations of the first sentence of this Paragraph and therefore denies those allegations. The remaining allegations of Paragraph 14 state conclusions of law, to which no response is required, but insofar as they are deemed to contain allegations of fact, those allegations are denied.

15.     The first three sentences of Paragraph 15 consists of Plaintiffs' characterization of their lawsuit, to which no response is required.  The fourth sentence states a conclusion of law, to which no response is required.

16.     Paragraph 16 states conclusions of law, to which no response is required.

17.     Paragraph 17 states conclusions of law, to which no response is required.

18.     Paragraph 18 states conclusions of law, to which no response is required..

19.     EEI lacks sufficient information to form a belief as to the truth of the allegations of Paragraph 19 and therefore denies those allegations.  In addition, insofar as the allegations of this Paragraph purport to summarize documents, the documents speak for themselves and are the best evidence of their content.  Any allegations in this Paragraph to the contrary of that best evidence are denied.

20.     Paragraph 20 states a conclusion of law and requires no response.

21.     Paragraph 21 states conclusions of law and requires no response.  Further, insofar as it is deemed to contain allegations of fact, those allegations are denied.

22.     Paragraph 22 states conclusions of law and requires no response.  Further, insofar as it is deemed to contain allegations of fact, those allegations are denied.

23.     Paragraph 23 states a conclusion of law and requires no response.

24.     EEI lacks sufficient information to form a belief as to the truth of the allegations of Paragraph 24 and therefore denies those allegations.

25.     EEI lacks sufficient information to form a belief as to the truth of the allegations of Paragraph 25 and therefore denies those allegations.

26.     EEI lacks sufficient information to form a belief as to the truth of the allegations of Paragraph 26 and therefore denies those allegations.

1    27.    EEI lacks sufficient information to form a belief as to the truth of the allegations of

2  Paragraph 27 and therefore denies those allegations.

3    28.    EEI admits that Defendant Dirk Kempthorne is the U.S. Secretary of the Interior  and

4  that, as such, he is the highest ranking official within that Department.  As to the Plaintiffs'

5  allegations concerning Secretary Kempthorne's duties and authorities under sundry federal statutes,

6  the provisions of the statutes speak for themselves and are the best evidence of their contents.  Any

7  allegations to the contrary of that best evidence are denied.

8    29.    EEI admits that the U.S. Fish and Wildlife Service ("Service") is a federal agency

9  within the U.S. Department of the Interior.  As to the Plaintiffs' allegations concerning the Service's

10  duties and authorities under sundry federal statutes, the provisions of the statutes speak for

11  themselves and are the best evidence of their contents.  Any allegations to the contrary of that best

12  evidence are denied.

13    30.    Paragraph 30 purports to characterize, paraphrase, and/or summarize the ESA, which

14  speaks for itself and is the best evidence of its content.  Any allegations to the contrary of that best

15  evidence are denied.

16    31.    Paragraph 31 purports to characterize, paraphrase, and/or summarize provisions of the

17  ESA, which speaks for itself and is the best evidence of its content.  Any allegations to the contrary

18  of that best evidence are denied.

19    32.    Paragraph 32 purports to characterize, paraphrase, and/or summarize the ESA, which

20  speaks for itself and is the best evidence of its content.  Any allegations to the contrary of that best

21  evidence are denied.

22    33.    Paragraph 33 states conclusions of law and requires no response.  Further, insofar as

23  it is deemed to contain allegations of fact, those allegations are denied.

24    34.    Paragraph 34 purports to characterize, paraphrase, and/or summarize a published

25  policy for the recognition of distinct population segments ("DPSs") under the ESA, which policy

26  speaks for itself and is the best evidence of its content.  Any allegations to the contrary of that best

27  evidence are denied.

28

1       35.      Paragraph 35 purports to characterize, paraphrase, and/or summarize the Secretary's

2 published policy for the recognition of DPSs under the ESA, which policy speaks for itself and is the

3 best evidence of its content.  Any allegations to the contrary of that best evidence are denied.

4       36.      Paragraph 36 purports to characterize, paraphrase, and/or summarize the Secretary's

5 published policy for the recognition of DPSs under the ESA, which policy speaks for itself and is the

6 best evidence of its content.  Any allegations to the contrary of that best evidence are denied.

7       37.      Paragraph 37 purports to characterize, paraphrase, and/or summarize the Secretary's

8 published policy for the recognition of DPSs under the ESA, which policy speaks for itself and is the

9 best evidence of its content.  Any allegations to the contrary of that best evidence are denied.

10       38.      Paragraph 38 states a conclusion of law and requires no response.

11       39.      Paragraph 39 purports to characterize, paraphrase, and/or summarize provisions of the

12 ESA, which speaks for itself and is the best evidence of its content.  Any allegations to the contrary

13 of that best evidence are denied.

