René P. Tatro (SBN 78383)
Juliet A. Markowitz (SBN 164038)
TATRO TEKOSKY SADWICK LLP
333 S. Grand Avenue, Suite 4270
Los Angeles, California 90071
Telephone:    (213) 225-7171
Facsimile:    (213) 225-7151
E-mail:    renetatro@ttsmlaw.com
            jmarkowitz@ttsmlaw.com

Jeffrey M. Feldman (AK Bar #7605029)
Kevin M. Cuddy (MA Bar #647799)
*Admitted pro hac vice*
FELDMAN ORLANSKY & SANDERS
500 L Street, Suite 400
Anchorage, Alaska 99501
Telephone:    (907) 272-3538
Facsimile:    (907) 274-0819
Email:    feldman@frozenlaw.com
            cuddy@frozenlaw.com

*Attorneys for Intervenor-Defendant*
*Arctic Slope Regional Corporation*

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVISION, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>DIRK KEMPTHORNE, et al.,<br><br>        Defendants. | Case No. C-08-1339-CW<br><br>**INTERVENOR ARCTIC SLOPE REGIONAL CORPORATION'S NOTICE OF MOTION AND MOTION TO TRANSFER VENUE**<br><br>Date:        September 25, 2008<br>Time:        2:00 p.m.<br>Courtroom:  2, 4th Floor<br>Judge:      Honorable Claudia Wilkin |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE THAT, on September 25, 2008, at 2:00 p.m., before the

Honorable Claudia Wilken, United States District Judge, 1301 Clay Street, Suite 400 S,

Oakland, California 94612, in Courtroom 2 on the 4th Floor, Intervenor Arctic Slope Regional

Corporation ("ASRC"), by and through its undersigned attorneys, will move this Court to

transfer this case to the U.S. District Court for the District of Alaska. For the reasons set forth

in the accompanying Memorandum of Points and Authorities, the Court's records, judicially

noticeable facts and the argument of the parties presented at the hearing on this motion, the

interests of justice will be best served by transferring this case to the District of Alaska because

that forum has substantial ties to the events, issues, and results in this case and because the

Northern District of California has no meaningful ties to this case. ASRC has contacted the

other parties and made a good-faith attempt to resolve this dispute. Alaska Oil and Gas

Association does not oppose this motion. Plaintiffs and the federal government defendants

have indicated that they will oppose this motion.

# **TABLE OF CONTENTS**

Page

NOTICE OF MOTION..................................................................................................1

I.    INTRODUCTION ................................................................................................1

II.   FACTUAL BACKGROUND ...............................................................................2

III.  ARGUMENT ......................................................................................................3

      A.   This Action Could Have Been Brought in the District of Alaska. .........................5

      B.   The Interests of Justice Will Be Best Served by Transferring This Case
           to the District of Alaska...........................................................................7

IV.   CONCLUSION ..................................................................................................12

# TABLE OF AUTHORITIES

## Cases

*Carolina Cas. Co. v. Data Broad. Corp.*,
    158 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001)................................................ 11, 12

*Center for Biological Diversity v. Kempthorne*,
    N.D. Cal., No. C 07-0894 EDL (July 12, 2007) ............................................. 1

*Continental Grain Co. v. Barge FBL-585*,
    364 U.S. 19 (1960)........................................................................................... 4

*Decker Coal Co. v. Commonwealth Edison Co.*,
    805 F.2d at 834 (9th Cir. 1986) ...................................................................... 5

*Ferens v. John Deere*,
    494 U.S. 516, 530 (1990)................................................................................. 12

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947).......................................................................................... 5

*Hatch v. Reliance Ins. Co.*,
    758 F.2d 409 (9th Cir. 1985) .......................................................................... 4

*Hoffman v. Blaski*,
    363 U.S. 335 (1960).......................................................................................... 6

*Inherent.com v. Martindale-Hubbell*,
    420 F. Supp. 2d 1093 (N.D. Cal. 2006) ......................................................... 4

*Jarvis v. Marietta Corp.*,
    No. CV-98-4951-MJJ, 1999 WL 638231,
    *3 (N.D. Cal. Aug. 12, 1999) ........................................................................ 12

*Jones v. GNC Franchising*,
    211 F.3d 495 (9th Cir. 2000) .......................................................................... 4

*Lou v. Belzberg*,
    834 F.2d 730, 739 (9th Cir. 1987) .................................................................. 11

*McCrary v. Guttierez*,
    06-cv-0086, 2006 WL 1748410,
    *3 (E.D. Cal. June 23, 2006) ............................................................ 9, 11, 12

*National Wildlife Federation v. Harvey*,
    437 F.Supp.2d 42 (D.D.C. 2006) .............................................................................. 7

*Pacific Car and Foundry Co. v. Pence*,
    403 F.2d 949, 954 (9th Cir.1968) ................................................................. 10, 11

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235, 257 (1981)............................................................................................. 5

*Reuben H. Donnelley Corp. v. Federal Trade Comm'n*,
    580 F.2d 264 (7 Cir. 1978) ....................................................................................... 8

*Saleh v. Titan Corp.*,
    361 F. Supp. 2d 1152, 1157 (S.D. Cal. 2005) ........................................................ 9

*Sierra Club v. Flowers*,
    276 F.Supp.2d 62, 66, 71 (D.D.C. 2003)...........................................................7, 9

*Southern Utah Wilderness Alliance v. Norton*,
    2004 WL 896522 (D.D.C., Apr. 27, 2004)............................................................. 7

*Stewart Organization v. Ricoh Corp.*,
    487 U.S. 22, 29 (1988)................................................................................................ 5

*Trout Unlimited v. Lohn*,
    No. 06-CV-904, 2006 WL 2927737,
    *2 (W.D. Wash. Oct. 10, 2006) ................................................................9, 10, 12

*Trout Unlimited v. U.S. Dep't of Agric.*,
    944 F.Supp. 13, 19 (D.D.C. 1996)....................................................................7, 11

*Van Dusen v. Barrack*,
    376 U.S. 612, 622 (1964) ..................................................................................5, 6

**Statutes**

50 CFR, Section 17.31 ..................................................................................................... 3

28 U.S.C. § 1391(e) .......................................................................................................... 4

28 U.S.C. § 1391(e)(1)-(3) .............................................................................................. 6

28 U.S.C. § 1404(a) ............................................................................................ 4, 6, 12

Federal Rule of Evidence 201(b) ........................................................................................ 1

**Other**

15 Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters § 3802.1 at 4, 6-7 n.9 (2d ed. 1989 & 2002 Supp.)           ................................................................................................................ 6

71 Fed. Reg. 43,952  .................................................................................................. 3

