1
2
3
4
5
6
7                IN THE UNITED STATES DISTRICT COURT

8            FOR THE NORTHERN DISTRICT OF CALIFORNIA

9
10
CENTER FOR BIOLOGICAL DIVERSITY;
11 NATURAL RESOURCES DEFENSE COUNCIL;        No. C 08-1339 CW
and GREENPEACE, INC.,
12
             Plaintiffs,                     ORDER DENYING ARCTIC
13                                           SLOPE REGIONAL
     v.                                      CORPORATION'S MOTION
14                                           TO TRANSFER AND
DIRK KEMPTHORNE, United States              TAKING DEFENDANTS'
15 Secretary of the Interior; and UNITED    MOTION TO TRANSFER
STATES FISH AND WILDLIFE SERVICE,           UNDER SUBMISSION
16
             Defendants.
17
_____/
18

19      Defendants Dirk Kempthorne and the U.S. Fish and Wildlife

20 Service move to transfer this case to the United States District

21 Court for the District of Columbia.  Intervenor-Defendant Alaska

22 Oil and Gas Association (AOGA) joins in this motion.  Plaintiffs

23 Center For Biological Diversity, Natural Resources Defense Council

24 and Greenpeace oppose Defendants' motion.  Potential Intervenor-

25 Plaintiff Defenders of Wildlife (DOW) also opposes the motion.

26 Intervenor-Defendant Arctic Slope Regional Corporation (ASRC) moves

27 separately to transfer the case to the District of Alaska.

28 Plaintiffs, DOW and Defendants oppose ASRC's motion.  In addition,

AOGA has filed a motion with the Judicial Panel on Multidistrict Litigation (MDL Panel) seeking to transfer this case to the D.C. District Court.  Having considered all of the papers submitted by the parties, the Court denies ASRC's motion and takes Defendants' motion under submission pending a decision by the MDL Panel.

BACKGROUND

Plaintiffs filed this action on March 10, 2008, charging Defendants with failing to comply with the Endangered Species Act's (ESA) deadline to issue a determination on whether the polar bear should be listed as a threatened or endangered species.  On April 2, 2008, Plaintiffs moved for summary judgment.  Defendants opposed this motion, conceding that they had failed to meet the deadline but arguing that the relief Plaintiffs sought was unjustified.

On April 28, 2008, the Court granted Plaintiffs' motion and ordered Defendants to publish their listing determination by May 15, 2008.  Defendants complied with this order and published a final rule designating the polar bear as threatened.  In addition, Defendants promulgated a special rule under section 4(d) of the ESA, which permits the Fish and Wildlife Service to specify prohibitions and authorizations that are tailored to the specific conservation needs of a particular species.  The special rule here allows certain activities that might otherwise be prohibited under the ESA or its associated regulations.  Specifically, the rule provides that, if an activity is authorized under the Marine Mammals Protection Act (MMPA) and the Convention on International Trade in Endangered Species of Wild Fauna and Flora, the activity is exempt from ESA provisions that might otherwise prohibit it as a take of polar bear.  The rule also exempts activities outside of

United States District Court
For the Northern District of California

2

**United States District Court**
For the Northern District of California

Alaska from the ESA's incidental take prohibition.  In addition, the rule exempts activities that generate greenhouse gases, no matter where they occur, from the ESA's consultation requirements.

On May 16, 2008, Plaintiffs filed an amended complaint adding two claims.  The first new claim charges Defendants with violating the Administrative Procedures Act (APA) by promulgating the section 4(d) rule without first publishing a notice of proposed rule-making and giving interested persons an opportunity to comment.  The second new claim charges Defendants with violating the National Environmental Policy Act (NEPA) by promulgating the section 4(d) rule without first conducting an environmental impact statement or an environmental assessment.

On July 16, 2008, Plaintiffs filed a second amended complaint adding four new claims.  All four claims are brought pursuant to the APA and are based on Defendants' alleged failure to comply with either the ESA or the MMPA.  The first challenges the decision to classify the polar bear under the ESA as a threatened, rather than an endangered, species.  The second challenges the substance of the section 4(d) rule as contrary to the ESA.  The third charges Defendants with violating the ESA by failing to designate critical habitat for the polar bear.  The fourth alleges that Defendants violated the MMPA by failing to publish a list of guidelines for safely deterring polar bears through the use of non-lethal methods. The parties subsequently reached a negotiated settlement of these last two claims.

