IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY; NATURAL RESOURCES DEFENSE COUNCIL; and GREENPEACE, INC.,<br><br>           Plaintiffs,<br><br>     v.<br><br>DIRK KEMPTHORNE, United States Secretary of the Interior; and UNITED STATES FISH AND WILDLIFE SERVICE,<br><br>           Defendants.<br>_____/ | No. C 08-1339 CW<br><br>ORDER GRANTING IN PART MOTIONS FOR LEAVE TO INTERVENE |

    The American Petroleum Institute, Chamber of Commerce of the United States of America, National Mining Association, National Association of Manufacturers and American Iron and Steel Institute (the Associations) together move for leave to intervene in these proceedings. Edison Electric Institute (EEI) and the National Petrochemical and Refiners Association (NPRA) each move separately for leave to intervene. Plaintiffs do not oppose the motions, but request that the prospective Intervenors' involvement be subject to certain conditions. Defendants have not filed a response to any of the three motions. The matter was taken under submission on the

papers. Having considered all of the papers filed by the parties, the Court grants the motions in part and denies them in part.

BACKGROUND

Plaintiffs filed this action on March 10, 2008, charging Defendants with failing to comply with the Endangered Species Act's (ESA) deadline to issue a determination on whether the polar bear should be listed as a threatened or endangered species. On April 2, 2008, Plaintiffs moved for summary judgment. Defendants opposed this motion, conceding that they had failed to meet the deadline but arguing that the relief Plaintiffs sought was unjustified.

On April 28, 2008, the Court granted Plaintiffs' motion and ordered Defendants to publish their listing determination by May 15, 2008. Defendants complied with this order and published a final rule designating the polar bear as threatened. In addition, Defendants promulgated a special rule under section 4(d) of the ESA, which permits the Fish and Wildlife Service to specify prohibitions and authorizations that are tailored to the specific conservation needs of a particular threatened species. The special rule here allows certain activities that might otherwise be prohibited under the ESA or its associated regulations. Specifically, the rule provides that, if an activity is authorized under the Marine Mammals Protection Act (MMPA) and the Convention on International Trade in Endangered Species of Wild Fauna and Flora, the activity is exempt from ESA provisions that might otherwise prohibit it as a take of polar bear. The rule also exempts activities outside of Alaska from the ESA's incidental take prohibition. In addition, the rule exempts activities that generate greenhouse gases, no matter where they occur, from the

ESA's consultation requirements.

On May 16, 2008, Plaintiffs filed an amended complaint adding two claims. The first new claim charges Defendants with violating the Administrative Procedures Act (APA) by promulgating the section 4(d) rule without first publishing a notice of proposed rule-making and giving interested persons an opportunity to comment. The second new claim charges Defendants with violating the National Environmental Policy Act (NEPA) by promulgating the section 4(d) rule without first conducting an environmental impact statement or an environmental assessment.

On July 16, 2008, Plaintiffs filed a second amended complaint adding four new claims. All four claims are brought pursuant to the APA and are based on Defendants' alleged failure to comply with either the ESA or the MMPA. The first challenges the decision to classify the polar bear under the ESA as a threatened, rather than an endangered, species. The second challenges the substance of the section 4(d) rule as contrary to the ESA. The third charges Defendants with violating the ESA by failing to designate critical habitat for the polar bear. The fourth alleges that Defendants violated the MMPA by failing to publish a list of guidelines for safely deterring polar bears through the use of non-lethal methods. The parties subsequently reached a negotiated settlement of these last two claims.

On August 13, 2008, the Court granted in part the motions of the Alaska Oil and Gas Association (AOGA) and the Arctic Slope Regional Corporation (ASRC) for leave to intervene, permitting them to intervene in connection with the adjudication of Plaintiffs' ESA and MMPA claims, as well as with the remedies phase of Plaintiffs'

3

NEPA and stand-alone APA claims.  However, the Court did not permit AOGA and ASRC to defend the portion of the section 4(d) rule that exempts all activities outside of Alaska from the ESA's take prohibitions, or the portion of the rule that exempts greenhouse gas emissions from section 7 of the ESA.