14       40.      Paragraph 40 purports to characterize, paraphrase, and/or summarize provisions of the

15 ESA and implementing regulations, which speak for themselves and are the best evidence of their

16 content.  Any allegations to the contrary of that best evidence are denied.

17       41.      Paragraph 41 purports to characterize, paraphrase, and/or summarize provisions of the

18 ESA and implementing regulations, which speak for themselves and are the best evidence of their

19 content.  Any allegations to the contrary of that best evidence are denied.

20       42.      Paragraph 42 purports to characterize, paraphrase, and/or summarize provisions of the

21 ESA and implementing regulations, which speak for themselves and are the best evidence of their

22 content.  Any allegations to the contrary of that best evidence are denied.

23       43.      Paragraph 43 purports to characterize, paraphrase, and/or summarize provisions of the

24 ESA, which speaks for itself and is the best evidence of its content.  Any allegations to the contrary

25 of that best evidence are denied.

26

27

28

44.     Paragraph 44 purports to characterize, paraphrase, and/or summarize provisions of the ESA, which speaks for itself and is the best evidence of its content. Any allegations to the contrary of that best evidence are denied.

45.     Paragraph 45 purports to characterize, paraphrase, and/or summarize provisions of the ESA, which speaks for itself and is the best evidence of its content. Any allegations to the contrary of that best evidence are denied.

46.     Paragraph 46 purports to characterize, paraphrase, and/or summarize provisions of the ESA, which speaks for itself and is the best evidence of its content. Any allegations to the contrary of that best evidence are denied.

47.     Paragraph 47 purports to characterize, paraphrase, and/or summarize provisions of the ESA, which speaks for itself and is the best evidence of its content. Any allegations to the contrary of that best evidence are denied.

48.     Paragraph 48 purports to characterize, paraphrase, and/or summarize provisions of the ESA and implementing regulations, which speak for themselves and are the best evidence of their content. Any allegations to the contrary of that best evidence are denied.

49.     Paragraph 49 purports to characterize, paraphrase, and/or summarize provisions of the ESA and implementing regulations, which speak for themselves and are the best evidence of their content. Any allegations to the contrary of that best evidence are denied.

50.     Paragraph 50 purports to characterize, paraphrase, and/or summarize provisions of the ESA, which speaks for itself and is the best evidence of its content. Any allegations to the contrary of that best evidence are denied.

51.     Paragraph 51 purports to characterize, paraphrase, and/or summarize provisions of the ESA, which speaks for itself and is the best evidence of its content. Any allegations to the contrary of that best evidence are denied.

52.     Paragraph 52 purports to characterize, paraphrase, and/or summarize provisions of the ESA and implementing regulations, which speak for themselves and are the best evidence of their content. Any allegations to the contrary of that best evidence are denied.

53.    Paragraph 53 purports to characterize, paraphrase, and/or summarize provisions of the ESA and implementing regulations, which speak for themselves and are the best evidence of their content.  Any allegations to the contrary of that best evidence are denied.

54.    Paragraph 54 purports to characterize, paraphrase, and/or summarize provisions of the ESA, which speaks for itself and is the best evidence of its content.  Any allegations to the contrary of that best evidence are denied.

55.    Paragraph 55 purports to characterize, paraphrase, and/or summarize provisions of regulations, which speak for themselves and are the best evidence of their content.  Any allegations to the contrary of that best evidence are denied.

56.    Paragraph 56 purports to characterize, paraphrase, and/or summarize provisions of the ESA and implementing regulations, which speak for themselves and are the best evidence of their content.  Any allegations to the contrary of that best evidence are denied.

57.    Paragraph 57 purports to characterize, paraphrase, and/or summarize provisions of the Marine Mammal Protection Act ("MMPA"), which speaks for itself and is the best evidence of its content.  Any allegations to the contrary of that best evidence are denied.

58.    Paragraph 58 purports to characterize, paraphrase, and/or summarize provisions of the MMPA, which speaks for itself and is the best evidence of its content.  Any allegations to the contrary of that best evidence are denied.

59.    Paragraph 59 purports to characterize, paraphrase, and/or summarize provisions of the MMPA and implementing regulations, which speak for themselves and are the best evidence of their content.  Any allegations to the contrary of that best evidence are denied.

60.    Paragraph 60 purports to characterize, paraphrase, and/or summarize provisions of the MMPA, which speaks for itself and is the best evidence of its content.  Any allegations to the contrary of that best evidence are denied.

61.    Paragraph 61 purports to characterize, paraphrase, and/or summarize provisions of the MMPA, which speaks for itself and is the best evidence of its content.  Any allegations to the contrary of that best evidence are denied.

1    62.    Paragraph 62 purports to characterize, paraphrase, and/or summarize provisions of the

2    MMPA, which speaks for itself and is the best evidence of its content.  Any allegations to the

3    contrary of that best evidence are denied.