73 Fed. Reg. 28306-28318 (May 15, 2008) ............................................................. 2

73 Fed. Reg. 28306 (May 15, 2008) ............................................................ 3, 7, 12

73 Fed. Reg. 28307 (May 15, 2008) ...................................................................... 3

73 Fed. Reg. 28309 (May 15, 2008) ...................................................................... 3

73 Fed. Reg. 28211 (May 15, 2008) ...................................................................... 3

73 Fed. Reg. 28212-13 (May 15, 2008) ................................................................ 3

73 Fed. Reg. 28214 (May 15, 2008) ..................................................................... 12

73 Fed. Reg. 28316 (May 15, 2008) ...................................................................... 7

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO TRANSFER**

## I.  INTRODUCTION

Intervenor Arctic Slope Regional Corporation ("ASRC") moves this Court to transfer venue of this case to the more appropriate forum of the United States District Court for the District of Alaska for the same reasons Magistrate Judge LaPorte of this Court transferred a procedurally identical (and factually substantially similar) case to Alaska.  Just last summer, in a case also involving polar bears brought by the same plaintiffs against the same defendants in this same District ("Polar Bears I"), Magistrate Judge LaPorte ruled as follows in overruling the objection of the plaintiffs to the request of the United States Government to transfer the case to the more appropriate forum of Alaska:

> The present case, at its core, involves the environmental impact of oil and gas industry activities in the Beaufort Sea and adjacent coast of Northern Alaska. Although Plaintiffs' arguments in favor of adjudicating this case in the Northern District of California have some merit, they do not fully offset the countervailing aspects to be considered by the Court such as the fact that none of the operative facts occurred within this district and the challenged FWS decision authorizing the "incidental take" of polar bears . . . as part of industrial oil and gas exploration, development, and production activities in Alaska is one in which Alaska and its residents have a great interest.  Plaintiffs are correct that interest in these species transcends state and, indeed, international boundaries, with the bears . . . also inhabiting Canadian waters and with international attention focused on the polar bears' survival in the face of possibly melting ice.  However, widespread concern does not by itself resolve the question of which of the proposed federal forums is the most appropriate. Weighing all of the relevant circumstances, the Court concludes that Alaska provides the most appropriate forum.

Order Granting Motion to Transfer (Section II.C.), *Center for Biological Diversity v. Kempthorne*, N.D. Cal., No. C 07-0894 EDL (July 12, 2007) ("Polar Bears I")[1].  Attached hereto as Exhibit A is a true, correct and complete copy of that Order.[2]  In making the motion to transfer venue in the Polar Bears I case to Alaska, the Government got it right, as did Magistrate Judge LaPorte in ordering the transfer and overruling the objections of the

---

[1] References to the Pacific walrus are omitted because the 4(d) Rule does not pertain to the Pacific walrus.

[2] ASRC requests that the court take judicial notice of this order.  See Federal Rule of Evidence 201(b).

plaintiffs. Indeed, every line of Magistrate Judge LaPorte's reasoning applies with equal force to this case. For those same reasons – which are no less compelling here – this case, Polar Bears II, also belongs in Alaska.

Here, as in Polar Bears I, plaintiffs have challenged a decision by the U.S. Fish and Wildlife Service ("FWS") to adopt incidental "take" regulations that authorize the non-lethal, unintentional taking of small numbers of polar bears during oil and gas industry activities in the Beaufort Sea and adjacent northern coast of Alaska (the "4(d) Rule").[3] Plaintiffs allege that the 4(d) Rule violates certain federal statutes. As discussed below, and as the Government successfully argued in Polar Bears I, and as Magistrate Judge LaPorte agreed in ordering Polar Bears I transferred to Alaska,

> the interests of justice will be best served by transferring this case to the District of Columbia or the District of Alaska because: 1) the Northern District of California has no meaningful ties to this case; 2) the subject of the ITR Decision[4] is incidental take of polar bears…that inhabit the Beaufort Sea and adjacent coastal areas of Northern Alaska; 3) any resolution of this case will primarily affect the residents of Alaska, not California; 4) Plaintiffs allege that they have standing because they and their members use and enjoy the Beaufort sea and adjacent northern coast of Alaska to view and experience polar bears and Pacific walrus that live in the area; 5) ITR Decision was drafted in Anchorage, Alaska and reviewed and signed in Washington, D.C.; and 6) all documents that comprise the administrative record are located in Washington, D.C. and Anchorage, Alaska.

Polar Bears I, Section II.B.

Fundamentally, this is a case about polar bears. Alaska is the only place in the United States in which polar bears live. The people living on Alaska's North Slope – who are predominantly Inupiat Eskimos and ASRC shareholders – are the only citizens of the United States who live in close proximity to polar bears and whose lives, livelihoods, communities, and culture all are directly affected by federal laws regulating activities that may impact polar bear populations. Like Polar Bears I, this case belongs in Alaska.

---

[3] The "4(d) Rule", 73 Fed. Reg. 28306-28318 (May 15, 2008), also permits certain other activities that would otherwise be prohibited under the Endangered Species Act and its associated regulations.

[4] While Polar Bears I concerned what was called "ITR Decision", the context and force of the argument applies equally in Polar Bears II to the 4(d) Rule.

# II. FACTUAL BACKGROUND

As was true when the Government successfully urged that venue in Polar Bears I should be moved to Alaska, the 4(d) Rule relates factually to Alaska and not to the Northern District of California.  The 4(d) Rule states that "otherwise lawful activities within the United States (*except for Alaska*) that cause incidental take of polar bears are exempt from the provisions of [50 CFR] section 17.31."  73 Fed. Reg. 28306 (May 15, 2008) (emphasis added).  That is, the restrictions from this portion of the 4(d) Rule apply <u>exclusively</u> to activities in Alaska, not California.  Likewise, potential restrictions relating to: the use of polar bears for authentic handicrafts, *see id.* at 28307; intentional take of polar bears to protect private property, *see id.* at 28309; subsistence hunting, *see id.* at 28306; or nearly anything else relating to polar bears impacts Alaska uniquely because polar bears can only be found in Alaska.  *See* 73 Fed. Reg. 28211, 28212-13 (May 15, 2008) (identifying Alaska as the only state with a polar bear population).  As summarized by Magistrate Judge LaPorte, here is what the Government – correctly – argued in Polar Bears I in seeking to transfer venue to Alaska:

> Finally, in support of their argument that the suggested transferee courts [Alaska and District of Columbia] have vastly greater ties to the issues in controversy in this case than the Northern District of California, Defendants point out that the FWS decision at issue relates to polar bears … that inhabit the Beaufort Sea off the coast of Northern Alaska.  Therefore, any resolution of this case will primarily affect the residents of Alaska. Id. at 15. Defendants further argue that the FWS decision contains an extensive analysis of how expected incidental take will affect the availability of polar bears … for subsistence use by Alaska Native communities in northern Alaska.  See 71 Fed. Reg. at 43,952. . . . .Thus, according to Defendants, the decision most directly affects the Alaska Native communities in Northern Alaska and the companies that operate there. Defs' Mot. at 15-16.

Polar Bears I, Section II.B.  That is a fitting summary of the pertinent facts here.[5]

---

[5] Polar Bears II covers a broader range of issues than Polar Bears I, but they remain specific to polar bears and "primarily affect the residents of Alaska."  The 4(d) Rule is the subject of the fourth, fifth, and sixth claims for relief in Polar Bears II.  *See* Docket # 126, at 35-37.  The seventh claim for relief faults the federal government for failing to publish guidelines for safe non-lethal deterrence of polar bears, *see id.* at 37, which necessarily relates solely to people living in Alaska who may have occasion to interact with polar bears.  The first three claims for relief relate to the timing and nature of the listing decision under the Endangered Species Act.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## III.  ARGUMENT

The Court has authority to transfer this case pursuant to 28 U.S.C. § 1404(a).  Section 1404(a) provides:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[6]  As Magistrate Judge LaPorte wrote in ordering Polar Bears I transferred to Alaska:

> Determining whether an action should be transferred pursuant to § 1404(a) is a two-step process.  The transferor court must first determine whether the action "might have been brought" in the transferee court, and then the court must make an "individualized, case-by-case consideration of convenience and fairness." *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1098 (N.D. Cal. 2006) (citing *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985); *Jones v. GNC Franchising*, 211 F.3d 495, 498 (9th Cir. 2000)).