Since Plaintiffs initiated this action, four related actions have been filed in the District Court of the District of Columbia: 1) a case brought by the State of Alaska challenging, among other

3

things, the government's determination that the polar bear is a
threatened species; 2) a case brought by the American Petroleum
Institute and other industry groups challenging the portion of the
section 4(d) rule that exempts activities outside of Alaska from
the incidental take provisions of the ESA;[1] 3) a case brought by
the Safari Club, a hunters' group, challenging the government's
prohibition on the importation of trophies of polar bears legally
hunted in Canada; 4) a second case brought by the Safari Club
challenging the government's determination that the polar bear is a
threatened species.

LEGAL STANDARD

Title 28 U.S.C. § 1404(a) provides as follows: "For the
convenience of parties and witnesses, in the interest of justice, a
district court may transfer any civil action to any other district
or division where it might have been brought."  The statute
identifies three factors that should be considered on a motion to
transfer: (1) the convenience of the parties; (2) the convenience
of the witnesses; and (3) the interests of justice.  The Ninth
Circuit has articulated other considerations that are subsumed in
these basic factors, including: the plaintiff's choice of forum;
ease of access to the evidence; the familiarity of each forum with
the applicable law; the nexus between the forum and the causes of
action; the feasability of consolidating other claims; any local
interest in the controversy; the relative court congestion and time
to trial in each forum; the location where the relevant agreements

---

[1]The API alleges that the rule irrationally subjects
greenhouse gas emissions within Alaska to the ESA's incidental take
provisions while exempting greenhouse gas emissions elsewhere.

4

United States District Court
For the Northern District of California

1   were negotiated and executed; the parties' contacts with the

2   forums; any difference in the costs of litigation between the two

3   forums; and the availability of compulsory process to compel

4   attendance of unwilling non-party witnesses.  Decker Coal Co. v.

5   Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986); Jones

6   v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000).  No

7   single factor is dispositive, and a district court has broad

8   discretion to adjudicate motions for transfer on a case-by-case

9   basis.  Stewart Org. Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988);

10  Sparling v. Hoffman Constr. Co., Inc., 964 F.2d 635, 639 (9th Cir.

11  1988).  The parties do not dispute that this action could have been

12  brought either in Alaska or in the District of Columbia.  Thus, the

13  only question before the Court is whether the above factors support

14  the transfer of this case.

15                          DISCUSSION

16  I.   ASRC's Motion

17       ASRC seeks to have this case transferred to the District of

18  Alaska, primarily on the basis that Alaska is the only state with

19  meaningful ties to the subject matter of the litigation.  It is

20  true that Alaska is the only state inhabited by polar bears and

21  that Defendants' decision to classify the polar bear as a

22  threatened species directly affects primarily Alaska residents.

23  However, ASRC incorrectly treats Alaska's interest in the

24  controversy as essentially dispositive of the present motion.  In

25  fact, there are other considerations that militate against

26  transferring this case to Alaska.

27       First, a plaintiff's choice of forum is ordinarily given

28  significant weight and will not be disturbed unless other factors

                              5

United States District Court
For the Northern District of California

weigh substantially in favor of transfer.  <u>Decker Coal</u>, 805 F.2d at 843.  This is especially true when the plaintiff resides in the forum and the forum has a significant connection with the cause of action.  <u>L.A. Mem'l Coliseum Comm'n v. Nat'l Football League</u>, 89 F.R.D. 497, 499 (C.D. Cal. 1981) (citing <u>Pac. Car and Foundry Co. v. Pence</u>, 403 F.2d 949, 954 (9th Cir. 1968)).  Although the Northern District of California does not have significant ties to the polar bear or to Defendants' rulemaking activity, which was conducted in Alaska and the District of Columbia, Plaintiff Greenpeace resides here and the other Plaintiffs maintain offices here.  Plaintiffs are therefore entitled to some degree of deference in their choice of forum.  In addition, although Alaska arguably has a greater interest than California in the polar bear's classification in that direct interactions between humans and polar bears occur only in that State, citizens of other states have an interest in ensuring the survival of threatened and endangered species, wherever those species may exist.  Moreover, Plaintiffs' challenge to the section 4(d) rule, if successful, could potentially affect greenhouse gas emissions in all fifty states. In this sense, Alaska is not the only state with an interest in the litigation.