The American Petroleum Institute is a trade organization that represents nearly 400 corporate members engaged in various aspects of the oil and gas industry, including production, refining, distribution and marketing.  The Chamber of Commerce is a business federation that represents the interests of companies in every sector of the U.S. economy.  The National Mining Association is a trade organization of more than 325 companies , and represents the interests of the producers of metals, industrial and agricultural minerals and coal.  The National Association of Manufacturers is an industrial trade association that represents both small and large manufacturers in every industrial sector.  The American Iron and Steel Institute represents approximately twenty-eight member iron and steel companies and 138 associate and affiliate members who are suppliers to or customers of the steel industry.  EEI is an association of electric companies that together represent seventy percent of the electric power industry in the United States.  The NPRA is a trade association that represents over 450 companies in the petrochemical and refining industries.

## DISCUSSION

To intervene as a matter of right under Rule 24(a)(2) of the Federal Rules of Procedure, an applicant must claim an interest the protection of which may, as a practical matter, be impaired or impeded if the lawsuit proceeds without the applicant.  Forest

4

Conservation Council v. U.S. Forest Serv., 66 F.3d 1489, 1493 (9th Cir. 1995). The Ninth Circuit applies a four-part test to motions under Rule 24(a)(2):

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately protected by the parties to the action.

Id. (quoting Sierra Club v. EPA, 995 F.2d 1478, 1481 (9th Cir. 1993)).

The Ninth Circuit interprets Rule 24(a)(2) broadly in favor of intervention. Id. In evaluating a motion to intervene under Rule 24(a)(2), a district court is required "to take all well-pleaded, nonconclusory allegations in the motion . . . as true absent sham, frivolity or other objections." Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 820 (9th Cir. 2001).

Alternatively, a court may, in its discretion, permit intervention under Rule 24(b)(1)(B) by anyone who "has a claim or defense that shares with the main action a common question of law or fact." In exercising its discretion, a court should "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

The Ninth Circuit has developed a special approach to intervention in actions brought under NEPA. The approach involves dividing NEPA actions into two phases: a merits phase, during which the court determines whether the government was required to comply with NEPA and whether it failed to do so; and a remedial phase,

5

during which the court determines the appropriate remedy for any violation. See, e.g., Wetlands Action Network v. Babbitt, 222 F.3d 1105, 1113-14 (9th Cir. 2000). The Ninth Circuit has repeatedly held that private parties do not have a "significantly protectable interest" in resolving the issue of whether the government has complied with NEPA's procedural requirements, and thus may not intervene as defendants in the merits phase of this type of action. See id.; Kootenai Tribe of Idaho v. Veneman, 313 F.3d 1094, 1108 (9th Cir. 2002); Churchill County v. Babbitt, 150 F.3d 1072, 1082-83 (9th Cir. 1998); Forest Conservation Council, 66 F.3d at 1499; Portland Audubon Soc'y v. Hodel, 866 F.2d 302, 309 (9th Cir. 1989). However, because private interests can be impaired by injunctions ordering governmental compliance with NEPA, the Ninth Circuit has held that private parties may intervene as of right in the remedial phase of NEPA actions, provided the applicants otherwise meet the requirements of Rule 24(a)(2). See, e.g., Wetlands Action Network, 222 F.3d at 1114.

The Ninth Circuit's special approach to intervention in NEPA cases does not extend to claims alleging violations of other environmental laws, at least where the claims challenge the substance of a decision made under the laws rather than the government's failure to take an action or comply with a procedure mandated by the laws. See Sw. Ctr. for Biological Diversity, 268 F.3d at 817-24; Idaho Farm Bureau Fed'n v. Babbitt, 58 F.3d 1392, 1397-98 & n.3 (9th Cir. 1995). Instead, the proposed intervenor may satisfy the "significantly protectable interest" requirement by showing that "the injunctive relief sought by the plaintiffs will have direct, immediate, and harmful effects upon [its] legally

6

protectable interest." Sw. Ctr. for Biological Diversity, 268 F.3d at 818 (quoting Forest Conservation Council, 66 F.3d at 1494).