4    63.    Paragraph 63 purports to characterize, paraphrase, and/or summarize provisions of

5    regulations, which speak for themselves and are the best evidence of their content.  Any allegations

6    to the contrary of that best evidence are denied.

7    64.    Paragraph 64 purports to characterize, paraphrase, and/or summarize provisions of the

8    MMPA, which speaks for itself and is the best evidence of its content.  Any allegations to the

9    contrary of that best evidence are denied.

10    65.    Paragraph 65 purports to characterize, paraphrase, and/or summarize provisions of the

11    Administrative Procedure Act ("APA"), which speaks for itself and is the best evidence of its

12    content.  Any allegations to the contrary of that best evidence are denied.

13    66.    Paragraph 66 purports to characterize, paraphrase, and/or summarize provisions of the

14    APA, which speaks for itself and is the best evidence of its content.  Any allegations to the contrary

15    of that best evidence are denied.

16    67.    Paragraph 67 purports to characterize, paraphrase, and/or summarize provisions of the

17    APA, which speaks for itself and is the best evidence of its content.  Any allegations to the contrary

18    of that best evidence are denied.

19    68.    Paragraph 68 purports to characterize, paraphrase, and/or summarize provisions of the

20    APA, which speaks for itself and is the best evidence of its content.  Any allegations to the contrary

21    of that best evidence are denied.

22    69.    Paragraph 69 purports to characterize, paraphrase, and/or summarize provisions of the

23    APA, which speaks for itself and is the best evidence of its content.  Any allegations to the contrary

24    of that best evidence are denied.

25    70.    Paragraph 70 purports to characterize, paraphrase, and/or summarize provisions of the

26    National Environmental Policy Act ("NEPA") and implementing regulations, which speak for

27

28

1  themselves and are the best evidence of their content. Any allegations to the contrary of that best

2  evidence are denied.

3          71.    Paragraph 71 purports to characterize, paraphrase, and/or summarize provisions of the

4  NEPA and implementing regulations, which speak for themselves and are the best evidence of their

5  content. Any allegations to the contrary of that best evidence are denied.

6          72.    Paragraph 72 purports to characterize, paraphrase, and/or summarize provisions of the

7  NEPA and implementing regulations, which speak for themselves and are the best evidence of their

8  content. Any allegations to the contrary of that best evidence are denied.

9          73.    Paragraph 73 purports to characterize, paraphrase, and/or summarize provisions of the

10 NEPA and implementing regulations, which speak for themselves and are the best evidence of their

11 content. Any allegations to the contrary of that best evidence are denied.

12         74.    Paragraph 74 purports to characterize, paraphrase, and/or summarize provisions of the

13 NEPA, which speaks for itself and is the best evidence of its content. Any allegations to the contrary

14 of that best evidence are denied.

15         75.    Paragraph 75 purports to characterize, paraphrase, and/or summarize provisions of the

16 NEPA and implementing regulations, which speak for themselves and are the best evidence of their

17 content. Any allegations to the contrary of that best evidence are denied.

18         76.    Paragraph 76 purports to characterize, paraphrase, and/or summarize provisions of the

19 NEPA and implementing regulations, which speak for themselves and are the best evidence of their

20 content. Any allegations to the contrary of that best evidence are denied.

21         77.    Paragraph 77 purports to characterize, paraphrase, and/or summarize provisions of the

22 NEPA and implementing regulations, which speak for themselves and are the best evidence of their

23 content. Any allegations to the contrary of that best evidence are denied.

24         78.    Paragraph 78 purports to characterize, paraphrase, and/or summarize provisions of the

25 NEPA and implementing regulations, which speak for themselves and are the best evidence of their

26 content. Any allegations to the contrary of that best evidence are denied.

27

28

79.    EEI lacks sufficient information to form a belief as to the truth of the allegations of Paragraph 79 and therefore denies those allegations.  In addition, this Paragraph purports to characterize, paraphrase, and/or summarize sundry Federal Register documents, which speak for themselves and are the best evidence of their content.  Any allegations to the contrary of that best evidence are denied.

80.    EEI admits that polar bears are marine mammals.  EEI lacks sufficient information to form a belief as to the truth of the remaining allegations of Paragraph 80 and therefore denies those allegations.  In addition, this Paragraph purports to characterize, paraphrase, and/or summarize sundry Federal Register documents, which speak for themselves and are the best evidence of their content.  Any allegations to the contrary of that best evidence are denied.

81.    EEI lacks sufficient information to form a belief as to the truth of the allegations of this Paragraph and therefore denies those allegations.  In addition, this Paragraph purports to characterize, paraphrase, and/or summarize sundry Federal Register documents, which speak for themselves and are the best evidence of their content.  Any allegations to the contrary of that best evidence are denied.