Polar Bears I, Section II.A.  And here, as in Polar Bears I (to quote Magistrate Judge LaPorte's opinion), "There is no dispute that the first prong of the Court's analysis is met here.  This action might have been brought under 28 U.S.C. § 1391(e) in … the District of Alaska because … a substantial part of the alleged events and omissions occurred in the District of Alaska." *Id.*

"The idea behind § 1404(a) is that where a 'civil action' to vindicate a wrong – however brought in a court – presents issues . . . that make one District Court more convenient than another, the trial judge can, after findings, transfer the whole action to the more convenient court."  *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960).

Whether venue should be transferred in any given case depends on an "individualized, case-by-case consideration of convenience and fairness."  *Stewart Organization v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).  The discretion of the district court is to be exercised in light of

---

*See id.* at 33-34 (including an allegedly improper failure to designate "critical habitat" for polar bears which, again, will only be in Alaska).

[6] This is precisely the rule and the standard Magistrate Judge LaPorte applied in transferring Polar Bears I to Alaska:  "Defendants contend that this case should be transferred to either the District of Alaska or the District for the District of Columbia pursuant to 28 U.S.C. § 1404(a).  Under § 1404(a), '[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.'"  Polar Bears I, Section II.A.

all the circumstances of a case. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d at 834 (9th Cir. 1986); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981); *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). In *Decker*, the Ninth Circuit explained that a "court should consider private and public interest factors affecting the convenience of the forum." 805 F.2d at 843. Private factors include the "relative ease of access to sources of proof; availability of . . . witnesses . . .; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* (*quoting Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). None of these private factors favor the Northern District of California in this case; those factors favor the District of Alaska. The bears, the people who live with them, and the economic interests at stake are all in Alaska, not this District.

While we normally would wait to hear what Plaintiffs have to say in response to this motion before answering their arguments, the history provided by Polar Bears I calls for a somewhat different approach. We note, therefore, that Plaintiffs have tried, and lost, all of the following arguments in opposing venue transfer, as described by Magistrate Judge LaPorte:

> In opposing Defendants' motion, Plaintiffs argue that (1) their choice of forum is entitled to considerable deference and (2) Defendants have not met the heavy burden of justifying a change in venue. Plaintiffs argue that the convenience of the parties favors maintaining the case in this District because both Plaintiffs maintain offices in this District, which is not true of the proposed transferee districts presented by Defendants. Pls' Opp. at 9.

> Plaintiffs further argue that Northern District's interest in this case weighs against transfer because (1) California has an interest in litigation regarding its residents, and (2) there is considerable national interest (and indeed international interest) in polar bear conservation and management such that this case presents issues of national concern. Pls' Opp. at 11. Plaintiffs concede that "it is true that residents of Alaska may also be affected by the resolution of this case," but argue that "the considerable national interest in polar bear conservation and management" extends far beyond Alaska's borders. Id.

Polar Bears I, Section II.B. Plaintiffs' arguments fare no better in this case.

### A.     This Action Could Have Been Brought in the District of Alaska.

The "threshold consideration" for a transfer under Section 1404(a) is whether the action "could have been brought" in the transferee district. *See, e.g.*, *Van Dusen*, 376 U.S. at 616-17. Thus, the transferee district must have jurisdiction over the case. *Hoffman v. Blaski*, 363 U.S.

335, 343 (1960).  Here, because Plaintiffs have based their claims on federal question jurisdiction and federal statutory jurisdiction, *see* Docket # 126, ¶16, the Northern District of California and the District of Alaska properly would have jurisdiction over this claim.  Thus, the relevant question is whether venue is proper in the transferee district.  Under Section 1391(e), which governs suits against the federal government, venue is proper in the judicial district where: (1) "a defendant in the action resides," (2) "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated," or (3) the "plaintiff resides if no real property is involved in the action."  28 U.S.C. § 1391(e)(1)-(3).  Under these provisions, it is clear that "there may be more than one district in which a claim may be thought to have arisen and in which venue should be proper."  15 Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters § 3802.1 at 4, 6-7 n.9 (2d ed. 1989 & 2002 Supp.).

Here there is no question that suit could have been brought in the U.S. District Court for the District of Alaska because "a substantial part of the events or omissions giving rise to [Plaintiffs'] claims" occurred in Alaska.  The drafting of the 4(d) Rule occurred in Alaska and a substantial proportion of the events underlying Plaintiffs' claims took place within the District of Alaska, substantial proportions of the documents that will comprise the administrative record are located in governmental offices in Alaska, a substantial proportion of the witnesses (to the extent this case reaches the stage where witnesses become significant) in this case and the participants in the underlying facts and decision are located in Alaska.  The persons most directly affected by the 4(d) Rule reside in northern Alaska.  *See* Declaration of Jacob Adams in Support of Motion of Arctic Slope Regional Corporation to Intervene ("Adams Decl."), USDC N.D. Cal. No. 08-1339 ECF Doc. 117-2, ¶¶ 7, 12; 73 Fed. Reg. 28306, 28316 (noting that supporting documentation used in preparing the 4(d) Rule is available in Anchorage, Alaska).   In stark contrast, it appears that no aspect of the challenged rulemaking process occurred in the Northern District of California.  Accordingly, it is clear

that this action could have been brought in the U.S. District Court for the Alaska. Thus, the threshold venue question of whether Plaintiffs could have brought suit in the District of Alaska is easily met here.

**B.      The Interests of Justice Will Be Best Served by Transferring This Case to the District of Alaska**

As Magistrate Judge LaPorte explained in transferring venue to Alaska in *Polar Bears I*, local interests are of paramount concern in venue decisions:

> Several decisions from the United States District Court for the District of Columbia regarding actions by federal agencies that impact the environment outside of that district ***articulate the rationale for favoring the forum that has a local interest or connection to the activities alleged in the complaint***. For example, in *Sierra Club v. Flowers*, 276 F.Supp.2d 62, 66, 71 (D.D.C. 2003), the court found that transfer to Florida was appropriate even where the parties, their counsel and some of the agency decision-makers were located in Washington, D.C. on the basis that "the decision to issue [mining permits for certain Everglades wetlands in southern Florida] is a controversy local to Florida and is one in which Florida and its residents have a great interest."; see also *National Wildlife Federation v. Harvey*, 437 F.Supp.2d 42 (D.D.C. 2006) (in granting the motion to transfer a lawsuit related to the effects of a federal water management program on an endangered bird population in Florida, the court noted that the nexus between the plaintiffs' chosen forum and the facts of the controversy was attenuated compared with the direct and substantial impact that the litigation could have on Florida residents and wildlife). Similarly, in *Southern Utah Wilderness Alliance v. Norton*, 2004 WL 896522 (D.D.C., Apr. 27, 2004), the court granted a motion to transfer to the District of Utah in a case involving an agency decision to permit twenty-one oil and gas leases on federal lands in Utah, noting "[l]and is a localized interest because its management directly touches local citizens." Id. at *6; see also *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F.Supp. 13, 19 (D.D.C. 1996) (court transferred to Colorado case involving "water rights, environmental regulation, and local wildlife" on National Forest land in Colorado).