A number of other factors are neutral as between venue in Alaska and the Northern District of California, and thus weigh against disturbing Plaintiffs' choice of forum.  Neither Plaintiffs nor Defendants contend that Alaska would be a more convenient forum for them than California, and ASRC does not suggest that its own convenience, as a voluntary intervenor in this action, should be taken into account.  Furthermore, the parties believe this matter

6

**United States District Court**
For the Northern District of California

is amenable to summary judgment without trial, and thus the convenience of witnesses is not at issue.  Nor does the location of relevant documents support transfer, in that Defendants are compiling the administrative record in electronic format.  Relative congestion and the time to trial also do not support ASRC's motion. Although ASRC submits that the docket of the Northern District of California is more crowded than that of the District of Alaska, this case has already been scheduled for summary judgment, and the case management order does not reflect any delay due to congestion. Nor has ASRC shown that courts in the District of Alaska are particularly familiar with the facts and legal issues involved in this case.

The appropriateness of transferring this case to the District of Alaska also cannot be evaluated without considering the fact that four related cases are pending in the District of Columbia. Where, as here, multiple actions in different districts involve common issues of law and fact, "the 'interest of justice' considers the feasibility of their consolidation so that inconsistent verdicts are avoided." Hernandez v. Union Pac. R.R. Co., 2005 WL 396614, at *3 (N.D. Cal.); see also A.J. Indus., Inc. v. U.S. Dist. Court, 503 F.2d 384, 389 (9th Cir. 1974) (noting that the "feasibility of consolidation is a significant factor in a transfer decision").  While transferring this action to the District of Columbia would permit consolidation and would ameliorate the risk of inconsistent judgments, transferring the action to Alaska would

1    not.[2]

2        The Court concludes that, under the circumstances, there is

3    not an adequate basis for disturbing Plaintiffs' choice of venue in

4    favor of venue in the District of Alaska.

5    II.  Defendants' Motion

6        In light of the cases currently pending in the District of

7    Columbia and the consequent possibility of inconsistent judgments,

8    Defendants' motion to transfer presents a closer question than

9    ASRC's motion.  Ordinarily, the preferred venue in the case of

10   parallel litigation is the district in which the first lawsuit was

11   filed.  See Alltrade, Inc. v. Uniweld Prods., Inc., 946 F.2d 622,

12   623 (9th Cir. 1991).  However, the parties appear to agree that the

13   actions pending in the District of Columbia could not have been

14   brought in the Northern District of California in the first

15   instance, because venue would not have been proper under 28 U.S.C.

16   § 1391(e).  Those cases thus cannot be transferred to this District

17   under 28 U.S.C. § 1404(a).  At the same time, Defendants' motion

18   raises questions of forum shopping and delay.  Although the

19   plaintiffs in the D.C. cases may not have been able to bring a new

20   lawsuit in this District because venue would not have been proper,

21   if they were concerned about inconsistent judgments, they could

22   have moved to intervene in this case.

23       The issue of transferring this case for pretrial purposes to

24   the District of Columbia is currently before the MDL Panel.  This

25   _____

26       [2]Although ASRC has apparently requested that the MDL Panel
     transfer all of the related cases to the District of Alaska, the
     Court will not grant ASRC's motion based on the mere possibility
27   that the actions currently pending in the District of Columbia will
     be transferred to Alaska.  Moreover, if the Panel were to grant
28   ASRC's request, its present motion would be moot.

Court will defer to the Panel.  If the Panel transfers this case to the District of Columbia, Defendants' motion will become moot. Alternatively, the Panel may determine that it is appropriate to transfer the D.C. cases to this District because the first case was filed here.  Unlike the Court, the Panel is not limited to transferring cases to a district in which they could have been brought in the first instance.  Compare 28 U.S.C. § 1407(a) with 28 U.S.C. § 1404(a).

Accordingly, the Court will take Defendants' motion under submission and will rule on it once the MDL Panel has issued its decision.  Meanwhile, the case will proceed on schedule in this District.

CONCLUSION

For the foregoing reasons, ASRC's motion to transfer (Docket No. 154) is DENIED.  Defendants' motion to transfer (Docket No. 152) is hereby taken under submission on the papers.  The hearing currently scheduled for October 16, 2008 is VACATED.

IT IS SO ORDERED.

Dated: 10/10/08

_Claudia Wilken_

CLAUDIA WILKEN
United States District Judge

9