    The movants have satisfied the four-factor test with respect to a portion of this case. Specifically, they have a protectable economic interest in continuing to perform activities that result in the emission of greenhouse gases. Because those activities are currently permitted by the section 4(d) rule, and because the disposition of Plaintiffs' claims may result in changes to or the revocation of the rule, the movants have a direct stake in the litigation to the extent the litigation concerns the substance of the section 4(d) rule. They also have an interest in defending Defendants' decision to classify the polar bear as a threatened, rather than an endangered, species, because section 4(d) permits Defendants to promulgate rules concerning only threatened species. In addition, the movants moved for leave to intervene within a reasonable amount of time after Plaintiffs filed their second amended complaint, which asserted a substantive challenge to the section 4(d) rule for the first time. Thus, the present motions are timely. Finally, the interests of the movants are sufficiently disparate from those of the government -- and from AOGA's and ASRC's -- such that it is possible that those interests may not be adequately protected by any other party if they are not permitted to intervene.

    The Court concludes that the movants may intervene as a matter of right in connection with the adjudication of Plaintiffs' ESA claims challenging the substance of the section 4(d) rule and challenging the government's decision to classify the polar bear as a threatened species (the second and fourth causes of action).

7

Under Ninth Circuit precedent, the movants do not have a protectable interest relating to the merits of Plaintiffs' NEPA claim, which simply asserts that Defendants failed to comply with a statutory procedural requirement. For the same reason, the movants do not have a protectable interest relating to the merits of Plaintiffs' stand-alone APA claim, which similarly challenges Defendants' failure to adhere to a statutory procedural requirement -- in this case, to provide notice and an opportunity for comment before promulgating the section 4(d) rule. See Forest Conservation Counsel, 66 F.3d at 1499 n.11.[1] The movants thus may not intervene in connection with the merits phase of these claims; they may intervene during the remedies phase.

As for permissive intervention, the Court declines to exercise its discretion to permit the movants to intervene in the merits phase of the NEPA claim and the stand-alone APA claim. The Court is persuaded that Defendants will adequately defend their alleged failure to comply with statutory procedural requirements, and the involvement of the movants is not necessary.

## CONCLUSION

For the foregoing reasons, the Associations' motion for leave to intervene (Docket No. 165) is GRANTED IN PART. EEI's and NPRA's motions for leave to intervene (Docket Nos. 146 and 148) are also GRANTED IN PART. The movants may intervene in connection with Plaintiffs' ESA claims challenging the substance of the section 4(d) rule and challenging the government's decision to classify the

---

[1] In its October 2, 2008 order denying AOGA's and ASRC's motions for leave to file a motion for reconsideration, the Court elaborated on its reasoning for denying intervention as a matter of right on the stand-alone APA claim.

8

polar bear as a threatened species (the second and fourth causes of action). They may also intervene in the remedial phase, but not the merits phase, of Plaintiffs' NEPA claim and their stand-alone APA claim (the fifth and sixth causes of action).

The Associations, EEI and NPRA must file a consolidated joint opposition to Plaintiffs' motion for summary judgment, contained in a single brief along with any cross-motion, on the same date that AOGA and ASRC are required to file their oppositions and cross-motions. The movants must not repeat any of the arguments made by Defendants, and must confer with AOGA and ASRC prior to filing their papers so that their submissions are not unnecessarily duplicative of each other. The movants' brief is limited to fifteen pages unless advance permission of the Court is obtained.[2] The movants' reply in support of any cross-motion is limited to ten pages and must be filed on the same date that AOGA and ASRC are required to file their replies in support of their cross-motions.

IT IS SO ORDERED.

Dated: 11/18/08

*(signed)* CLAUDIA WILKEN
United States District Judge

---

[2] Any request for an extension of page limits must be supported by a specific demonstration of the need for the extension.