82.    EEI lacks sufficient information to form a belief as to the truth of the allegations of this Paragraph and therefore denies those allegations.  In addition, this Paragraph purports to characterize, paraphrase, and/or summarize sundry Federal Register documents, which speak for themselves and are the best evidence of their content.  Any allegations to the contrary of that best evidence are denied.

83.    EEI lacks sufficient information to form a belief as to the truth of the allegations of this Paragraph and therefore denies those allegations.  In addition, this Paragraph purports to characterize, paraphrase, and/or summarize sundry Federal Register documents, which speak for themselves and are the best evidence of their content.  Any allegations to the contrary of that best evidence are denied.

84.    EEI lacks sufficient information to form a belief as to the truth of the allegations of this Paragraph and therefore denies those allegations.  In addition, this Paragraph purports to

1    characterize, paraphrase, and/or summarize sundry Federal Register documents, which speak for

2    themselves and are the best evidence of their content.  Any allegations to the contrary of that best

3    evidence are denied.

4         85.     EEI lacks sufficient information to form a belief as to the truth of the allegations of

5    this Paragraph and therefore denies those allegations.  In addition, this Paragraph purports to

6    characterize, paraphrase, and/or summarize sundry Federal Register documents, which speak for

7    themselves and are the best evidence of their content.  Any allegations to the contrary of that best

8    evidence are denied.

9         86.     EEI lacks sufficient information to form a belief as to the truth of the allegations of

10   this Paragraph and therefore denies those allegations.  In addition, this Paragraph purports to

11   characterize, paraphrase, and/or summarize sundry Federal Register documents, which speak for

12   themselves and are the best evidence of their content.  Any allegations to the contrary of that best

13   evidence are denied.

14        87.     EEI lacks sufficient information to form a belief as to the truth of the allegations of

15   this Paragraph and therefore denies those allegations.  In addition, this Paragraph purports to

16   characterize, paraphrase, and/or summarize sundry Federal Register documents and sources cited

17   therein, which speak for themselves and are the best evidence of their content.  Any allegations to

18   the contrary of that best evidence are denied.

19        88.     EEI lacks sufficient information to form a belief as to the truth of the allegations of

20   this Paragraph and therefore denies those allegations.  In addition, this Paragraph purports to

21   characterize, paraphrase, and/or summarize sundry Federal Register documents and sources cited

22   therein, which speak for themselves and are the best evidence of their content.  Any allegations to

23   the contrary of that best evidence are denied.

24        89.     EEI lacks sufficient information to form a belief as to the truth of the allegations of

25   this Paragraph and therefore denies those allegations.  In addition, this Paragraph purports to

26   characterize, paraphrase, and/or summarize sundry Federal Register documents and sources cited

27

28

therein, which speak for themselves and are the best evidence of their content.  Any allegations to the contrary of that best evidence are denied.

90.    EEI lacks sufficient information to form a belief as to the truth of the allegations of this Paragraph and therefore denies those allegations.  In addition, this Paragraph purports to characterize, paraphrase, and/or summarize sundry Federal Register documents and sources cited therein, which speak for themselves and are the best evidence of their content.  Any allegations to the contrary of that best evidence are denied.

91.    EEI lacks sufficient information to form a belief as to the truth of the allegations of this Paragraph and therefore denies those allegations.  In addition, this Paragraph purports to characterize, paraphrase, and/or summarize sundry Federal Register documents, which speak for themselves and are the best evidence of their content.  Any allegations to the contrary of that best evidence are denied.

92.    EEI lacks sufficient information to form a belief as to the truth of the allegations of this Paragraph and therefore denies those allegations.

93.    EEI lacks sufficient information to form a belief as to the truth of the allegations of this Paragraph and therefore denies those allegations.  In addition, this Paragraph purports to characterize, paraphrase, and/or summarize sundry Federal Register documents, which speak for themselves and are the best evidence of their content.  Any allegations to the contrary of that best evidence are denied.

94.    EEI lacks sufficient information to form a belief as to the truth of the allegations of this Paragraph and therefore denies those allegations.  In addition, this Paragraph purports to characterize, paraphrase, and/or summarize sundry Federal Register documents, which speak for themselves and are the best evidence of their content.  Any allegations to the contrary of that best evidence are denied.

95.    EEI lacks sufficient information to form a belief as to the truth of the allegations of this Paragraph and therefore denies those allegations.  In addition, this Paragraph purports to characterize, paraphrase, and/or summarize sundry Federal Register documents, which speak for

themselves and are the best evidence of their content.  Any allegations to the contrary of that best evidence are denied.

96.    EEI lacks sufficient information to form a belief as to the truth of the allegations of this Paragraph and therefore denies those allegations.  In addition, this Paragraph purports to characterize, paraphrase, and/or summarize sundry Federal Register documents, which speak for themselves and are the best evidence of their content.  Any allegations to the contrary of that best evidence are denied.