*Polar Bears I*, Section II.C (emphasis added).

Here, too, local interests clearly are superior to Plaintiffs' basis for venue. Plaintiffs allege in relevant part that venue is appropriate in the Northern District of California because the action "is brought against an agency of the United States and officers and employees of the United States acting in their official capacities" and because "at least one Plaintiff is incorporated in this judicial district." Docket # 126, ¶ 17. None of these alleged grounds justify maintaining this suit in the Northern District of California.

First, the mere fact that the suit is against a federal agency, officer or employee does not

make venue appropriate in this District.  It is well settled that venue does not lie in every

judicial district where a federal agency may have offices.  *See Reuben H. Donnelley Corp. v.*

*Federal Trade Comm'n*, 580 F.2d 264, 267 (7th Cir. 1978) ("There is nothing in the statute or

its legislative history which suggests that Congress also sought to allow a federal agency to be

sued wherever it may maintain an office. To the contrary, the wording of the statute itself

precludes such an expansive interpretation").  Rather, venue predicated on the naming of a

federal agency or officer as a defendant must be brought either in Washington D.C. or where

the local federal official responsible for the decision-making resides.  *Id.*  To the best of

ASRC's knowledge, there was no involvement here by officials located in the Northern

District of California.  As discussed above, this connection does exist with the District of

Alaska.  The issues addressed in the 4(d) Rule are relevant to Alaskan conservation, Alaska

Native subsistence use, and energy development in Alaska.   These issues are not addressed in

any unique way in the Northern District of California and are insufficient to establish venue

here.

Plaintiffs fare no better with their allegations that "at least one Plaintiff is incorporated in

this judicial district."  Docket #126, ¶ 17.  In light of the 4(d) Rule's meaningful ties to the District

of Alaska and the lack of any connection whatsoever between the 4(d) Rule to the Northern

District of California, reliance on this ground for venue is attenuated at best.  The fact that

Greenpeace, Inc. (the only California plaintiff) was incorporated in this District is insufficient to

override the substantive connections to the District of Alaska.

Even if venue is technically appropriate in this District, it is more appropriate in the District

of Alaska for several reasons.  First, Plaintiff's choice of forum is entitled to little or no deference

because the Northern District of California has no meaningful ties to the decision and events at

issue here.  In contrast, this case has strong ties to the District of Alaska because a "substantial part

of the events" underlying Plaintiffs' claim took place in Alaska.  28 U.S.C. § 1391(e)(1)-(2); *see*

*Trout Unlimited v. Lohn*, No. 06-CV-904, 2006 WL 2927737, at *2 (W.D. Wash. Oct. 10, 2006)

(transferring case from Western District of Washington to District of Oregon after finding that

controversy "arose in Oregon and specifically impacts the natural resources and people of Oregon"); *McCrary v. Guttierrez*, 06-cv-0086, 2006 WL 1748410, at *3 (E.D. Cal. June 23, 2006) (granting Defendants' request to transfer case challenging a NMFS salmon listing determination, in part because of the connection to the streams in the transferee district).

Transfer of a case is particularly appropriate when plaintiffs (like plaintiffs here) file a case in a forum with little or no connection with the decision and events at issue. *McCrary*, 2006 WL 1748410, at *3; *Trout Unlimited*, 2006 WL 2927737, at *3; *see also Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1157 (S.D. Cal. 2005) ("numerous courts have given less deference to the plaintiff's choice of forum where the action has little connection with the chosen forum"); *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 67 (D.D.C. 2003) (deference to plaintiff's choice of forum mitigated where the forum has "no meaningful ties to the controversy and no particular interest in the parties or subject matter"). The holdings of *McCrary* and *Trout Unlimited* are instructive on this point. The plaintiff in *McCrary* petitioned the National Marine Fisheries Service ("NMFS") to remove the Central California Coast coho salmon population from the ESA's list of threatened and endangered species. *See McCrary*, 2006 WL 1748410, at *1. In granting defendants' motion to transfer the case to the Northern District of California, the court acknowledged that "plaintiff's choice of forum should generally not be disturbed." *Id.* at *2. However, the court found that transfer to the Northern District of California was "abundantly justified" because: 1) Central California Coast coho salmon are located in the Northern District of California and do not exist in the Eastern District of California; 2) plaintiff resided in the Northern District, and "his land and timber interests allegedly affected by NMFS' decisions are also within the Northern District;" and 3) NFMS' scientific response to plaintiff's petition was developed by NFMS scientists located in the Northern District. *Id.* at *3. The court concluded "[t]hese facts overwhelmingly demonstrate that the appropriate venue for this matter is the Northern District of California, and utterly eclipse any tenuous connection this lawsuit may have to the Eastern District by virtue of [one of the Defendant's] location in Sacramento. . . ."*Id.*

The court in *Trout Unlimited* addressed similar circumstances. The plaintiffs in that case filed a lawsuit against NMFS in the Western District of Washington, alleging that NMFS's decision to withdraw a proposed rule listing Oregon Coast coho salmon as threatened was arbitrary and capricious because the agency improperly relied on an analysis conducted by the State of Oregon. *See Trout Unlimited*, 2006 WL 2927737, at *1. Although the court agreed with plaintiffs' assertion that "some deference must be accorded to plaintiffs' choice of forum," it found that "this deference is reduced when 'the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter.'" *Id.* at *3 (*quoting Pacific Car and Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir.1968)). The court explained that any resolution of the case would primarily affect the residents of Oregon:

> The Oregon coast coho salmon that are the subject of the listing decision at issue spawn exclusively in Oregon waters. Defendant D. Robert Lohn, the Northwest Regional Administrator of NMFS, is stationed in Portland, Oregon and that is where he received briefings related to the Oregon Coast coho, analyzed data and formulated the official recommendation at issue in this case.... It also true that it is the people of Oregon who will be primarily impacted by the resolution of this case. This is reflected by the fact that plaintiffs base their standing in this case on the impact of the listing decision on their use of Oregon watersheds, not the watersheds of Washington or some other state....

*Id.* at *2. The court also found that the case had very little connection with the Western District of Washington:

> The only links that plaintiffs can identify between the Western District of Washington and the operative facts of this case is the presence of the NMFS's Northwest Regional Office and Science Center in Seattle. Though it is true that NMFS's regional office is in Seattle, Defendant Lohn is stationed in NMFS's Portland, Oregon office. The Portland office is also where the administrative record for this case will be compiled. The Court concludes whatever connection does exist between the operative facts in this case and the NMFS Northwest Regional Office and Science Center in Seattle is too attenuated to overcome the public interest that would be advanced by transferring the case . . . .

*Id.* at *3.