97.    EEI lacks sufficient information to form a belief as to the truth of the allegations of this Paragraph and therefore denies those allegations.  In addition, insofar as this Paragraph purports to characterize, paraphrase, and/or summarize documents, those documents speak for themselves and are the best evidence of their content.  Any allegations to the contrary of that best evidence are denied.

98.    Paragraph 98 purports to characterize, paraphrase, and/or summarize provisions of the ESA, which speaks for itself and is the best evidence of its content.  Any allegations to the contrary of that best evidence are denied.

99.    The first sentence of Paragraph 99 states a conclusion of law, to which no response is required.  As to the second sentence, EEI admits that Plaintiffs instituted the referenced lawsuit on or about Dec. 15, 2005.

100.    The first sentence of Paragraph 100 is admitted.  As to the remaining allegation of this Paragraph, the referenced 90-day finding speaks for itself and is the best evidence of its content.  Any allegations to the contrary of that best evidence are denied.

101.    The first sentence of Paragraph 101 states a conclusion of law, to which no response is required.  As to the second sentence, the referenced consent decree speaks for itself and is the best evidence of its content.  Any allegations to the contrary of that best evidence are denied.

102.    EEI admits that the Secretary published a proposed rule on Jan. 9, 2007.  As to the remaining allegations of this Paragraph, the referenced proposed rule speaks for itself and is the best evidence of its content.  Any allegations to the contrary of that best evidence are denied.

103.    The first sentence of Paragraph 103 states a conclusion of law, to which no response is required.  EEI admits that a final listing determination was not published by Jan. 9, 2008, and that Plaintiffs initiated this lawsuit on Mar. 10, 2008.  As to the remaining allegations of this Paragraph, the referenced documents speak for themselves and are the best evidence of their content.  Any allegations to the contrary of that best evidence are denied.

104.    EEI admits that this Court issued an order on April 28, 2008.  As to the remaining allegations of this Paragraph, that order speaks for itself and is the best evidence of its content.  Any allegations to the contrary of that best evidence are denied.

105.    EEI admits the allegations of Paragraph 105.

106.    EEI lacks sufficient information to form a belief as to the truth of the allegations of Paragraph 106 and therefore denies those allegations.

107.    EEI lacks sufficient information to form a belief as to the truth of the allegations of this Paragraph and therefore denies those allegations.  Further, insofar as the allegations of this paragraph rest on reports, the reports speak for themselves and are the best evidence of their content. Any allegations to the contrary of that best evidence are denied.

108.    EEI lacks sufficient information to form a belief as to the truth of the allegations of Paragraph 108 and therefore denies those allegations.

109.    EEI lacks sufficient information to form a belief as to the truth of the allegations of Paragraph 109 and therefore denies those allegations.

110.    The first sentence of Paragraph 110 states a conclusion of law, to which no response is required.  EEI lacks sufficient information to form a belief as to the truth of the allegations of second and third sentences (for which no source is identified) and therefore denies those unsupported allegations.  Further, insofar as the second and third sentences purport to summarize conclusions reached by the Secretary, such conclusions speak for themselves and are the best evidence of their content.  Any allegations to the contrary of that best evidence are denied.  The fourth sentence states a conclusion of law, to which no response is required.

111.    EEI lacks sufficient information to form a belief as to the truth of the allegations of the first two sentences of Paragraph 111 (for which no source is identified) and therefore denies those unsupported allegations.  Further, insofar as those sentences purport to summarize conclusions reached by the Secretary, such conclusions speak for themselves and are the best evidence of their content.  Any allegations to the contrary of that best evidence are denied.  The last sentence states a conclusion of law, to which no response is required.

112.    Paragraph 112 states a conclusion of law, to which no response is required.

113.    Paragraph 113 consists of Plaintiffs' speculation, to which no response is required or even possible.  Insofar as it somehow is deemed to contain allegations of fact, those allegations are denied.

114.    EEI admits that the Secretary issued the rule referenced in Paragraph 114.  As to the remaining allegations, the rule and accompanying Federal Register preamble speak for themselves and are the best evidence of their content.  Any allegations to the contrary of that best evidence are denied.

115.    Paragraph 115 states a conclusion of law to which no response is required.  Further, EEI avers that the Secretary's authority is not constrained in the manner alleged in this Paragraph, and that ESA § 4(d) enables the Secretary to "by regulation [to] prohibit with respect to any threatened species any act prohibited under" § 9(a)(1) of the ESA with respect to endangered species.  In any event, ESA § 4(d) in its entirety speaks for itself and constitutes the best evidence of its content.  Any allegations to the contrary of that best evidence are denied.