Moreover, "the showing defendants must make is lessened when ... transfer is sought to the forum with which plaintiffs have substantial ties and where the subject matter of the lawsuit is connected to that state." *Trout Unlimited v. U.S. Dept. of Agriculture*, 944 F. Supp.

13, 17 (D.D.C. 1996) (citations omitted). Transfer is appropriate in this case for similar reasons:

> 1) the Northern District of California has no meaningful ties to this case;

> 2) the subject of the 4(d) Rule is incidental take of polar bears in the District of Alaska;

> 3) any resolution of this case will primarily affect the residents of northern Alaska, not California;

> 4) Plaintiffs allege that they have standing based on their interest in polar bears in their "native habitat" in Alaska *see* Docket # 126,  ¶¶ 22, 27;

> 5) the 4(d) Rule originated in Alaska and relates to circumstances occurring exclusively in Alaska; and

> 6) substantial proportions of the documents that comprise the administrative record are located in Alaska.

These factors "utterly eclipse any tenuous connection this lawsuit may have" to the Northern District of California by virtue of the fact that one of the plaintiffs in this case is incorporated in this District.  *McCrary*, 2006 WL 1748410 at *3; *see also Pacific Car and Foundry Co.*, 403 F.2d at 954 (9th Cir. 1968) (plaintiff's choice of forum "entitled only to minimal consideration" when "the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter") (citations omitted); *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); *Carolina Cas. Co. v. Data Broad. Corp.*, 158 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001) (deference to plaintiff's choice of forum is "substantially reduced where the plaintiff's venue choice is not its residence *or where the forum lacks a significant connection to the activities alleged in the complaint*") (emphasis added); *Jarvis v. Marietta Corp.*, No. CV-98-4951-MJJ, 1999 WL 638231 at *3 (N.D. Cal. Aug. 12, 1999).

In fact, transfer to another venue in this case is even more compelling than it was in *McCrary* and *Trout Unlimited*.  The 4(d) Rule directly affects the Alaska Native communities in Northern Alaska and the companies that operate there.  *See, e.g.*, 73 Fed. Reg. 28306, 28314

("This special rule under section 4(d) of the ESA provides for the conservation of polar bears, while at the same time accommodating Alaska Natives' subsistence, cultural, and economic interests . . . ."). *Cf. Ferens v. John Deere*, 494 U.S. 516, 530 (1990) ("In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home.") (internal quotation omitted). Those interests are advanced by transferring the case to the District of Alaska and would be undermined by having the case remain in the Northern District of California. In contrast, the interests of the members of Plaintiff Greenpeace, Inc. are "too attenuated to overcome the public interest that would be advanced by transferring the case...." *Trout Unlimited*, 2006 WL 2927737, at *3.

## IV. CONCLUSION

All of the factors relevant to the consideration of transfer under 28 U.S.C. § 1404(a) support the transfer of this action to the District of Alaska. This action could have been brought in that District. The interests of justice strongly favor transfer. For these reasons, and all the reasons set out above, this case should be transferred to the District of Alaska.

DATED: September 2, 2008                    Respectfully submitted,


                                            TATRO TEKOSKY SADWICK LLP

                                            By:  /s/ René P. Tatro
                                                  René P. Tatro
                                                  Attorneys for Intervenor Defendant Arctic
                                                  Slope Regional Corporation


                                            FELDMAN ORLANSKY & SANDERS

                                            By:  /s/ Jeffrey M. Feldman
                                                  Jeffrey M. Feldman
                                                  *Admitted pro hac vice*
                                                  Attorneys for Intervenor Defendant Arctic
                                                  Slope Regional Corporation

## PROOF OF SERVICE BY ELECTRONIC TRANSMISSION

I, the undersigned, declare that I am a citizen of the United States, over the age of 18 years and not a party to this action.  I am employed in the County of Los Angeles and my business address is 333 S. Grand Avenue, Suite 4270, Los Angeles, CA  90071.

I hereby certify that I caused the **INTERVENOR ARCTIC SLOPE REGIONAL CORPORATION'S NOTICE OF MOTION AND MOTION TO TRANSFER VENUE** to be filed electronically with the Clerk of Court through ECF, on September 2, 2008, and that ECF sent an e-notice of the electronic filing to the recipients designated on the Notice of Electronic Filing generated by the Electronic Case File website of the Northern District of California and

**X**      by placing ___ the original __X__ a true copy thereof  enclosed in sealed envelopes addressed as stated on

John J. Jackson , III<br>
Conservation Force<br>
3240 S I-10 Service Road W., Suite 200<br>
Metairie, LA 70001

**BY MAIL**
  **x**      As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under the practice it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed September 2, 2008, at Los Angeles, California.

_____/s/ *Karen L. Roberts*_____
Karen L. Roberts

# EXHIBIT A

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8                   IN THE UNITED STATES DISTRICT COURT

9                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   CENTER FOR BIOLOGICAL DIVERSITY and          No. C-07-0894 EDL
     PACIFIC ENVIRONMENT,
12                                                 **ORDER GRANTING MOTION TO**
                   Plaintiffs,                     **TRANSFER**
13
          v.
14
     DIRK KEMPTHORNE. Secretary of the Interior,
15   and UNITED STATES FISH AND WILDLIFE
     SERVICE,
16
                   Defendants,
17
          and
18
     ALASKA OIL AND GAS ASSOCIATION,
19
                   Defendant/Intervenor.
20   _____/

21

22        This case for declaratory and injunctive relief was filed pursuant to the Administrative

23   Procedure Act, 5 U.S.C. §§ 702-706, by the Center for Biological Diversity and Pacific

24   Environment.  Plaintiffs allege that Defendants Dirk Kempthorne, United States Secretary of the

25   Interior, and the United States Fish and Wildlife Service ("FWS") failed to comply with the Marine

26   Mammal Protection Act ("MMPA") (16 U.S.C. § 1361 et seq. (2006)), and the National

27   Environmental Policy Act ("NEPA") (42 U.S.C. § 4321-4370(f) (2006)).  Compl. ¶ 1.  Plaintiffs

28   seek judicial review of a final rule promulgated by the FWS on August 2, 2006 pursuant to the

     MMPA that authorizes the "incidental take" of polar bears and Pacific walrus for five years resulting

     from any oil and gas industry activities in the Beaufort Sea and the adjacent coastal areas.  Compl. at

United States District Court
For the Northern District of California

1  ¶ 2 (citing 71 Fed. Reg. 43,926 (Aug. 2, 2006) (codified at 50 C.F.R. §§ 18.121-129)).  The Beaufort

2  Sea is located off the northern coast of Alaska and western Canada.  Id. at ¶ 26.  Plaintiffs also

3  challenge under NEPA the accompanying Environmental Assessment and "finding of no significant

4  impact" issued by the FWS.  Id.  Plaintiffs allege that "[o]ver the past decade, global warming has

5  dramatically altered the Arctic, causing significant reductions in sea ice, and adversely affecting ice-

6  dependent species such as the Pacific walrus and polar bear."  Id. at ¶ 3.  Plaintiffs further allege

7  that, "[n]otwithstanding the well-documented recent impacts of global warming on the polar bear

8  and the Pacific walrus, FWS promulgated its incidental take regulations for these species without

9  seriously analyzing the effects of global warming on them and their habitat."  Id. at ¶ 4.