116.    Paragraph 116 states a legal conclusion, to which no response is required.

117.    Paragraph 117 purports to characterize, paraphrase, and/or summarize provisions of the ESA, which speaks for itself and is the best evidence of its content.  Any allegations to the contrary of that best evidence are denied.

118.    Paragraph 118 purports to characterize, paraphrase, and/or summarize provisions of the ESA and a regulation, which speak for themselves and are the best evidence of their content.

1    Any allegations to the contrary of that best evidence are denied.  Further, this Paragraph states

2    conclusions of law, to which no response is required.

3         119.    EEI lacks sufficient information to form a belief as to the truth of the allegations of

4    this Paragraph and therefore denies those allegations.

5         120.    EEI lacks sufficient information to form a belief as to the truth of the allegations of

6    this Paragraph and therefore denies those allegations.  Further, insofar as the allegations of this

7    paragraph rest on the content of a regulation, the regulation speaks for itself and is the best evidence

8    of its content.  Any allegations to the contrary of that best evidence are denied.

9         121.    The allegations of the first two sentences of Paragraph 121 are denied.  The third

10   sentence purports to characterize or summarize a regulation, which speaks for itself and is the best

11   evidence of its content.  Any allegations to the contrary of that best evidence are denied.

12        122.    The first two sentences of Paragraph 122 purports to characterize or summarize a

13   regulation and preamble, which speak for themselves and are the best evidence of their content.  Any

14   allegations to the contrary of that best evidence are denied.  The remaining allegations of Paragraph

15   122 consist of conclusions of law, to which no response is required.

16        123.    Paragraph 123 purports to characterize or summarize a regulation and preamble,

17   which speak for themselves and are the best evidence of their content.  Any allegations to the

18   contrary of that best evidence are denied.

19        124.    Paragraph 124 purports to summarize statutory and regulatory provisions, which

20   speak for themselves and are the best evidence of their content.  Any allegations to the contrary of

21   that best evidence are denied.  Further, portions of Paragraph 124 state conclusions of law, to which

22   no response is required.

23        125.    Paragraph 125 purports to summarize statutory provisions and other documents,

24   which speak for themselves and are the best evidence of their content.  Any allegations to the

25   contrary of that best evidence are denied.

26        126.    The first sentence of Paragraph 126 purports to summarize a statutory provision,

27   which speaks for itself and is the best evidence of its content.  Any allegations to the contrary of that

28

1    best evidence are denied.  The second sentence states a conclusion of law, to which no response is

2    required.

3        127.    Paragraph 127 states a conclusion of law, to which no response is required.

4        128.    The first sentence of Paragraph 128 purports to summarize a Federal Register

5    document, which speaks for itself and is the best evidence of its content.  Any allegations to the

6    contrary of that best evidence are denied.  The second sentence states a conclusion of law, to which

7    no response is required.

8        129.    Paragraph 129 purports to characterize, paraphrase, and/or summarize provisions of

9    the ESA, MMPA, and implementing regulations, which speak for themselves and are the best

10   evidence of their content.  Any allegations to the contrary of that best evidence are denied.

11       130.    Paragraph 130 purports to characterize, paraphrase, and/or summarize provisions of

12   the ESA, MMPA, and implementing regulations, which speak for themselves and are the best

13   evidence of their content.  Any allegations to the contrary of that best evidence are denied.

14       131.    The first sentence of Paragraph 131 purports to characterize, paraphrase, and/or

15   summarize statutory provisions and a Federal Register document, which speak for themselves and

16   are the best evidence of their content.  Any allegations to the contrary of that best evidence are

17   denied.  The second sentence states a conclusion of law, to which no response is required.

18       132.    Paragraph 132 purports to characterize, paraphrase, and/or summarize provisions of

19   the ESA, MMPA, and implementing regulations, which speak for themselves and are the best

20   evidence of their content.  Any allegations to the contrary of that best evidence are denied.

21       133.    EEI lacks sufficient information to form a belief as to the truth of the allegations of

22   this Paragraph and therefore denies those allegations.

23       134.    EEI lacks sufficient information to form a belief as to the truth of the allegations of

24   this Paragraph and therefore denies those allegations.

25       135.    Paragraph 135 purports to characterize, paraphrase, and/or summarize provisions of a

26   regulation and preamble, which speak for themselves and are the best evidence of their content.  Any

27   allegations to the contrary of that best evidence are denied.

28

1     136.     Paragraph 136 purports to characterize, paraphrase, and/or summarize provisions of a

2     regulation and preamble, which speak for themselves and are the best evidence of their content.  Any

3     allegations to the contrary of that best evidence are denied.

4     137.     Paragraph 137 states a conclusion of law, to which no response is required.  Further,

5     since this Paragraph cites no legal support for its conclusion, no response is possible.