10       On May 10, 2007, the federal Defendants filed a motion to transfer venue pursuant to 28

11  U.S.C. § 1404(a) from this district to either the District of Alaska or the District Court for the

12  District of Columbia.  Intervenor-Defendant Alaska Oil and Gas Association ("AOGA") joined in

13  the motion.  Plaintiff opposed the transfer.  All the parties agree that venue is proper in this district

14  or in either of the two districts proposed by Defendants.  This matter was fully briefed and came on

15  for hearing on June 26, 2007.  Because the balance of factors tips the scale slightly in favor of

16  transferring this matter to another district, the Court GRANTS Defendants' motion and ORDERS

17  this case to be transferred to the District of Alaska.

18  **I.  BACKGROUND**

19       **A.  The Parties**

20       Plaintiff Pacific Environment is incorporated in California and has its organizational

21  headquarters in San Francisco.  Pls' Opp. at 1 (citing Declaration of David Gordon at ¶ 4) ("Gordon

22  Decl.").  Pacific Environment's decisions to litigate issues affecting polar bears are made by its

23  board, on advice of its executive director, who is based in San Francisco.  Gordon Decl. at ¶ 9.

24       The Center is a non-profit organization with offices in San Francisco, Joshua Tree and San

25  Diego, California; Phoenix and Tucson, Arizona; Silver City, New Mexico; Portland, Oregon; and

26  Washington, D.C.  Compl. at ¶ 9.  The Center is incorporated in New Mexico but runs its climate

27  and ocean protection efforts out of California.  Pls' Opp. at 1 (citing Declaration of Kassia R. Siegel

28  at ¶¶ 4-5) ("Siegel Decl.").  The Center's California-based staff directs and conducts its advocacy

1   and litigation related to the polar bear and the impacts of global warming on the species. Siegel

2   Decl. at ¶¶ 2, 6.

3       Defendant Dirk Kempthorne, as the United States Secretary of the Interior, is sued in his

4   official capacity as having ultimate responsibility for the administration and implementation of the

5   MMPA with regard to the polar bear and Pacific walrus. Compl. at ¶ 16. Defendant FWS is a

6   federal agency within the Department of Interior authorized and required by law to protect and

7   manage the fish, wildlife, and native plant resources of the United States, including enforcing the

8   MMPA. The Secretary of Interior delegated to the FWS the authority to implement the MMPA for

9   the polar bear and Pacific walrus, including promulgating the regulations at issue in this case.

10  Compl. at ¶ 17.

11      Intervenor-defendant AOGA is a private, non-profit trade association whose 16 members

12  engage in the majority of oil and gas exploration, production, transportation, refining and marketing

13  activities in Alaska, including within the Beaufort Sea and adjacent coastal areas. AOGA's Mem. in

14  Sup. of Mot. to Int. at 1 (filed Apr. 27, 2007). In August 2005, AOGA petitioned the FWS to renew

15  the regulations governing the issuance of Letters of Authorization which allow the take of marine

16  mammals incidental to oil and gas activities on the Alaskan North Slope. Id. at 2. AOGA filed an

17  unopposed motion to intervene as a defendant in all phases of this action, which was granted on May

18  31, 2007. (Dkt. No. 23).

19      **B. History of Administrative Proceedings**

20      On August 23, 2002, AOGA submitted a request that the FWS promulgate regulations for

21  nonlethal incidental take of small numbers of Pacific walrus and polar bears for a period of five years,

22  originally projected to be from March 31, 2003, through March 31, 2008. Defs' Mot. at 4 (citing 71

23  Fed. Reg. at 43,927). On March 22, 2006, the FWS issued proposed regulations that would authorize

24  the nonlethal, incidental, unintentional take of small numbers of polar bears and Pacific walrus during

25  oil and gas industry exploration, development, and production operations in the Beaufort Sea and the

26  adjacent northern coast of Alaska. Id. (citing 71 Fed. Reg. 14,446 (Mar. 22, 2006)) (the "Proposed ITR

27  Rule"). The Proposed ITR Rule contained a finding that the total expected takings of polar bear and

28  Pacific walrus during oil and gas industry activities will have a negligible impact on these species and

**United States District Court**
For the Northern District of California

3

United States District Court

For the Northern District of California

will not have an unmitigable adverse impact on the availability of these species for subsistence by Alaska natives, and allowed comments from the public within 30 days. Id. On April 21, 2006, Plaintiffs submitted their comments to the Proposed ITR Rule describing their concerns related to "impact of oil and gas exploration, development and production activities on polar bears and Pacific walrus and on the communities dependent on these species." Siegel Decl., Ex. 1.[1]

On August 2, 2006, the FWS issued the decision at issue in this case. Defs' Mot. at 5. FWS's decision adopted regulations that cover: (1) permissible methods of nonlethal taking in the course of oil and gas industry activities in the Beaufort Sea and adjacent northern coast of Alaska; (2) measures to ensure the least practicable adverse impact on the species and the availability of these species for subsistence use by Alaska Natives; and (3) requirements for monitoring and reporting. 71 Fed. Reg. at 43,927. FWS also prepared a final Environmental Assessment pursuant to NEPA and issued a Finding of No Significant Impact ("FONSI") in connection with it. 71 Fed. Reg. at 43,949. The FWS's "office in Anchorage, Alaska, developed the draft proposed and draft final rules," which were then "transmitted to Washington, D.C. where they were substantively reviewed by a number of [FWS] and Department officials." See Defs' Mot. at 9 (citing Declaration of Kenneth Stansell at ¶ 9 ("Stansell Decl.")). "None of the decision-making process occurred in California." Stansell Decl. at ¶ 9.

## II. MOTION TO TRANSFER VENUE

### A. Legal Standard

Defendants contend that this case should be transferred to either the District of Alaska or the District for the District of Columbia pursuant to 28 U.S.C. § 1404(a). Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Determining whether an action should be transferred pursuant to § 1404(a) is a two-step process. The transferor court must first determine whether the action "might have been brought" in the transferee court, and then the court must make an "individualized, case-by-case consideration of convenience and fairness." Inherent.com v.

---

[1]Although the federal Defendants initially stated that Pacific Environment did not submit comments to the Proposed ITR Rule, Exhibit 1 to the Siegel Declaration makes clear that the April 21, 2006 comments were "submitted on behalf of the Center for Biological Diversity, Pacific Environment, and the Northern Alaska Environmental Center." Siegel Decl., Ex. 1. at 1.

4

1   Martindale-Hubbell, 420 F. Supp. 2d 1093, 1098 (N.D. Cal. 2006) (citing Hatch v. Reliance Ins. Co.,

2   758 F.2d 409, 414 (9th Cir. 1985); Jones v. GNC Franchising, 211 F.3d 495, 498 (9th Cir. 2000)).  The

3   burden is on the defendant to show that transfer is appropriate.  See Commodity Futures Trading

4   Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir.1979).