6     138.     Paragraph 138 states a conclusion of law, to which no response is required.

7     139.     Paragraph 139 purports to characterize, paraphrase, and/or summarize a Federal

8     Register document, which speaks for itself and is the best evidence of its content.  Any allegations to

9     the contrary of that best evidence are denied.

10    140.     Paragraph 140 purports to characterize, paraphrase, and/or summarize a regulation,

11    which speaks for itself and is the best evidence of its content.  Any allegations to the contrary of that

12    best evidence are denied.

13    141.     Paragraph 141 purports to characterize, paraphrase, and/or summarize a Federal

14    Register document, which speaks for itself and is the best evidence of its content.  Any allegations to

15    the contrary of that best evidence are denied.

16    142.     EEI lacks sufficient information to form a belief as to the truth of the allegations of

17    this Paragraph and therefore denies those allegations.

18    143.     Paragraph 143 states conclusions of law, to which no response is required.  Insofar as

19    it is deemed to state allegations of fact, those allegations are denied.

20    144.     EEI incorporates its responses to Paragraphs 1 through 185, inclusive, as though fully

21    set forth herein.

22    145.     EEI admits, as Plaintiffs repeatedly allege, that the Secretary published a final listing

23    determination on the polar bear on May 15, 2008.  *See* Second Amended Complaint ¶¶ 8, 105, 148,

24    156.  Accordingly, the claim asserted in Paragraph 145 is now moot.

25    146.     EEI incorporates its responses to Paragraphs 1 through 185, inclusive, as though fully

26    set forth herein.

27

28

147.   Paragraph 147 states conclusions of law, to which no response is required.  Insofar as this Paragraph is deemed to state allegations of fact, those allegations are denied.

148.   EEI admits the allegations of Paragraph 148.

149.   Paragraph 149 states conclusions of law, to which no response is required.  Insofar as this Paragraph is deemed to state allegations of fact, those allegations are denied.

150.   Paragraph 150 states conclusions of law, to which no response is required.  Insofar as this Paragraph is deemed to state allegations of fact, those allegations are denied.

151.   Paragraph 151 states conclusions of law, to which no response is required.  Insofar as this Paragraph is deemed to state allegations of fact, those allegations are denied.

152.   Paragraph 152 states conclusions of law, to which no response is required.  Insofar as this Paragraph is deemed to state allegations of fact, those allegations are denied.

153.   Paragraph 153 states conclusions of law, to which no response is required.  Insofar as this Paragraph is deemed to state allegations of fact, those allegations are denied.

154.   Paragraph 154 states conclusions of law, to which no response is required.  Insofar as this Paragraph is deemed to state allegations of fact, those allegations are denied.

155.   EEI incorporates its responses to Paragraphs 1 through 185, inclusive, as though fully set forth herein.

156.   EEI admits the allegations of Paragraph 156.

157.   Paragraph 157 states conclusions of law, to which no response is required.  Insofar as this Paragraph is deemed to state allegations of fact, those allegations are denied.

158.   Paragraph 158 purports to characterize the final listing rule, which speaks for itself and is the best evidence of its content.  Any allegations to the contrary of that best evidence are denied.

159.   Paragraph 159 purports to characterize the final listing rule, which speaks for itself and is the best evidence of its content.  Any allegations to the contrary of that best evidence are denied.

1    160.    Paragraph 160 states conclusions of law, to which no response is required.  Insofar as
2    this Paragraph is deemed to state allegations of fact, those allegations are denied.

3    161.    EEI incorporates its responses to Paragraphs 1 through 185, inclusive, as though fully
4    set forth herein.

5    162.    Paragraph 162 states conclusions of law, to which no response is required.  Insofar as
6    this Paragraph is deemed to state allegations of fact, those allegations are denied.

7    163.    Paragraph 163 states conclusions of law, to which no response is required.  Insofar as
8    this Paragraph is deemed to state allegations of fact, those allegations are denied.

9    164.    Paragraph 164 states conclusions of law, to which no response is required.  Insofar as
10   this Paragraph is deemed to state allegations of fact, those allegations are denied.

11   165.    Paragraph 165 states conclusions of law, to which no response is required.  Insofar as
12   this Paragraph is deemed to state allegations of fact, those allegations are denied.

13   166.    Paragraph 166 states conclusions of law, to which no response is required.  Insofar as
14   this Paragraph is deemed to state allegations of fact, those allegations are denied.

15   167.    Paragraph 167 states conclusions of law, to which no response is required.  Insofar as
16   this Paragraph is deemed to state allegations of fact, those allegations are denied.

17   168.    Paragraph 168 states conclusions of law, to which no response is required.  Insofar as
18   this Paragraph is deemed to state allegations of fact, those allegations are denied.

19   169.    Paragraph 169 states conclusions of law, to which no response is required.  Insofar as
20   this Paragraph is deemed to state allegations of fact, those allegations are denied.