5          There is no dispute that the first prong of the Court's analysis is met here.  This action might

6   have been brought under 28 U.S.C. § 1391(e) in either the District of Columbia or the District of Alaska

7   because the federal Defendants reside in Washington, D.C., and a substantial part of the alleged events

8   and omissions occurred in the District of Alaska.[2]

9          As to the second prong of the § 1404(a) analysis, the statute instructs the Court to consider at

10  least three factors in deciding whether to transfer a case to another court:  (1) convenience of parties;

11  (2) convenience of witnesses; and (3) the interest of justice.  Ninth Circuit precedent requires a fourth

12  factor be weighed:  the plaintiff's choice of forum.  See Securities Investor Prot. Corp. v. Vigman, 764

13  F.2d 1309, 1317 (9th Cir. 1985).  "Weighing of these factors for and against transfer involves subtle

14  considerations" and is left to the discretion of the transferor court.  Savage, 611 F.2d at 279.

15         In determining the convenience of the parties and witnesses and the interests of justice, a court

16  may consider a number of factors including:

17         (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the
           convenience of the witnesses; (4) ease of access to evidence; (5) familiarity of each
18         forum with applicable law; (6) feasibility of consolidation of other claims; (7) any local
           interest in the controversy; and (8) the relative court congestion and time [to] trial in
19         each forum.

20  Gerin v. Aegon USA, Inc., No. C 06-5407, 2007 WL 1033472, at *4 (N.D. Cal., Apr. 4, 2007) (citing

21  Jones, 211 F.3d at 498-99).

22         In the usual case, unless the balance of the § 1404(a) factors weighs heavily in favor of the

23  defendants, "the plaintiff's choice of forum should rarely be disturbed."  Securities Investor, 764 F.2d

24  at 1317; see also Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986)

25

26         [2]Section 1391(e) states that "[a] civil action in which a defendant is an officer or employee of
    the United States or any agency thereof acting in his official capacity or under color of legal authority,
27  or an agency of the United States. . .  may . . . be brought in any judicial district in which (1) a defendant
    in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred,
28  or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if
    no real property is involved in the action."  28 U.S.C. § 1391(e).

United States District Court
For the Northern District of California

("defendant must make a strong showing . . . to warrant upsetting the plaintiff's choice of forum"). However, "[i]f the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration." <u>Pacific Car and Foundry Co. v. Pence</u>, 403 F.2d 949, 954 (9th Cir. 1968). "The degree to which courts defer to the plaintiff's venue choice is substantially reduced where the plaintiff's venue choice is not its residence or where the forum lacks a significant connection to the activities alleged in the complaint." <u>Fabus Co. v. Asiana Exp. Co.</u>, 2001 WL 253185 at *1 (N.D. Cal., Mar. 1, 2001).

**B. The Parties' Arguments**

Defendants argue that the interest of justice will be best served by transferring this case because (1) the Northern District of California has no meaningful ties to this case; (2) the subject of the FWS's August 2, 2006 decision relates to the incidental take of polar bears and Pacific walrus that inhabit the Beaufort Sea and adjacent costal areas of Northern Alaska; (3) any resolution of this case will primarily affect the residents of Alaska, not California; (4) Plaintiff's alleged standing in this case derives solely from the fact that they and their members use and enjoy the Beaufort sea and adjacent northern coast of Alaska to view and experience polar bears and Pacific walrus that live in the area; (5) the FWS decision at issue was drafted in Anchorage, Alaska and signed in Washington, D.C.; and (6) all of the documents that comprise the administrative record are located in Washington, D.C. and Anchorage, Alaska.[3]  Defs' Mot. at 1, 15; <u>see also</u> Stansell Decl. at ¶¶ 8, 9.

In support of their argument that the Northern District does not have meaningful ties to this case, Defendants state that "there was no involvement in the challenged rulemaking by the Department of Interior or FWS officials located in the Northern District of California." Defs' Mot. at 10. Rather, "the only offices of the Federal defendants that were involved in the decision-making are located in

---

[3]  Defendants state that "[a]ll of the documents that will comprise the administrative record for the final rule authorizing incidental taking of small numbers of polar bears and walruses associated with oil and gas exploration, development, and production activities in the Beaufort Sea and adjacent northern coast of Alaska are located in the [FWS] and Department [of Interior] offices in Washington, D.C. and Anchorage, Alaska.  No documents relevant to the final rule are located in California." Defs' Mot., Declaration of Kenneth Stansell at ¶ 9 ("Stansell Decl.").  Defendants do not argue that the location of documents impacts the convenience of the parties or witnesses.  Rather, Defendants appear to argue that the absence of documents in California and the presence of documents in Washington, D.C. and Alaska weighs in favor of transfer to either of the suggested transferee courts.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  Washington, D.C. and Anchorage, Alaska." Id. Defendants also point out that only one Plaintiff,

2  Pacific Environment, actually resides in this District, id. at 11, and that no documents related to the final

3  rule are located in California. Id. at 15.

4        Defendants further argue that, although Pacific Environment resides in this district, adjudicating

5  this case in the proposed transferee courts will not inconvenience Plaintiffs. Defendants note that

6  Pacific Environment opened an office in Anchorage, Alaska in December 2005 for the purpose of

7  "deepen[ing its] collaboration with environmentalists, fisherpeople, Native Alaskans and government

8  officials." Defs' Reply at 8 (citing Ex. 1, Pacific Environment, Annual Report, 2005-2006). With

9  respect to the Center, AOGA points out that, "though it does not keep an Alaska office, [it] has

10  frequently brought suit in the Alaska federal district court, thus negating any claims of inconvenience."

11  AOGA's Reply at 9 (citing cases).

12        Finally, in support of their argument that the suggested transferee courts have vastly greater ties

13  to the issues in controversy in this case than the Northern District of California, Defendants point out

14  that the FWS decision at issue relates to polar bears and Pacific walrus that inhabit the Beaufort Sea off

15  the coast of Northern Alaska. Therefore, any resolution of this case will primarily affect the residents

16  of Alaska. Id. at 15. Defendants further argue that the FWS decision contains an extensive analysis of

17  how expected incidental take will affect the availability of polar bears and Pacific walrus for subsistence

18  use by Alaska Native communities in northern Alaska. See 71 Fed. Reg. at 43,952. The decision

19  requires the oil and gas companies to engage in community meetings and ascertain if community

20  responses indicate that conflicts with Native Alaskans' subsistence uses of polar bears and walruses may

21  occur as a result of activities conducted or requested by the oil and gas companies. Id. If community

22  concerns suggest that industry activities may have an impact on the subsistence uses of these species,

23  the companies must submit a Plan of Cooperation that ensures that the activities will not interfere with

24  subsistence harvest of polar bears and Pacific walrus. Id. Thus, according to Defendants, the decision

25  most directly affects the Alaska Native communities in Northern Alaska and the companies that operate

26  there. Defs' Mot. at 15-16.

27        In opposing Defendants' motion, Plaintiffs argue that (1) their choice of forum is entitled to

28  considerable deference and (2) Defendants have not met the heavy burden of justifying a change in

United States District Court

For the Northern District of California

1   venue.  Plaintiffs argue that the convenience of the parties favors maintaining the case in this District

2   because both Plaintiffs maintain offices in this District, which is not true of the proposed transferee

3   districts presented by Defendants.  Pls' Opp. at  9.