21   170.    EEI incorporates its responses to Paragraphs 1 through 185, inclusive, as though fully
22   set forth herein.

23   171.    Paragraph 171 states conclusions of law, to which no response is required.  Insofar as
24   this Paragraph is deemed to state allegations of fact, those allegations are denied.

25   172.    Paragraph 172 states conclusions of law, to which no response is required.  Insofar as
26   this Paragraph is deemed to state allegations of fact, those allegations are denied.

27

28

1    173.    Paragraph 173 states conclusions of law, to which no response is required.  Insofar as
2    this Paragraph is deemed to state allegations of fact, those allegations are denied.

3    174.    EEI incorporates its responses to Paragraphs 1 through 185, inclusive, as though fully
4    set forth herein.

5    175.    Paragraph 175 states conclusions of law, to which no response is required.  Insofar as
6    this Paragraph is deemed to state allegations of fact, those allegations are denied.

7    176.    Paragraph 176 states conclusions of law, to which no response is required.  Insofar as
8    this Paragraph is deemed to state allegations of fact, those allegations are denied.

9    177.    Paragraph 177 states conclusions of law, to which no response is required.  Insofar as
10   this Paragraph is deemed to state allegations of fact, those allegations are denied.

11   178.    Paragraph 178 states conclusions of law, to which no response is required.  Insofar as
12   this Paragraph is deemed to state allegations of fact, those allegations are denied.

13   179.    EEI incorporates its responses to Paragraphs 1 through 185, inclusive, as though fully
14   set forth herein.

15   180.    Paragraph 180 purports to characterize a statutory provision, which speaks for itself
16   and is the best evidence of its content.  Any allegations to the contrary of that best evidence are
17   denied.

18   181.    Paragraph 181 purports to characterize a statutory provision, which speaks for itself
19   and is the best evidence of its content.  Any allegations to the contrary of that best evidence are
20   denied.

21   182.    EEI lacks sufficient information to form a belief as to the truth of the allegations of
22   this Paragraph and therefore denies those allegations.

23   183.    Paragraph 183 states conclusions of law, to which no response is required.  Insofar as
24   this Paragraph is deemed to state allegations of fact, those allegations are denied.

25   184.    Paragraph 184 states conclusions of law, to which no response is required.  Insofar as
26   this Paragraph is deemed to state allegations of fact, those allegations are denied.

27

28

1    185.    Paragraph 185 states conclusions of law, to which no response is required.  Insofar as

2    this Paragraph is deemed to state allegations of fact, those allegations are denied.

3    The remainder of the Complaint consists of Plaintiffs' Prayer for Relief, to which no

4    response is required.  To the extent a response is deemed required, EEI denies that Plaintiff is

5    entitled to the relief requested or to any relief whatsoever.

6                                    **GENERAL DENIAL**

7    EEI denies each and every allegation in Plaintiffs' Complaint not specifically admitted

8    herein.

9                                  **AFFIRMATIVE DEFENSES**

10    1.    Plaintiffs have failed to state a claim on which relief can be granted.

11    2.    The Court lacks jurisdiction over some or all of Plaintiffs' claims.

12    3.    Some or all of Plaintiffs' claims are moot.

13                                        *    *    *

14    WHEREFORE, EEI respectfully requests that this Court deny all relief sought by Plaintiffs,

15    grant judgment to Defendants and Intervenors, and grant Defendants and Intervenors such additional

16    relief as the Court may deem just and proper.

17                                  Respectfully submitted,

18

19                                                    CROWELL & MORING LLP

20    Steven P. Rice (Cal. Bar No. 094321)      By:    */s/ J. Michael Klise*
      CROWELL & MORING LLP                             J. Michael Klise (*pro hac vice application*
21    3 Park Plaza                                     *pending*)
      20th Floor                                       jmklise@crowell.com
22    Irvine, CA 92614-8505                            Steven P. Quarles
      Telephone:  (949) 263-8400                       Chet M. Thompson
23    Facsimile:  (949) 263-8414                       Thomas R. Lundquist
      srice@crowell.com                                CROWELL & MORING LLP
24                                                     1001 Pennsylvania Ave., NW
                                                       Washington, D.C. 20004-2595
25                                                     Telephone:  (202) 624-2629
                                                       Facsimile:  (202) 628-5116

26

27                    Attorneys for Intervenor-Defendant Edison Electric Institute

      Dated:  August 28, 2008
28

1

2

3                **CERTIFICATION OF INTERESTED PERSONS OR ENTITIES**

4          Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the

5   named parties, there is no such interest to report.

6

7   Dated:  August 28, 2008                    /s/ *J. Michael Klise*
                                               J. Michael Klise
8                                              Attorney for Intervenor-Defendants

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28