4       Plaintiffs further argue that Northern District's interest in this case weighs against transfer

5   because (1) California has an interest in litigation regarding its residents, and (2) there is considerable

6   national interest (and indeed international interest) in polar bear conservation and management such that

7   this case presents issues of national concern.  Pls' Opp. at 11.  Plaintiffs concede that "it is true that

8   residents of Alaska may also be affected by the resolution of this case," but argue that "the considerable

9   national interest in polar bear conservation and management" extends far beyond Alaska's borders.  Id.

10      **C. Analysis**

11      In contrast to most cases in federal court, environmental cases are typically resolved by the court

12  examining the administrative record to decide cross-motions for summary judgment.  Accordingly, the

13  factors set forth in the transfer statute, § 1404(a), and cases applying it, such as Gerin, supra, are for the

14  most part not implicated.  There are no witnesses to consider, and documentary evidence is as easily

15  provided in one venue as another, especially in this age of electronic transmission.  The proposed

16  transferee courts are equally familiar with the environmental laws at issue.  No one has proposed any

17  potential for consolidation in any of the venues.  Nor is there any major difference in the relative

18  congestion of the court calendars.  Therefore, as in most environmental cases, the issue of which federal

19  district should adjudicate the issues is determined by weighing a plaintiff's choice of forum against the

20  competing interest in "having localized controversies decided at home."  Piper Aircraft v. Reyno, 454

21  U.S. 235, 241 n. 6 (1981) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947)); see also Wright,

22  Miller & Cooper, Federal Practice and Procedure § 3854 (3d ed. 2007) (noting that, especially in

23  environmental cases, "[a]n additional reason for litigating in the forum that encompasses the locus of

24  operative facts is the local interest in having local controversies resolved at home. . . .").

25      Several decisions from the United States District Court for the District of Columbia regarding

26  actions by federal agencies that impact the environment outside of that district articulate the rationale

27  for favoring the forum that has a local interest or connection to the activities alleged in the complaint.

28  For example, in Sierra Club v. Flowers, 276 F.Supp.2d 62, 66, 71 (D.D.C. 2003), the court found that

United States District Court

For the Northern District of California

transfer to Florida was appropriate even where the parties, their counsel and some of the agency decision-makers were located in Washington, D.C. on the basis that "the decision to issue [mining permits for certain Everglades wetlands in southern Florida] is a controversy local to Florida and is one in which Florida and its residents have a great interest."; see also National Wildlife Federation v. Harvey, 437 F.Supp.2d 42 (D.D.C. 2006) (in granting the motion to transfer a lawsuit related to the effects of a federal water management program on an endangered bird population in Florida, the court noted that the nexus between the plaintiffs' chosen forum and the facts of the controversy was attenuated compared with the direct and substantial impact that the litigation could have on Florida residents and wildlife). Similarly, in Southern Utah Wilderness Alliance v. Norton, 2004 WL 896522 (D.D.C., Apr. 27, 2004), the court granted a motion to transfer to the District of Utah in a case involving an agency decision to permit twenty-one oil and gas leases on federal lands in Utah, noting "[l]and is a localized interest because its management directly touches local citizens." Id. at *6; see also Trout Unlimited v. U.S. Dep't of Agric., 944 F.Supp. 13, 19 (D.D.C. 1996) (court transferred to Colorado case involving "water rights, environmental regulation, and local wildlife" on National Forest land in Colorado).

Plaintiffs' counsel correctly indicated at the hearing that the Flowers case cautions district courts in the D.C. Circuit to "examine challenges to venue particularly carefully 'to guard against the danger that a plaintiff might manufacture venue in the District of Columbia. . . 'by naming high government officials as defendants. . . [and] bring[ing] a suit [t]here that properly should be pursued elsewhere.'" Flowers, 276 F.Supp.2d at 65 (citing Cameron v. Thornburgh, 983 F.2d 253, 256 (D.C. Cir. 1993)). However, in Flowers, as in the present case, there was no suggestion that Plaintiffs were attempting to "manufacture venue" in the district where they filed their complaint. Rather, despite the fact that both plaintiffs and defendants had offices in that district, the court found that "the parties' presence in the District of Columbia is overshadowed by the lack of evidence that federal officials in this forum 'played an active or significant role' in the decision to issue permits. . . . [and that] the lack of meaningful ties between the controversy and the District of Columbia stands in sharp contrast to the significant ties. . .between the controversy and Florida." Id. at 67-68 (citations omitted).

Plaintiffs argue that this case is more like The Wilderness Society v. Babbitt, 104 F.Supp.2d 10 (D.D.C. 2000), where the court denied the defendants' motion to transfer. In The Wilderness Society,

United States District Court

For the Northern District of California

1    various environmental groups – four of which were headquartered in Washington, D.C. – filed a lawsuit

2    alleging that defendants violated NEPA after issuing a decision to open an area in Alaska to oil and gas

3    leasing.  In denying defendants' motion to transfer the case to the District of Alaska, the court concluded

4    that the involvement of the defendant Secretary of the Interior, who was located in the District of

5    Columbia, was "far from routine."  To the contrary, he was directly involved in the assessment of the

6    environmental impact caused by oil, having visited the affected area in Alaska for six days and met with

7    local and industry residents, officials and scientists there.  Further, he signed the Record of Decision

8    allowing oil and gas leases and briefed the public on the decision in Washington, D.C.  Id. at 14.  The

9    court distinguished The Wilderness Society case from other cases where transfer to districts with a local

10   interest in the controversy was granted by stating, "Secretary Babbitt's heavy involvement thus

11   highlights the significance of this issue to the entire nation.  By contrast, the Secretary of the Interior

12   was not directly involved in the local environmental controversies at Trout Unlimited and Hawksbill,

13   and all decision-making in those cases took place outside of the District of Columbia."  Id. at 14 (citing

14   Trout Unlimited,  supra, and Hawksbill Sea Turtle v. Federal Emergency Mgmt. Agency, 939 F. Supp.

15   1 (D.D.C. 1996)).

16         The present case, at its core, involves the environmental impact of oil and gas industry activities

17   in the Beaufort Sea and adjacent coast of Northern Alaska.  Although Plaintiffs' arguments in favor of

18   adjudicating this case in the Northern District of California have some merit, they do not fully offset the

19   countervailing aspects to be considered by the Court such as the fact that none of the operative facts

20   occurred within this district and the challenged FWS decision authorizing the "incidental take" of polar

21   bears and Pacific walrus as part of industrial oil and gas exploration, development, and production

22   activities in Alaska is one in which Alaska and its residents have a great interest.  Plaintiffs are correct

23   that interest in these species transcends state and, indeed, international boundaries, with the bears and

24   walrus also inhabiting Canadian waters and with international attention focused on the polar bears'

25   survival in the face of possibly melting ice.  However, widespread concern does not by itself resolve the

26   question of which of the proposed federal forums is the most appropriate.  Weighing all of the relevant

27   circumstances, the Court concludes that Alaska provides the most appropriate forum.

28   //

III.    CONCLUSION

For the foregoing reasons, Defendants' motion to transfer is GRANTED.  This case is hereby transferred to the District of Alaska pursuant to 28 U.S.C. § 1404(a).  The Clerk is instructed to transfer the file in accordance with Civil L.R. 3-14.

IT IS SO ORDERED.

Dated:  July 12, 2007

_____

ELIZABETH D. LAPORTE
United States Magistrate Judge

United States District Court
For the Northern District of California

11